```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                       SOUTHERN DIVISION


 3
    THE DISTRICT OF COLUMBIA,      :   Civil Action No.
 4  et al.,
                                   :   PJM 17-1596
 5         Plaintiff,
                                   :
 6      v.
                                   :
 7  DONALD J. TRUMP, in his official,   Greenbelt, Maryland
    capacity as President of the   :
 8  United States of America,          Thursday, January 25, 2018
                                   :
 9         Defendant.                   10:00 A.M.
    _____/
10
                   TRANSCRIPT OF MOTION PROCEEDINGS
11           BEFORE THE HONORABLE PETER J. MESSITTE
                   UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13  FOR THE PLAINTIFFS      LOREN L. ALIKHAN, Esquire
    DISTRICT OF COLUMBIA:   STEPHANIE E. LITOS, Esquire
14                          SONYA LEBSACK, Esquire
                            Office of the Attorney General
15                          District of Columbia
                            441 4th Street, NW
16                          Washington, D.C.  20001
                            202-727-6287
17
    FOR THE PLAINTIFF       STEVEN M. SULLIVAN, Esquire
18  STATE OF MARYLAND:      PATRICK HUGHES, Esquire
                            LEAH TULN, Esquire
19                          State of Maryland Office of the
                            Attorney General
20                          200 Saint Paul Place
                            Baltimore, Maryland 21202
21                          410-576-6325

22


23  OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229


24       COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES


25
```

```
 1    APPEARANCES CONTINUED:

 2    FOR THE DEFENDANT:       BRETT SHUMATE, Esquire
                               JEAN LIN, Esquire
 3                             JAMES POWERS, Esquire
                               United States Department of Justice
 4                             950 Pennsylvania Avenue NW
                               Washington, D.C.  20530
 5                             202-514-2331

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                   P–R–O–C–E–E–D–I–N–G–S

2           THE DEPUTY CLERK:  The matter now pending before the

3   Court is Civil Case Number PJM 17–1596, the District of

4   Columbia, et al. versus Donald J. Trump.  The matter comes

5   before this Court for a motions hearing.

6           THE COURT:  All right.  We actually changed the

7   seating and put plaintiffs on the right side here because we

8   needed more space this morning.

9           So, plaintiffs counsel, identify yourselves first and

10  then defense counsel.

11          MS. ALIKHAN:  Loren AliKhan for the District of

12  Columbia.

13          MS. LITOS:  Stephanie Litos for the District of

14  Columbia.

15          MS. LEBSACK:  Sonya Lebsack for the District of

16  Columbia.

17          MR. SULLIVAN:  Stephen Sullivan for State of Maryland.

18          MR. HUGHES:  Patrick Hughes for the State of Maryland.

19          MS. TULIN:  Leah Tulin for the State of Maryland.

20          THE COURT:  All right.  For the defendant.

21          MR. SHUMATE:  Good morning, Your Honor.  Brett Shumate

22  from the Department of Justice on behalf of The President.

23          MS. LIN:  Jean Lin, Department of Justice on behalf of

24  the United States.

25          MR. POWERS:  Jim Powers on behalf of the
```

```
 1   United States.
 2           THE COURT:  All right.  There was a defense counsel, I
 3   believe, that hadn't been admitted pro hac vice that you wanted
 4   to move her admission now, am I correct?
 5           No, plaintiff's counsel.
 6           Jessi, what are we talking about?
 7           MS. TULIN:  Yes, good morning, Your Honor.
 8           Leah Tulin, I'm from the Maryland Attorney General's
 9   office.  I'd just like to enter my appearance.
10           THE COURT:  All right.  Well, just note that she's
11   admitted pro hac vice, madam clerk, if you would.
12           THE DEPUTY CLERK:  Yes, Your Honor.
13           THE COURT:  Anyone have any very preliminary remarks
14   to make before we get into our program?
15           Okay.  Yes, sir, identify yourself each time you stand
16   to speak as well.
17           MR. SULLIVAN:  Yes, Your Honor.  Steven Sullivan from
18   Maryland.  I just wanted to say -- to alert the Court in
19   advance, because we have plaintiffs from two different
20   governments, if during the proceedings one of us, one of my
21   colleagues does not have the answer that the Court is seeking
22   immediately, we might ask the Court's indulgence to confer
23   briefly or, perhaps, to defer the answer.
24           THE COURT:  That's fine, that's fine.
25           All right.  Let me run through a few questions that I
```

1   have.  I don't need the answers now, but I want you to keep

2   these considerations in mind as you go through, because as I

3   have worked through the case, they occurred to me and you may

4   along the way in your developments address these.

5          First, this is a suit against the President in his

6   official capacity and yet, I understand the plaintiffs are also

7   arguing that what he's done here is really as an individual.

8   He's benefiting individually.  There's at least one amicus brief

9   I read that seem to suggest that if he's sued in his official

10  capacity, that changes the ballgame.

11         Address that issue, if you will, somewhere along the

12  way since if I'm correct in understanding plaintiff's position,

13  it's because he's personally profiting, not because he is the

14  President of the United States.  Although, obviously, that is

15  what triggers the case here.

16         The other issue, of course, is we're here on a Motion

17  to Dismiss.  So the question really is, what gets you through

18  the gate?  Do I have to definitively decide certain questions

19  today or is it enough that there may be a cause of action that's

20  stated here?

21         I say that because my sense is and you can attack this

22  any way you want to, that unless defendants can show me as a

23  matter of law today that there is something that disqualifies

24  this case from going forward, we may have to go to another step

25  in the case.  But any event, keep that in mind.  This is not a

 1    Summary Judgment Motion, this is a Motion to Dismiss.

 2         And the other thing really in terms of the

 3    understanding the case is, are there some facts, jurisdictional

 4    or otherwise, that I have to decide definitively first before we

 5    can go forward?  For example, with regard to the elements for

 6    standing, the three standing elements.  Factually, do I make a

 7    determination right away?  Is there some idea in which, some

 8    thought in which we have to go to an evidentiary phase; another

 9    question that I have.

10         The other issue that I want you to address in standing

11    is -- and don't forget, we have two emoluments clauses here.

12    Some of the arguments that I read from both sides candidly seem

13    to fuse the two.  There are some arguments that seem to apply to

14    both and some that apply only to one and not the other.

15         You need to be clear with me about which -- what

16    you're talking about.  Are your arguments going to just both

17    clauses or one or the other and so on.  That would be helpful in

18    terms of where we are on the supposition that arguably, at

19    least, you could have standing as to one clause and not the

20    other.  So you need to elucidate that for me.

21         The other general consideration is that there's a lot

22    discussion about the Trump International Hotel in Washington,

23    more so than Mar-a-Lago, more so than Trump Tower, more so than

24    Chinese patents and so on and so forth.  My understanding of the

25    standing law is you have to show your standing as to each and

1    every type of claim you're making.

2           So, for example, Chinese patents, how would Maryland

3    and the District of Columbia have any standing to claim those?

4    Now, they may have standing as to Trump International Hotel

5    because of its proximity, but with regard to some of these

6    farther, more distant connections, whether you think there's a

7    violation going on or not, the question really is as to these

8    two plaintiffs, whether they have standing to go beyond what is

9    immediately their vicinity, which is to say the Trump

10   International Hotel and all its aspects, and some of these other

11   Trump enterprises that are around the United States or around

12   the globe for that matter.

13          So, I don't need an answer specifically to each of

14   those questions now, but keep those in mind as you're arguing

15   because I -- and I'll ask for clarification if we get to a point

16   where we are.

17          So, with that said, we do have a program and I've

18   invited preliminary remarks first from Mr. Sullivan, 20 minutes

19   to make some preliminary remarks.  And if you care to be at the

20   podium, that's probably easier.  I think we're streaming this

21   next door in another courtroom, so better if you go to the

22   podium and argue.

23          MR. SULLIVAN:  Thank you, Your Honor.  I apologize in

24   advance if I appear to be looking down at my notes more than I'd

25   ordinarily like to, but these introductory remarks are the

8

1    product of some consultation and I'd like to make sure I do

2    justice to them.

3              THE COURT:  Very well.

4              MR. SULLIVAN:  Thank you, Your Honor.

5              The District of Columbia and Maryland understand that

6    our purpose here today is to help the Court satisfy itself that

7    this matter is a case or controversy over which the Court has

8    jurisdiction under Article 3.  Although in this case of utmost

9    public importance, the merits present a novel issue for the

10   judiciary, the standing question does not.

11             We believe our standing to seek review of the alleged

12   constitutional violations satisfies the requirements of

13   Article 3 under well-established principles set forth in the

14   decisions we've cited.  We recognize, however, that the

15   arguments raised in this case with respect to standing involve

16   multiple parts, two governments, two clauses of the Constitution

17   and four distinct bases for standing that we've asserted that

18   are distinct, though not entirely unrelated to one another.

19             To give the Court a brief overview of why the District

20   of Columbia and Maryland have standing, first I'd like to start

21   by identifying the text and purposes of the two constitutional

22   provisions at issue, because as the Supreme Court said in *Warth*

23   *v. Seldin*, "Standing in no way depends on the merits, but it

24   often turns on the nature and source of the claim asserted."

25             Second, to further focus today's inquiry, I will give

1   a short explanation of each of our four bases for standing as

2   well as why each of the four bases satisfies the three familiar

3   Article 3 standing requirements of injury in fact, traceability

4   and redressability.

5           Finally, I will touch on why it matters, at least in

6   certain respects that this case is brought by the State of

7   Maryland and the District of Columbia, rather than a private

8   litigant.

9           Now, the two clauses that we have asserted, which are

10   over in that corner, but not everyone can see that far, both

11   clauses are broad prophylactic measures intended to ensure that

12   the President serves with undivided loyalty to the American

13   people.  Both clauses reflect the founders' experience and

14   insight into human nature, their understanding that if given the

15   opportunity, both domestic and foreign governments would seek to

16   influence the president by offering him financial rewards and

17   other benefits.

18           The Domestic Emoluments Clause states that the

19   president shall receive a compensation and he shall not receive

20   any other emolument from the United States or any of them.  Its

21   purpose is to prohibit the president's receipt of any such

22   emolument, which was defined at the time of the drafting as

23   gain, profit or benefit, any such emolument in excess of his

24   salary and thereby protecting the states' status as equal

25   participants in the federal system by preventing any state or

```
 1    the federal government from influencing the president by

 2    appealing to his avarice.

 3              The clause also helps to protect against self-dealing

 4    by ensuring that the president's service is compensated only in

 5    the amounts fixed in advance by Congress.  And examples of

 6    Domestic Emoluments Clause violations are set forth in Complaint

 7    at paragraphs 80 to 88, and also in our Opposition to Motion to

 8    Dismiss at eight.

 9              Now, the Foreign Emoluments Clause states that no

10    person holding any office of profit or trust shall without the

11    consent of Congress accept of any present, emolument, office or

12    title of any kind whatever from any king, prince or foreign

13    state.  The purpose of this clause is to guard against foreign

14    influence of every sort and to ensure officeholders' unclouded

15    judgment and their un-compromised loyalty.

16              Examples of Foreign Emoluments Clause violations are

17    mentioned, just a couple.  There are several in the Complaint,

18    obviously, but at paragraph 40 and 41.

19              Now, unlike some of the cases cited by the President,

20    in this case it is not mere speculation whether these clauses

21    will or won't be violated by the President.  If the Court

22    credits our merits claims as it must during the standing part of

23    its analysis, then the President has received, is receiving and

24    will continue to receive prohibited emoluments from the

25    United States, other states and foreign governments.  That much
```

1    is known at this point.

2            Now, as to our four bases of standing that we've set

3    forth in the Complaint and in our Opposition to the Motion to

4    Dismiss.  All four have been recognized by the Supreme Court as

5    legitimate interests that states may vindicate in court.

6            Just to quickly run through the four before I start

7    into a slightly more detailed analysis, there is first,

8    quasi-sovereign interest of Maryland and District of Columbia to

9    their rightful status within the federal system as recognized in

10   the *Alfred Snapp* case.  That is, their ability to participate in

11   the federal system on an equal footing without having the

12   President's decision-making influenced by any financial or other

13   benefit received by other governments.

14           Second is Maryland and the District's *parens patriae*

15   interests in protecting their economies and the economic

16   well-being of their residents by restoring the level playing

17   field that has been disrupted by President Trump's receipt of

18   emoluments which puts the District and Maryland's businesses at

19   a disadvantage in competitive markets because our hospitality

20   sectors cannot offer government clients the same opportunity to

21   influence the President that is created by his acceptance of

22   emoluments.

23           THE COURT:  Now, there you're talking about both

24   clauses, is that right?

25           MR. SULLIVAN:  Well, there, yes.

```
1              THE COURT:  All right.

2              MR. SULLIVAN:  The third of our basis, which is

3    asserted only by Maryland is the loss of specific tax revenues

4    due to President's acceptance of emoluments which disadvantages

5    Maryland enterprises in the hospitality sector in a way that

6    diminishes Maryland's revenue from sales tax and hotel occupancy

7    taxes as recognized as a basis for standing in Wyoming versus

8    Oklahoma.

9              And fourth, we assert an injury to the District and

10   Maryland's own proprietary interest, in their own business

11   ventures which are injured by Trump International Hotel's

12   competitive advantage to the extent it is derived from the

13   President's unlawful receipt of emoluments under either of the

14   two clauses.

15             Now, as to why each of these bases for standing

16   satisfies the Article 3 requirements, the quasi-sovereign

17   interest in forbidding denial of Maryland and the District's

18   rightful status in our federal system satisfies injury in fact

19   because by accepting emoluments the President creates a

20   constitutionally prohibited market for presidential influence.

21   And this, I'm talking the the Domestic Emoluments Clause --

22             THE COURT:  Let me clear it now.  On domestic

23   emoluments, it's whatever any state or any subdivision of any

24   state would pay?  Is that your argument?

25             MR. SULLIVAN:  Yes.
```

```
 1              THE COURT:  For example, at Trump International,

 2   staying there?

 3              MR. SULLIVAN:  Yes, if it's a government -- if it's

 4   government business, it will implicate it and it may require

 5   some factual development to --

 6              THE COURT:  All right.  You're saying accepting

 7   emoluments, but I want to understand what you're saying.  In

 8   context of Trump International Hotel, you're meaning frequenting

 9   the hotel, bar, event space and so on, okay.

10              MR. SULLIVAN:  Yes, Your Honor.  Yes, Your Honor.

11   This type of receipt of emoluments that's prohibited by the

12   Domestic Clause primarily puts the State and the District in an

13   intolerable dilemma.  Pay to play; that is, give emoluments to

14   the President or risk that the President will favor those states

15   that have provided emoluments.

16              The situation is even worse than that because as the

17   founders understood, it's often difficult to know whether and

18   when emoluments have been received or whether the President has

19   been influenced.  Hence, the need for the prophylactic rule.

20              Now, the injury with respect to our first basis of

21   standing, this denial of our rightful status in the

22   constitutional system is not at all speculative because the

23   conditions that the founders sought to prevent through the

24   Domestic Emoluments Clause are present now as illustrated by the

25   $35,000 in state expenditures that the governor of Maine and his
```

1    staff spent at the Trump International Hotel and its

2    restaurants.

3            A plausible connection to the President's

4    decision-making is demonstrated by what happened during one of

5    the governor's visits when the President announced a plan to

6    review regulations, the repeal of which would open up large

7    areas of Maine to commercial logging.

8            These circumstances convey the impression that desired

9    changes in federal policy can be advanced or secured through

10   patronizing the President's hotel or one of his other

11   businesses.  This scenario presents the kind of harm to the

12   states that the founders sought to prevent, the denial of equal

13   footing among states when it comes to the attention and

14   consideration they receive from the President.

15           Sadly, the main example is not the only one to come to

16   light thus far.  To illustrate the pressure to give the

17   President emoluments, be it concessions of one form or another,

18   our Complaint at paragraph 109, Footnote 74 cites a news report

19   revealing that "whereas prior to Mr. Trump's election, Palm

20   Beach County in Florida for decades had litigated in post fines

21   against Mr. Trump over various issues in the complaints

22   involving his Mar-a-Lago property.  But according to the report,

23   since the election it is, quote, another matter entirely.

24           And since Mr. Trump's election, Palm Beach County

25   officials have granted Mar-a-Lago permission to build a concrete

1    helipad, allowed the club to host a charity event featuring a

2    staged terrorist attack.  And the County has also agreed to

3    assume the cost of closing roads and additional security with

4    regard to events at Mar-a-Lago.

5            THE COURT:  Let me stop you there now.  Is it your

6    contention that what goes on at Mar-a-Lago, you have standing to

7    complain about?

8            MR. SULLIVAN:  Yes, under the Domestic Emoluments

9    Clause because the states are supposed to be on an equal basis.

10   So if one state is giving consideration, wherever that state is,

11   then another state is being denied the rightful status under the

12   Constitution.

13           Now, as for the causation requirement of standing,

14   whether the injury is fairly traceable to the President's

15   conduct, the denial of Maryland and the District's status as

16   equal participants in our system is fairly traceable in

17   President Trump's receipt of emoluments from states and the

18   United States, because that's the very situation that these

19   clauses were designed to prevent in -- by denying the President

20   the ability to have emoluments.

21           So he is receiving the emoluments.  That's our

22   plausible allegation.  And so he is the cause of this very harm

23   that the framers sought to avoid.  The injury is redressable by

24   this Court through the issuance of the requested declaratory

25   judgment declaring unlawful President Trump's receipt of

1  emoluments and an appropriate injunction mandating that he take

2  steps to prevent further receipt of unlawful emoluments.

3        The declaratory judgment in itself will provide

4  meaningful redress by resolving the quintessential controversy

5  the Declaratory Judgments Act was intended to remedy.  That is,

6  plaintiffs here claim the defendant's conduct is unlawful and

7  the defendant denies that his conduct violates the law at all.

8        This Court can resolve that controversy merely by

9  declaring which of the parties is correct on that matter of

10  constitutional law.  An injunction can offer further redress by

11  ensuring that President Trump complies with that declaration.

12        Now, our second basis for standing also satisfies the

13  Article 3 criteria; that is, the *parens patriae*'s standing to

14  protect our economies from the harm to the level playing field

15  to which we're entitled as participants in the system.

16        Now, it's been -- our allegation is that level playing

17  field for the -- at least in the hospitality sector in Maryland

18  and the District has been unlawfully tilted by President Trump's

19  receipt of emoluments from governments through his Trump

20  International Hotel.

21        As shown in the two unrebutted declarations filed with

22  our brief in opposition, government events generate tens of

23  millions of dollars for the District and Maryland hospitality

24  industries annually, and a sizeable number to our businesses

25  compete with the Trump International Hotel and its restaurants.

```
 1            Here the injury in fact suffered is the harm to the
 2   District and Maryland's economies due to the loss of the ability
 3   to compete on equal footing with President Trump's business
 4   which holds a monopoly on access to the president that no other
 5   businesses can ever offer their customers.
 6            When as here businesses compete in the same market and
 7   they are prevented from competing on equal footing due to
 8   illegal conduct, basic economic logic enables the Court to
 9   conclude that they suffered in fact, an injury in fact from that
10   disadvantage without the need to show a realized economic loss.
11   It is the loss of the ability to compete equally that is the
12   injury in fact.
13            Now, that injury in fact is traceable and redressable
14   because the same economic logic permits the Court to conclude
15   that the competitive disadvantage is fairly traceable to the
16   unlawful act that skews the playing field and that the injury is
17   redressable by an order requiring the unlawful conduct to seize.
18            Here the traceability to President Trump's receipt of
19   emoluments is clear, because his variability to continue
20   participating as owner and benefiting from the Trump
21   International Hotel results from emoluments received from the
22   United States Government.  That emolument was received by
23   Mr. Trump in the form of his own appointee's reversal of the
24   General Services Administration's previous conclusion that
25   unless President Trump divested his interest, he would be in
```

18

```
 1    violation of a lease for the property where the hotel stands
 2    which expressly bars federal elected officials from any share or
 3    benefit of the lease.  And that's explained at Complaint at 80
 4    to 88.
 5              Now, moving on to our third basis for standing.
 6              THE COURT:  About five more minutes.
 7              MR. SULLIVAN:  What's that?
 8              THE COURT:  About five more minutes for your argument.
 9    Keep that in mind.  A lot of people to hear from.  Go ahead.
10              MR. SULLIVAN:  Thank you, Your Honor.
11              Our third basis, loss of tax revenue due to the
12    President's acceptance of the emoluments which disadvantages
13    Maryland enterprises in the hospitality sector in a way that
14    diminishes Maryland's ability to receive revenue from sales tax
15    and hotel occupancy taxes.  This injury, in fact, results
16    inevitably from the same loss of a level playing field that
17    harms Maryland's economy under the parens patriae basis of
18    standing just explained.
19              Just as Oklahoma was permitted standing due to lost
20    severance tax revenue from Oklahoma Coal Producers disadvantaged
21    by another state's protectionist policy, Maryland has standing
22    to assert harm from sales tax and hotel occupancy tax loss due
23    to the skewing of the market for government related hospitality
24    services that results from President Trump's receipt of
25    emoluments.
```

1          This injury is fairly traceable to President Trump's

2     receipt of emoluments via the Trump International Hotel based on

3     the same economic logic that applies to the *parens patriae*

4     theory and is similarly redressable by court order directing him

5     to seize.

6          Finally, our fourth basis for standing is the harm

7     caused to the District and Maryland's own proprietary interests

8     and their own businesses that compete with Trump International

9     Hotel, which include the District's Walter -- Washington

10    Convention Center, Maryland's Montgomery Conference Center and

11    Maryland's direct ownership of gambling proceeds generated by

12    MGM National Harbor.

13         In addition to the Complaint's plausible allegations

14    that these facilities compete in the same arena as Trump

15    International Hotel, the plaintiffs also rely on unrebutted

16    analyses in the declarations we've attached to our opposition.

17         THE COURT:  Just out of curiosity, do you -- I don't

18    know this.  Does Trump International Hotel have casino

19    operations as well?

20         MR. SULLIVAN:  No, it doesn't, but the casino is set

21    up on the premise that the hotel -- it was integrated into the

22    hotel and restaurant facilities of MGM which do directly compete

23    with Trump Hotel under the --

24         THE COURT:  No, I was asking about whether the Trump

25    Hotel has casino operations.

1          MR. SULLIVAN:  No, it doesn't.

2          THE COURT:  Okay.

3          MR. SULLIVAN:  And again, the traceability and

4    redressability are satisfied for the same economic reasons that

5    apply to the previous theories I discussed.

6          Now, although the Court must satisfy itself that

7    Article 3 standing exist here as in any other case, the Supreme

8    Court has made clear that states are not normal litigants for

9    the purposes of invoking federal jurisdiction.

10          Justice, Brennan stated in his concurrence in *Snapp*,

11    "The state is no ordinary litigant.  As a sovereign entity, a

12    state is entitled to assess its needs and decide which concerns

13    of its citizens warrant its protection and intervention.  And

14    nothing except the Constitution or overriding federal law should

15    lead a federal court to superimpose its judgment for that of a

16    state with respect to the substantiality or legitimacy of a

17    state's assertion of sovereign interest."

18          And although in some cases individuals in private

19    organizations can assert violations of the Constitution's

20    structural provisions, the Supreme Court has recognized that

21    there are some circumstances where the results of the standing

22    analysis may be that a state is the only entity capable of

23    demonstrating the requisite injury as the court said in *Bond*

24    *versus United States*.

25          And the President, however, argues that neither the

1    plaintiffs here, nor evidently anyone else has standing to

2    challenge his receipt of emoluments.  His other arguments add up

3    to the proposition that the clear prohibition in the two

4    emoluments clauses can never be reviewed by the court and that

5    proposition cannot be correct, because in our nation no one is

6    above the law.  And under the Constitution, the federal courts

7    and not the President are vested with the authority to say what

8    the law means.

9             Maryland and the District believe that the

10   well-established principals and pertinent precedent confirm our

11   standing and right to proceed in this case.  These authorities

12   when applied to our plausible allegations and unrebutted

13   declarations establish standing on all four of the basis we

14   assert, but of course one basis if accepted by the Court would

15   suffice.  And as the Court knows, if either of the plaintiffs

16   has standing, then that is sufficient to establish the Court's

17   jurisdiction.

18            THE COURT:  All right.  Let me ask one question and

19   have you answer very briefly.  What about prudential standing?

20   An argument was made in a New York case that this is really a

21   matter that Congress should take exclusive possession of.  Why

22   do the states have a right to be here now?

23            MR. SULLIVAN:  Well, there's two important reasons --

24   well, more than two.  But one is under Domestic Emoluments

25   Clause, Congress has no --

```
 1            THE COURT:  Understood as to the domestic clause.
 2    What about foreign clause?
 3            MR. SULLIVAN:  The Foreign Emoluments Clause is in a
 4    class of constitutional provisions which have similar if not
 5    identical, without consent of Congress, clauses and a number of
 6    those very same -- the clauses with the same language have been
 7    adjudicated in court, including Supreme Court cases which found
 8    the issues justiciable notwithstanding this latent ability of
 9    Congress to step in and take action.
10            That does not stay the hand of courts to consider
11    violations of the Constitution if Congress has not exercised
12    that authority to take action under these various clauses.
13    These are not the only clause of the Constitution that have the
14    "without consent of Congress", such as the tonnage clause,
15    import/export clause as we've cited in our brief, cases where
16    the Supreme Court has adjudicated issues involving those clauses
17    notwithstanding this latent ability of the Congress to take
18    action, as Congress has the ability to take action in any number
19    of areas, although obviously not in domestic emoluments context.
20            THE COURT:  All right.  Now, I understand you to be
21    arguing that the violation is occurring now, and unless and
22    until Congress does something, it's illegal.
23            MR. SULLIVAN:  Yes, that's the premise.  It would turn
24    it on its head if you say, oh, I can get away with it unless and
25    until Congress tells me to stop.  That's not the way this
```

1    prophylactic set of provisions was drafted by the framers.

2              THE COURT:  All right.  Thank you, Mr. Sullivan.

3              I'll hear from Mr. Shumate, is that right?

4              MR. SULLIVAN:  Thank you, Your Honor.

5              THE COURT:  All right, sir.

6              MR. SHUMATE:  Good morning, Your Honor.  May it please

7    the Court, Brett Shumate on behalf of the President of the

8    United States.

9              The Court should dismiss this extraordinary case

10   challenging the President's compliance with the Constitution's

11   Emoluments Clause.  The plaintiffs, D.C. and Maryland, allege

12   nothing more than abstract political disagreements with the

13   President and speculative fears about the increase in

14   competition to businesses within their jurisdiction.

15             They also seek the extraordinary remedy of an

16   injunction against a sitting President of the United States.

17   And they claim that the Emoluments Clauses were intended to

18   protect their businesses from having to complete against the

19   President's businesses.

20             As I'll explain today, the Court should dismiss this

21   case for lack of standing just as a New York court dismissed a

22   parallel lawsuit against the President also involving the

23   emoluments clauses.  In that case --

24             THE COURT:  Well, different plaintiffs there.  No

25   sovereign plaintiff there, right?

1          MR. SHUMATE:  That's correct, Your Honor, but there

2     was a similar theory of harm, competitive injury.  And what

3     the -- Judge Daniels explained in that case is that competitive

4     injuries don't fall within the zone of interest of the

5     emoluments clause.  And the court also concluded that the

6     organizational plaintiff can only allege an abstract harm.

7     There was no concrete impact on the organization, likewise here.

8          What he explained was that these claims of competitive

9     harm don't fall within the zone of interest clauses because they

10    weren't meant to protect plaintiffs from having to compete,

11    against the President's businesses.

12          In my opening remarks, I'd like to focus on two

13    things.  First, some of the core standing principles that I

14    think we're going to be discussing throughout the day today.

15    And then second, I'd like to provide an overview of how those

16    principles apply here.

17          First, some of the key principles.  I think it's

18    undisputed that the plaintiffs here have the burden to establish

19    their standing to sue the President.  That is black letter law

20    from the *Lujan* case.  It's equally well-established that the

21    plaintiffs have an especially rigorous burden to prove standing.

22    In the case like this one where the Court is being asked to

23    declare an important branch of government is acting in an

24    unconstitutional fashion.  That comes from the *Clapper* case from

25    2013.

1          Now, that principle, I think, has particular force in

2     a case were a state is suing the federal government on these

3     types of sovereign or quasi-sovereign injury claims.

4          THE COURT:  Well, they're suing Donald Trump, aren't

5     they?

6          MR. SHUMATE:  That's correct.

7          THE COURT:  They're not suing the United States, are

8     they?

9          MR. SHUMATE:  They are.  He's the President of the

10    United States.

11         THE COURT:  That's one of the points I raised earlier.

12    They're not saying and I don't understand their contention to be

13    that somehow whatever he is doing is in conjunction with his

14    performing official services.

15         Getting money for renting hotel rooms or event spaces

16    to foreign governments has nothing to do with his being

17    president, does it?  Are you arguing that it does?

18         MR. SHUMATE:  Our position, Your Honor, and we've

19    explained this in the brief and I was going to explain it in the

20    redressability section is that, the Court lacks jurisdiction to

21    issue an injunction against the President because they can't

22    point to any authority in which a court has declared that they

23    have the authority to issue an injunction --

24         THE COURT:  Well, that we'll hear about from them, but

25    I want to be clear that are you saying that because he is

1    President, he can -- well, that is your contention that he can

2    continue to receive this money, but it's because he's doing it

3    as a private citizen really, isn't it?  That's why I ask, is he

4    being sued in his official capacity or should he be sued in his

5    official and individual capacity?  Should an amendment be in

6    order of the pleadings so we permit that?

7              MR. SHUMATE:  Well, I don't think --

8              THE COURT:  You keep saying, the United States is

9    being sued.  He's being sued.

10             MR. SHUMATE:  Right, and he is the President of the

11   United States.

12             THE COURT:  I understand that, but that may just make

13   the clause applicable.  It may not make the -- transform the

14   clause into a suit against the United States.

15             MR. SHUMATE:  Well, he is the head of the Executive

16   Branch and he is, for purposes of this case, the United States,

17   so this is a clause and these clauses only apply to the

18   President as president.  And it wouldn't matter if the

19   plaintiffs had sued the President in his personal capacity or in

20   his official capacity, the claims here are brought against the

21   President, our main claim here today is that they are not

22   injured in any way by the President's conduct, whether you view

23   that as private conduct or official conduct.

24             The clauses apply only to the President as president.

25   And the -- one of the obstacles to granting the relief that the

1    plaintiffs are asking for is that the Court is being asked to

2    issue an injunction against a sitting President of the

3    United States and the Court does not have the power to do so.

4    And therefore, the plaintiff's injuries are not redressable by a

5    court.

6          The *Virginia versus Sebelius* case from the Fourth

7    Circuit in 2012, which is a case we cite in our briefs, we think

8    provide the right framework to analyze the plaintiffs' claims

9    here.  That was a case in which Virginia was bringing a claim

10   against the federal government challenging the individual

11   mandate in the Affordable Care Act.

12         And the Commonwealth of Virginia in that case was

13   bringing very similar claims of sovereign and quasi-sovereign

14   injury.  And the Fourth Circuit said, no, these are abstract

15   harms involving political power and sovereignty that really are

16   not traditionally cognizable and a state cannot bring a *paren*

17   *patriae* lawsuit on behalf of its citizens against the

18   United States.  And we think that is the right framework to look

19   at this case.

20         Now, with respect to the three elements of standing;

21   injury and fact, traceability and redressability, I'd like to

22   touch on a few key principles.  First, with respect to injury in

23   fact, have these plaintiffs alleged a judicially cognizable

24   injury in fact.  And I think it's beyond dispute that that

25   injury must be imminent, must be concrete, must be

28

1  particularized and it cannot be speculative.

2        The claims of future injuries, which is all we have

3  here, those injuries must be certainly impending.  And that

4  comes from the *Clapper* case.  It's not enough for the plaintiffs

5  to speculate about possible future harm or objectively

6  reasonable future harms.  The Supreme Court rejected that.

7        They said, future injuries must be certainly

8  impending.  So I think we need to keep that in mind today.  Nor

9  are generalized grievances about the conduct of government

10  enough to confer a concrete injury on a plaintiff.  And we've

11  cited a case called the *Schlesinger* case from 1974 that involved

12  just that, generalized grievances against the conduct of the

13  federal government are not cognizable --

14        THE COURT:  You're still losing me.  I mean, they're

15  not talking about things he's doing really as president.

16  They're talking about somebody who is personally benefiting as a

17  private owner of a business.  Has nothing do to with his

18  performance of his duties as president.  I mean, that's

19  something that I have to cope with here.  As I say, it does say

20  he's being sued in his official capacity and you're making it an

21  argument against the United States.

22        And I'm focused, at least, right now on whether this

23  individual is getting some sort of benefits as an individual,

24  even though obviously they get into federal court, he has to be

25  an official.  But what we're really looking at is alleged

1    non-official acts.

2        Anyway, I'm going to invite the plaintiffs to address

3    that issue as you go through your argument, because that's an

4    important component.  As you hear Mr. Shumate arguing, this is a

5    suit against the United States.

6        I don't understand it to be that, but go ahead.

7        MR. SHUMATE:  Sure.  I'll just say two things in

8    response, Your Honor.  The Complaint was styled as a complaint

9    against the President in his official capacity.  He is the

10   President of the United States.  The Department of Justice is

11   here representing the President because he holds that office and

12   that -- these clauses only apply to him so long as he holds the

13   office.

14       So, his conduct can only be viewed in the context of

15   him holding the office of the President of the United States.

16   So that's why we are making similar claims here about they're

17   challenging governmental conduct.  So those principles about

18   *parens patriae* harm and things like that, this is a suit against

19   the federal government.  This is not just a suit against

20   Donald Trump in his personal capacity.  So it has to be viewed

21   in that lens.

22       I think it's important to remember that in the *Crew*

23   case, again different plaintiffs, but very similar theories of

24   injury against the president in his official capacity.  And the

25   court in that case said, the claims of harm from the President's

1    conduct were really abstract.  They hadn't pled a concrete

2    impact on the plaintiffs in that case.

3           Let me move to traceability.  The question for the

4    Court to decide is, is the plaintiff's harm fairly traceable to

5    the defendant's conduct.  And as the Fourth Circuit has

6    explained, an alleged injury is not traceable to the challenged

7    conduct if there's an intermediary that stands between the

8    plaintiff and the defendant.  And in that case, it involved a

9    non-profit that broke the chain of causation.

10          Here, what we'll talk about today is that there are

11   independent parties that stand between plaintiffs and the

12   defendant that break the chain of causation.  The reason that

13   breaks the chain of causation is because the court can't control

14   those third parties and can't predict how they may react.  And

15   that was a problem in the *Crew* case that Judge Daniels

16   recognized that any injuries that were being asserted with

17   respect to competitive harm couldn't -- weren't traceable to the

18   defendant's -- the president's conduct because there were

19   third-party customers who had to choose --

20          THE COURT:  He just said that in the sentence.  There

21   was no analysis at all.  I read his opinion.  I read the

22   transcript.  There's very a little analysis in his declarations,

23   I must tell you.  So I read the opinion thinking, I better look

24   at this anew.  I'm not really even bound by the logic of the

25   opinion at this point with all respect to Judge Daniels.

```
 1              MR. SHUMATE:  Thank you, Your Honor.  We look forward
 2   to addressing that issue later today.
 3              THE COURT:  All right.
 4              MR. SHUMATE:  Third requirement of standing,
 5   redressability.  Is it likely that the Court can redress the
 6   plaintiff's injury?  I think it's important to remember
 7   redressability must be likely, can't be speculative whether the
 8   Court could redress any injury.  I think as I mentioned earlier
 9   that this requirement of redressability is particularly
10   important in a case involving the president himself.
11              We cited numerous cases where courts have said, courts
12   do not -- not have the power to issue injunction against a
13   sitting President of the United States.  And if the Court lacks
14   the power to issue that injunction, then the Court can't redress
15   the plaintiffs injuries.
16              THE COURT:  Well, what about a declaration of relief?
17   Declaratory Judgment Act doesn't require injunctive relief and
18   I'm assuming plaintiffs would be satisfied with that, if that's
19   all the Court says would be appropriate?  What about that?
20              MR. SHUMATE:  I think that presents the same concerns
21   about separation of powers as injunctive relief.
22              THE COURT:  Isn't there authority for the proposition
23   that declaratory relief may be given against the president?
24              MR. SHUMATE:  I don't think so, Your Honor.  Now,
25   we're talking about cases where the president is the sole
```

 1   defendant.  Now, in a case like that --

 2            THE COURT:  Isn't that this case?

 3            MR. SHUMATE:  That is this case.

 4            THE COURT:  He is sole defendant.

 5            MR. SHUMATE:  Right.  So I point the Court to Justice

 6   Scalia's concurring opinion in the *Franklin* case from 1996.  He

 7   talks about how injunctive relief and declaratory relief against

 8   the president would be improper because they both present

 9   separation of powers concerns because that type of relief puts

10   two branches of government on a collision course, and the Court

11   should avoid that type of constitutional crisis at all cost.

12            Now, if I can give a brief overview now of how these

13   principles apply in this case and give a brief overview of how I

14   understand the plaintiffs' theories of harm.

15            Now, my understanding is that there are generally sort

16   of three buckets of standing theories.  We think all of them

17   fail and I think it's important to keep these buckets clear and

18   distinct.  The three buckets are sovereign injury,

19   quasi-sovereign injury and injuries to their proprietary

20   interest.

21            Let's take each one of them in turn briefly.  The

22   sovereign injuries that they're claiming today, I think, are

23   three-fold.  One, a loss of political power in joining the union

24   because they claim they were induced to join the union because

25   of the emoluments clauses.

1          Second, this intolerable dilemma theory that they are
2     being pressured into competing with other states to grant
3     emoluments to the President.  And third, a theory of loss of tax
4     revenue based on competitive harm to businesses that they
5     have -- that are within their jurisdictions.
6          We think all of these theories are all speculative and
7     are based on abstract political concerns that are not judicially
8     cognizable.  They are really all a smoke screen for a *parens*
9     *patriae* lawsuit against the federal government, but it's
10    well-established that a state cannot bring that type of lawsuit
11    against the federal government because it is the federal
12    government that stands in the shoes of all citizens that --
13          THE COURT:  And they couldn't bring it against
14    Donald J. Trump individually?
15          MR. SHUMATE:  Well, that's not this case, Your Honor.
16          THE COURT:  Well, they could amend their Complaint if
17    necessary.  I'm throwing it out to you whether that's just one
18    of those sort of problematic aspects of this case, but is it
19    incurable?
20          MR. SHUMATE:  I think it's incurable because of his
21    status as the president.  The capacity in which he is sued is
22    not so much important as the fact that he is the President of
23    the United States.  These clauses only apply to him as president
24    and the relief that they're seeking only runs against him as the
25    president.

```
 1            Now, as for the tax revenues, these claims are
 2    inherently speculative.  They can't identify any specific loss
 3    tax revenue.  All they've identified is the possibility of a
 4    general impairment of their tax revenues.  As we'll discuss
 5    later today, that is not a sufficient Article 3 cognizable
 6    injury because it's inherently speculative whether Maryland is
 7    losing any tax revenue.  Now, those are the sovereign injuries.
 8            Now, let's turn to the quasi-sovereign injuries, which
 9    is Maryland seeking to protect the interest of its citizens and
10    their economy and their residents.  Now, this is a parens
11    patriae lawsuit against the federal government.  And it is black
12    letter law that states do not have standing to bring those types
13    of claims against the federal government.  Even if they could
14    bring that type of claim here, the claim is inherently
15    speculative because preventing the economic injury to residents
16    in a state, it is inherently speculative and the states are
17    really nothing more than a nominal party.
18            They are claiming the interest -- claiming to protect
19    the interest of certain businesses within their jurisdictions.
20    For example, the Gaylord Hotel here in Maryland.  Well, the
21    Gaylord is positioned to bring its own lawsuit against the
22    President if they have any claim of injury.  So what the state
23    is trying to do is merely stand in the shoes of the Gaylord to
24    bring a lawsuit against the President, but that is not the type
25    of parens patriae lawsuit that the courts have ever sanctioned.
```

```
 1              And last, with respect to the last theory is that the
 2    injury to their proprietary interest in certain businesses that
 3    they allege compete with the President's businesses.  They rely
 4    exclusively on the Competitor Standing Doctrine and ask the
 5    Court to infer a certainly impending loss of business to these
 6    properties.  But the court in New York rejected that theory of
 7    standing as inherently speculative.
 8              THE COURT:  And again, merely declaring that to be so
 9    without much analysis.  I must tell you, I mean, again I
10    searched it carefully.  I just couldn't see what the rational
11    was, other than making a declaration that this doesn't stand.
12              MR. SHUMATE:  Well, the rationale in that case just as
13    in this case is that the Court cannot reasonably infer a
14    certainly impending loss of business to any business that is
15    allegedly competing with the President's businesses merely
16    because the President owns an interest in the Trump
17    International --
18              THE COURT:  Is the standard certain loss of business
19    the international standard you're relying on?
20              MR. SHUMATE:  Well, the Clapper case is certainly
21    impending harm.  And so in a competitor standing case, the
22    plaintiffs need to show harm.
23              THE COURT:  You have diplomats from certain Arab
24    countries who have declared that they are taking their business
25    to the Trump International Hotel and at least in one instance
```

1    transferring, I think, from Four Seasons in order to curry favor

2    with the President.  Now, that's --

3            Do you need a number on that or is it enough for them

4    to say, that's what we're doing?

5            MR. SHUMATE:  Well, that's an allegation --

6            THE COURT:  We're at the Motion to Dismiss phase right

7    now.

8            MR. SHUMATE:  Yes, they've alleged that the Ritz and

9    the Four Seasons have lost business to the Trump International

10   Hotel.

11           THE COURT:  Directly, directly.

12           MR. SHUMATE:  They're not here today.  They don't own

13   an interest in those properties.  Maryland doesn't own an

14   interest in either of those properties and they're not within

15   the State of Maryland.  So how does any harm to those

16   jurisdictions which are in D.C. --

17           THE COURT:  Well, I think D.C. certainly is alleging

18   more proprietary interest injury than just the fact that one of

19   its constituents, Four Seasons was a lost business.  They have

20   the convention center and other event spaces that they work with

21   and they say that there's at least an indication, and maybe

22   waiting further proof that there has been in fact direct

23   transfer of business from those facilities to the Trump

24   International Hotel.

25           MR. SHUMATE:  But there's no allegation in the

1    Complaint that that has happened.  All they have alleged is that

2    their businesses compete with the President's businesses, that's

3    it.  And they're asking the Court to infer from that an increase

4    in competition that will necessarily lead to an increase or a

5    loss of business.  That is a large speculative leap --

6              THE COURT:  They do that in anti-trust cases all the

7    time, don't they?  Anti-trust cases, you just show that somebody

8    is dominating the field.  You don't have to show a direct loss

9    of business as long as you're in the same market.

10             MR. SHUMATE:  Well, I think anti-trust cases would be

11   different.  There are statutory standing issues that come up in

12   those cases, but in the competitor standing cases they are based

13   on an inference.  And keep in mind, they can't show any past

14   injury to any of them.  They're asking the Court to infer future

15   injury.  And they have to show that it is certainly impending.

16             And what they're trying to show is that merely based

17   on the fact that they compete with the President's ownership

18   business in the Trump International Hotel, there is a increase

19   in competition that will necessarily lead to a loss of business.

20   And we'll talk more about that -- this doctrine later today, but

21   typically when this arises, you have the government controlling

22   access to a market.

23             And the nature of the market is such that the Court

24   can confer that by allowing a new entrant into the market,

25   you're necessarily going to allow a new competitor that's going

1   to increase competition and the other competitor is going lose

2   business.

3          These are very diffuse markets with lots of

4   competitors.  The President is a controlling access to the

5   market.  The President is a competitor in that market.  This is

6   far afield from any case they can point to where there has been

7   competitor standing that has been upheld.

8          And we think Judge Daniels got it exactly right on

9   competitor standing that it is inherently speculative whether

10  the businesses in New York or these businesses here in the D.C.

11  Metro area are necessarily going to suffer an injury in fact

12  just because they compete with the President's businesses.  So I

13  look forward to discussing all those.

14         THE COURT:  All right.  Thank you, Mr. Shumate.

15  Appreciate your presentation.

16         Let's see.  Next up we have -- we're going to address

17  the issue of injury in fact, including the zone of interest

18  argument and we'll begin with Loren AliKhan.

19         All right.  Ms. AliKhan.

20         MS. ALIKHAN:  Thank you, Your Honor.  Good morning and

21  may it please the Court.

22         Our founders believe that the government is or ought

23  to be for the benefit, protection and security of the people and

24  not for the benefit of one man.  This principle is enshrined in

25  both the Domestic and Foreign Emoluments Clauses of the

1    Constitution, and Maryland and District of Columbia have brought

2    this suit to secure the defendant's compliance with these

3    clauses.

4            Maryland and the District of Columbia have standing to

5    bring this suit on several independently sufficient grounds.

6    This morning I focus on the injury in fact that our government

7    suffered to their sovereign and quasi-sovereign interests which

8    they seek to the vindicate through this litigation.  In the

9    afternoon, I will discuss the harms that Maryland and the

10   District suffer to their proprietary interest.

11           To provide a brief road map of my presentation this

12   morning, I would like to begin by discussing the injury to

13   plaintiff's sovereignty when their standing among their sister

14   states and their status within the federal system is threatened

15   by the President's receipt of emoluments.

16           I will then turn to Maryland and the District's

17   interest as *parens patriae* in protecting their residents from an

18   economy that is skewed by unfair and illegal competition by

19   virtue of the President's acceptance of emoluments.  And

20   finally, I will conclude by discussing the injury to Maryland's

21   tax base that is related to this illegal market for competition.

22           So, to begin with the question of equal sovereignty,

23   Maryland and the District of Columbia are harmed by the

24   violation of these constitutional provisions that are designed

25   to protect their position among their sister states.

         1              Now, *Snapp* I think is the most relevant case on this

         2    point, which explained that a state's interest in securing the

         3    observance of the terms under which it participates in the

         4    federal system is one of the kinds of interest that a state has

         5    standing to pursue.  And here the injury, the specific injury in

         6    fact is the invasion of that legally protected interest and

         7    equality.

         8              Now, to answer one of the questions that you raised at

         9    the beginning of the argument this morning is whether or not you

        10    need to make definitive factual findings on the issue of

        11    standing and I think, no, for a couple of reasons.

        12              First, now standing goes to the jurisdiction of this

        13    Court and can be raised at any time.  I think *Lujan* provides the

        14    best summation on this, which is to say that at the Motion to

        15    Dismiss stage, we are looking at whether there are plausible

        16    allegations that give rise to standing.  So, a plausible

        17    allegation of injury in fact, a plausible allegation of injury

        18    on all our bases of standing.  If at the Motion for Summary

        19    Judgment stage it turns out that there might not be standing or

        20    that defendants have an argument that their -- the facts have

        21    changed or that discovery has borne out that there is not

        22    standing on a particular theory, this Court is certainly welcome

        23    to revisit it.

        24              But here that at the Motion to Dismiss stage under

        25    *Lujan* and I'll quote, general factual allegations of injury

1    resulting in defendant's conduct may suffice on the Motion to

2    Dismiss because we presume the general allegations embraced in

3    the specific facts that are necessary to support the claim.

4            THE COURT:  All right.  So as I understand it, what

5    you're asking for is, let me through the gate now, do some

6    discovery and then let's see what happens on summary judgment?

7            MS. ALIKHAN:  So, it's not that you're letting us

8    through the gate.  It's that we have cleared the threshold.  We

9    have alleged --

10           THE COURT:  Well, that's your metaphor.  It still

11   works.  Keeps you in court.

12           MS. ALIKHAN:  But we're not asking for any sort of

13   solicitude to get past a marker that we should not.  We believe

14   that we have allegations, concrete allegations in our Complaint

15   and bolster in the affidavits we have submitted to this Court

16   that show our injury in four distinct interests.  And if this

17   Court believes that those are plausible allegations, then I

18   think that consistent with *Lujan*, we do proceed.

19           If it's a later stage of litigation, the defendants

20   can come back and show that injury is no longer the case or that

21   injury, perhaps, was not there in the first instance, that's a

22   different inquiry, but here I think it's whether there were

23   plausible allegations --

24           THE COURT:  Well, just to take the tax revenues, for

25   example, they're arguing as a matter of law, whatever you show

1    about lost revenues and it would be speculative, they say, at

2    best, it's just not recognizable under the law.  It's not the

3    same thing as *Wyoming versus Oklahoma* where there is specific

4    loss of specific tax revenues.  This is more generalized, they

5    say.  Therefore, why bother, in effect?  Don't go any further.

6         MS. ALIKHAN:  Sure.  And if their reading of *Wyoming*

7    *versus Oklahoma* were correct, that would be a serious question,

8    but I think here -- and we can turn to this now if you would

9    like.

10        THE COURT:  No, if it's not part of your presentation,

11   it's all right.  I'm just understanding each side's argument

12   really at this point.

13        MS. ALIKHAN:  Sure, absolutely.

14        Well, if we could start just on equal sovereignty

15   basis for standing.

16        THE COURT:  Go ahead.

17        MS. ALIKHAN:  And you made us -- made sure that we be

18   very clear between domestic and foreign.  So I will first talk

19   about the Domestic Emoluments Clause.

20        THE COURT:  All right.

21        MS. ALIKHAN:  Now, the injury of the Domestic

22   Emoluments Clause to Maryland and the District of Columbia is

23   the violation of our constitutionally protected interest in

24   equal sovereignty.  And that is our ability to engage with the

25   President or a level playing field without the threat that the

1    President's loyalty will be swayed by its illegal tender and

2    receipt of emoluments.

3           Now, this principle of equal sovereignty on the states

4    is fundamental as the Supreme Court recognized in the *Shelby*

5    case.  There they spoke that the constitutional equality of the

6    states is essential to the harmonious operation of the scheme

7    upon which the republic was organized.  And we know under

8    Domestic Emoluments Clauses that the states were the direct

9    beneficiaries of the entities sought to be protected by the

10   Domestic Emoluments Clause.

11          Federalist 73 makes clear the Domestic Emoluments

12   Clause is a broad prophylactic rule to protect states from, and

13   I quote, the prospect of others tempting the President by

14   largesse to surrender his judgment to their inclinations.

15          THE COURT:  Is that Hamilton?

16          MS. ALIKHAN:  That is Hamilton, yes, in Federalist 73.

17          And it's to prevent the states from corrupting the

18   President's integrity by appealing to his avarice.  That's also

19   Hampton in Federalist 73.

20          So the idea is that each individual state will be on

21   equal footing when they come to the president and federal

22   government when they are talking about grants, when they are

23   seeking permits, when they are doing any kind of interaction

24   with the federal government.  And that they won't have to worry

25   that another state -- an example that we've alleged is Maine --

1    by virtue of tendering emoluments to the president and his

2    acceptance of those will then look particularly favorable on a

3    state because they gave him emoluments and not because of the

4    normal course of participation within the federal system.

5            Now, to answer another one of their questions, Judge,

6    and that is whether or not the suit should be brought in the

7    official or individual capacity.  I agree with my colleague,

8    Mr. Shumate, that these clauses apply to the President because

9    he is president.  And under the Domestic Emoluments Clause

10   specifically, that sets the compensation of the president.

11   Anything that the president receives above and beyond that, I

12   guess one could say is him receiving it as an individual because

13   it's for his personal profit.  But it's by virtue of him holding

14   the office that he's trying to get that profit and by virtue of

15   receiving these emoluments, he's seeking to enlarge his

16   compensation beyond that which is set by Congress.

17           And though I think that suing the President in his

18   official capacity because it is through this official capacity

19   that he is both bound by the clauses and through which he is

20   using the office to --

21           THE COURT:  But you notice that the defense is

22   transforming a suit against the President in his official

23   capacity to a suit against the United States.  That's where I'm

24   stuck.

25           MS. ALIKHAN:  Well, and I think that that's probably

1   in the normal mind run of cases.  A suit against the president

2   is treated as a suit against the government in their official

3   capacity.  When we're sued at the District, when Maryland is

4   sued, when an official is sued, it's treated as a suit against

5   the government as a whole.

6            Here, however, these clauses apply to the President as

7   president.  So I understand your skepticism of why we could

8   treat this as a suit against the United States, rather than a

9   suit against the President.  So I think that probably as a

10  normal development of the law, individual capacity versus

11  official capacity, doesn't really speak to this situation.

12           THE COURT:  Well, but you're not alleging a suit

13  against --

14           I assume you resist any argument that this is a suit

15  against the United States.

16           MS. ALIKHAN:  So I do resist that this is a suit

17  against the United States to the extent that this is not

18  official sanctioned government action.  To the extent the

19  President is violating the Constitution, I think that would be

20  very strange to construe that as a suit against the

21  United States.

22           However, we brought this suit against the President in

23  his official capacity because we do believe it's his status as

24  president that both makes these clauses applicable and that

25  befalls the harms to the states that comes from his acceptance

 1   of emoluments.

 2          THE COURT:  Well, let me ask this question:  What

 3   would be the impropriety of bringing a suit against him

 4   individually and in his official capacity?  You see suits like

 5   that all the time.

 6          MS. ALIKHAN:  If this Court thought that this suit was

 7   more proper against the President in his individual capacity, we

 8   would absolutely seek to amend and could do so easily.  So that

 9   that is a problem, it's one that can be cured.  We do believe,

10   though, because the emoluments clauses only apply to the

11   President upon him taking the oath of office, that it is his

12   official operation and his receipt of emoluments to try and

13   grease -- to try and benefit his own coffers while holding that

14   office makes it more properly a suit in his official capacity.

15   But of course, we could certainly amend to also --

16          THE COURT:  Not sure what the harm is by doing that,

17   but all right.

18          MS. ALIKHAN:  So, going forward with the Domestic

19   Emoluments Clauses, we know that the Domestic Emoluments Clauses

20   protects individual states from the threat of having other

21   states grease the President's palm.  And so that assures that no

22   state will acquire disproportionate influence over the President

23   by virtue of tendering emoluments.

24          And it's a broad prophylactic rule.  It does not

25   prevent a particular quid pro quo.  What it prevents is the

1   President accepting any emolument.  He shall not receive any

2   emolument from the United States or any of them.  And that, as

3   the founders intended, was to safeguard against both actual and

4   perceived corruption, and to give every state within the actual

5   system the solace that when they went to the federal government,

6   they would be doing so on the ground of principles and ideas,

7   rather than wealth and who could provide particular gifts or

8   emoluments to the president.

9         Now, I think that it's worth going through a few

10  examples of domestic emoluments that we believe the President

11  has accepted and that these are borne out in the Complaint and

12  the briefing.

13        First, as my co-counsel discussed this morning, there

14  is the example of Maine which spent $35,000 in state funds on

15  trips to the District where its state officials, including the

16  governor, stayed at the Trump International Hotel and ate at the

17  BLT Prime, the restaurant in the Trump International Hotel.  And

18  it was just after that that Trump announced plans to review a

19  federal regulation that if rolled back would permit commercial

20  logging in Maine's forests.

21        There is also the example of GSA lease --

22        THE COURT:  You're not -- you're saying it doesn't

23  matter whether the President made some agreement regarding

24  logging in Maine afterwards.  The mere fact that Maine stayed

25  there is your problem, isn't it?

1            MS. ALIKHAN:  Yes, the mere acceptance is what's

2    prohibited by the clauses, but I think when you look at what

3    Trump has done in response to receipt of emoluments from Maine,

4    that bears out the precise problem the founders were trying to

5    address.  There's actual corruption and there's also the threat

6    of perceived corruption.  I think that the Maine example does

7    suggest that the President is giving special favors to states

8    that are tendering him emoluments that he's accepting from them.

9            But even if there was nothing, if all we had in the

10   allegations were that states were tendering emoluments and the

11   President was accepting them without any type of quid pro quo,

12   that would still allege a violation of the Domestic Emoluments

13   Clause and that very acceptance of those emoluments would

14   redound to the detriment of the District and Maryland because

15   they would know in their dealings with the federal government

16   and with the President, specifically, their inability or

17   unwillingness to violate the Constitution might put them in an

18   inferior space.

19           THE COURT:  There's been a report in the press that

20   the Secretary of the Interior exempted Florida from the oil

21   offshore drilling as opposed to other states on the east coast.

22   Does that have any relevance to this case?

23           MS. ALIKHAN:  I think it certainly could.  We did not

24   include that in our Complaint or in our briefing because it

25   occurred after the fact.

1              THE COURT:  No, it was just announced recently, but I
2      wondered whether that's something you're arguing as well, that
3      sort of thing.
4              MS. ALIKHAN:  I believe that sort of thing is
5      precisely what the Domestic Emoluments Clause was designed to
6      prevent.
7              Now, we know that President Trump has his Mar-a-Lago
8      estate in Florida, that he spends a lot of time there.  He calls
9      it the Winter Whitehouse.  It's marketed as, essentially, almost
10     an official home away from home.  And that as a result, it may
11     very well be that Florida through giving him, as my colleague
12     discussed this morning, perhaps, abilities to build helipads or
13     to, you know, re-route traffic, but they are giving him benefits
14     that he's only receiving because he is president and perhaps
15     that he is giving them exceptions from offshore drilling in ways
16     that benefit them.
17             But to be sure, all we need to show, I believe, to
18     show violation of the Domestic Emoluments Clause is that he is
19     accepting the emoluments, even without quid pro quo.  But the
20     existence of the quid pro quo; whether it's Maine, whether it's
21     the offshore drilling in Florida gives rise to the direct harm,
22     it puts into sharp relief the precise type of corruption that
23     our founders were trying to prevent in the Domestic Emoluments
24     Clause.
25             Turning to the Foreign Emoluments Clause, the framers

 1    cut the Foreign Emoluments Clause from the same cloth as the

 2    Domestics Emoluments Clause.  The President's receipt of foreign

 3    emoluments denies Maryland and the District of Columbia the

 4    security under -- of the terms under which they participate in

 5    the federal system.  So, the federal --

 6              I'm sorry.  The Foreign Emoluments Clause ensures that

 7    the federal government is responsive to the state and citizens

 8    of the union and not beholding to foreign interests.  So when

 9    there is an acceptance of a foreign emolument, that puts

10    Maryland and the District of Columbia at a disadvantage in

11    believing that the President's loyalty is not to the states, not

12    to the District and not to the citizens of the United States,

13    but instead to someone who patronizes his hotel, someone who

14    allows him to get trademarks he might not otherwise be entitled

15    to.

16              And I think *Massachusetts versus EPA* is the best case

17    to look to for why Maryland and District of Columbia have

18    standing to bring a Foreign Emoluments Clause violation because

19    Maryland especially and District of Columbia at some extent

20    surrendered certain prerogatives and have given up certain

21    rights by joining the federal union.  And by doing so, they

22    wanted the loyalty of their president.  And they wanted to know

23    that their president would not be swayed by those who would

24    patronize his hotel for National Day celebrations or those who

25    would, you know, come to his hotel so they could tell him they

1    liked it and they thought it was great.

2            And so even though these Foreign Emoluments Clause

3    violations might be far afield or far-flung in terms of where

4    they happened, the very acceptance of those emoluments puts

5    Maryland and the District of Columbia at a disadvantage because

6    they then do not have the sole loyalty of their president.

7            And to go over a couple of ways in which the President

8    has indicated that he's willing to receive these emoluments and

9    in some ways he's actually asking for them as outlined in our

10   Complaint, the President has stated that when foreign

11   governments buy things from them, he "likes them very much."

12           He markets the Trump International Hotel to the

13   diplomatic community and, in fact, hired a director of

14   diplomatic sales whose sole job is to try and lure foreign

15   business and therefore foreign monies into the Trump

16   International Hotel and Restaurant.  And diplomats and foreign

17   officials are taking this message seriously.  They've heard it

18   and they are listening.

19           We have a Middle East diplomat who said that all the

20   delegations would go to the Trump International Hotel.  We have

21   an Asian diplomat who said, why wouldn't I stay at his hotel?

22   It would be rude to come into Washington, D.C. and say, oh, I

23   stayed at your competitor.

24           And it's even more than just an intent for the

25   President to solicit these emoluments and accept them.  We have,

```
 1    I think, four -- at least four concrete examples alleged in our
 2    Complaint of the President's acceptance of foreign emoluments.
 3              There's the Saudi Arabia paid over $260,000 to the
 4    Trump International Hotel.  There's that Bahrain held their
 5    National Day celebration at the Trump International Hotel, as
 6    did Kuwait.  And both Bahrain and Kuwait had reserved the Four
 7    Seasons and the Ritz Carlton for their National Day
 8    celebrations, and only transferred them to the Trump
 9    International Hotel afterwards.
10              THE COURT:  After the election?
11              MS. ALIKHAN:  I believe, yes, after the election.
12              And the Georgia ambassador stayed at Trump
13    International Hotel.
14              Now, you raised a question earlier about whether or
15    not Congress is the proper body to rectify violations of Foreign
16    Emoluments Clause.  And my colleague, I think, explained very
17    well why it's not.  I just want to touch on a few other
18    arguments.
19              The President has not presented to Congress any type
20    of emolument, foreign emolument that he's trying to accept in
21    order to get their consent.  So to the extent that Congress has
22    an approval function, it's not working.  And we know this
23    especially because members of Congress have brought suit in the
24    District Court for the District of Columbia alleging that the
25    President has violated the Foreign Emoluments Clause.
```

1          Now, the Justice Department has said that those

2   members of Congress don't have standing, just like they said

3   that Maryland and District of Columbia don't have standing, just

4   like they said that Maryland and District of Columbia don't have

5   standing, just like they said that competitors in New York don't

6   have standing.

7          And so, if it is the case that Congress does not have

8   the ability either because the President has not presented those

9   potential emoluments to the Congress or because Congress doesn't

10  have standing to bring suit to try enforce them, then I think --

11          THE COURT:  Well, they're not really saying Congress,

12  are they?  They're just saying these 200 or so congressmen

13  don't.  Congress as a whole, I think they'd concede, could

14  approve this, whatever that means.  Majority of each house,

15  super majority?  I don't know.

16          MS. ALIKHAN:  So, first the President would have to

17  bring the potential emolument and ask Congress, may I accept

18  this.  And if he does not do so, then Congress cannot say one

19  way or another whether it's acceptable.  And I think this raises

20  a second problem, which is that the prohibition on the receipt

21  of foreign emoluments, just as on domestic emoluments is

22  absolute.

23          One cannot say just because Congress has not expressly

24  vetoed this receipt of emoluments that the question becomes

25  non-justiciable.  Up and until Congress accepting, allowing the

1    President to receive any particular foreign emolument, that

2    receipt of emoluments is barred by the Foreign Emoluments

3    Clause.  And Maryland and the District of Columbia by virtue of

4    their space in the federal system being jeopardized by The

5    president's loyalty to entities beyond our boundaries have

6    standing to bring that suit.

7         Turning to the *parens patriae* theory of standing, the

8    state -- Maryland and the District of Columbia have a

9    quasi-sovereign interest in the health and well-being of their

10   residents.  And *Snapp* and also the *Georgia versus Pennsylvania*

11   *Railroads* case made clear that the health and well-being

12   includes both the physical and economic well-being of its

13   residents.

14        *Georgia* was a case in which *Georgia* as representative

15   was trying to vindicate the economic -- the economy of it's --

16   excuse me.  The economy of its railroad against potential,

17   non-competitive actions of other states and other railroads,

18   because it was effecting the economy that citizens were

19   redounding to their detriment.

20        Now, the injury that we allege under the *parens*

21   *patriae* theory is that of the well-established Doctrine of

22   Competitor Standing.  The injury is to the place in the

23   marketplace that various District of Columbia and Maryland

24   businesses hold which is threatened by this increase in

25   competition that is directly related to the President's

```
 1    acceptance of Domestic and Foreign Emoluments.
 2              Now, Mr. Shumate alleges that we need to have direct
 3    economic losses and we need to show that some sort of direct
 4    economic losses --
 5              THE COURT:  Certainty is the word he used.
 6              MS. ALIKHAN:  Yes, that we need to show certainty.
 7              Now, under the Competitor Standing Doctrine, it relies
 8    on what they call basic economic logic to conclude that a
 9    plaintiff will likely suffer injury in fact when the government
10    acts in a way that increases competition or aids one of the
11    competitors.
12              THE COURT:  All right.  So there you're using the word
13    likely suffer as opposed to certainly suffer.
14              MS. ALIKHAN:  So the injury does need to be certain,
15    but under the Competitive Standing Doctrine, what is certain is
16    the injury to the competitive marketplace.  And it's the
17    President's receipt of emoluments that affects the competitive
18    marketplace.
19              So I think the best cases to look to on this are
20    Sherley v. Sebelius from the D.C. Circuit in which they talk
21    about how you don't need to wait until the illegal transaction
22    hurts to challenge a government decision that increases
23    competition.  So it's the very increase in competition that is
24    happening and that we submit is certain that is injuring
25    economic actors within Maryland and the District of Columbia
```

1    that give rise to Maryland and the District's *parens patriae*

2    ability to bring the suit.

3           I think another good case to look at is the

4    *TrafficSchool.com* case out of the Ninth Circuit which talks

5    about the evidence of direct competition is strong proof that

6    plaintiffs have a stake in the outcome of the suit, so their

7    injury isn't conjectural or hypothetical.

8           The Doctrine of Competitor Standing is on well-trod

9    ground.  The Supreme Court has addressed it in trio of cases.

10   Various courts of appeals across the country have held that it

11   applies and that it's the threat to competition, not the

12   ultimate loss that could result from that that gives rise to the

13   injury and, therefore, clears the standing hurdle.  And here,

14   the unrebutted evidence is that there is direct competition.

15          Now, President Trump's actions have affected a

16   significant sector of plaintiffs' economies.  And I would refer

17   you to the Roginsky and the Muller declarations which I think

18   bear this out quite clearly.

19          There are 32 locally owned restaurants that compete --

20   I'm sorry, in the District that compete with the Trump

21   International Hotel.  There are 24 locally owned restaurants

22   that compete with the Trump International Hotel for event space.

23   There are 15 restaurants in Maryland that compete with the Trump

24   International Hotel Restaurant and another 10 that compete with

25   the Trump International Hotel generally for meeting space.

```
1              Maryland and the District of Columbia have a huge
2    hospitality sector and any time business is being drawn out of
3    those businesses by virtue of the President's acceptance of
4    emoluments, that is skewing the competitive marketplace and it
5    is putting these individual business owners on unequal footing.
6              THE COURT:  Now, are we talking about both emoluments
7    clauses at this point?
8              MS. ALIKHAN:  Yes, we are.  And that is because it's
9    both local and foreign business that is being diverted away from
10   Maryland and District owned -- I'm sorry, Maryland and District
11   entities.
12             And so, for some examples of this, obviously the Maine
13   government example of funneling their money to the Trump
14   International Hotel would be an example of the Domestic
15   Emoluments Clause violation.  But for examples of Foreign
16   Emoluments Clause violations, we have that Bahrain moved its
17   National Day celebration from the Four Seasons to Trump
18   International Hotel and Kuwait moved its National Day
19   celebration from the Ritz to the Trump International Hotel.
20             So, we have alleged both Domestic and Foreign
21   Emoluments Clause violations that are affecting the residents
22   and the economic well-being of the residents of Maryland and the
23   District of Columbia.
24             In thinking about whether or not one can bring a
25   parens patriae suit of this nature against the President,
```

1    Mr. Shumate refers to the *Mellon* case which says that generally

2    a state can't bring a *parens patriae* action against the federal

3    government, but I think that that overreads the *Mellon* case.  So

4    *Mellon* itself says, it's not going so far as to state that a

5    state may never intervene by suit to protect its citizens from

6    unconstitutional acts by the federal government.

7          And as *Maryland versus EPA* sets forth, quasi-sovereign

8    rights when they are invaded or threatened do give rise to a

9    state's ability to bring suit against the federal government.

10    What *Mellon* does is, I think, creates a narrow exception that a

11    state may not in a *parens patriae* capacity bring suit to protect

12    its residents against the effect or operation of a federal law,

13    and that's not what's happening here.

14          What we're trying to do is vindicate two federal laws

15    in our Constitution that allow us to be protected from these

16    insidious violations of the Foreign and Domestic Emoluments

17    Clauses.  And so, I think that falls squarely outside of the

18    limited *Mellon* exception, as *Maryland versus EPA* recognizes and

19    I think as *Mellon* itself also recognizes.

20          THE COURT:  Well, here, are you arguing that it's the

21    federal government that you have to respond to or Donald J.

22    Trump, individually?

23          MS. ALIKHAN:  Well, I understand the defendant's

24    indication of *Mellon* is to say whether it's against the

25    President specifically or the federal government, states can't

1    bring that action in a *parens patriae* capacity against a federal

2    entity, whether it's the President or whether it's the federal

3    government as a whole.

4          I mean, I think that whether we're looking at just

5    Donald J. Trump or whether we're looking at the federal

6    government in this, sort of, official capacity inasmuch as the

7    suit is against him in an official capacity, that either way the

8    *Mellon* limitation does not control the suit and does not prevent

9    Maryland and the District bringing a *parens patriae* suit in

10   order to have the President comply with these emoluments

11   clauses.

12         Now, the Maryland tax argument in a diminution to the

13   Maryland tax case, I think, follows closely on the *parens*

14   *patriae* theory of standing, because both are losses that

15   Maryland or Maryland entities are facing by a skewed market for

16   competition.  So I think that it's basic economic logic that if

17   the marketplace is going to be affected by the President's

18   receipt of emoluments such that Maryland businesses are not

19   going to be able to compete on equal footing with the Trump

20   International Hotel and the BLT Prime Restaurant in the hotel,

21   that Maryland will suffer injuries to its tax base.

22         Now, under *Wyoming versus Oklahoma*, there needs to be

23   a direct injury in the form of loss of specific tax revenue.  We

24   have pointed in our Complaint to two particular specific types

25   of tax revenue.  It's an injury to our hotel and our restaurant

60

```
 1    taxes.  And this is at Complaint 116 through 118.
 2              We don't need to show an actual loss of tax revenues
 3    at this stage.  And I think in suggesting otherwise, defendants
 4    misread the Wyoming case.  Wyoming was a case that was at
 5    summary judgment at which there were expert declarations and
 6    affidavits that went through what the tax losses looked like
 7    quarter by quarter as a result of the law they were trying to
 8    challenge.
 9              Here we're not at summary judgment.  We're at the
10    Motion to Dismiss stage and this case is relatively new at
11    inception.  And so, if at the summary judgment stage we cannot
12    tender those affidavits, we'll have a very different
13    conversation, but here what we have alleged and plausibly is
14    that under the Competitor Standing Doctrine, the market is being
15    skewed to the detriment of Maryland businesses.  And because
16    Maryland receives taxes by virtue of Maryland law from those
17    businesses, there's a very plausible allegation that Maryland
18    taxes are going to be diminished by virtue of the President's
19    acceptance of emoluments.  That I think is all that is
20    necessary at the Motion to Dismiss stage.
21              Now, the unrebutted evidence, I want to come back to
22    this a bit, shows that there's a competitive marketplace.
23    Roginsky and the Muller declarations go through various entities
24    in Maryland that compete directly with the Trump International
25    Hotel and the BLT Prime Restaurant.  And defendant's have never
```

```
1    challenged that.  This is unrebutted testimony at this point.

2              And so, if we take the unrebutted testimony that there

3    are several businesses in Maryland that compete, combine that

4    with the well-trod Competitor Standing Doctrine which shows that

5    that harm in competition is sufficient for standing and then tie

6    that harm and competition to the diminution in the Maryland tax

7    revenues, I believe we clear the injury in fact hurdle for

8    standing on the Maryland tax claim.

9              Now, I could go on if the Judge has other questions,

10   but I also know we have a lot of other things on our agenda

11   today, so unless you have questions on these --

12             THE COURT:  Well, let me -- I can put it to you as

13   well as to anybody this question.  So the question is, how far

14   around the globe, around the country do you go with Trump

15   enterprises in this lawsuit?  Allow for a moment that Trump

16   International Hotel is close enough by -- it's in the District

17   of Columbia and it's close to Maryland, and there may be some

18   viable argument there, but -- and I think I understood you to

19   say that in other states, such as Florida or whatever, that also

20   is something that you can probe into.

21             Can you go all over the country?  Is that what you're

22   talking about?  Are there certain aspects that you're -- when

23   you talk about injury in fact, lost tax revenues, sovereign

24   interest, how do they apply to all -- the far-flung enterprise?

25             MS. ALIKHAN:  Sure.  So I think there are two
```

1  different pieces to your question.  The first is whether

2  Maryland and the District of Columbia suffer an injury based on

3  particular violations of the Foreign and Domestic Emoluments

4  Clauses.  And secondly, whether any action of this Court could

5  redress that injury.

6          Speaking to just the injury question, which is what I

7  understand we're discussing this morning is that any time the

8  President of the United States accepts an emolument from a state

9  or local official or from a foreign government, Maryland and the

10 District of Columbia are injured in their sovereign capacity.

11         They are injured under the Domestic Emoluments Clause

12 because their equal footing among their sister states is

13 threatened when other states are allowed to tender and the

14 President is allowed to accept emoluments.  And their position

15 within the federal system, the United States vis-a-vis foreign

16 governments is threatened when the President is accepting

17 emoluments from foreign governments and, therefore, showing that

18 his loyalty might not be undividedly to the United States, but

19 could be sold to other foreign governments by virtue of these

20 emoluments.

21         So the injury to the sovereign interest has no

22 boundaries.  Whether or not it's redressable, I think is

23 separate question.  For the competitor standing, the Maryland

24 tax, the *parens patriae*, I think that is by and large centered

25 around the Trump International Hotel and the BLT --

1          THE COURT:  And mostly your brief talks about that.

2          MS. ALIKHAN:  Right.  And that is because we would not

3   allege that Maryland businesses and District of Columbia

4   residents are being affected by virtue of someone going to the

5   Trump Hotel Restaurant in New York.  The question is whether or

6   not an individual in the District of Columbia trying to figure

7   out where to stay, where to eat will choose a Maryland or

8   District of Columbia property other than the Trump Hotel or

9   whether because they can curry favor with the President by going

10  to the Trump Hotel that they will make that decision.

11         So for the sovereign theory, yes, there is no

12  boundary.  It's any acceptance of Foreign and Domestic

13  Emoluments.  For *parens patriae*, for the Maryland tax, I think

14  it is more circumscribed and it's to the President's receipt of

15  emoluments that affects Maryland and District businesses and

16  residents.

17         THE COURT:  You don't have to answer this definitively

18  and we'll get to the redressability issue down the road, but is

19  it your sense then that you would want to preclude the President

20  from receiving any benefit when a state of the United States or

21  subdivision stays at one of his hotels?

22         MS. ALIKHAN:  So I think it's a complicated question

23  and actually goes beyond to the sustaining analysis as to how

24  you define an emoluments or a present.

25         THE COURT:  Well, assume for a moment that emolument

1    means gain or benefit or advantage.  I meant which is -- your

2    argument is penned on that, I know, but let's assume that for

3    present purposes.  I'm not into that today, I'm just trying to

4    understand where you're going.

5              MS. ALIKHAN:  Then, yes, assuming that that is an

6    emolument, a state government or foreign government if they

7    tried to stay at the Trump Hotel --

8              THE COURT:  A Trump hotel?

9              MS. ALIKHAN:  No, no, no.  The Trump Hotel in the

10   District of Columbia if we're talking about the *parens patriae*

11   and the Maryland tax standing.

12             THE COURT:  The sovereignty argument.

13             MS. ALIKHAN:  Now, the sovereignty argument is that

14   any time, yes, a state of federal government -- state or foreign

15   government is tendering and the president is accepting

16   emoluments, they are harmed.

17             However, I think this does get us to more interesting

18   questions about traceability or redressability as to what this

19   Court could do to try and mete the violation to Maryland and the

20   District's harm to their sovereignty.

21             THE COURT:  Well, do I -- would I not have to make a

22   finding?  You don't have to give me a definitive answer, because

23   I know you've got somebody arguing traceability, but would I not

24   with regard to each of the theories that you put forth of

25   standing have to show redressability, reasonable redressability?

1    Is it enough to say, declaratory relief injunction without any

2    sense of what the contours of that might be.

3          MS. ALIKHAN:  No, for each theory of standing, you

4    would need to find injury in fact, traceability and

5    redressability.  However, declaratory relief may redress many of

6    the violations that Maryland and District of Columbia are

7    facing.

8          If we're talking specifically about sovereignty, which

9    we do agree has a wider purview, a declaration to stop receiving

10   emoluments, a declaration to comply with these constitutional

11   provisions may have a very good effect of remedying the harm to

12   Maryland and District of Columbia sovereignty.

13         I don't want to tread too far into the traceability

14   and redressability, because I wouldn't want to step on the toes

15   of my Maryland co-counsel.

16         THE COURT:  All right.

17         MS. ALIKHAN:  So if there are not further questions on

18   the injury in fact --

19         THE COURT:  Okay.  I think we allocated more time to

20   you to argue this, though it's probably a good time to take

21   about a seven or eight minutes break and then we'll hear from

22   you when we come back.  So we'll be in recess for about seven or

23   eight minutes.

24     (Brief recess.)

25         THE COURT:  Be seated, ladies and gentlemen.

```
 1                 All right, Mr. Shumate.

 2                 MR. SHUMATE:  Thank you, Your Honor.

 3                 During the last segment, I think we heard a lot about

 4       the improper things that the President is doing, but what we

 5       didn't hear a lot about is how what the President is doing is

 6       actually affecting these jurisdictions in a concrete

 7       particularized manner.  I think --

 8                 I want to go back to the standard that the Court has

 9       to apply in establishing whether these plaintiffs have standing.

10       It's not a plausibility standard.  It's not a certainty

11       standard.  The standard that they need to prove is whether they

12       have asserted an injury that is certainly impending.

13                 If I may, I'd like to read briefly from the Clapper

14       which I think establishes the standard quite clearly.  In the

15       Clapper case from 2013, the Court says, quote --

16                 THE COURT:  All right.  Keep it slow so the reporter

17       can stay with you.

18                 MR. SHUMATE:  Sure.

19                 Although imminence is concededly a somewhat elastic

20       concept, it cannot be stretched beyond its purpose, which is to

21       ensure that the alleged injury is not too speculative for

22       Article 3 purposes; that the injury is certainly impended.

23       Thus, we have repeatedly reiterated that threatened must be

24       certainly impending to constitute injury in fact and that

25       allegations of possible future injury are not sufficient.
```

1        So, I heard a lot about, you know, possible theories

2   about how this might impact the states in a theoretical way or a

3   possible way.  That's not enough.  They have to show it's

4   certain impending.

5        Now, in this segment we're talking about sovereign

6   injuries and quasi-sovereign injuries.  And the way I read the

7   Complaint, they have four distinct theories.  Before I talk

8   about each of those distinct theories, I'd like to take a step

9   back just for a moment and talk about each of these two buckets.

10  What is a quasi injury and what is a quasi-sovereign injury?  As

11  to sovereign interest, the Supreme Court has only recognized

12  very limited circumstances in which a state can claim a

13  sovereign injury.

14       First, exercise of sovereign power over individuals

15  within the jurisdiction.  For example, creating and enforcing a

16  legal code.  Second, demand for recognition from other

17  sovereigns.  Protecting a states borders, for example.  And

18  third, in very narrow circumstances, a state's loss of specific

19  types revenues may constitute a sovereign injury.

20       I'll explain in a moment why we don't think they have

21  asserted any cognizable sovereign injuries.  I think it's

22  important to remember which bucket their theory fits in.  As for

23  alleged injuries to their quasi-sovereign interest, this is

24  often referred to as *parens patriae* standing, where a state is

25  stepping into the shoes of someone else to protect them.  But

1    it's settled law that a state cannot bring a *parens patriae*

2    lawsuit against the United States.  And even assuming these

3    plaintiffs could bring such a claim here, I'll explain in this

4    hour why they haven't properly established even quasi-sovereign

5    injuries because they are really just nominal plaintiffs here.

6            Another thing to keep in mind is that D.C. cannot

7    assert any sovereign injuries.  Maryland can, they are a state,

8    but D.C. cannot and I think that's undisputed.

9            THE COURT:  Well now, has there been cases recognizing

10   Puerto Rico and so on as jurisdictions that effectively function

11   that sovereigns?

12           MR. SHUMATE:  That was a quasi-sovereign interest

13   case.  We don't dispute that D.C. can assert a quasi-sovereign

14   injury in an appropriate case, but it's undisputed that D.C.

15   cannot assert a sovereign injury.  And the reason why this

16   distinction matters is because if they are asserting a

17   quasi-sovereign injury, then that is a claim they cannot bring

18   against the United States.

19           So they try to mush a lot of things into the sovereign

20   injury bucket to try to get around that bar and I think it's

21   important to keep the buckets in mind.  So, let's turn to each

22   of the four theories.

23           Now, the first theory they have in the Complaint at

24   paragraphs 104 to 106 is this theory of sovereign harm to

25   Maryland because the emoluments clauses induced them to join the

1    union and now they are somehow harmed because the President is

2    allegedly not complying with those clauses.

3         Now, we view this as nothing more than an abstract

4    political disagreement with the United States.  And there are

5    two cases I'll point the Court to.  First, *Massachusetts versus*

6    *Mellon*, Supreme Court case from the 1920s and *Virginia versus*

7    *Sebelius*, Fourth Circuit case from 2012.

8         Now, *Massachusetts versus Mellon* is a case where a

9    state brought a challenge to a federal statute, the Maternity

10   Act and their claims are very similar to what is being claimed

11   here.  They were claiming a sovereign injury, that the federal

12   government was usurping state power and that this was treating

13   the state unequally vis-a-vis other states and it put them in an

14   impossible position of having to surrender their sovereignty to

15   the federal government.

16        And what the court said in that case is that the

17   dispute had a political and not a judicial character, and that

18   it is not a matter which admits of the exercise of judicial

19   discretion.

20        Next, we turn to the *Virginia versus Sebelius* case,

21   which again is a case in which Virginia brought a constitutional

22   challenge to the Affordable Care Act.  And what the court said

23   in that case I think is interesting and it's the lens with which

24   we suggest the Court looks at this case, is that the state had a

25   number of sovereign injury theories.  They had passed the

70

1    statute that allegedly conflicted with the federal statute, but

2    the court in that case said, this is smoke screen for a *parens*

3    *patriae* lawsuit against the United States, which the

4    Commonwealth of Virginia could not bring.

5           And that is exactly what we have here.  We have the

6    abstract political dispute between State of Maryland and the

7    federal government about whether the President is complying with

8    the Constitution's emoluments clauses.  They haven't pointed to

9    anything concrete, any concrete loss of sovereignty or anything

10   like that that would give rise to a cognizable sovereign injury.

11          Now, you could easily imagine the Commonwealth of

12   Virginia in that Virginia case characterizing their claim of

13   injury exactly how Maryland has here that, oh, we wouldn't have

14   joined the union had we known that the President would violate

15   the emoluments clause in this way.  Well, maybe Virginia could

16   have argued, well, we wouldn't have joined the union had we

17   known that the commerce clause or the taxing power would have

18   allowed the federal government to engage in that activity.

19          But what the Court said is, I think, apt here is that

20   the states aren't roving constitutional watchdogs.  They can't

21   go around just challenging things that the federal government

22   does simply because they have a political dispute with the

23   federal government.  We have to wait for an appropriate case in

24   which there is a concrete harm to a state's sovereign injury.

25          So that is the first theory of sovereign harm.  They

1    didn't talk much about that one this morning.  They talked more

2    about their intolerable dilemma theory, which is the second

3    sovereign injury that I read the Complaint at paragraphs 107 to

4    112.

5           This is the theory that the President is improperly

6    creating a black market for competition with -- to infer

7    emoluments on him and that it -- this puts the State of Maryland

8    at a disadvantage vis-a-vis other states.

9           Well, the Supreme Court has rejected similar dilemma

10   theories that states have brought in the past.  Two cases I'll

11   point the Court to, *Massachusetts versus Mellon* again and

12   *Florida versus Mellon*.  *Massachusetts versus Mellon*, this is the

13   case where the state challenged the Maternity Act.  And the

14   state said, this federal statute puts us in a impossible

15   position.  We are feeling pressured to surrender our sovereign

16   power to the federal government or else we'll lose federal

17   appropriations.  The Supreme Court said, that is not enough.

18   That is not a concrete injury to your sovereign power.

19          The *Florida versus Mellon* case is another on point

20   case.  This is a case where Florida challenged the Federal

21   Inheritance Tax.  And Florida claimed that this was impacting

22   their property tax revenues and treated Florida unequally versus

23   other states because they were impacted more harshly by that

24   inheritance tax than other states, but the Supreme Court said,

25   there was no standing in that case to bring such a claim against

```
 1    the federal government.
 2            Now, even assuming they could assert such a claim
 3    here, we think the factual allegations are far too speculative,
 4    that the states are being placed in this intolerable dilemma for
 5    number of reasons.  First, it's entirely speculative that the
 6    President's businesses were seeking any concessions from D.C. or
 7    Maryland, which is one of the obligations in the Complaint, that
 8    they feel pressured to grant these concessions to the Trump
 9    International Hotel.
10            Well, that property is only in D.C.  It's on federal
11    property and there is no allegation that the President's
12    business, the Trump Organization has sought any waiver or
13    anything like that from the D.C. Government.  And it's entirely
14    speculative --
15            THE COURT:  There was a reduction in the property tax,
16    wasn't there, a million dollars reduction?
17            MR. SHUMATE:  There was, Your Honor.  There was
18    actually a Washington Post article about that earlier this month
19    and the assessment on the Trump International Hotel was reduced,
20    but there were quotes from the D.C. Government in that article
21    that said, this is a fair assessment.
22            THE COURT:  Well, do I have to take that at face
23    value?  This is a Motion to Dismiss.  They're saying that it's
24    somehow improper.  You're saying, well, because this agent of
25    the government said, it's okay, it's okay as a matter of law.
```

73

1    Is that true?

2         MR. SHUMATE:  Well, this is a concession by the D.C.

3    government itself that the President got a fair shake.  It's an

4    accurate, fair assessment of the property.  There's no

5    allegation that that was done improperly.  There may be a

6    suggestion, but that's just pure speculation.

7         THE COURT:  Well, I'm not sure.  I mean, the question

8    is -- there is the suggestion that D.C. government, if not

9    specifically, among other states was forced to give concessions.

10   And here is an example where they are presumably going to say,

11   well, this reduction in the property tax assessment is such a

12   concession.  And they may have an official come in and say, no,

13   it's not.  Well, this is a Motion to Dismiss.  Wouldn't that

14   depend on proof?

15        MR. SHUMATE:  I don't think so, Your Honor.  I think

16   it is pure speculation whether that was improper or not.

17   There's no allegation that it was improper.

18        THE COURT:  Well, they may end up amending their

19   Complaint before we're through, but this is Motion to Dismiss

20   now.  You want it to go out as a matter of law lock, stock and

21   barrell.  I'm not sure we're there.  We'll see.

22        Anyway, go ahead.

23        MR. SHUMATE:  Well, the other -- I think, at least two

24   other links in the speculative chain here, not just that they

25   feel compelled to grant concessions to the President's

1    businesses, but that other businesses -- excuse me, other states

2    will grant concessions and waivers to the President's

3    businesses.  There are no allegations in the Complaint about

4    that.

5           Now -- excuse me.  Now, we talked a little bit about

6    Maine staying at the Trump International Hotel.  Well, how does

7    that in any way injure Maryland or D.C.?  There's no allegation

8    that Maine was thinking about staying at the Bethesda Marriott

9    or the D.C. Armory.  It's just purely speculative whether there

10   was any injury to them at all.

11          And I think to the extent there were a claim that

12   granting drilling rights to Florida or the logging rights in

13   Maine were -- somehow injured these plaintiffs, there may well

14   be a remedy to challenge that action under the APA.

15          The Department of Interior does something that

16   violates its governing statute or acts arbitrary and

17   capriciously, they could theoretically bring a claim challenging

18   that action.  But they haven't because nothing that the

19   President or the government has done has injured them in any

20   way.

21          It is entirely speculative whether also that the

22   President or the entire federal government would take any action

23   to retaliate against Maryland or D.C. for not granting

24   emoluments on the President.  I mean, they are asking the Court

25   to infer bad faith not only on behalf of the president, but on

1    behalf of the entire federal government, but it is a

2    well-established principle that courts presume that government

3    actors act in good faith.  And they're asking the Court to throw

4    that out the window and speculate about emoluments being

5    conferred and retaliation and improper behavior by their own

6    government.  I think that's the -- that is their second theory

7    of sovereign harm.

8         Their third theory of sovereign injury is the tax

9    revenues, which we talked a little bit about.  And Maryland is

10   the only jurisdiction that is claiming this as an injury.  Now,

11   their theory is that Maryland is losing tax revenue because of

12   competitive injury to the National Harbor businesses, because

13   that business' revenue is going down.

14        THE COURT:  Montgomery County Center, I think, is also

15   included, isn't it?  Montgomery County Convention Center or

16   whatever it's called would be losing -- it's a Marriott Hotel,

17   if I'm not mistaken.  It's also an event location.  Either

18   they -- I think they submit that they have a proprietary

19   interest in the land or the site, that they lease the hotel.

20   I'm not sure I have all the specifics clear, but they're saying

21   that they lose out specifically.  So it's not just MGM Harbor

22   Place, it's Montgomery County.

23        MR. SHUMATE:  Right.  I understand the concern about

24   the Bethesda Marriott Convention Center to be one of their

25   proprietary interests claims, which we'll get to this afternoon.

1          THE COURT:  Okay.

2          MR. SHUMATE:  But in paragraphs 116 to 118, I think

3     they're focusing on National Harbor because they don't have a

4     proprietary interest in any of those properties.

5          THE COURT:  Well, could they not make the same -- I

6     mean, is it somehow Montgomery County only confined to the

7     proprietary interest argument or would it be part of the

8     sovereignty argument as well?

9          MR. SHUMATE:  Well, I think it's the same underlying

10    theory of competitive injury, but layered on top of that the

11    burden of getting through the Supreme Court's case law on loss

12    of tax revenue.  And we don't think they can get through that

13    case law, in particular *Florida versus Mellon*, case I talked

14    about earlier in which Florida was challenging the federal

15    inheritance tax based on a claimed reduction in property taxes,

16    specific bucket of taxes that they claimed was being reduced

17    because of the federal law.  And the Supreme Court said, no, a

18    general impairment of tax revenue is not sufficient to establish

19    an Article 3 injury, because it's speculative, it's remote and

20    it's indirect.

21          And that's exactly what we have here.  We don't have

22    any specific allegation of tax revenues being reduced.  And I

23    think there's a clear contrast between this case and the *Wyoming*

24    *versus Oklahoma* case, which we heard referred to earlier.  That

25    was a past tax injury case where the State of Wyoming could

1    point to three years of tax reduction in specific amounts of

2    hundreds of thousands of dollars in lost tax revenue as a result

3    of the Oklahoma law that required Oklahoma utilities to use

4    10 percent Oklahoma mined coal, which had a measurable impact on

5    eight mining companies in Wyoming, which then reduced by a

6    measurable amount the severance taxes that Wyoming could

7    collect.  And that was past tax revenue.  It was concrete, it

8    was specific and it was particularized.

9            You have nothing like that here.  You have a general

10   impairment of tax revenue.  And, again, they're asking the Court

11   to speculate about that rather than point to anything concrete

12   or specific.

13           Now, moving on from the Court's case law to the

14   specific allegations here, we think it's entirely speculative

15   about whether there would be a reduction in tax revenue.  I'll

16   get more into this this afternoon when we talk about the

17   Competitive Standing Doctrine, but here just a couple of points

18   about why any claim of lost tax revenues is inherently

19   speculative due to competition with the Trump International

20   Hotel.

21           First, it's speculative whether the Trump

22   International Hotel actually competes with the businesses in

23   National Harbor.  Now, they have declarations that allege that

24   they do compete.  Well, under that theory, there are many other

25   businesses in the entire D.C. Metro area that compete with the

78

1   Trump International Hotel, but these properties are 11 miles

2   away, they serve a very different clientele.  And just because

3   the properties allegedly compete wouldn't be enough under the

4   Competitive Standing Doctrine to get the Court where it needs to

5   go to, which is to conclude that there is a certainly impending

6   loss of business to the National Harbor property.

7       THE COURT:  Well, wouldn't the standard be, do they

8   plausibly compete?  I mean, obviously, there's some situations

9   where it's so attenuated, you couldn't say that they plausibly

10  compete.  It's a matter of degree, really.  And the question

11  would be whether they plausibly compete to get through a Motion

12  to Dismiss, which is the standard, not do they absolutely do it.

13      For me to grant your motion at this stage, I'd have to

14  say it's implausible as a matter of law and I would dismiss with

15  prejudice on that point.  That's why I made a point of saying,

16  we're at a Motion to Dismiss phase, we're not at summary

17  judgment.  So deal with that.  Is it fair to say at this point,

18  it's implausible as matter of law what they propose through

19  their experts, what they cite?

20      MR. SHUMATE:  It is implausible based on the

21  allegations in the declarations that these businesses are

22  suffering certainly impending loss of business.

23      Now, I think we need to be clear here.  On a 12(b)6

24  Motion to Dismiss where we're arguing the plaintiffs haven't

25  stated a claim, which we're not really talking about today, the

1    test is whether the allegations plausibly state a claim on the

2    merits.  We're not going be talking about the merits today.

3    We're talking about standing and on a 12(b)1, they have to show

4    that the injury is imminent.  And I would point the Court back

5    to the *Clapper* standard, that that injury must be imminent and

6    to be imminent must be certainly impending.

7            So, the Court certainly can credit the factual

8    allegations in the Complaint that it finds plausible for

9    purposes of our 12(b)1 Motion to Dismiss, but for the purposes

10   of the ultimate question of whether they asserted an injury that

11   is imminent, that injury must be certainly impending because

12   they can't point to past harm.  They can't point to any tax

13   revenue that they've lost in prior years.

14           THE COURT:  Are you just arguing in the context of

15   lost revenue now or more genericlly?

16           MR. SHUMATE:  I was arguing more generally about that

17   because all of these theories are threat to future harm because

18   they can't point to any past harm.

19           The second point beyond direct competition between

20   Trump International Hotel and National Harbor is that it's

21   entirely speculative whether the National Harbor businesses have

22   actually lost revenue since January 20th of 2017.  We just don't

23   know.  It's entirely speculative because they haven't alleged

24   any specific loss of business.

25           We don't know how the business is doing at the

1   Gaylord.  It could be booming.  We just don't know.  It's

2   entirely speculative and they haven't pointed to any lost

3   business between Maryland and D.C.  They point to the Ritz and

4   the Four Seasons, but those aren't in Maryland.

5          You don't have single allegation that the Gaylord had

6   a customer that said, you know what, since the election we're

7   going to stay at the President's hotel because we want to confer

8   emoluments on him.  Nothing like that in the Complaint.

9          It's also entirely speculative about whether the

10  National Harbor faces an increase in competition from the Trump

11  International Hotel.  We'll talk more about that this afternoon,

12  because it's just entirely speculative.

13         And then, finally, it's speculative whether their

14  taxes have gone up or down, and we're only talking about

15  Maryland.  We don't know what there tax revenue has done,

16  whether it's gone up or down because there's no allegation in

17  the Complaint about that.  So those are the three sovereign

18  injuries that they have alleged.

19         Let me turn to the theory of quasi-sovereign injury

20  that I understand both plaintiffs are claiming.  Now, this at

21  paragraphs 113 to 115 of the Complaint.  Their theory is a

22  broad one, that they have a quasi-sovereign interest in

23  protecting and preventing injury to their residents, and they

24  focus on economic harm.

25         Now, to go back to my point, it is well-established

1    that a state cannot bring a *parens patriae* lawsuit against the

2    federal government.  And when we talk about quasi-sovereign

3    interest, we're talking about a *parens patriae* lawsuit.

4         I can point the Court to four cases that clearly say

5    in black letter law that a state like Maryland cannot bring such

6    a claim against the United States.  *Massachusetts versus Mellon*,

7    the Court said that the state couldn't challenge the Maternity

8    Act on behalf of its citizens.  It said, it's no part of a

9    state's duty to enforce citizens' rights in relation to the

10   federal government because the United States represents the

11   citizens as *parens patriae*.

12        And then in 1992, in the *Alfred Snapp* case, a case

13   which was against private parties, not the federal government.

14   But in a footnote, Footnote 16, the Court said this would have

15   been a different case had the claims been brought against the

16   United States.  It said, quote, a state does not have standing

17   as *parens patriae* to bring an action against the federal

18   government.  This is not a principle that's foreign to the

19   Fourth Circuit.

20        In that Virginia case, the Court recognized the

21   prohibition against states suing the United States on behalf of

22   their citizens citing *Massachusetts versus Mellon*.

23        The *Hodges* case, another Fourth Circuit case from

24   2012, the Court said, Supreme Court has clearly established the

25   parens patriae actions cannot be maintained against the federal

1    government, citing *Massachusetts versus Mellon*.

2         Now, even if these jurisdictions could get around that

3    overwhelming precedent and bring a *parens patriae* action against

4    the federal government, they haven't brought a judicially

5    cognizable quasi-sovereign claim here because the jurisdictions

6    are nothing more than nominal partners.

7         The *Snapp* case is quite clear that the -- to bring a

8    *parens patriae* suit, the state can't be a nominal party and it's

9    nominal party only when the injury affects an identifiable group

10   within the jurisdiction.

11        THE COURT:  Well, what about the hospitality industry?

12        MR. SHUMATE:  Well, they're not seeking -- they're

13   really seeking to vindicate the interest of the National Harbor.

14   That is an identifiable group of businesses; the MGM Casino, the

15   Gaylord Hotel, that's all.  They're not seeking to vindicate the

16   interest of all the citizens in Maryland.

17        THE COURT:  Well, again, the Convention Center in

18   Montgomery County, I think, is also included, is it not?  And

19   then they are saying, presumably, everybody who is pertinent to

20   those businesses.  I'm not sure how many employees you're

21   talking about.  I mean, I don't know that the number matters too

22   much.  Can't be a very narrow slice, but doesn't have to be

23   enormous.

24        MR. SHUMATE:  Well, I think another way to look at

25   this is could those businesses bring their own claim against the

1    President?  Although we don't think they have standing, they

2    could have a cognizable claim, but they're seeking just to stand

3    in the shoes of the Bethesda Marriott Convention Center and the

4    National Harbor.  That makes them nominal parties.  They don't

5    need to bring this lawsuit because those plaintiffs might be

6    able to bring a claim and bring the same claim against the

7    President.

8            Now, what they are seeking to do is just vindicate the

9    interest of the citizens of Maryland, which are no different

10   than the citizens of really every other state.  I think you

11   heard earlier, there really is no boundary or limit to the harm

12   that they are pointing to.  They claim harm from the activities

13   down in Mar-a-Lago.  That really makes no sense.  There really

14   clearly is no limiting principle to their theory of standing.

15           Now, they rely on the *Massachusetts versus EPA* case to

16   support their *parens patriae* claim of standing, but that case is

17   far afield from this case.  That was a case were the EPA denied

18   Massachusetts' Petition for Rulemaking to regulate greenhouse

19   gases.  And what the Supreme Court said was that Massachusetts

20   had standing for two very important reasons that are distinct

21   from this case.

22           Number one, the state had a procedural right to bring

23   that lawsuit.  Congress had created a claim under the Clean Air

24   Act to bring a claim against the federal government or an agency

25   when failed to take action that is unreasonably delayed or

1   unreasonably denied.  And that was the procedural claim brought

2   by Massachusetts in that case and the Supreme Court said, that

3   was essential to the standing analysis.

4        You don't have anything like that here.  Congress has

5   not created a procedural right to enforce the emoluments

6   clauses.  And second, what the Supreme Court said was that the

7   quasi-sovereign interest that Massachusetts was seeking to

8   vindicate in that case was concrete.  It wasn't vague and

9   conclusory.  It was particularized to Massachusetts because they

10  were seeking to vindicate or protect the interest of their

11  coastal property.  So in essence, they were seeking to protect

12  their own boundaries and ensure that the inaction by the federal

13  government wasn't eroding the coastline of Massachusetts.

14       There is nothing like that here.  What we have here is

15  an abstract political disagreement about the President's conduct

16  without any concrete impact on the state.

17       They also rely on the *Alfred Snapp* case to support

18  their quasi-sovereign injury claims.  Again, this is a case that

19  was brought by Puerto Rico against private employers in

20  Virginia.  It was a claim against private employers, not the

21  federal government.  And in that footnote, Supreme Court said,

22  had this been against the federal government, the bar on *parens*

23  *patriae* actions against the federal government would apply.

24       The allegation of injury in that case is also far

25  afield from this case.  The injury that Puerto Rico was seeking

85

1    to vindicate was invidious ethnic discrimination against Puerto

2    Ricans which, of course, it had impacted all citizens of Puerto

3    Rico.  Nothing like that here.

4         THE COURT:  You don't need all citizens, do you?  You

5    don't need -- the quasi-sovereign argument doesn't have to

6    extend to every citizen in the state.  It's a sizeable

7    population can be affected.

8         MR. SHUMATE:  Well, I think what the court said in

9    *Alfred Snapp* is that it can't be an identifiable group of

10   individuals and that you have to consider the indirect effects

11   of the government's actions on the citizen.

12        So, in that case the Court said, these deliberate

13   efforts to stigmatize Puerto Rico's labor forces inferior carry

14   the universal sting.  So I think they said, impacted every

15   Puerto Rican in that case, far afield from this case.  There's

16   no invidious situation that's alleged.  This is not a situation

17   where the federal government is treating Maryland citizens

18   differently than any other state.

19        They also rely on the *Georgia versus Pennsylvania*

20   *Railroad* case.  Again, another case not involving the federal

21   government where the state had *parens patriae* standing.  But

22   again, that also involved a different type of discrimination,

23   economic discrimination in violation of the anti-trust laws.  We

24   don't have anything like that here and so the claims are very

25   different.

```
 1            So I think that concludes my discussion of the

 2    sovereign and quasi-sovereign interest injuries, Your Honor.

 3    You have any question about any of those theories, I'll be happy

 4    to address them.

 5            THE COURT:  Well, let's hear how Ms. AliKhan rejoins

 6    and then maybe we'll go back and forth on a couple matters.

 7            MS. ALIKHAN:  Thank you, Your Honor.

 8            So I'll first start my rebuttal with the sovereignty

 9    argument.  We are not saying that Maryland was fraudulently

10    induced to join the union by virtue of these emoluments clauses.

11    What we're saying is that today, in 2018 there are two clauses

12    on the books of the Constitution; the Domestic Emoluments Clause

13    and the Foreign Emoluments Clause.  They protect Maryland and

14    District of Columbia from the President seeking and receiving

15    emoluments and, therefore, effecting balance of the states

16    across states.

17            Now, he says that the injury is not speculative

18    because we haven't been asked for -- the injury is speculative

19    because we haven't asked for emoluments.  But the emoluments

20    clause does say that the President shall not ask for emoluments.

21    It says, that the President shall not receive them and he has

22    received them.  We have documented it in our Complaint, whether

23    it's Maine, whether it's Florida, whether it's jurisdictions

24    outside of the United States.  So this isn't a question of

25    whether or not it's imminent.  It is actually occurring now, so
```

1    I think that well satisfies the *Clapper* standard.

2          THE COURT:  But I thought his argument was not --

3    whether you're injured is what he's saying, not whether he's

4    receiving.

5          MS. ALIKHAN:  Our injury is in the violation of the

6    Constitution.  It's that the Domestic Emoluments Clause says the

7    President shall not accept emoluments from the United States or

8    any of them.  We are injured in our ability to participate in

9    the union as sovereign is affected the moment that clause is

10   violated.

11         The structural provision that's intended to protect

12   Maryland, the District of Columbia and other states ensure that

13   they are on equal footing when they are integrating or

14   interacting with --

15         THE COURT:  Are you saying, though, that you can

16   challenge any alleged constitutional violation because you as a

17   state have sovereignty or D.C.?  I'll have D.C. answer whether

18   or not -- how they deal with the sovereignty issue or

19   non-sovereignty issue, but is that what you're saying?  What

20   gives you, sort of, special standing in this case?

21         MS. ALIKHAN:  We're not saying that we have the

22   ability to be constitutional watchdogs.  We know that the

23   founders put these clauses in the Constitution for the benefit

24   of states qua states.  And therefore, as state actors we are the

25   ones able to vindicate those clauses.

1          This isn't a question about whether or not some

2    generally applicable provision of the Constitution can be

3    enforced by states that are upset by it.  These clauses and I

4    think this is borne out by Federalist 73 as well as Akhil Amar's

5    book on the Constitution, were to prevent states from being able

6    to ingratiate themselves to the President by virtue of tendering

7    and his receiving emoluments.  So the moment that he does so, he

8    is injuring Maryland and the District of Columbia.

9          So moving to the tax question, this is not just about

10   National Harbor.  There's are two counties that border District

11   of Columbia where a predominant amount of hospitality industry

12   is located.  And so, this isn't a question of whether the

13   Gaylord or the MGM is being affected.  It's about several hotels

14   and restaurants in Maryland that are being affected by this

15   skewed marketplace for competition.  A marketplace that is

16   driven by the President's acceptance of emoluments, rather than

17   the types of amenities or the types of ratings or the types of

18   foods in a restaurant that any particular establishment is able

19   to offer.

20          I think that *Florida versus Mellon* is quite

21   distinguishable.  That case rests almost entirely Supremacy

22   Clause concerns in that the United States' ability to affect the

23   tax code would preempt any ability of Florida.  And therefore,

24   Florida was losing taxes by virtue of the United States tax

25   policy --

1          THE COURT:  Slow down a little bit.

2          MS. ALIKHAN:  They couldn't have an injury or they

3    couldn't establish an injury.

4          And I would also say on the *Wyoming* piece, Mr. Shumate

5    fails to mention that *Wyoming* when it talks about a loss of tax

6    revenue was doing so at the summary judgment stage, the

7    documented evidence at summary judgment, whereas here we are at

8    the stage of Motion to Dismiss.

9          THE COURT:  But he's saying that you're never going to

10   be able to particularize the way they did in Wyoming because

11   you're -- you can't have any idea how many people are staying

12   away, going to the Trump International instead of the Montgomery

13   Convention Center or the MGM Harbor Place.  That's what he's

14   saying, you'll never be able to nail that one down.

15         MS. ALIKHAN:  And I believe with limited discovery we

16   certainly will be able to.

17         We know, for example, the Gaylord Hotel has hosted the

18   IRS, has hosted the Saudi Arabian Cultural Mission.  If we

19   through discovery of the Trump International Hotel find that

20   those businesses have been funneled -- that business has been

21   funneled to the Trump International Hotel, that would establish

22   injury to Maryland's tax revenue because it would not be getting

23   that business from the Gaylord Hotel.

24         THE COURT:  Let me listen again.  I'm not holding you

25   to this, but what do you do, contemplate deposing somebody from

1    Saudi Arabia who makes hotel arrangements about whether they

2    made a switch from Montgomery County to Trump International,

3    what?

4              MS. ALIKHAN:  No, I think the discovery could be quite

5    limited and circumscribed into what business the Trump

6    International Hotel is doing with state, government and foreign

7    officials.  I think that would give the evidence that Maryland

8    would need to establish whether or not its tax base was being

9    affected.

10             And, finally, looking at the proprietary interest, I

11   do want to talk about *Massachusetts versus Mellon*.

12             THE COURT:  Are we in proprietary, I guess?  Where are

13   we going?

14             MS. ALIKHAN:  Sorry, not proprietary.  *Parens patriae*,

15   Your Honor, forgive me.

16             THE COURT:  Go ahead.

17             MS. ALIKHAN:  I was taking notes quickly and perhaps

18   wrote down the wrong word.

19             The *Virginia versus Sebelius* case, which Mr. Shumate

20   talks about, talks about how the *Mellon* prohibition is on -- the

21   state possesses no legitimate right or interest in protecting

22   its citizens from the effect of the law of the government of the

23   United States.

24             Again, we're not trying to protect our citizens from

25   the application of the federal law.  We're trying to enforce a

1   federal law, an important anti-corruption provision that was

2   meant to benefit Maryland, District of Columbia and its

3   residents.  And so, I just don't believe that the *Mellon*

4   exception applies.

5           Finally, on *parens patriae*, we're not a nominal party.

6   As detailed in our Complaint, 75,000 of the District's 680,000

7   residents are in the hospitality industry.  In the two counties

8   that border District of Columbia and Maryland, 72,000

9   individuals there are in the hospitality industry.  When the

10  marketplace for hospitality is skewed by the President's receipt

11  by foreign and domestic emoluments, that affects the economic

12  well-being of a large swath of residents of both Maryland and

13  the District of Columbia.

14          So this isn't our trying to vindicate the rights of

15  the Four Seasons or the Gaylord.  It is about everyone who works

16  in a hotel or restaurant that is a competitor with the Trump

17  International Hotel and with BLT Prime.  And as the undisputed

18  and unrebutted testimony establishes, there are significant

19  amount of restaurants that are direct competitors and that,

20  therefore, are affected when the competitive marketplace is

21  skewed by the President's acceptance of emoluments.

22          And I think it's very important for the Competitor

23  Standing Doctrine and it's something that applies in the *parens*

24  *patriae* bucket as much as it does the proprietary, which we'll

25  discuss this afternoon, that under the Competitor Standing

92

1    Doctrine, we do not need to show an actual loss.  What we need

2    to show is that the market for competition, the opportunity to

3    compete has been illegally --

4            THE COURT:  What's the case or cases that you

5    principally rely on for that proposition?

6            MS. ALIKHAN:  So, I think *Sherley versus Sebelius* on

7    the D.C. Circuit is a good one.  I also think the

8    *TrafficSchool.com* case from the Ninth Circuit.  There's also a

9    trio of cases from the Supreme Court dating back to the 1970s.

10           THE COURT:  Where are they cited in your brief?

11           MS. ALIKHAN:  In our briefing -- beg the Court's

12   indulgence.

13           It's page 25 of our Opposition to the Motion to

14   Dismiss, Your Honor.  And that's where we talk about the various

15   competitor standing cases.  And so they come from the

16   *TrafficSchool.com* case in the Ninth Circuit.  We also cite

17   various Supreme Court cases; Northeast Florida Chapter of

18   Associate General Contractors of America, which is 508 U.S. 666.

19   And then there are -- within that case several others cited that

20   talk about the well-established Doctrine of Competitor Standing

21   and the ways in which we do not need to establish an actual

22   loss.

23           And beyond just our briefing on the Motion to Dismiss,

24   if you look at the amicus brief that was submitted by the

25   Federal Court Scholars, they detail at length the Doctrine of

1    Competitor Standing and trace the history of it from early

2    Supreme Court cases to more present cases like *TrafficSchool.com*

3    and *Sebelius* cases.

4              THE COURT:  All right.

5              MS. ALIKHAN:  Thank you.

6              THE COURT:  Go ahead, Mr. Shumate.  We can give you a

7    chance to have a little dialogue here.

8              MR. SHUMATE:  Thank you, Your Honor, very briefly.

9              A few quick points.  I think you heard incapsulated

10   exactly what their theory of standing is, is that whenever the

11   President accepts an emolument, at that point they suffer an

12   injury and that is a sovereign injury.

13             Well, under Supreme Court case law, *Massachusetts*

14   *versus Mellon* and the Fourth Circuit's opinion in *Virginia*

15   *versus Sebelius*, that is an abstract political harm.  It's a

16   dispute about sovereignty and political power.  It's not

17   something that affects the state in a concrete way.

18             And I heard them try to walk away from their

19   allegation in the Complaint that they were induced to join the

20   union based on the emoluments clause.  And I would point the

21   Court to the paragraph 106 of the Complaint.  "The prohibitions

22   contained in Domestic and Foreign Emoluments Clauses were thus

23   material inducements to the states entering the union.  As a

24   state sovereign, Maryland retains its power to bring suit to

25   enforce those prohibitions today."  That is a dispute about

94

1    political power and sovereignty, and they can't walk away from

2    that here and try to come up with a new theory.

3            Now, my colleague just made the point about *Wyoming*

4    being at the summary judgment stage.  Remember, that was a case

5    about past injury.  Presumably, in the Complaint in that case,

6    *Wyoming* had alleged past injury and they didn't have to go

7    through the difficult burden of proving imminent injury that is

8    certainly impending.

9            That's what they have to prove here because they can't

10   allege any past lost tax revenue because there is none.  They

11   can't point to any.  It's entirely speculative.  So they're

12   asking the Court to infer lost tax revenue based on competition

13   with the Trump International Hotel.

14           So I think it's important -- doesn't matter what stage

15   the case is at, what matters is the nature of the injury that is

16   claimed here and whether we're at the Summary Judgment stage or

17   the Motion to Dismiss stage, they haven't met their burden.

18           And they don't get to do a fishing expedition with

19   discovery of the President's businesses to try to meet the

20   burden.  The question is, do they have the -- have they alleged

21   standing at the time they filed the Complaint and that is at the

22   pleading stage where we are now.

23           If they have not established standing now, the Court

24   must dismiss the case because there is no standing to bring the

25   lawsuit.  They don't then get to try to supplement the record to

95

1    try to prove standing at the Summary Judgment stage if at the

2    Motion to Dismiss stage, at a 12(b)1 stage they can't meet that

3    burden.

4           Then the last thing I wanted to point out, Your Honor,

5    is I think I heard my colleague draw a distinction between this

6    case and the Supreme Court's case law on *parens patriae*,

7    quasi-sovereign standing because they're not seeking to

8    challenge the federal law.  And to be sure, a lot of the

9    quasi-sovereign cases that are out there, *Snapp* and *Jordan* case

10   involve -- not those cases, other cases involve challenges to

11   statutes.

12          Well, here, to be sure they are challenging action by

13   the President, executive action.  We cited to the Court a case

14   from the Fourth Circuit, *Hodges* --

15          THE COURT:  You're saying their challenging the

16   executive action.  Tell me what the executive action is here.

17          MR. SHUMATE:  It is action by the head of the

18   executive branch, the President of the United States.

19          THE COURT:  Getting payments direct or indirect from

20   Trump Organization, is that an executive action?

21          MR. SHUMATE:  Well, going back to our original

22   discussion, this is -- if they had brought this suit --

23          THE COURT:  Well, maybe I'll give them leave to amend.

24   I mean, I'm still trying to understand that the argument is,

25   this has nothing to do with his performance of his job as

1   president.  He's not supposed to be getting this money, so they

2   say.  So I mean, maybe they should -- in the 1983 cases, suit is

3   always against the individual in their official and individual

4   capacity.  That's the way you do it.

5           MR. SHUMATE:  If this case had been brought only

6   against the President in his personal capacity, the Court would

7   have had to dismiss the case.

8           THE COURT:  No, I said both, the suits are brought

9   often in both capacities.

10          MR. SHUMATE:  I think you -- then you would have to

11  decide which capacity is proper, because he only can be sued

12  because he is the president.

13          THE COURT:  Well, that's true, but he's not being sued

14  as president in term of what his function is.  I think I

15  recollect that there is some distinction between official and

16  individual when you have to relate to what the function is that

17  you're challenging.

18          They're not challenging a presidential function.  They

19  are challenging something that the president is doing.  So sure,

20  to get into the case you need to say he's president, but then

21  it's what he's doing extra-curricular that they are challenging

22  really.

23          MR. SHUMATE:  Well, Your Honor, I don't --

24          THE COURT:  It's not political.  You keep calling it

25  political and I'm trying to see what's the political angle of

97

```
 1    suing a president for taking funds from a private operation,

 2    from a foreign government or from a state?  What's political

 3    about that?

 4              MR. SHUMATE:  The political angle is based on their

 5    theories of standing.  They're claiming sovereign harm, that

 6    they wouldn't have joined the union had they known the President

 7    would do this.  That is a inherently political dispute between

 8    the federal and the state government, and it's a dispute about

 9    sovereignty.

10              It's just like the Virginia versus Sebelius case, it's

11    a smoke screen for bringing the parens patriae lawsuit against

12    the federal government.  I don't read their papers to be drawing

13    this distinction that, really, the President is taking action in

14    his personal capacity, so --

15              THE COURT:  You don't?  Maybe I'm misreading

16    something.

17              MR. SHUMATE:  They're the ones that brought the

18    Complaint in the official capacity.

19              THE COURT:  Well, it puzzled me too, but I wonder if

20    it isn't curable.

21              MR. SHUMATE:  Well, if it's a defect in the Complaint,

22    the Court should dismiss the Complaint and tell them to start

23    over.

24              THE COURT:  Well, I can grant them leave to amend.  I

25    mean, there's that too.  My final question in the case is going
```

1  to be to the plaintiffs, is there any way in which an amendment

2  to this Complaint can answer arguments or some of the arguments

3  the defendant has made in this case?

4          Look, that happens all the time.  People come to

5  court.  They file a complaint.  There are flaws.  You don't say,

6  there's no chance of curing this, good-bye.  You say, I'll give

7  you X number of days to amend.

8          MR. SHUMATE:  Your Honor, I think it's telling that

9  there are three lawsuits against the President raising these

10  emolument clauses claims.  All of them have been brought against

11  the President in his official capacity by very sophisticated

12  counsel.

13          I think there's a reason for that.  It's because the

14  President couldn't be sued in his personal capacity for

15  violating the emoluments clauses, because he can only violate

16  those clauses in his official capacity because he's the

17  president.

18          THE COURT:  Well, take police excessive force cases.

19  You sue police all the time because they're police, but you sue

20  them individually and in their official capacity, don't you?  I

21  mean, you do that all the time.  And it's a fiction, it's a

22  fiction, we know that, but you're still after these folks

23  because they are public officials.

24          MR. SHUMATE:  One case that may bear on this

25  discussion is *Mississippi versus Johnson*, which we'll talk about

1    this afternoon about redressability.  That's the case where the

2    Court said, it didn't have jurisdiction to issue an injunction

3    against President Johnson to enforce the Reconstruction Acts.

4          The president is unique because he is the head of

5    the executive branch.  The Court said that it wouldn't have

6    mattered had President Johnson been sued in his personal

7    capacity as a citizen of Tennessee.  It doesn't matter because

8    he's the president.  The president is unique.  He's the head of

9    the executive branch.

10         THE COURT:  Wasn't there some indication that what he

11   was doing was essentially was political in nature and inherent

12   in his office function as president?  The argument here,

13   plaintiffs are going to have to disabuse me of this, that what

14   he's doing here was not part of his official function.  It was

15   something he was doing privately.

16         The only way to get into the case is to say, okay,

17   he's president, but there's things that he's doing privately

18   that are problematic here.  Benefits, excuse me, that he's

19   getting.

20         MR. SHUMATE:  I don't think that's a distinction

21   that's borne out by the case law.  The distinction that is borne

22   out is a distinction between the ministerial action of the

23   president and discretionary action.  So the Supreme Court, I'll

24   acknowledge, has left open the question about whether a court

25   could enjoin a president for some ministerial action.

1            And something like putting a stamp on a commission for

2     a federal officer, that might be something that would be

3     ministerial.  But something that requires discretionary action

4     by the president, that's something that no court has done to

5     enjoin the president.

6            And with respect to the Court's earlier question about

7     declaratory relief, could that get around this injunctive

8     hurdle?  I would point the Court to *Swan versus Clinton*, a D.C.

9     Circuit case where the court said, we can't issue declaratory

10    relief against the president.  Just think about it in this case.

11           THE COURT:  But there's other Supreme Court authority

12    that says, it's okay, isn't there?  I don't recollect that you

13    can't issue declaratory relief against the president.

14           MR. SHUMATE:  I don't think they have cited any.

15    *Franklin versus Clinton* is the only one I can think of that

16    addressed that.  And that was Justice Scalia in his concurring

17    opinion saying, declaratory relief presents the same problems as

18    injunctive relief.

19           And just think about this case, if the Court were to

20    do what that ask and enter a declaratory judgment that the

21    President is in violation of the emoluments clauses, so that is

22    an advisory opinion by the court.  Without an injunction to back

23    it up, that is merely an advisory opinion.

24           THE COURT:  Okay.  Ms. AliKhan, you're suing in

25    official capacity, but I'm trying to understand.  Are you saying

1    that in his official capacity, he's taking official actions that

2    are prohibited?  You need to clarify this for me.

3          And I keep coming back to this proposition of whether

4    he should also be added individually.

5          MS. ALIKHAN:  Absolutely, Your Honor.  Because these

6    clauses apply to him as president and because the founders

7    wanted to prevent corruption; that is, the president selling his

8    office for personal gain, we think that this is a proper suit

9    within his official capacity.  However, we would be happy to

10   amend to also bring claim against his individual capacity and

11   could do so today if this Court wanted.

12         I will say that I think, in looking at defendant's

13   brief, you know, today he's talked about actions against the

14   federal government and a suit against the president, but if you

15   look at page 30 of their Motion to Dismiss, they talk about the

16   President's receipt of emoluments have nothing to do with the

17   President's service as president.

18         So I think that gives some indication that this suit

19   could also be brought in an individual capacity.  And as I said,

20   we'd be happy to do so.

21         THE COURT:  All right.  Want to defend that sentence,

22   Mr. Shumate, and then we'll take a lunch break.

23         MR. SHUMATE:  Just one final point, Your Honor.  I

24   think you referenced an example where this is done all the time,

25   individual or official capacity suits.  My colleague reminded

1   me, those individual capacity suits are typically *Bivens* claims,

2   damages claims against federal officers.  I don't think they're

3   contemplating any type of damages claim against the federal

4   officer.

5           They said they're seeking injunctive and declaratory

6   relief against the President?  It really only can be brought in

7   his official capacity, so --

8           THE COURT:  Well, you know, it's one of those cases

9   where -- this case is one where there's authority that points in

10  several directions.  And the idea of a fiction when -- and which

11  capacity you sue somebody has worked in other context whether

12  it's a different kind of case or not.  I mean, we're dealing

13  with something pretty much on a clean slate here trying to craft

14  a proper response.

15          All right.  We'll pick up again at 1:30, folks.  Thank

16  you.

17      (Recess taken at 12:28 p.m., and resuming at 1:33 p.m.)

18          THE COURT:  We'll talk about proprietary interest now

19  and, Ms. AliKhan, I think you're up first.

20          MS. ALIKHAN:  Thank you, Your Honor.  Good afternoon,

21  may it please the Court.

22          Well, the *parens patriae* argument focus on the harm to

23  the local economy stemming from the President's receipt of

24  emoluments.  The harm in the proprietary interest is to the

25  District of Columbia and Maryland as business owners.  Now this

1    also relies on --

2         THE COURT:  Let me ask one thing.  Hold on.

3         Madam clerk, I was told by some people in the audience

4    they were not getting good audio.

5         (Pause in proceedings.)

6         MS. ALIKHAN:  Well, the *parens patriae* argument

7    focuses on the harm to local economy in competing for state and

8    foreign government business.  The proprietary argument focuses

9    on the injury to the District and Maryland that they suffer as

10   business owners themselves.

11        THE COURT:  Sorry.  Are we not on screen for the other

12   courtroom?  Anybody in the other courtroom?

13        THE DEPUTY CLERK:  Your Honor, let me call the help

14   desk.  They should be down there.

15        (Pause.)

16        THE COURT:  All right.  Go ahead.  We'll pick up

17   whenever it comes.

18        MS. ALIKHAN:  Well, the *parens patriae* argument

19   focuses on harm to local economy in competing for domestic and

20   foreign government business.  The District of Columbia and

21   Maryland also suffer a direct injury themselves as proprietors

22   of businesses that compete with the Trump International Hotel.

23   As with *parens patriae*, this argument relies on the

24   well-established Doctrine of Competitor Standing.

25        To show an injury under this doctrine, plaintiffs will

1   show they personally compete in the same arena as the one

2   benefiting from the illegal -- actually, in the marketplace.

3          Now, the unrebutted evidence from the two declarations

4   shows that both Maryland and District of Columbia own and

5   operate enterprises that compete directly with the Trump

6   International Hotel.  So having shown that they compete in the

7   same arena, that is sufficient to allege injury in fact for

8   standing purposes.

9          So I want to look first at the Washington Convention

10  Center.  This is contained mainly in the Complaint at paragraph

11  120 and paragraphs 28 through 36 of the Roginsky declaration.

12         So, the Washington Convention Center and the Trump

13  International Hotel are less than a mile apart.  They are both

14  accessible by the Metro system, they're both close to the

15  airport.  They're close to the museums, tourist attractions and

16  restaurants.

17         In terms of the facilities they have, they both have

18  similarly sized ballrooms.  They can accommodate up to 1400

19  people and have both large and small events.  For the larger

20  event, they can both accommodate up to 1200 people.  For the

21  smaller event, they can go down to little as five.  And in terms

22  of the small meeting places, they have comparable AV equipment,

23  the ability for technology, video conferencing, et cetera.

24         On food, they both offer high end catering services.

25  Whether that ranges from a three-course locally sourced meal

 1    down to a buffet.  They also have highly comparable security

 2    services, which is important for foreign and domestic diplomatic

 3    business.  And as the Rajinski declaration set forth, they have

 4    the same image and therefore are in the same class of

 5    facilities.

 6           We know that the Washington Convention Center does

 7    government business.  They have previously hosted the Food and

 8    Drug Administration, the Treasury Department, the Department of

 9    Commerce and Maryland has a similar facility as well.  That's

10    the Montgomery County Conference Center in Bethesda.

11           They also have a large ballroom of 2300 square feet.

12    They're on the Metro as well and they're equidistant to a lot of

13    the embassies, so it would be just as easy for, say, the Embassy

14    of Bahrain to host an event at the Bethesda Conference Center as

15    it would be at the Trump International Hotel.  Montgomery County

16    Conference Center has also hosted embassy events in the past and

17    would like to do so in the future.

18           Despite having these similar --

19           THE COURT:  Wait a minute.  Hotel as well as in

20    Montgomery?

21           MS. ALIKHAN:  I believe that there's a hotel attached

22    to the Montgomery County Convention Center.

23           THE COURT:  But that's not part of your claim?

24           MS. ALIKHAN:  I do have to check with my co-counsel

25    and I can get back to you.  I know that the District -- Maryland

1    owns the conference center portion.

2           So despite these similar amenities, neither facility

3    can offer the same ability to -- for state and foreign officials

4    to ingratiate themselves to the President.  And in that regard,

5    they are injured by the inability to compete on equal footing.

6           Now that Maryland and the District have shown that

7    they are in the same competitive arena as the Trump

8    International Hotel, the Court can then infer that sales that

9    are lost by one -- sales that are lost by one are gained at the

10   expense of another.  And that comes from the *TrafficSchool* case

11   which we discuss in our brief.

12          As proprietors, District of Columbia and Maryland are

13   harmed when business is diverted to the Trump International

14   Hotel by receipt of those emoluments.  We have established that

15   the states are the beneficiaries of the Domestic and Foreign

16   Emoluments Clauses, and so therefore they're within the zone of

17   interest even for the proprietary interest.  For these reasons,

18   we do believe that the District has established proprietary

19   standing to go forward with this appeal.

20          Unless the Court has further questions, I would let

21   Mr. Shumate speak.

22          THE COURT:  What about Maryland?

23          MS. ALIKHAN:  So with Maryland, it's the Bethesda

24   Conference Center.  There's also the National Harbor Hotel on

25   which they don't own, but they have all the proceeds from the

1  casino.

2      THE COURT:  Yeah, talk about that because I understood

3  that there's no casino operation at the Trump International

4  Hotel.  So what's the nexus that I'm supposed to see here?

5      MS. ALIKHAN:  Well, the nexus is in hotel competition

6  between the MGM and the Trump International Hotel.  So to the

7  extent that someone stays at the MGM, they're more likely to

8  gamble.  Those proceeds then go directly into coffers of

9  Maryland.  And so, if someone stays at the Trump International

10  Hotel, they are less likely to go to the MGM to engage in

11  gambling.

12      THE COURT:  Wouldn't somebody know that?  I mean, if

13  they wanted to go gamble, they could either stay at MGM or go to

14  MGM, wouldn't they?

15      MS. ALIKHAN:  Absolutely, if we were in an equal

16  marketplace, then a foreign or domestic official coming to the

17  District of Columbia for business who would like to gamble would

18  go to the MGM because it has a casino, but they can't do that

19  and also confer an emolument on President Trump.  And since

20  President Trump has said that he likes when people buys things

21  from him and he likes doing business with entities that do

22  business with him, someone who would otherwise be interested in

23  going to the MGM so that they could gamble instead would go to

24  the Trump International Hotel.

25      THE COURT:  Well, but you could stay at Trump

1    International and go gamble at the MGM, couldn't you?

2            MS. ALIKHAN:  You certainly could.  However, what we

3    submit is that by staying in the hotel and having direct access

4    to the casino, they're quite -- more likely to gamble at the

5    casino than they would be to stay at the Trump International

6    Hotel and then go to the MGM for the purposes of gambling.

7            But even putting aside just the MGM casino, we have

8    the District -- the Bethesda Conference Center and the

9    Washington Convention Center, both of which have done

10   significant government business in the past and would like to do

11   so in the future.

12           THE COURT:  You say again, government business.  Are

13   you just talking about this in context of the foreign clause,

14   Foreign Emoluments Clause or both?

15           MS. ALIKHAN:  No, in terms of both.  So, the

16   Washington Convention Center has hosted several federal agencies

17   and that will also come under the auspices of the Domestic

18   Emoluments Clause.

19           THE COURT:  Because it's what, the United States is

20   paying more to the President than, in this case, another state?

21           MS. ALIKHAN:  Precisely.  So the federal government

22   operates just as another state for purposes of the Domestic

23   Emoluments Clause.  So to the extent entities or agencies within

24   the federal government feel the need to curry favor with the

25   President by using his facilities for their events as opposed to

1    the convention center, Montgomery County Convention Center or

2    any other local facility, that is -- that makes the competitive

3    marketplace and that hurts Maryland and the District of Columbia

4    as proprietors in their respective businesses.

5              THE COURT:  Well, be a little more specific for me, if

6    you would, about the Montgomery County Convention Center and how

7    the State of Maryland has some proprietary interest in that.

8              MS. ALIKHAN:  Sure, Your Honor.  Well, they have an

9    ownership stake in the conference center and the conference

10   center has done diplomatic business.

11             THE COURT:  Now, what does that mean?  Is it a

12   corporation that they own shares in or what?

13             MS. ALIKHAN:  I would beg the Court's indulgence to

14   consult with my co-counsel.

15             THE COURT:  Okay.  I mean, I know there was something

16   you said in there felt like maybe they owned the land or

17   something like that.  I'm trying to get a better feel on just

18   what is proprietary.  You mentioned it and I assume they get

19   revenues from it, but that's a different argument.

20             MS. ALIKHAN:  I believe they have an ownership stake,

21   but my co-counsel can come and speak to that.

22             THE COURT:  Does somebody know about that on plaintiff

23   side that can at least answer that question?

24             MS. ALIKHAN:  Mr. Sullivan can, I believe, if you'd

25   like to hear from him.

```
 1                    THE COURT:  Mr. Sullivan, do you know the answer to
 2       that?
 3                    MR. SULLIVAN:  Yes, Your Honor.
 4                    THE COURT:  All right, answer that.
 5                    MR. SULLIVAN:  In two respects does the State of
 6       Maryland have proprietary interest.  The State of Maryland's --
 7       Maryland State and authorities issued the bonds to pay for the
 8       project.  And last I heard, payments were still outstanding, but
 9       maybe not by now.  I'm not sure.
10                    The other is that Montgomery County, a political
11       subdivision of the state, owns a part of -- a part of the
12       property, real property where the actual center is located.
13                    THE COURT:  Like a ground lease, you mean?  Is that
14       what they constructed --
15                    MR. SULLIVAN:  I think Montgomery County leases it to
16       Marriott to be operated, so it owns the underlying property.
17                    THE COURT:  To both the hotel and the conference
18       center?
19                    MR. SULLIVAN:  I believe it's as to the conference
20       center, but it may actually extend into the hotel as well as a
21       ground lease.
22                    THE COURT:  So is there some sort of an annual payment
23       that gets made?  Is it not being met because of the alleged
24       competition or what?
25                    MR. SULLIVAN:  Well, that is a degree of detail which
```

 1    I don't really have handy.  We can pursue that further.

 2              THE COURT:  Well, you're going to have to show, I

 3    think, injury traceable to an action or an alleged improper

 4    action.  So, I'm trying to understand how you're injured.

 5              I mean, if for example, just thinking about this for

 6    the first time, there's a fixed monthly payment due to

 7    Montgomery County assuming it's identical to the state or at

 8    least in privity with or whatever, is that not being met?  If

 9    it's being met, does that basically undercut your argument?

10              MR. SULLIVAN:  Well, I don't know that it does.  I

11    don't know the extent to which -- certainly, the Supreme Court,

12    I don't think, in *Snapp* hasn't really delineated the intricacies

13    of what the proprietary interest and what form they would have

14    to take, but there is a proprietary interest there that the

15    state has and we plausibly allege that it does exist.

16              And you're right, Your Honor, if we go forward, it may

17    be necessary to, for example, at summary judgment stage if it's

18    still being challenged to provide additional facts to satisfy

19    the Court on that basis.

20              THE COURT:  All right.

21              All right, response, Mr. Shumate.

22              MR. SHUMATE:  Thank you, Your Honor.

23              So now, setting aside the sovereign injury and

24    quasi-sovereign injury claims, we're now turning to proprietary

25    interest.  And D.C. and Maryland also attempt to assert standing

1    based on their proprietary interest in certain businesses that

2    they allege compete with the Trump International Hotel.

3         Their theory is that government customers are now

4    going to Trump International Hotel, rather than their properties

5    and, therefore, they're suffering an increase in competition

6    that will lead to loss of business.

7         Now, it's undisputed that the plaintiffs can't show

8    that any of these properties have actually suffered loss of

9    business.  Instead, they fall back on the Competitor Standing

10   Doctrine to ask the Court to infer a certainly impending loss of

11   business due to competition with the Trump International Hotel.

12        I think that's an important distinction and I just

13   want to emphasize that there is no allegation of past injury.

14   They're asking the Court to infer future injury.  They're

15   relying on what's known as the Competitor Standing Doctrine, but

16   this case would be a radical expansion of that doctrine and I

17   think my friends on the other side over-simplify what that

18   doctrine has looked like in a number of case that are outside of

19   the Fourth Circuit.

20        So, in certain cases courts can infer based on the law

21   of economics that the government's regulatory action will lead

22   to a certainly impending injury in the form of a loss of

23   business.  Now, most often this arises in the context where the

24   government's regulation has led to an increase in competition

25   and the market conditions and the nature of the market are such

1  that the Court can make an easy inference that the government's

2  action will lead to an increase in composition and, therefore, a

3  certainly impending injury.

4        Now, the classic use of the Competitor Standing

5  Doctrine is a case in which the government controls the market

6  and it takes some regulatory action to skew the market in favor

7  of one competitor over another.  In fact, I could point the

8  Court to one case.  It would be the *Sebelius* case, *Sherley*

9  *versus Sebelius* case from the D.C. Circuit that my colleague

10  referenced and it described what the standard looks like.  And

11  I'll quote from the case.  I'll try to speak slowly.

12        "The Doctrine of Competitor Standing addresses the

13  first requirement, injury in fact, by recognizing the economic

14  actors suffer an injury in fact when agencies lift regulatory

15  restrictions on their competitors or otherwise allow increased

16  competition against them."

17        The court goes on later in the opinion to say,

18  "Regardless of how we have phrased the standard in any

19  particular case, however, the basic requirement common to all of

20  our cases is that the complainant show an actual imminent

21  increase in competition, which increase we recognize will almost

22  certainly cause an injury in fact."

23        My friend on the other side said, I think, all they

24  have to show to show competitor standing is that their

25  properties compete with the Trump International Hotel.  That is

1   not enough and Judge Daniels recognized in the *CREW* case that is

2   not enough. What they have to show is an increase in

3   competition that will lead to a certainly impending loss of

4   business. And we don't think they have made that showing for a

5   couple reasons and I only want to focus on two here.

6         Yes, they allege that there is competition between the

7   Trump International Hotel and the properties they have

8   identified in which they have proprietary interest, but there

9   are two reasons why the Court can infer an increase in

10   competition that will lead to a certainly impending injury for

11   two reasons.

12         One, the government is not taking any regulatory

13   action in this case to skew the competitive playing field. The

14   government here, the President is not acting as a regulator,

15   because he isn't -- acting as a regulator. He is actually a

16   market participant here. He is participating in the market.

17         Now, the government isn't skewing the market by giving

18   a benefit to one competitor over another. It's not granting a

19   subsidy. It's not granting a tax benefit. It's not doing

20   anything like that in other cases where courts have found, yeah,

21   the government is obviously allowing one competitor to enter

22   into the market. Where just by the fact that you're allowing

23   another competitor is necessarily going to increase the

24   competition for some government benefit or for some business,

25   and we can infer there will be a loss of business.

1          So as Judge Daniels recognized in the *CREW* case, even

2     before the President took office, he was competing in this

3     market.  He operated Trump International Hotel even before he

4     was elected president, so he was competing well before

5     January 20th.

6          So, because the government is in controlling access to

7     the market, this is not a case where you can easily infer

8     increase in competition, because the government isn't taking --

9     doing the types of things that governments have done in other

10    cases to skew the competitive playing field.  So the fundamental

11    distinction is, the government is not acting as a regulator

12    controlling the market.  The government here, the President, is

13    a market participant.

14         THE COURT:  The question really, though, isn't it,

15    whether given the uniqueness of this case, it's at least

16    somewhat analogous to the traditional case law for competitor

17    standing.  I mean, he -- the argument here is as president, he's

18    unduly attracting business by foreign governments, by states and

19    there is certainly some suggestion that that's so.  You've got

20    some foreign states that have said, that's what we're doing.

21         Now, I mean, you're arguing cases which clearly are

22    not four square in this case, but you seem to be saying, because

23    this is the way competitor standing has been defined heretofore,

24    you can't expand the parameters by analogy.  That seems to be

25    what you're telling me now.

1    And yet, I've got a unique case here where the
2  suggestion is that because he's president, he's getting more
3  than the fair share of the market or any of the market for that
4  matter.  That's what I have to deal with, so it's easy for me to
5  say, oh, yeah, the cases don't go that far.  And then what?
6  What's my next step?  Is that end of story?  Is that what you're
7  arguing?

8    MR. SHUMATE:  Well, I think we have to look at this in
9  terms of what are the three elements of standing.  They have to
10 prove injury, causation and redressability.  And the Competitor
11 Standing Doctrine has recognized in other circuits, end point in
12 any Fourth Circuit cases that are even on point here.  Those
13 other cases have recognized that an injury could be an increase
14 in competition.

15    So, the allegation here is simply, we compete with the
16 President's businesses, but there's no allegation --

17    THE COURT:  They're saying more than that.  We compete
18 and we're in the market, and we have statements that are at
19 least cited in the press at this point.  I don't know what they
20 definitively prove at the summary judgment phase, that we're
21 moving from other competitors to the Trump interest, the Trump
22 International Hotel.  They've got that.  So it's not just
23 saying, we're merely competitors.  We're competitors who
24 specifically lost or at least arguably lost business, or at
25 least allow plausibly the next step, which is let's see what

1    we've lost.

2          MR. SHUMATE:  Well, Your Honor, I think this goes back

3    to my point.  It's not enough just to say plausibly, they may

4    lose business.  As I read in the *Sherley* case, the loss of

5    business has to be certainly impending.

6          THE COURT:  They're saying, give us some discovery,

7    we'll tell you where we are.  The question is, at this stage,

8    because they haven't said it, are they out of court or have they

9    plausibly alleged it?  That's what I have to decide at this

10   stage.

11         MR. SHUMATE:  And we're at the 12(b)1 stage.  You have

12   everything before you to rule on this Motion to Dismiss, whether

13   the allegations accepted as true are enough to demonstrate an

14   injury that is traceable to the President or addressable by --

15         THE COURT:  All right.  Well --

16         MR. SHUMATE:  They talk about the summary judgment

17   standard and I know they're eager to get there.  That's when you

18   bring in evidence and you have to have a higher burden to prove

19   your standing, but under *Lujan* they first have to get through

20   the 12(b)1 --

21         THE COURT:  I thought it was Justice Alito who said,

22   if you're not climbing a mountain or maybe he mentioned Mount

23   Everest or Mount Etna, not a heavy thing.  And then you add

24   that, to that the special solicitude for a state as plaintiff.

25   And then the question is, with that and what they do say about,

1  A, being a competitor; and, B, citing examples of foreign

2  interest governments moving to the Trump International Hotel, is

3  that enough to get them to the next stage?

4         MR. SHUMATE:  No, Your Honor.  A couple points in

5  response.  First, *Clapper*, they have an especially vigorous

6  burden to prove standing in a case where they're asking the

7  Court to rule that the President is acting in an

8  unconstitutional manner.

9         Second, I'm glad you brought up the special solicitude

10  point for *Massachusetts versus EPA*.  That does not mean standing

11  is relaxed when states are involved.  In fact, in *Massachusetts*

12  *versus EPA*, the court applied the same standing requirement from

13  *Lujan* that applied in any other case.

14         What the court meant by special solicitude is that it

15  certainly is not a normal case when a state is bringing a claim,

16  because there are special considerations that are involved when

17  a state is suing as a plaintiff.

18         For example, a state can bring a sovereign injury

19  claim, quasi-sovereign injury claim.  That's different than

20  private litigants, but it doesn't mean you relax the standing

21  requirements.  And what they're trying to do is take advantage

22  of this Competitor Standing Doctrine that relies on inferences.

23         They're asking the Court to jump from a fact that they

24  compete with the President's business to an increase in

25  competition to a certainly impending loss of business.  And for

1   two reasons, the Court shouldn't and couldn't make that

2   inference here as a matter of economic logic and common sense.

3          Number one, the President isn't controlling the

4   market, so he's not allowing a new competitor or skewing the

5   market in any regulatory way.  And second, this is not the type

6   of market in which -- that gives rise to an easy inference of an

7   increase in competition.  These are very diffuse markets with

8   many, many competitors.  And people make choices about which

9   hotel to stay at and which restaurant to eat at for many

10  different individualized reasons.  And the Court really can't

11  predict how individuals might make those decisions about where

12  to stay and what to eat.

13         THE COURT:  Isn't it enough, though, that some might

14  make the decision based on the fact that he's president.  Not

15  all of them have to make the decision one way or another, but if

16  there's evidence that some, in this case, foreign governments

17  are opting for Trump International, isn't that enough to

18  establish their injury to their proprietary interest?

19         MR. SHUMATE:  No, Your Honor, I think that's just pure

20  speculation.  Yes, they pointed to some examples where business

21  moved from the Ritz and the Four Seasons to the Trump

22  International Hotel, but they have no proprietary connection to

23  those businesses.

24         Now, if those businesses wanted to bring a claim, it

25  might be a different case.  It might be a different case for

1   many reasons, but here in a market where we're talking about

2   competitors that are very different in categories and different

3   --

4          THE COURT:  How do I know that at this stage?  Their

5   allegation is they are competitive and they've cited some expert

6   statements where they are competitive.  And you're telling me,

7   no, it's clear that they are not.  How do I decide that at the

8   Motion to Dismiss phase?

9          MR. SHUMATE:  Well, let's talk about the speculative

10  inferences.  So, speculative inferences are still prohibited in

11  the Competitor Standing Doctrine and there are a number of them

12  here.

13          First, we think it's speculative whether any of these

14  businesses actually compete with the Trump International Hotel.

15  Now, they do have a declaration and that does say that they

16  compete, but the declaration also says something else very

17  interesting.  That people make decisions about where to stay and

18  where to eat for many, many different reasons, which supports

19  the point I'm making is that these are unique markets where you

20  can't easily make an inference that just because somebody

21  decided to stay at the Trump International Hotel, well, they

22  would have stayed at the Gaylord if only for the fact that the

23  President merely owns an interest in that property.  You just

24  can't make that inference.

25          THE COURT:  Well, that's what they've said.  That's

1    what the press reports are now that some people have

2    specifically said that.  Not all people have to say that and

3    clearly some people stay at other places because that's their

4    choice.  But here, though, it's plausible, is it not, based on

5    maybe the press reports from some of the Middle Eastern

6    countries that they have opted to stay and frequent whatever the

7    facilities are at Trump International because it's the

8    President's property.

9        MR. SHUMATE:  Yes, they have that allegation in the

10   Complaint.

11       THE COURT:  Right.

12       MR. SHUMATE:  But there's no connection between these

13   plaintiffs and those allegations, none whatsoever.  How do we

14   know that the foreign diplomat had in his mind that he would

15   have stayed at the Gaylord, but because the President owns the

16   Trump International Hotel, he's going to stay there.  It's pure

17   speculation.  It's speculation whether these businesses are

18   actually exposed to an increase in competition.  They were

19   competing with the Trump International Hotel before the

20   election.  They are competing now today.

21       They haven't alleged that they have actually faced an

22   increase in competition.  All they've alleged is that they

23   compete.

24       THE COURT:  I guess my problem is, I've done some of

25   these anti-trust cases and you never need that level of

1   specificity, that they drew from Company A, that Company B drew

2   from Company A.  As long as they're in the market and there's a

3   potential for competition, that's enough to get into the

4   anti-trust issue.  And here you're asking for very specific

5   losses by these individuals.

6          Is it not, for example, plausible to say that because

7   there is some evidence that some foreign governments have been

8   motivated to stay at the Trump International Hotel, even instead

9   of -- instead of, for example, an interest that is not owned by

10  the plaintiffs here, that they might as well be doing the same

11  with regard to properties that are owned by the plaintiffs?

12         MR. SHUMATE:  No, I think it's just purely

13  speculative.

14         THE COURT:  Well, it's speculative in a sense, but the

15  question is, is it so speculative that the door is closed?

16         MR. SHUMATE:  I think the door is closed, Your Honor,

17  because I think we need to keep in mind, what is the ultimate

18  question they are asking you to determine?  They are asking you

19  to determine that they're suffering an injury in fact based on

20  an increase in competition which will leads to a certainly

21  impending loss of business.

22         Again, they're seeking the Court to make an inference

23  about future harm.  We think there's a number of speculative

24  inferences that prevent the Court from making that inference

25  based on the President's involvement in the market and the

1    nature of the market itself.

2         And I'm glad you brought up the anti-trust injury.

3    Now, I think different standards will apply to the anti-trust

4    cases, because I think that's a statutory standing question.

5    They're not bringing the anti-trust cases.  They're the ones

6    asserting competitive injury and they're the ones that are

7    citing all these cases.  So if they want to invoke that

8    doctrine, they need to meet that doctrine.

9         And this is not the type of case where -- a classic

10   would be the government allows a new entry into a market or

11   grants a subsidy that will necessarily lead to an increase in

12   competition and will harm the competitor.

13        That's not this case.  This is far afield.  This is

14   competition or alleged competition between properties that are

15   very different in kind, that are 11 miles away from the Trump

16   International Hotel.  So, for those reasons, we don't think they

17   met the Competitor Standing Doctrine.

18        THE COURT:  You said about the State of Maryland.

19   What about the District of Columbia?  What about the convention

20   center a mile away or whatever that proposition was?

21        MR. SHUMATE:  For the same reasons, the doctrine

22   wouldn't help D.C. as well given the President's involvement in

23   the market and the nature of the market as well.  I mean, I

24   think those properties may be closer in proximity to the Trump

25   International Hotel, but I don't think they are really in the

1   same category of the 5-star luxury hotel.

2            THE COURT:  You're making statements to me, but I have

3   to make a finding of fact about that as opposed to their

4   allegation.  I mean, you're asking me to compare with some

5   finality that they're not comparable.  They've alleged that they

6   are and they've put some expert testimony behind them.

7            MR. SHUMATE:  Right.  I think it's important to look

8   at the allegations though.  The allegations is that they

9   compete, most of them.  And so from that allegation, are you

10  able to infer that they're going to lose business to the Trump

11  International Hotel?  That is entirely speculative for the

12  reasons I've already given.  It's not enough just to allege, we

13  compete.  That is not enough.  The Court has to be convinced

14  that with that injury that's certainly impending that they're

15  exposed to increase in competition and that they are going to

16  lose business.

17           Can you make that determination based on an allegation

18  in a declaration that the D.C. Convention Center competes with

19  the Trump International Hotel?

20           THE COURT:  Do I have to make that decision now?

21           MR. SHUMATE:  I think to rule -- to deny our Motion to

22  Dismiss, you would have to conclude that D.C. because of the

23  proprietary interest in the D.C. Armory and other properties,

24  they are suffering competitive injury.

25           THE COURT:  Potentially suffering.  Do I have to make

1  the definitive finding that they are suffering injury or that

2  proof could demonstrate that they are?

3         MR. SHUMATE:  You have to make a finding that they

4  have sufficiently alleged imminent increase in competition.

5         THE COURT:  All right.  That's the key.

6         MR. SHUMATE:  I was --

7         THE COURT:  Well, there's a difference.  I started

8  with that as one of my questions, what do I have to definitively

9  decide and when?  Maybe later on and that's what I need to get a

10  grip on.

11         MR. SHUMATE:  Can I speak about the zone of interest

12  issue for a minute?

13         THE COURT:  Absolutely, sure.

14         MR. SHUMATE:  We haven't talked about this yet, but I

15  think this is a good time to talk about it.

16         So, the zone of interest question that the Court needs

17  to decide addressed in the *CREW* case is can the plaintiff

18  establish that his interest falls within the zone of interest

19  protected by the constitutional provision at issue.

20         And Judge Daniels addressed this in the *CREW* case.  As

21  he explained in that case, the plaintiff must establish that his

22  injury falls within the zone of interest of the emoluments

23  clauses.  And here's where we talked about the purposes of the

24  clauses and whether these claims of competitive injury fall

25  within the zone of interest meant to be protected by these

1    provisions.

2         Now, the purpose of the Foreign Emoluments Clause is

3    to prevent official corruption and uninformed influence.  The

4    purpose of the Domestic Emoluments Clause is to ensure

5    presidential independence.  As Judge Daniels explained in the

6    *CREW* case, there's nothing, quote, nothing in the text or

7    history of the emoluments clauses suggests that the framers

8    intended these provisions to protect anyone from competition.

9         So from that opinion, I think that's exactly right.

10   There is nothing that suggests that the founders intended to

11   protect any business or any person from having to compete with a

12   federal official's businesses with the Emoluments Clauses, nor

13   is there any suggestion that the clauses were intended to

14   protect sovereign harm or quasi-sovereign harm.

15        These are all unique theories that the plaintiffs have

16   raised here, but there's really no suggestion that the clauses

17   were meant to protect any particular state or individual, or

18   protect --

19        THE COURT:  Who are they meant to protect, while

20   you're on that?  Who is protected by saying that the President

21   should not take emoluments either from foreign governments or

22   states?  He's not supposed to make decisions, is he, that are

23   influenced by the fact that he's receiving emoluments, assuming

24   that emoluments means gain, benefit or whatever.  He's not

25   supposed to make any decisions based on that.

1          Now, here the argument is based, making a decision to

2    in effect -- well, I'll let the plaintiff argue it, but I

3    understand them to be saying that in effect it's going to harm

4    people who are in competition with him.  I need to know who is

5    being protected by these clauses.  I know what's being

6    prohibited, but why should we just prohibit the President?  Who

7    is hurt by that?  Who is hurt by the President, assuming he's

8    getting an undue financial gain or benefit?  Is it the American

9    people in some way or presidential decision-making or what?

10          MR. SHUMATE:  These are clauses that are meant to

11   protect all Americans and that's essentially what the plaintiff

12   are trying to vindicate here.  And there is a number of

13   allegations in the Complaint, but they're really seeking to

14   vindicate an interest that enures to all Americans, not to the

15   particular interest of any American.  They aren't meant to

16   protect against competitive ones.

17          THE COURT:  Who can vindicate that claim then?

18          MR. SHUMATE:  Who can -- I think that's an open

19   question, Your Honor.  I don't know, but not these plaintiffs.

20   They weren't meant to protect --

21          THE COURT:  I can't imagine who the plaintiffs would

22   be though, I suppose.

23          MR. SHUMATE:  The Supreme Court addressed it, a

24   similar question in the *Schlesinger* case, which is a 1974 case

25   involving a challenge to members of Congress during the Vietnam

1   War.  And the Court said, these plaintiffs were challenging the

2   conduct of the members of Congress holding reserve memberships

3   in the military.  They are generalized grievances.

4       And at the end of the opinion, the Court said, just

5   because we can't think of anybody who would have standing to

6   challenge this isn't a good enough reason to bend the rules of

7   standing to allow these plaintiffs to sue.

8       And I would give the same answer here.  Just because

9   we can't think of somebody that would be within the zone of

10  interest or would have standing doesn't mean these plaintiffs

11  have standing or fall within the zone of interest.

12      THE COURT:  All right.  Let me hear from you some more

13  on this, Ms. AliKhan, and you might start with the zone of

14  interest argument, which I know the New York judge had a concern

15  about that there's nothing in the history of these clauses that

16  suggests that people were to be protected against undue

17  competition.  I'm not sure how you want to go about that, but an

18  open invitation to answer that.

19      MS. ALIKHAN:  Sure.  I will certainly start with zone

20  of interest.  I'd first like to note that Judge Daniels in

21  discussing zone of interest was actually relying on a dissenting

22  opinion in the *Wyoming* case and not the majority opinion.  And

23  so, I don't think that his analysis of zone of interest is

24  actually based on governing Supreme Court law.

25      I will also say that *Lexmark*, I think, makes the zone

1    of interest question one about whether or not an individual has

2    a cause of action and they say that it's basically a question of

3    statutory interpretation.  So I think it's an open question as

4    to whether or not zone of interest applies when someone is

5    trying to vindicate a structural provision of the Constitution.

6           And I point to a few cases on that.  I think most

7    specifically on point is the *Bond* case in which someone who is

8    charged with possession of a chemical weapon was allowed to

9    raise a federalism claim under the Tenth Amendment.  Now, the

10   Tenth Amendment was not designed for this individual criminal

11   defendant.  Still the court held that because it was a

12   structural provision of the Constitution that was important for

13   federalism, she can seek to vindicate that interest through her

14   criminal prosecution.

15          So she's in a zone of interest to raise the Tenth

16   Amendment question.  We do believe that the states are allowed

17   to --

18          THE COURT:  What's the rationale?  Why is she in the

19   zone of interest?  And next question, why are you in the zone of

20   interest?

21          MS. ALIKHAN:  So, what the court said was an

22   individual has a direct interest --

23          THE COURT:  Slow down a little bit.

24          MS. ALIKHAN:  A individual has a direct interest in

25   objecting to laws that upset the constitutional balance between

1   the national government and the states when enforcement of those

2   laws causes injury that is concrete, particular and redressable.

3   Fidelity to principles of federalism is not for states alone to

4   vindicate.

5          So here is a woman who was facing a criminal

6   prosecution who thought the prosecution violated principles of

7   federalism.  So even though she as an individual was not the

8   direct beneficiary of the Tenth Amendment, that was the state's

9   clearly under the Constitution, she was allowed to vindicate

10  this interest because it is a structural interest within the

11  Constitution.

12         *INS v. Chadha* is exactly the same.  It allowed someone

13  who was facing immigration consequences to raise bicameralism

14  questions.  I'm pretty sure that he was not considered to be

15  within the zone of interest of the bicameralism provision, but

16  it was a structural constitutional provision he was seeking to

17  vindicate.

18         Here, even if we weren't states, I believe we would be

19  within the zone of interest to vindicate this structural

20  provision.  However, as we discussed this morning, the Domestic

21  and the Foreign Emoluments Clauses have as their beneficiaries

22  the states specifically.  Hamilton made that very clear in

23  Federalist 73.  So certainly to the extent anyone is within the

24  core zone of interest to the extent that test is still

25  applicable, it is Maryland and the District of Columbia.

1          Now, if I could turn to a few other responses to

2    Mr. Shumate's arguments on proprietary interest.  First, I don't

3    believe that the Competitor Standing Doctrine is a fallback.  It

4    is well-established Doctrine of Standing when an individual's

5    illegal actions in the marketplace are increasing competition in

6    a way that hurts businesses like the properties that Maryland

7    and the District of Columbia own.

8          And he is correct that President Trump was a

9    competitor before inauguration when he was not president.  When

10   he became president, that marketplace changed.  And to the

11   extent he is using his presidential office in order to further

12   the interest of his business enterprises, that is the illegal

13   effect on the marketplace that is skewing the competitive

14   atmosphere.  And that is the interest under *Sherley v. Sebelius*

15   and other cases we're allowed to bring.

16         He also spoke to a few cases in which the government

17   was the one restricting the market.  So I have two responses to

18   that.  First, I would submit that when the President by virtue

19   of him being president is affecting the marketplace, that's

20   governmental action in the marketplace.

21         Secondly, even if that were not the case, I'd refer

22   this Court to the *TrafficSchool* case in which there was no

23   governmental actor.  In fact, it was a suit between two private

24   parties in which one was claiming an affiliation with the

25   government that was actually not true.  And so, in that case the

```
 1   Ninth Circuit found that the one not trying to affiliate himself
 2   with the government was allowed to bring a competitor standing
 3   claim because the other competitor's actions in the marketplace
 4   were skewing the marketplace to the plaintiff's detriment.
 5   That's exactly what we have here.
 6          Now, we have established, I think through these
 7   declarations, that these properties compete.  Mr. Shumate would
 8   say that they are just allegations in a declaration, but they
 9   are unrebutted testimony from experts in this field, individuals
10   that study the hospitality industry and went through various
11   demand generators to show that there are properties owned by
12   Maryland and the District of Columbia that compete with the
13   Trump International Hotel for government business.  Whether it's
14   a large ball --
15          THE COURT:  Well, he's saying what you say is, they
16   are competitors, but you haven't gone beyond that.  They are
17   competitors, but so what?
18          MS. ALIKHAN:  Well, by virtue of being competitors and
19   I think it's like the anti-trust cases this Court alluded to, by
20   virtue of being competitors when there is illegal competition in
21   the marketplace, that gives any competitor standing to bring a
22   challenge to that action without having to demonstrate lost
23   sales.
24          THE COURT:  All right.  And what are the principle
25   authorities you rely on for that proposition?
```

1          MS. ALIKHAN:  So, I would turn the Court to our brief,

2    page 25 and the Scholars Amicus brief at pages 4 through 8.

3    There's a trio of Supreme Court cases *Data Processing v. Camp*;

4    *Investment Company Entity versus Camp*; and *Clark versus Security*

5    *Industries Association*.  Those are both -- all three are Supreme

6    Court cases.

7          From Court of Appeals cases, I think the best two are

8    the *Shelby* case out of the D.C. Circuit and the

9    *TrafficSchool.com* out of the Ninth Circuit.  And so, in terms of

10   what Shelby -- not Shelby, *Sherley*.  You need not wait until the

11   alleged illegal transaction hurts a plaintiff competitively

12   before challenging the decision that it increases competition.

13         So, under this well-established Competitor Standing

14   Doctrine, we don't need to show a particular sale, nor at this

15   point could we.  We don't know all of the business that the

16   Trump International Hotel is doing.  There could very well be

17   government business that Washington or Maryland had previously

18   at their facilities that went to Mr. Trump's hotel because he

19   solicited that business.

20         THE COURT:  How would you find that out?

21         MS. ALIKHAN:  I think through limited discovery, Your

22   Honor, if we can get information about who -- which government

23   officials, because really we're only talking about government

24   business, which government officials held events or stayed at

25   the Trump International Hotel.

1          What we put in our Complaint we discerned from new

2     reports and from other --

3          THE COURT:  Want the foreign clause?

4          MS. ALIKHAN:  The foreign clause as well.  To the

5     extent that there are foreign entities or foreign officials

6     staying at the Trump International Hotel, that's information

7     that the Trump International Hotel has and that's information

8     that they could turn over in the course of discovery.

9          This isn't going to be wide-ranging, free-ranging.

10    This is really all within the records of the Trump International

11    Hotel.  And so, if those establish that there is foreign or

12    domestic government business that is being shuttled away from

13    Maryland and District enterprises by virtue of the President's

14    receipt of emoluments, that is sufficient for standing purposes.

15         THE COURT:  Not to bind you to this, but are you

16    saying you would have to demonstrate the in fact there was in

17    the first instance an intention to go to Maryland or another

18    D.C. facility and in the end, whoever the patron was that went

19    to Trump International or is it enough just to show what?

20         MS. ALIKHAN:  It's enough just to show an effect in

21    the competitive marketplace.  So, for example, we have in our

22    Complaint individuals, diplomats from the Middle East and from

23    Asia saying that they -- of course, we would stay at his hotel.

24    It would be rude not to stay at his hotel.

25         These things show that because he is president, that

```
 1   is the reason that individuals are going to his hotel.  And to

 2   the extent that receipt of emoluments, that enticement to stay

 3   at his hotel because he's the president effects the competitive

 4   market, what it means is that when the Washington Convention

 5   Center is competing with the Trump Hotel and when Bethesda

 6   Conference Center is competing with the Trump Hotel, it's not

 7   about who has the nicer beds or who has the better meal, or who

 8   has better room service.  It's about whether or not someone can

 9   ingratiate themselves to the president and that is what the

10   Domestic and Foreign Emoluments Clauses seek to take off the

11   table.  It allows for competition on a level playing field where

12   it depends on who your chefs are, what quality and thread count

13   your sheets are, not whether or not you can ingratiate yourself

14   to the President.

15            THE COURT:  All right.  Mr. Shumate.

16            MR. SHUMATE:  Thank you, Your Honor.

17            If a could first take up this question of

18   jurisdictional discovery.  I think we're way ahead of ourselves

19   and they're forgetting where we are.  We're at 12(b)1 Motion to

20   Dismiss stage where the Court assumes the truth of all the

21   allegations in the Complaint.

22            The Court can assume as true in the allegation that

23   there is competition or that the Trump International Hotel

24   competes with their properties.  You can assume the truth of the

25   allegation that there are foreign diplomats staying at the Trump
```

1    International Hotel.  You don't need discovery to prove the

2    truth of that allegation.  That's the summary judgment stage.

3    You have everything before you that you need to decide whether

4    on the face of the Complaint, they have alleged sufficient

5    competitive injury, sovereign injury and quasi-sovereign injury.

6         It is getting far ahead of ourselves to start talking

7    about jurisdictional discovery, which they never asked for

8    before today, haven't filed a motion seeking it.  It would be

9    wholly improper to go down that road, to go down that road to

10   allow them to engage in a fishing expedition that doesn't help

11   the Court get across the 12(b)1 hurdle.  So we would urge the

12   Court to rule on the face of the Complaint on the allegations

13   that have been raised.

14        Now, they're the ones that have chosen to rely on the

15   Competitor Standing Doctrine.  They haven't tried to show

16   anti-trust standing or unfair competition standing which are

17   statutory standing cases.  And then the standing analysis may be

18   different in those cases.  That's the *Spokeo* case.  What they're

19   trying to get into the Competitor Standing Doctrine cases and

20   all they have alleged is there is competition between the two

21   properties.

22        But again, *Sherley versus Sebelius* case makes quite

23   clear that they have to prove -- they have to allege the basic

24   requirement common to all our cases, that the Complaint show an

25   actual or an increase in competition, which increase we

1   recognize will almost certainly cause injury in fact.  You would

2   only need discovery to try to prove past competitive injury, but

3   they haven't alleged that.  They only allege future injury.

4           It's unclear how discovery would help them in any

5   event prove future injury when they're just asking the Court to

6   draw inferences based on the nature of the market and the

7   government's involvement in the market.

8           Now, there was discussion of the *Bond* case in the zone

9   of interest test and some other cases where criminal defendants

10  and other defendants are using structural constitutional

11  provisions as a defense against the government that is

12  regulating them or seeking to prosecute them.

13          Just to state the facts illustrates the distinction

14  between this case and those cases.  This is not a case where the

15  government is seeking to regulate these plaintiffs.  This is a

16  case where they're trying to vindicate competitive injury by

17  relying on provisions of the Constitution that are intended to

18  ensure the President is independent, to ensure foreign -- excuse

19  me, federal officials aren't subject to corruption and undue

20  influence.  These aren't provisions that were intended to

21  protect them against competition.

22          Happy to answer any questions.

23          THE COURT:  All right.  Any more on this?

24          MS. ALIKHAN:  I have just three brief points.

25          THE COURT:  Go ahead.

1              MS. ALIKHAN:  Thank you, Your Honor.

2          I'll keep it brief.  I do only have three points.  The

3    first is that we're not asking for jurisdictional discovery.

4    We're asking for the regular discovery that proceeds after

5    plaintiffs withstand the Motion to Dismiss, as we believe we can

6    do here, because we have established an injury in fact that we

7    believe is traceable and redressable, and that is what

8    establishes standing.

9          Secondly, I want to read to you a path or passage from

10   the *Sherley* case, which I think does get at what we're talking

11   about here.  "The form of competitive injury may vary.  For

12   example, a seller facing increased competition may lose sales to

13   rivals or be forced to lower its price or to expend more

14   resources to achieve the same sales all to the detriment of its

15   bottle line.

16         Because increased competition almost surely injures

17   the seller in one form or another, he need not wait until the

18   alleged illegal transactions hurt him competitively before

19   challenging the regulatory or for that matter deregulatory

20   government decision that increases competition.

21         So to the extent Mr. Shumate and I agree on *Sherley*

22   being the relevant case for this Court, I believe it squarely

23   points in our favor.  And it is just one in a line of Competitor

24   Standing Doctrine cases that allow us to show by virtue of a

25   skewed marketplace for competition is a result of the

1    President's receipt of emoluments is enough to clear the

2    standing hurdle.

3           Now, the last thing I want to say is also a quote and

4    this is the *TrafficSchool* case which in turn relate back to

5    *Lujan*.  It talks about how evidence of direct competition is

6    strong proof that plaintiffs had a stake in the outcome of the

7    suit so their injury is not conjectural or hypothetical.

8           We have presented evidence of direct competition,

9    unrebutted testimony from experts that Maryland and District

10   businesses are in direct competition with the Trump

11   International Hotel.  That is all that is required to establish

12   standing under the competitive theory and that allows us to go

13   forward.  Thank you.

14          THE COURT:  All right.  Mr. Shumate, you want to say

15   one more thing?  Get the last squeeze here.

16          MR. SHUMATE:  No thank you, Your Honor.

17          THE COURT:  All right.  Well then, we are ready, I

18   think, to proceed to traceability and redressability.

19          And again, Mr. Sullivan, I think you're up on this.

20          MR. SULLIVAN:  Thank you, Your Honor.

21          Your Honor, I'm going to try to streamline what I had

22   prepared because I think a lot of the work of what I was going

23   to address on traceability has been gone over in the discussion

24   on the injury under competitive, competitive standing.

25          I would like to say that, of course, the

 1    quasi-sovereign interest in the Maryland and the District of

 2    Columbia's rightful status in the system, obviously, the

 3    traceability is built in because it's our allegation that the

 4    receipt of emoluments themselves, that is the cause of the

 5    injury that we sustained and it would be redressable if the

 6    Court orders it to stop.

 7         The other three theories that we have, our bases,

 8    *parens patriae*, tax loss and proprietary interest as we

 9    discussed at length just now all turn to some extent on

10    competitor standing theory and my colleague has explained how

11    that's completely supported in the case law.

12         So, if you accept that as the basis for the injury and

13    that's a legitimate way of showing your injury in fact, then as

14    we have indicated in our brief, under the competitor line of

15    cases that once you've established that part of it, that you're

16    in competition, causation and redressability requirements of

17    Article 3 are easily satisfied, because absent defendant's

18    action, the plaintiff competitors would not be subject to the

19    increased or unlawful competition.  And it's obviously --

20         THE COURT:  Are you citing a case?

21         MR. SULLIVAN:  Yes, it's *International Brotherhood*

22    *versus United States Department of Transportation*, 727 F.3d 206

23    at 212.  I believe that's a D.C. Circuit.  So -- and then it

24    becomes obvious and easily established that it's redressable by

25    telling that defendant to stop the activity causing the increase

1     from unlawful competition.

2              So really, the traceability for that part of the case

3     turns on whether the Court accepts what is a large body of case

4     law that does endorse this competitor standing theory,

5     including --

6              The Supreme Court did a similar thing in the

7     *Northeastern Florida Contractors* standing case which the

8     President would try to confine to Equal Protection bases, but it

9     was cited in *Clinton versus City of New York*, which is not a

10    Equal Protection case, but it was about what it takes to

11    properly enact legislation under Article 1.

12             In there the Supreme Court dropped a footnote about

13    causation and redressability basically saying, because it is the

14    loss of the opportunity to compete on equal footing that is the

15    injury, by its very nature that's going to be caused by the City

16    of Jacksonville's policy that created that unfair loss of equal

17    footing and to be redressed by an order to tell them to stop.

18    And that's at the *Northeastern Florida Contractors* case at 508

19    U.S. 656 at 666, Note 5.

20             So, basically, it becomes a less -- an onerous inquiry

21    if you understand the nature of the injury is the loss of the

22    ability to compete on equal footing, then it's traceable and

23    redressable.

24             Now, I would like to turn -- unless the Court has

25    further questions on the traceability.  Well, I would touch

1    briefly on what happens when as the President is doing and I

2    think a little bit of what Judge Daniels does.  When you switch

3    away from the competitor line of standing and start relying on

4    other type of cases, you may find more of an emphasis on the

5    need to show this traceability or redressability or imminence,

6    but those case are different in important ways and in similar

7    ways.

8           So if you look at their reliance on *Allen v. Wright,*

9    *Simon versus Welfare Rights* case, *Frank Krasner*, a Fourth

10   Circuit case, all of them involved a situation that courts have

11   been very reluctant to allow standing in.  And that is where

12   plaintiff sues the government claiming that a benefit is going

13   to a third person who is not in court.

14          And there's a long line of cases that makes it very

15   difficult for someone to come in and sue because somebody else

16   is either being given or denied a government benefit or a tax

17   break or something.  And this isn't that case, a quite different

18   case where the government officer himself is accepting or

19   receiving a benefit that he's not entitled to receive under the

20   law, which is a far, far different situation from what was in

21   any of those cases.

22          Similarly, the *Clapper* case that is cited multiple

23   times in the brief of the President involved whether, if ever,

24   the foreign intelligence surveillance court that had been set up

25   would ever take any action that would implicate the plaintiffs

1    at all.

2            And the court went through all of the speculative

3    steps and the different people who would be involved along the

4    way before it would ever be known whether this plaintiff would

5    have any involvement pertaining to the foreign intelligence

6    surveillance court.

7            Here we have, as I mentioned in the beginning, we have

8    allegations that are plausible of actual ongoing violations

9    taking place of these emoluments clauses, so it's a much

10   different situation.  But I would point out an important feature

11   of *Clapper* that goes to the redressability.  And this is a

12   feature you'll find in a number of the cases that the President

13   relies on.

14           And that is, the court goes to great pains in *Clapper*

15   to reassure itself and the rest of the populist that these

16   important issues are not going to escape review.  There's a long

17   part of the decision explaining all of the roots for a judicial

18   review that will inevitably lead to this challenge to the

19   constitutionality of the court that was set up would get

20   reviewed.

21           They wanted everybody to know, don't worry, there is

22   going to be review of this important issue.  That is directly

23   the opposite of what the President is arguing in this case.  His

24   argument is, nobody has standing and nobody can reach it.

25           That's not what the Supreme Court does in important

1    cases of public interest.  They want us to know that courts are

2    there to interpret the law and enforce the Constitution, and not

3    simply there to deny people a day in court.

4        But the President's argument is, when you add up all

5    the components, all the obstacles and roadblocks he throws

6    before the public and these plaintiffs here is an argument that

7    the issue cannot be addressed by the court, that that cannot be

8    correct.  And if knowing else of good comes out of this case, I

9    hope it is an assertion that, yes, our federal courts stand

10   ready and able to enforce the law.

11       Now, as to redressability, here I think the concerns

12   that the Court has touched on and that the President has raised

13   is more about whether it's possible at the end of the case to

14   issue a declaratory judgment and/or an injunction against the

15   President.  It definitely is and under well-established case

16   law.  The *Mississippi versus Johnson* case on which the president

17   relies heavily, itself says that nothing in that case reaches a

18   situation where the President has a simple duty to perform.

19       This is a simple duty.  Under both clauses, the simple

20   duty is, don't take the money as every one of his predecessors

21   have found a way to abide by.  And it's not an amorphous or

22   political or abstract.  In law there's very few things that are

23   more concrete than the allegation that the defendant is

24   receiving money to which he is not entitled.  And this Court has

25   had countless opportunities to adjudicate that very scenario and

1    there are people in prison who would be shocked at the notion

2    that the Court lacks the authority to determine whether

3    defendant properly received or accepted money to which he was

4    not entitled.

5            So the *Mississippi versus Johnson* doesn't do the work

6    that the President wants it to do.  And what you won't find in

7    his brief is a single case where a state or any other litigant

8    was denied the ability to enforce the Constitution against the

9    federal -- a federal official or a government where there was no

10   federal power or authority under the law being asserted as a

11   countervailing force.

12           There's no law the President cites that says, I have

13   an ability to accept these emoluments.  I have discretion to

14   decide when and where and how much I can accept.  There's no

15   such law.  All of the cases on which the President relies,

16   there's some area in which the President is operating within his

17   authority.

18           In *Mississippi versus Johnson*, it was to enforce the

19   Reconstruction Act, to remake the south after the armistice and

20   civil war, and the president had extensive duties to perform

21   under as Commander in Chief.  That is such a far cry from the

22   President who simply wants to keep the money he makes through

23   his extensive business empire.

24           Now, can there be a declaratory judgment against the

25   President?  That's beyond question.  In *Clinton versus City of*

1    *New York*, the court -- the Supreme Court issued a declaratory

2    judgment against President Clinton without any pause to say, I

3    wonder if we can do this.  It just was not -- it was not a

4    concern of the Court.  They affirmed the declaratory judgment

5    that was entered by the district court there.

6         In *Massachusetts versus Franklin*, which the President

7    relies on, a plurality of the judges were willing to accept that

8    there could be a declaratory judgment against the president.

9         And then another case, it's very interesting and it's

10   a thrilling read.  *National Treasury Employees Union* that's

11   cited in our brief against Nixon.  And there the claim was to

12   enforce a simple duty under the Federal Pay Comparability Act.

13        The Court goes to a long analysis to determine that,

14   yes, mandamus does lie against the President because there's

15   clearly no discretion not to obey the command of Congress to

16   implement this act.  And the Court reaches the point where it

17   says, you know, I can issue mandamus against the President, but

18   then stops and says, but at this time, quote unquote, I'm going

19   to say that the problem can be addressed through a declaratory

20   judgment leaving, you know --

21        When a judge says, at this time you need to be a

22   little bit worried because there's going to be another time.

23   But the court there recognized that mandamus would lie against

24   the president who is not complying with the simple duty and here

25   we have the simplest of all duties; don't take the money.

1          Now, have there been injunctions against presidents?

2  We cited two cases and all that the -- all that the President

3  has to say about that, well, that was temporary in nature, that

4  kind of relief.  But the Supreme Court has clarified in recent

5  years, in the *Winter* case, in *eBay* and *Microsoft* that there's

6  really no difference in the analysis between temporary relief

7  and permanent except likelihood of success becomes definite

8  success.  Otherwise, it's the same considerations that the Court

9  goes through in determining whether to have temporary

10  preliminary relief.  So there is really no separation of power

11  or other argument that could explain why it would be okay to

12  temporarily enjoin the president, but not permanently.

13          Now, in a case that we all probably remember in one

14  form or another, *Clinton versus Jones*, there the allegations

15  were about acts that the president had allegedly done before he

16  became president.  And his argument was that courts can't

17  proceed on this while I'm president, I'm immuned.

18          Well, that was rejected, but in the course of holding

19  that the president was not entitled to immunity or a stay of an

20  action pertaining to his actions before he became president, the

21  court -- they addressed these concerns and went through a litany

22  of prior cases and determined that courts had imposed serious

23  burdens on presidents in the past, even in cases where they were

24  performing their official duties.

25          So the opinion concluded all the more reason to

1   believe when a president is acting beyond his official duties,

2   such as in his private life, there's really no restraint on the

3   court in what it can do to remedy that problem just as it would

4   with a private litigant.

5           So, there really is no there there in the President's

6   argument that the President cannot be subject to declaratory

7   judgment or injunctive relief.  He certainly can be and if this

8   Court determines at the end of this case that there has been

9   these violations, he certainly should be subject to declaratory

10  judgment and an injunction.

11          Now, as to the scope of remedy, the Court addressed

12  some concern about would it have to become the world

13  multi-district court for all the various transactions that might

14  have occurred?  The answers is, no, because the Constitution is

15  framed so that the person that the Constitution cares about is

16  the president.  And the only person regulated by the emoluments

17  clause is the officer who is enjoined not to except or receive

18  the emoluments.

19          So as long as you have that officer in court, you have

20  all of the authority you need and available means to craft a

21  remedy that will satisfy the concerns of the Constitution and

22  eliminate the constitutional violation.

23          And the case can most certainly be conducted in a way

24  that will respect the reasonable limitations on what one court

25  should be expected to do and we can go about whatever is needed

1    to proceed in a way that will not be, we believe, unduly taxing

2    on the Court or the litigants.

3          And the Court certainly has the authority to determine

4    as the facts are brought to court in the form of actual evidence

5    the extent of an injunction that might be necessary at the end

6    of the case.

7          THE COURT:  Let me just run through some of those

8    possibilities because you hear about it or read about it all

9    around.

10          We've heard divestment and the question would be,

11   divestment of what?  Maybe not to partake of certain revenues to

12   certain enterprises, setting up a trust of some sort, a blind

13   trust if it doesn't exist already.  Appointing monitors, first

14   of all, people to verify the extent to which payments have been

15   made to the President.  Setting up someone to continue to

16   monitor whether or not such payments are continuing to be made.

17   Is all that in the mix possibly?

18          MR. SULLIVAN:  Well, that's certainly within the

19   Court's arsenal.  Whether one or more might be necessary, I

20   think is going to need to await that state of the case where we

21   can tell, for one thing, is the President going to indicate, I

22   will fully abide by a declaration.  No need for injunction

23   because I have just now taken the following steps such that my

24   predecessors have taken to ensure that I'm not in violation of

25   these clauses.  That sometimes happens.

1        I'm sure our office has come before you before and

2   said, Your Honor, Your Honor, before you get to the injunction

3   part, we're going to fully comply because we comply with court

4   orders.  So that might be the state of affairs.

5        It might be a recalcitrant president that the Court

6   faces, in which case maybe additional steps would have to be

7   made to make ensure that the president does take the measures

8   that are necessary.

9        I think in prior presidencies, there have been blind

10  trust that have been effected and other means.  I think the

11  lease for the post office is some indication that it's really

12  not unreasonable to insist on something like this because in the

13  clause that the General Service Administration drew up, it

14  clearly says that no elected federal official can have any

15  participation or benefit from --

16       THE COURT:  Is the Court authorized in this case, you

17  think, to reverse that somehow or what do I do?  That may be

18  part of the background, but is that before the Court to

19  challenge that reversal?

20       MR. SULLIVAN:  I think the enterprising, very much

21  wiser attorneys I'm working with could probably come up with the

22  explanation why you could.  I don't have it with me at the

23  moment, but I think there could be some difficulty getting at

24  that because of the administrative nature and combination of

25  administrative and proprietary interest of the General Services

1    Administrative, but I don't think --

2            I was just using that as an example of what seemed to

3    be at the time General Services Administration thought was a

4    reasonable limitation to put on federal officials.  So it

5    doesn't seem like the steps that would be necessary would

6    necessarily be something so strange and onerous that the Court

7    wouldn't feel comfortable imposing on the President and,

8    perhaps, the President might not object to.

9            But I think it's -- I think it's safe to say that

10   there are going to be steps that the Court could take that are

11   going to be reasonable that will redress the problem.  It's

12   harder to say at this point what the exact parameters of that

13   might be and what the Court might say in its wisdom is the best

14   way to go at this.

15           THE COURT:  And would the Court be asked to consider

16   potentially the suggestion that, why don't you just give it all

17   to my sons?  I won't take any now, but when I'm out of office

18   I'll take whatever I earned during that -- during my tenure.

19           MR. SULLIVAN:  I don't think that would measure up

20   with what previous presidents have been told by the Office of

21   Legal Counsel is sufficient to protect against emoluments

22   violations.

23           THE COURT:  Meaning what, that they could accrue

24   independently and then recoup it all later?

25           MR. SULLIVAN:  Well, there's the ownership interest

1    which, you know, how bad is it if you're earning all that money

2    and you know you're earning all that money, it's very hard to

3    distinguish that from just directly having it and not having

4    given it to the sons.

5            THE COURT:  Well, I'm not holding you to this.  I'm

6    trying to understand the range of potential redressability when

7    I pose all these questions to you to see what injunction

8    potentially means.

9            MR. SULLIVAN:  Well, I think at a minimum, it has to

10   measure up to what the predecessors have done.  I think that

11   would be a good gauge to look at what they have been advised to

12   do and have done willingly on the advice of Office of Legal

13   Counsel and I will give the Court, I think --

14           There's not going to be anything close to the

15   magnitude of the operations that President Trump has.  I think

16   that's pretty obvious and the Court has probably already

17   realized that.  But we do have Office of Legal Counsel opinions

18   going a long way back that have addressed a number of scenarios.

19   And we have plenty of presidents to look back at and how they

20   handled whatever assets they had coming into office and what

21   they did to protect against an emoluments violation.

22           THE COURT:  All right.

23           All right.  Mr. Shumate.

24           MR. SHUMATE:  Please the Court, I'd like to make four

25   points on traceability and redressability.  My first point on

1    traceability is to focus on the theories of harm related to

2    competition.  Now, this is loss of tax revenues, competition

3    with businesses in D.C. and Maryland, and the proprietary

4    interest claims.

5           All of these claims are -- fail traceability because

6    they all depend on independent actions of third parties that are

7    not before the Court that break the chain of causation.  Fourth

8    Circuit case law is quite clear on this point that, quote,

9    traceability and redressability problems become problematic when

10   third persons not parties to the litigation must act in order

11   for an injury to arise or be cured, end-quote.

12          If I can speak for a minute about the *Krasner* case

13   which we talk about in our briefs.  It's a Fourth Circuit case

14   involving a challenge by a gun seller to a county law in

15   Maryland that restricted public funding of facilities that host

16   gun shows.

17          And so the gun seller that wanted to participate in a

18   gun show brought a challenge to the county law and the court in

19   that case said that that injury is not traceable to any conduct

20   of the county government that had passed the law restricting

21   funding to facilities that would host gun shows, because there

22   is an independent action of a party that broke the chain of

23   causation.

24          The third party was a non-profit facility that would

25   host the gun show could make an independent decision whether to

1    host the gun seller or not.  That is the same problem we have in

2    this case.  We have third parties standing between the president

3    and the plaintiff's businesses that break the chain of

4    causation.

5           There are third parties that have to make decisions

6    about where to stay and where to eat.  And it's entirely

7    speculative whether they make the decision to stay at the Trump

8    International Hotel because they want to confer emoluments on

9    the President or because they want to stay there because it's a

10   --

11          THE COURT:  But we have evidence from some that that's

12   why they are staying there.  You seem to be arguing that because

13   foreign governments may always have the choice that you can't

14   enforce the clause ever.  And yet, it says foreign governments

15   can't make these payments assuming emoluments means what the

16   plaintiff says.

17          Your arguments seems to just completely destroy the

18   clause, because you've got foreign governments making payments.

19   That's not what it means by third parties, is it?  How do you

20   justify that?

21          MR. SHUMATE:  Those are the third party customers that

22   break the chain of causation.

23          THE COURT:  Yeah, but how would you ever go after

24   anybody, any officer that took contributions, presents,

25   emoluments, whatever the litany is there by a foreign

1   corporation?  They are all by definition third parties, so the

2   constitutional clause would be meaningless, wouldn't it?

3          MR. SHUMATE:  This is a question of standing, not a

4   question of how to interpret the clause.

5          THE COURT:  Well, does anybody ever have standing

6   based on your argument?

7          MR. SHUMATE:  Just because we can't think of somebody

8   who might have standing --

9          THE COURT:  Well, what about -- now, talk about this.

10  There's a clause that says that foreign governments shouldn't

11  pay emoluments, assuming emoluments means some sort of benefit

12  or gain.  And you're saying, well, because they are third

13  parties, they really can't go forward.  You don't really mean

14  that, do you?

15         MR. SHUMATE:  I mean that because of traceability

16  element they can't solve.  They can point to allegations that

17  maybe the Ritz or the Four Seasons are harmed, but that's not

18  their injury.  They can't point to any examples of where foreign

19  diplomats have decided, we're not going to stay at the Gaylord.

20  We're going to stay at the President's hotel because he's the

21  president and we want to confer emoluments on him.

22         There are third parties that break the chain of

23  causation and the Court can't predict how they will act or what

24  decisions they will make.  The declarations submitted by the

25  plaintiffs make this very point.  Markets are unique in the

156

 1  sense that there are so many different factors that go into why

 2  somebody stays at a hotel.  Could be location, quality, service,

 3  price.  One additional factor could be it's the President's

 4  hotel, but Judge Daniels acknowledged this and discussed it --

 5        THE COURT:  Don't cite Judge Daniels to me.  You make

 6  your own argument and let it stand on its own right here in this

 7  court, okay.

 8        MR. SHUMATE:  Sure.

 9        THE COURT:  Go ahead.

10        MR. SHUMATE:  My argument is reliant on binding Fourth

11  Circuit precedent.  Where there's an independent third party

12  standing between the plaintiff and defendant that the Court

13  cannot control and has independent discretion, that breaks the

14  chain of causation and there is no traceable injury to the

15  defendant's conduct.  And they haven't explained how -- how to

16  address the fact that there are independent decision-makers who

17  can decide for themselves why they want to stay at the

18  President's hotel.

19        THE COURT:  And how is that different from any payment

20  by a foreign government to an official for whatever reason?

21  There's always a third party by definition, a foreign

22  government.

23        MR. SHUMATE:  But we're talking about business

24  competition.  That's what this theory is all grounded on.  The

25  fact they are concerned that they are having to compete with the

1   President's businesses.  So they're saying there's a direct

2   injury to them simply because the President has an ownership

3   interest in the Trump International Hotel, one business that's

4   skewing the market.

5        Well, there are third parties that can make decisions

6   about where to stay and where to eat.  The Court can't control

7   them.

8        THE COURT:  But if there are third parties who are

9   making the decision to stay at the hotel because it's the

10  President's hotel, what does that do to your argument?  Not all

11  parties all the time, but some parties some of the time are

12  staying at the hotel according to the allegation.

13       MR. SHUMATE:  If they could allege that they were

14  suffering an injury and that foreign customers were not staying

15  at their properties because -- because they wanted to confer

16  emoluments on the President, that would the a very different

17  case, but that's not this case.  They point to the Ritz and the

18  Four Seasons, but that's not them.  That's not their properties.

19       THE COURT:  They're saying, I think, that it's

20  plausible that it could well be their properties because of what

21  they've seen in the instances that you just cited.  I think

22  that's what they're saying.

23       I'll let Ms. Alikhan or Mr. Sullivan rather respond to

24  that.

25       MR. SHUMATE:  They want the Court to draw an inference

1   that it's plausible, but the standard for traceability is it has

2   to be fairly traceable to the defendant's conduct.  And my point

3   based on controlling Fourth Circuit precedent is that there is

4   an independent decision-maker not before the Court, that the

5   Court cannot control that has independent discretion about where

6   to stay and what to do.  And they're asking the Court to draw

7   inferences based on facts that are not in the Complaint about

8   why people might stay at the President's property rather than

9   their property.  But there's no allegation that foreign

10   diplomats are ignoring the Gaylord because they want to go

11   confer emoluments on the President.

12        THE COURT:  They are ignoring other places, other

13   facilities in the area to stay at the President's place because

14   it's his place.  Now, they're suggestion is not necessarily

15   immediately our place, which would be a pretty good argument,

16   but other places like ours.  And, therefore, we think we should

17   be able to go forward.

18        MR. SHUMATE:  Their allegation is, me too.  We're like

19   the Ritz and we're like the Four Seasons, so you should infer

20   injury just like their injury, but they're not in this case.

21   That is a different case.  That is not this case.

22        The Court shouldn't infer an injury that is similar to

23   somebody else that may have an injury, but that's not this case.

24   That is just pure speculation about whether these plaintiffs.

25   Again, the injury must be particularized.

1          THE COURT:  Well, you heard the argument, though, back

2     when now on traceability or earlier that, you know, you don't

3     have to show the specific loss immediately, but you have to show

4     whether it is the certainty of a strong likelihood.  I mean,

5     we're banding words around here, but there seems to be a

6     difference.

7          You're wanting the hard and fast proof right now that

8     there's been a diversion and they're saying, well, it's pretty

9     close.  We're almost there and here is why.  That's what they

10    say and you say, not enough, insufficient.  That's where I have

11    to, I guess, make the decision.

12         MR. SHUMATE:  Well, I think again, let's draw a

13    distinction between past harm and future harm.  For the

14    competitive injury claims, they're not saying they have suffered

15    harm in the past and they're asking the Court to remedy that

16    harm.  They're saying, we are concerned that we face imminent

17    loss of business to the Trump International Hotel.

18         THE COURT:  Well, could they amend to say that, that

19    we now are alleging past harm and we'll -- we're also alleging

20    present and future harm?  Would that change the outcome?

21         MR. SHUMATE:  Well, if they want a do-over, that would

22    be a fact -- a different fact.  That would be a different case,

23    but not on these facts.

24         THE COURT:  Maybe they could.  I'm just trying to

25    understand where you coming at.  You're saying they may with

1   some sort of discovery, assuming what they said here to fore is

2   plausible, show that in the past there has been a diversion.

3          MR. SHUMATE:  I think it would be a very different

4   case if they could plead in a Complaint that there was a foreign

5   diplomat that had a reservation at the Gaylord and then

6   transferred that reservation to the Trump International Hotel

7   and told us they were doing that because, well, he's the

8   president now and I want to go line the President's pockets.

9   That would be a very different case, but they don't have those

10  effect.  They are alleging future injury.

11         THE COURT:  Well, they're saying that there are other

12  comparable hospitality facilities that do fit that mold.

13         MR. SHUMATE:  So there maybe other businesses that are

14  suffering injury in fact, but that is not a particularized

15  injury to these plaintiffs.

16         THE COURT:  All right.

17         MR. SHUMATE:  My second point, I think is related to

18  this is redressability.  For similar reasons, because of the

19  independent presence of third parties, the Court can't redress

20  plaintiff's injuries.  It is entirely speculative what effect an

21  injunction would have on any competition that is being faced by

22  the plaintiffs.

23         So, even if the Court were to enter an injunction,

24  government customers may still patronize the Trump International

25  Hotel, because his name is on the property or because they like

1    the sheets, they like the price, they like the location.

2             THE COURT:  I'm not sure they can do much about that,

3    but they want to say, but you partake of it, Mr. President.

4    Don't you partake of any of those revenues.

5             MR. SHUMATE:  But how does that cure their competitive

6    injury?  Not one bit.  They're claiming they're being faced

7    with, basically, unfair competition because the President's mere

8    ownership interest in that property is an unfair advantage and

9    they can't compete on an equal playing field.

10            So let's say the Court says, okay, take away that

11   unfair advantage.  Mr. President, divests yourself of the Trump

12   International.  So what?  People are still going to go to the

13   Trump International Hotel.

14            In fact, I think it's implausible to think that just

15   because the President files some paperwork, people will stop

16   going there.  It's entirely speculative and remember,

17   redressability must be likely, not speculative.

18            So, move to my last point.  I'm going to skip over

19   the third point.  The last point I wanted to make is about the

20   Court's power to issue injunction against the President, which

21   my colleague spoke a lot about.

22            Our point is that the Court cannot remedy any injury

23   that the plaintiffs may be suffering because the Court lacks the

24   power to issue injunctive or declaratory against the President.

25   Again, I'll point the Court to *Mississippi versus Johnson* in

1    which the court --

2           THE COURT:  What's the year of that case, 18

3    something?

4           MR. SHUMATE:  1867, which the Supreme Court relied on

5    in *Franklin versus Massachusetts*; in 1992 -- and if I could read

6    from that opinion, Your Honor, I think that --

7           THE COURT:  In Mississippi or Franklin?

8           MR. SHUMATE:  *Franklin versus Massachusetts*, 1992.

9    Quote, while injunctive relief against executive officials like

10   the Secretary of Commerce is within the Court's power, the

11   District Court's grant of injunctive relief against the

12   President himself is extraordinary and should have raised

13   judicial eyebrows.

14          In general, quoting *Mississippi versus Johnson*, this

15   court has no jurisdiction of the ability to enjoin the President

16   in the performance of his official duties.

17          THE COURT:  Official duties.

18          MR. SHUMATE:  At the threshold, the district court

19   should evaluate whether injunctive relief against the President

20   was available --

21          THE COURT:  What about his private profiteering,

22   private receipt, could they -- does that decision preclude an

23   injunction for receiving monies privately independent of his

24   official function?  You have conceded that this is not part of

25   his official function, the monies that he receives.

```
 1              MR. SHUMATE:  I have not conceded that, Your Honor.

 2              THE COURT:  I thought you just said that in your

 3    brief.

 4              MR. SHUMATE:  Well, the case law draws the distinction

 5    between discretionary acts of the President and ministerial acts

 6    and that's, I think, the distinction that my colleague raised.

 7    And so, the question really is whether would the Court have to

 8    enjoin a discretionary act of the President, and I think --

 9              THE COURT:  As president.

10              MR. SHUMATE:  And the clause is only applied to the

11    President as president.

12              Now, we were talking about the types of injunctions

13    the Court might have to issue here.  I think we're getting way

14    ahead of ourselves, but that discussion itself shows the

15    separation of powers concerns inherent in issuing that type of

16    relief against the President.  They're asking the Court to be in

17    position of supervising the President's business affairs.

18              That raises squarely the concerns raised by Franklin,

19    other cases and Justice Scalia and his concurring opinion.

20              THE COURT:  Why are you citing Scalia in a concurring

21    opinion?  Why is that supposed to persuade me?

22              MR. SHUMATE:  Well, because he addressed the

23    declaratory relief issue that the majority -- that plurality did

24    not.

25              So it's not controlling, obviously, but it is a useful
```

1   discussion of the fact that declaratory relief also raises the

2   same concerns about pitting two branches of government on a

3   collision course.  And so, they name a number of cases where

4   they suggest, well, courts issue injunctions against the

5   president all the time.  I think one of them was *Clinton versus*

6   *New York*.

7        And, yes, it is common for a court to issue injunction

8   where there are multiple defendants.  The president may be one

9   of them, but the Court can get around this concern about issuing

10  an injunction against the president if there are subordinates

11  who the court can enjoin.  And in that *Clinton versus New York*

12  case, it's quite clear that it was a case against the President

13  and other officials challenging a federal statute, the Line Item

14  Veto Act.

15       This is very different.  This is a case where the only

16  defendant is the President.  They're asking the Court to issue

17  an injunction against the sitting President of the

18  United States, to declare his conduct unlawful.  And for the

19  court to supervise his conduct, to require him to divests or do

20  a number of other things that they speculated about today that

21  is really inappropriate.

22       These are not ministerial actions, don't accept the

23  payments.  No, we talked about a lot of different things that

24  would require a lot of discretionary acts and it's not something

25  that really any court has ever done, nor should this Court, Your

```
 1   Honor.

 2           THE COURT:  All right.

 3           MR. SHUMATE:  Thank you.

 4           THE COURT:  Brief response, Mr. Sullivan.  Then we'll

 5   take a short response and then wind up.

 6           MR. SULLIVAN:  You want to take a short break?

 7           THE COURT:  No, you finish it.

 8           And, Ms. AliKhan, we'll come back for your closings.

 9           MR. SULLIVAN:  So, received a lot of mail during the

10   President's argument.  I'm going to try to do justice to what

11   the gallery thinks I should have said.

12           THE COURT:  I see your boss out there, sort of.

13           MR. SULLIVAN:  I don't know where this fits in the

14   whole scheme of things in the President's argument, but they

15   seem to talking about these third parties that -- they are the

16   ones that have the real claim and the real cause and whatnot,

17   but they --

18           The President argued in New York that the competitors

19   there, prior competitors had no standing.  So it's really kind

20   of -- I think it gets back to them saying that no one can ever

21   have this reviewed.

22           Now, as Bullwinkle used to say, fan mail from some

23   flounder.

24           Now, there's mention of Ritz and Four Seasons being

25   irrelevant.  No, they are part of the industry that's protected
```

1    in the District's *parens patriae* claim.  So, harm to them if

2    they're losing competition to Trump Hotel, it's part of the

3    total damage to the economy that the District is asserting in it

4    *parens patriae*.  So, they're not irrelevant to the claims that

5    are here as the President would have argued.

6         The motive involved in this case is simply irrelevant

7    to the constitutional provisions that are being asserted.  The

8    only thing the Constitution cares about is the president cannot

9    receive or accept the emoluments for whatever reason.  Whatever

10   was in his mind, whatever was in the mind of the donor is

11   irrelevant.  It's just the receipt and acceptance that is

12   barred.  And the Court need not inquire or worry about the

13   reasons why.  That's just the way the Constitution is intended

14   to be enforced.

15        Getting back to the question about, is there anything

16   the Court can do about the General Services Administration lease

17   for the post office.  The Court could in a declaration declare

18   that the circumstances under which the administration changed

19   its position constituted an emolument to President Trump.

20        May be a question at that point what the Court wants

21   to do further about that, but it's hard to think of any legal

22   reason why the Court couldn't so rule if it determined that it

23   qualified under the meaning, emolument, as this Court will

24   determines as it get to the merits.

25        Now, when we talked about the scope of injunction, I

1    think this was touched on, but again, there could be scenarios

2    where the means of implementation could be left to defendant.

3    That certainly happened before for the State of Maryland.  There

4    had been courts that have strongly suggested that we take

5    certain steps and we have proceeded to craft our own remedy.  So

6    certainly, the President may be capable of such a thing with the

7    guidance of this Court and declaratory judgment.

8              Now, see if I get the rest of my mail.

9              THE COURT:  Well, they've made this statement about,

10   you can't enjoin a president acting in his official capacity,

11   which seems to circle back to my concern about exactly what

12   capacity are we confronted with here?

13             MR. SULLIVAN:  Well, I think we are going to address

14   that.  My colleague said that we're perfectly happy to amend the

15   Complaint to, to sue the President in his personal capacity as

16   well.

17             We would seek the Court's guidance on the timing of

18   it.  We're willing to do it post haste in the next couple days.

19   If the Court would prefer that we wait, we can do it either way.

20   We would like to move it as expeditiously and efficiently as we

21   possibly can.  I don't know whether there's anything that the

22   President would want to raise in addition to what he's already

23   raised if we simply amend it to change it to personal capacity.

24             You might want to ask Mr. Shumate, but we're prepared

25   to make that amendment as quickly as possible if the Court will

1   grant leave and if the Court think that's the best scenario to

2   address that.

3           THE COURT:  All right.

4           MR. SULLIVAN:  But it certainly does -- that issue is

5   very important because the President cannot, cannot come to

6   grips with what the court said in *Clinton v. Jones*, which is

7   even if you're acting in your official capacity, president, our

8   cases say that we can have jurisdiction over you.  *Fitzgerald*

9   clearly says, there's nothing to bar a court from exercising

10  jurisdiction over the president.

11          And other cases have -- starting with Justice Madison

12  when he was still a trial court judge issuing a subpoena against

13  Thomas Jefferson.  You know, it started a long time ago, our

14  courts have had the ability to tell the president what to do if

15  the law compels it.  So, there's certainly --

16          Once the president is acting outside his official

17  duties and the acceptance of money through his personal

18  businesses cannot -- is not colorably within the powers of a

19  president.  To make that -- it would make the distinctions drawn

20  in *Clinton v. Jones* just meaningless because that really does

21  take into his private life and his private fortune.

22          And the President himself, as pointed out earlier by

23  my colleague, has said in the course of his briefing that the

24  income he derives from his business has nothing to do with his

25  service as president.

1          So, that argument that the president can't be enjoined

2    in his official duties, one, is wrong as a matter of law

3    according to the Supreme Court; and two, is wrong as a matter of

4    the facts of this case, because he's not in any sense of the

5    word acting within his duties as president.  When he accepts

6    emoluments, he's acting in contravention of his duty as

7    president when he accepts emoluments, which is a much different

8    thing.

9          THE COURT:  All right.  Any further?

10          MR. SULLIVAN:  I have one further thing, a confession

11   that there was more in our Complaint about the -- about the

12   conference center.  An authority established by --

13          THE COURT:  I thought so.  I thought there was some

14   reference to that.

15          MR. SULLIVAN:  An authority established by Montgomery

16   County government owns land.  They lease part of it to the hotel

17   and the County has a management committee that oversees the

18   activities and the conduct of the conference center.  So I think

19   there may be some question -- and again, more details might be

20   useful to the Court, but there may be some question whether a

21   real estate ownership, plus management committee authority

22   combined would satisfy the Court that there's enough of a

23   proprietary interest there.

24          THE COURT:  All right.  I suppose if they're receiving

25   any kind of revenue by consequence of that it would be relevant.

```
 1                All right.

 2                MR. SULLIVAN:  Unless there's no further questions.

 3                THE COURT:  All right.  Mr. Shumate, you want to

 4     respond quickly and then we'll --

 5                MR. SULLIVAN:  I think you said, Your Honor, that you

 6     were going to take a short break.

 7                THE COURT:  We are -- I want to just hear on this last

 8     point of traceability and redressability, and then I'll give you

 9     a chance to, sort of, make your last pitch.

10                MR. SHUMATE:  Three points just very briefly, Your

11     Honor.  To respond first to this point about amending the

12     Complaint to add a claim against the President in his personal

13     capacity, we think it's improper and also doesn't solve any of

14     the standing --

15                THE COURT:  Why is it improper?

16                MR. SHUMATE:  Because such a suit can only be brought

17     against the President as president.

18                THE COURT:  Well, maybe you'll need to be -- to refile

19     something, but right now a lot of what they're saying sounds

20     like it's the President acting in his individual capacity.

21                Look, when you look down the road on a case like this,

22     if it stays in court, it would be, I think, sort of a technical

23     glitch if for some reason an appellate court or even the Supreme

24     Court said, oh, too bad you sued in his official capacity.  You

25     should have had individual capacity.
```

1    Well, that possible glitch is covered if they amend,

2    so it's really not impermissible.  We do it all the time on

3    motions to dismiss.  You say, it's impermissible.  I don't

4    really buy that, unless I've operated wrong for the last 32

5    years.

6         MR. SHUMATE:  Your Honor, I cite it from the question

7    of whether it would be permissible or proper, it just doesn't

8    get them anywhere.  It doesn't solve any --

9         THE COURT:  Well, you may need to come back and say

10   that, but I've heard arguments today that a lot of what they're

11   saying is individual.

12        Anyway, go ahead.

13        MR. SHUMATE:  My second point, there was some

14   discussion of declaratory relief against the President.  The

15   only point I would make is if the Court decides not to issue an

16   injunction, but only declaratory relief, that would only be an

17   advisory opinion.

18        To the extent the President voluntarily decided to

19   comply with the Court's declaratory judgment and interpretation

20   of the Emoluments Clauses, that would be a decision that he

21   makes independently without the Court's judgment to back it up.

22   It really is nothing but an advisory opinion besides --

23        THE COURT:  Well, what if I were to say, well, here is

24   my declaratory decision, let's wait for the next three months

25   and see what happens?  Then maybe I'll -- then maybe I'll grant

1    injunctive relief.  I mean, that's really what it comes to.  It

2    may well be that.  I don't know.  I mean, we're not really

3    there.

4         The question now on redressability is, you know, is it

5    within the realm of plausibility to get us to the next step?  I

6    don't have to definitively decide that, yes, it would be this

7    form of injunctive relief if, as and when.  It may be some form

8    when.  May never get to that point.

9         MR. SHUMATE:  I just want to be clear, Your Honor,

10   however, we're talking about redressability.  Redressability

11   must be likely, not plausible.

12        In my closing remarks, I can talk about the injury in

13   fact standard, but I just want to be clear, has to be likely

14   rather than plausible.

15        THE COURT:  Okay.

16        All right.  Let's take about a seven or eight minutes

17   break.  We'll come back and give you a chance to very briefly

18   summarize; ten minutes for plaintiff, plaintiffs; 15 minutes for

19   defendant; five minutes rebuttal, plaintiff.

20        We'll see you then, about seven or eight minutes.

21      (Brief recess.)

22        THE COURT:  All right.  Time for remarks first from

23   plaintiff, Ms. AliKhan, ten minutes.

24        MS. ALIKHAN:  Thank you, Your Honor.

25        Just over a year ago, the defendant took a solemn oath

1   to faithfully execute the office of President of the

2   United States and to preserve, protect and defend the

3   Constitution.  Central to that vow that the President himself

4   comply with the Constitution, including the Domestic and Foreign

5   Emoluments Clauses.

6          Plaintiffs Maryland and the District of Columbia have

7   brought suit because they are injured by the President's

8   non-compliance with the Emoluments Clauses.  And as they have

9   argued today, they have standing on three or on four

10  independently sufficient grounds.

11         There are three prongs of the standing analysis and

12  there are four bases of standing.  I don't want to go through

13  them at length, but to touch on what I think are a few notable

14  points.

15         First, with regard to our injury as equal sovereigns,

16  we have established that when the President accepts whether

17  domestic or foreign emoluments, it injures our rightful status

18  vis-a-vis other states and it threatens our position within the

19  national government, vis-a-vis foreign entities.

20         Tellingly, the federal government today did not

21  address whether or not that injury could be traceable and

22  redressable.  And I believe that is because in order for the

23  President to comply with the Constitution and not receive

24  emoluments puts us back on the equal footing, puts us back in a

25  place where we should be.  Therefore, I believe that we are

1    injured, it is traceable to his conduct and it is redressable by

2    order of this Court.

3            As for the *parens patriae* and the Maryland tax

4    arguments, we know that there is injury.  We know that

5    businesses are moving their business to -- foreign diplomats are

6    moving their business to the Trump Hotel.  We know that from the

7    Bahrain example.  We know that from the Kuwait example.  We also

8    know that states are taking their business to the Trump

9    International Hotel as the Maine example elucidates.

10           In addressing the traceability and redressability, the

11   government relies on third parties.  They say, well, they might

12   choose to go there anyway.  That may very well be true, but if a

13   president is going to be prohibited from accepting emoluments,

14   that relieves the harm to the competitive marketplace because it

15   puts the Trump International Hotel on equal competitive footing

16   with all of their businesses in the District and in Maryland.

17   And it allows the marketplace to be one of the quality of the

18   facilities, the amenities that are offered and takes off the

19   table the ability to grease the President's palm by paying him

20   emoluments.

21           As to the proprietary argument, we believe that both

22   Maryland and the District of Columbia have properties that

23   compete with the Trump International Hotel and we think the

24   Rajinski declaration, unrebutted expert testimony contained

25   therein sets forth plausible, if not concrete allegations that

 1    is that case.

 2           Now, if this Court is troubled by the Montgomery

 3    County Convention Center, that is no worry because if the

 4    District has standing based on the Washington Convention Center,

 5    that proprietary standing can carry both parties in this

 6    litigation.

 7           I want to say one word or maybe a few words on

 8    official versus individual capacity.  President Trump accepts

 9    emoluments as president.  An order directing him to comply with

10    his Constitutional obligations not to accept these emoluments

11    would remedy the conduct.  We think that this isn't a problem

12    that happens within his official capacity, because these clauses

13    apply to him in his official capacity.  And we think an order

14    directing him to comply with the clauses in his official

15    capacity would redress and remedy this injury.

16           However, if this Court feels that we also need to

17    bring a case against him in his individual capacity, we

18    certainly will do so and are prepared to do so.  But I will say

19    that we do believe because these injuries exist because he is

20    president, that's what makes all his enterprises different now

21    than they were on January 19th, 2017, that this is most properly

22    conceived of as an official capacity suit.  Plaintiff thus asks

23    that this Court deny Defendant's Motion to Dismiss and allow the

24    case to proceed.

25           If the Court has any questions, I'm happy to answer

1    them.  If not, I will reserve my time for rebuttal.

2              THE COURT:  All right.  Mr. Shumate.

3              MR. SHUMATE:  Thank you, Your Honor.

4         May it please the Court, just a few points to close

5    today and I'd like to start with the standard that the Court

6    must apply in evaluating whether the plaintiffs have established

7    an injury in fact.

8         Now, they have asserted a number of factual

9    allegations and they have asked the Court to draw a number of

10   conclusions.  It's not enough for the Court just to speculate

11   about what the ultimate injury might be or to think that these

12   allegations may be plausible.

13        I want to go back to the *Clapper* case and read what I

14   think, language that is squarely on point that provides the

15   Court the standard that must apply.  This is from the *Clapper*

16   case. Quote, respondents assert that they can establish injury

17   in fact that is fairly traceable to Section 1881(a) because

18   there is an objectively reasonable likelihood that their

19   communications with their foreign contacts will be intercepted

20   under Section 1881(a) at some point in the future.

21        This argument fails.  As an initial matter, the Second

22   Circuit's objectively reasonable likelihood standard is

23   inconsistent with our requirement that threatened injury must be

24   certainly impending to constitute injury, end-quote.  That's

25   from the *Clapper* case.

1          From Fourth Circuit in a case called *Beck versus*

2    *McDonald* we cited on page 9 of our brief acknowledges that this

3    requirement of certainly impending injury is well-established,

4    it's hardly novel and that is the standard that they must

5    establish in order to have an injury in fact here.

6          The other point I'd like to make is that -- this come

7    from the Virginia case -- that the states are not roving

8    constitutional watchdogs.  And ultimately, that is essentially

9    what they're asking this Court to permit.  They're asking them

10   to permit the Court to proceed on a claim that the President is

11   violating the Emoluments Clauses and that they have a different

12   interpretation of the Emoluments Clauses.

13         That at its core is a political dispute between the

14   federal government and the state.  And they must establish some

15   concrete, particularized, imminent harm to bring that claim and

16   ultimately they have failed to do so.

17         Now, I want to acknowledge the Court's concern about,

18   well, if these plaintiffs don't have standing, then who would

19   have standing and who falls in the zone of interest?  I would go

20   back to this *Schlesinger* case.  Now, this is 418 U.S. 208 and at

21   the end of the opinion the Court acknowledges this concern about

22   generalized grievances or this is bad -- these are bad things

23   that the government is doing.  Who is going to be able to sue to

24   bring this claim?

25         So what the Court says is, quote, our system of

1 government leaves many crucial decisions to the political

2 processes.  The assumption that if respondents have no standing

3 to sue, no one would have standing is not a reason to find

4 standing, end-quote.

5          That's the same analysis we would urge the Court to

6 apply here.  This is ultimately a political dispute.  Should be

7 left to the political process in the absence of a concrete

8 injury to the plaintiffs.

9          My colleague mentioned that we hadn't said anything

10 about traceability today with respect to their sovereign injury

11 claims.  We did address that in the briefs.  And in particular,

12 their argument about the intolerable dilemma and feeling

13 pressure to grant emoluments on the President.

14          We did address that and we said, to the extent they

15 actually do give into that pressure and grant emoluments to the

16 President, that would be self-inflicted harm that the Court

17 could not determine is traceable to the President.  It would be

18 traceable to their own conduct.

19          *Clapper* speaks to that issue as well where a plaintiff

20 takes preemptive steps to avert some harm to themselves in the

21 absence of a certainly impending injury, that is not conduct

22 that is traceable to the defendant.

23          And, finally, on this question of the capacity in

24 which the President is sued, we agree this could only be brought

25 as an official capacity suit.  To the extent the plaintiffs then

1    file an Amended Complaint that names the President in his

2    official and personal capacities, that would essentially render

3    the operative Complaint moot, it would render our Motion to

4    Dismiss moot and we would then have time to file a New Motion to

5    Dismiss.

6           So we would essentially be starting this litigation

7    over for really no purpose.  That amendment would not solve any

8    of the fundamental problems that we have discussed today about

9    injury in fact, traceability and redressability.

10          THE COURT:  All right.

11          MR. SHUMATE:  Thank you, Your Honor.

12          THE COURT:  Ms. AliKhan.

13          MS. ALIKHAN:  I have just two points, so I will

14   endeavor to be brief.

15          My colleague relies a lot or *Clapper*, which is a case

16   about future or imminent injury.  The injury that Maryland and

17   District of Columbia are suffering is now.  The injury to their

18   equal sovereignty is happening now because they cannot remain on

19   equal footing with their sister states.  They cannot ensure that

20   the President's loyalty will be to the United States and not to

21   foreign entities that are tendering him emoluments.

22          And also, the illegal manipulation of the competitive

23   marketplace by virtue of the President's acceptance of

24   emoluments is now.  The competitive injury under the Competitive

25   Standing Doctrine is happening now.

 1          So, I don't think we need to look to the *Clapper* and

 2   think about what we're trying to allege in the future.  The

 3   *Clapper* is about some enforcement action to be taken at some

 4   later date, but we are here before you today because we have

 5   suffered these injuries and continue to suffer them.  And that

 6   is why we believe it's appropriate for the Court to address

 7   them.

 8          And, finally, as I mentioned before, but I want to

 9   mention again, we're not bringing the suit to be roving

10   constitutional watchdogs.  While that might be laudable, we know

11   that is not our function.  We however are within the heartland

12   of the Domestic and Foreign Emoluments Clauses.  The founders

13   made clear that they were to protect states as states.

14          And the states have a variety of interest, whether

15   it's *parens patriae*, whether it's proprietary or whether it's

16   our own sovereign interest as states.  Those are interest that

17   are protected by the Domestic and Foreign Emoluments Clauses and

18   those are the interest that we seek to vindicate here.

19          Thank you very much.

20          THE COURT:  Let me ask a few questions.  There was a

21   statement made that D.C. is not a sovereign and could not

22   proceed as a sovereign.  Do you want to address that argument or

23   does someone from D.C. want --

24          MS. ALIKHAN:  So the District of Columbia is not a

25   state obviously.  However, we do compete among our sister states

1    for the attention and resources of the federal government.  So I

2    believe that our equal sovereignty argument does apply to the

3    District.

4              Of course, for this Court to disagree with me, the

5    fact that Maryland is, of course, an equal sovereign means that

6    they have standing to carry both parties.

7              I think that the reason that Mr. Shumate highlights

8    the fact that the District is not a state is because he

9    misunderstands our argument on equal sovereignty.  We think that

10   we should be on level playing field and should participate on a

11   level playing field with every state in every decision that we

12   make.

13             This is an argument that he tries to make into

14   material inducement to join the union.  The District of Columbia

15   obviously did not join the union, we were created by the union.

16   So to the extent there is some sort of material inducement

17   argument that stems from sovereignty, that would not be

18   something that the District would press, but it's also not what

19   we are pressing.  What we are saying is that our equal status

20   among the states is what's being affected.  And I think for

21   purposes of that, the District of Columbia is treated much like

22   a state.

23             THE COURT:  Well, I understand District of Columbia is

24   asserting proprietary interest, but are they asserting sovereign

25   interest?  What are they asserting besides their proprietary

1     interest being affected?

2          MS. ALIKHAN:  Well so, I think two interests.  The

3     sovereign interest in equal footing among the sister states

4     because we participate in, like a state --

5          THE COURT:  You say we.  Are you talking about

6     Maryland now?

7          MS. ALIKHAN:  The District of Columbia, forgive me.

8     The District of Columbia has just as much of a claim to equal

9     sovereignty as Maryland does.  The District of Columbia also has

10    the same ability to bring a *parens patriae* claim on behalf of

11    its citizens for the economic harms that are caused by the

12    President's receipt of emoluments.

13          That comes most clearly from *Snapp* where Puerto Rico

14    was held to be an entity that had the ability to bring *parens*

15    *patriae* actions on behalf of its citizens.  So District of

16    Columbia, much like Puerto Rico, can go forward.  The only

17    interest that we believe the District does not -- is not able to

18    vindicate here is that of the Maryland tax argument.  That is a

19    harm that's suffered to Maryland alone.  It's not one the

20    District of Columbia has had brought on its behalf.  And so to

21    the extent that there are any arguments that don't apply to the

22    District, it would be Maryland tax and not the rest.

23          THE COURT:  All right.  Mr. Shumate, anything more you

24    want to say?

25          MR. SHUMATE:  Just very briefly on the sovereign,

1    quasi-sovereign issue, I would just point the Court to footnote

2    one, page 6 of their brief in which they say, the District is

3    able to assert quasi-sovereign interest, which are all the

4    claims here.  They're not claiming any sovereign injury here.

5    They're only claiming quasi-sovereign injury, which is the

6    *parens patriae* lawsuit.

7           That's why I said at the beginning, I think it's very

8    important to be clear about what bucket they're claims are in.

9    We understand there to be three sovereign claims and one

10   quasi-sovereign claim.

11          THE COURT:  All right.

12          MR. SHUMATE:  It does matter.

13          THE COURT:  All right.  Let me ask you -- did you want

14   to say something in response to that?

15          MS. ALIKHAN:  Well, just briefly, I think that the

16   equal sovereignty argument, whether we say it's sovereign or

17   quasi-sovereign is something the District can seek to vindicate.

18   So I think that it's a red herring to say that because we are

19   not that state qua state that we don't have the ability to

20   compete on a level playing field with states.

21          THE COURT:  Well, all right.  I've made my observation

22   on -- leave that as the characterization about individual versus

23   official capacity.

24          Now, Mr. Shumate probably correctly says, they would

25   have to get another shot at your Amended Complaint if you add

1   the individual capacity.  This is part of a larger question.  Is

2   there some way in which the plaintiffs feel they could amend

3   their Complaint not just with regard to capacity suit, but any

4   other aspect that might meet their arguments that you feel you

5   could demonstrate, assuming that there is deficiency that you

6   feel makes you vulnerable in the Complaint.

7           Are there amendments to the allegations?  In other

8   words, there's a Motion to Dismiss, so the Court could say, all

9   right, Motion to Dismiss, but still give leave to amend which is

10  what we do all the time.  You tell me.

11          MS. ALIKHAN:  Well, I will defer to answer your

12  question and hopefully my co-counsel will come and lunge at me

13  if he disagrees, but I think that our Complaint and the

14  allegations contained therein are sufficient to withstand a

15  Motion to Dismiss.  I think that this case can move forward in

16  just an official capacity, but if this Court would like us to

17  amend --

18          THE COURT:  I'm not going to direct that you to do

19  anything.  I'm only pointing out to you that if for some reason

20  down the road this case is determined to be one that ought to

21  have been an individual capacity as opposed to official and/or

22  the two, that's a problem you're going to face.  And I can't

23  really anticipate where a higher court would comes out on this.

24  That's your call, not mine really.

25          MS. ALIKHAN:  Certainly, and we will think about it.

1       I do agree with Mr. Shumate that were we to file an

2   Amended Complaint, it would moot the proceedings here --

3       THE COURT:  You decide.  I'm not making a decision one

4   way or another, because you still seem to be arguing that, but

5   this is not an official duty that he performed.  This is

6   something he's done in his private capacity.  Now, how you get

7   there in terms of the way in which you cast your suit, that's up

8   to you.

9       MS. ALIKHAN:  So, we will certainly think about that.

10  Because the emoluments clauses only apply to President Trump

11  because he is president, it does appear this suit should be

12  against him as the president.  However, we will certainly think

13  about that more and if we amend our Complaint, we will do so

14  quickly.

15      THE COURT:  Well then, finally, you don't have

16  objection to him characterizing your suit as a suit against the

17  United States?  That's where I'm stuck.  He argued a lot about

18  this is a suit against the United States.  And I say, well, is

19  it really?

20      MS. ALIKHAN:  I think this is a fiction about

21  individual versus official capacity suits.  To the extent

22  someone is an official, a suit against them in their official

23  capacity is a suit against their jurisdiction.  You know,

24  however, inasmuch as he can't violate the emoluments clauses in

25  a private capacity, but can only violate the emoluments clauses

186

1    as president, which is why the fact he was a market competitor

2    before he became president is irrelevant, we think that it is

3    his duty as president to comply with those clauses.

4         And so, whether or not that then takes a leap to

5    saying it's a suit against the United States is something that

6    I'm not prepared to answer, other than to say, of course, when

7    we name the President, it will be treated in an official

8    capacity suit.

9         THE COURT:  Now, let me ask you this question more or

10   less finally.  Assuming the Court were to find that you had

11   standing, what would be the next step?

12        MS. ALIKHAN:  Well, I think the next step would be for

13   this Court to decide whether it wants to hear further argument

14   on our arguments raised in the Motion to Dismiss, such as the

15   definition of emolument, cause of action, political questions,

16   things of that nature.

17        I believe that our briefing flushes these issues out

18   such that the Court may be prepared to rule on those himself

19   now.  If not, we'd be happy to come back to this beautiful

20   courthouse.  If we do --

21        If you deny the Motion to Dismiss across the board,

22   then I think we go forward with limited discovery.  I think at

23   this point and I confess I'm no real trial lawyer, but I think

24   the discovery could be quite circumspect to looking at the

25   business records of the Trump Hotel, because that's where most

```
 1    of our theories are first centered, and seeing what kind of

 2    local and foreign diplomatic business they're doing, and seeing

 3    what type of emolument caused violations we're seeing beyond

 4    that which we've seen in the public record and put into our

 5    Complaint, but I don't imagine this being some sort of fishing

 6    expedition.  It would be narrowly tailored and certainly we

 7    would not want it to be unduly burdensome on the President.

 8              THE COURT:  All right.  Mr. Shumate, I put the same

 9    question to you.  Should the Court decide that there is standing

10    on the Complaint as it is, what would you see as the next step?

11              MR. SHUMATE:  Your Honor, the next step would be, I

12    agree with my colleague that the Court should then rule on the

13    other half of our Motion to Dismiss, which is the 12(b)6, have

14    the plaintiff state a claim.

15              We would urge the Court not to rule on that without

16    hearing argument.  So if the Court does decide that the

17    plaintiffs have standing, we would like to come back and be

18    heard on the 12(b)6 part of our Motion to Dismiss.

19              I think that would be the next step.  Hopefully the

20    Court agrees with us that the case should be dismissed for lack

21    of standing and we never get there.

22              THE COURT:  All right.  Well, I will try to get

23    something out to you as quick as I can.  Thank you for your

24    presentations.  Unless there's anything more for me to decide.

25              Mr. Sullivan.
```

1          MR. SULLIVAN:  Just quickly.  I think my co-counsel

2    correctly said we would envision whether circumscribed

3    discovery.  We are going to need financial records from the

4    Trump Organization.  More broadly, the Court has granted our

5    preservation orders that we requested earlier to certain

6    components of the Trump Organization, and I think we would need

7    to have some discovery for their records.  But again, that's not

8    going to be the whole universe we're asking for.

9          THE COURT:  All right.  Well, it would depend on the

10   scope of -- if the Court so finds, the scope of standing.  And I

11   guess that takes me to my -- one of my very first questions

12   again.  Have you established standing as to each of the Trump

13   entities that you are now pursuing?

14         And as I understand, on the proprietary claims you're

15   just talking about Trump International Hotel, right?  You're not

16   talking about other Trump properties.  Am I correct on that?

17         MR. SULLIVAN:  That's correct.

18         THE COURT:  But on the sovereign, quasi-sovereign

19   claims, you're claiming Trump facilities around the country,

20   around the world, what?

21         MR. SULLIVAN:  Well, I think it will depend on what

22   those records show, but I think we have to know more than just

23   the Trump Hotel to know how much is being received in emoluments

24   that would impact that particular basis of standing which goes

25   beyond the boundaries of the District of Columbia.

```
 1              THE COURT:  And would the -- beyond the District of

 2   Columbia, would it be both the Foreign and the Domestic

 3   Emoluments Clauses that are implicated?

 4              MR. SULLIVAN:  Yes, I think that is both of them,

 5   because the same concern about being on a level playing field

 6   with the other states is implicated.  That if the President's

 7   decision-making is being influenced by anyone that's a

 8   government, that impacts the sovereigns and the states because

 9   they don't have the assurance that the emoluments clauses

10   intended, that we have a president who is going to make

11   decisions based on what's best for the country and not what's

12   best for this pocketbook.

13              THE COURT:  All right.  You want to comment at all on

14   any of that, Mr. Shumate?

15              MR. SHUMATE:  I don't think so, Your Honor.

16              THE COURT:  All right.  Thank you, counsel, and thank

17   you others, and we will get to this as expeditiously as

18   possible.

19              Thank you.

20         (Recess at 3:47 p.m.)

21                              *    *    *

22

23

24

25
```

1                    CERTIFICATE OF COURT REPORTER

2         I, Linda C. Marshall, certify that the foregoing is a

3   correct transcript of the record of proceedings in the

4   above-entitled matter.

5

6

7                    /s/
                     _____
8                    Linda C. Marshall, RPR
                     Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$260,000 [1]** 52/3
**$35,000 [2]** 13/25 47/14

**/**

**/s [1]** 190/7

**1**

**10 [1]** 56/24
**10 percent [1]** 77/4
**104 [1]** 68/24
**106 [2]** 68/24 93/21
**107 [1]** 71/3
**109 [1]** 14/18
**10:00 [1]** 1/9
**11 miles [2]** 78/1 123/15
**112 [1]** 71/4
**113 [1]** 80/21
**115 [1]** 80/21
**116 [2]** 60/1 76/2
**118 [2]** 60/1 76/2
**12 [10]** 78/23 79/3 79/9 95/2 117/11
117/20 135/19 136/11 187/13 187/18
**120 [1]** 104/11
**1200 [1]** 104/20
**12:28 [1]** 102/17
**1400 [1]** 104/18
**15 [2]** 56/23 172/18
**1596 [2]** 1/4 3/3
**16 [1]** 81/14
**17-1596 [2]** 1/4 3/3
**18 [1]** 162/2
**1867 [1]** 162/4
**1881 [2]** 176/17 176/20
**1920s [1]** 69/6
**1970s [1]** 92/9
**1974 [2]** 28/11 127/24
**1983 [1]** 96/2
**1992 [3]** 81/12 162/5 162/8
**1996 [1]** 32/6
**19th [1]** 175/21
**1:30 [1]** 102/15
**1:33 [1]** 102/17

**2**

**20 [1]** 7/18
**200 [2]** 1/20 53/12
**20001 [1]** 1/16
**2012 [3]** 27/7 69/7 81/24
**2013 [2]** 24/25 66/15
**2017 [2]** 79/22 175/21
**2018 [2]** 1/8 86/11
**202-514-2331 [1]** 2/5
**202-727-6287 [1]** 1/16
**20530 [1]** 2/4
**206 [1]** 140/22
**208 [1]** 177/20
**20th [2]** 79/22 115/5
**212 [1]** 140/23
**21202 [1]** 1/20
**2300 [1]** 105/11
**2331 [1]** 2/5
**24 [1]** 56/21
**25 [3]** 1/8 92/13 133/2
**28 [1]** 104/11

**3**

**30 [1]** 101/15
**301 [1]** 1/23
**32 [2]** 56/19 171/4
**3229 [1]** 1/23
**344-3229 [1]** 1/23
**36 [1]** 104/11
**3:47 [1]** 189/20

**4**

**40 [1]** 10/18
**41 [1]** 10/18
**410-576-6325 [1]** 1/21
**418 [1]** 177/20
**441 [1]** 1/15
**4th [1]** 1/15

**5**

**5-star [1]** 124/1
**508 [2]** 92/18 141/18

**6**

**6287 [1]** 1/16
**6325 [1]** 1/21
**656 [1]** 141/19
**666 [2]** 92/18 141/19
**680,000 [1]** 91/6

**7**

**72,000 [1]** 91/8
**727 [1]** 140/22
**73 [5]** 43/11 43/16 43/19 88/4 130/23
**74 [1]** 14/18
**75,000 [1]** 91/6

**8**

**80 [2]** 10/7 18/3
**88 [2]** 10/7 18/4

**9**

**950 [1]** 2/4

**A**

**a fallback [1]** 131/3
**A.M [1]** 1/9
**abide [2]** 144/21 149/22
**abilities [1]** 49/12
**ability [27]** 1/16 15/20 17/2 17/11
18/14 22/8 22/17 22/18 42/24 53/8 56/2
58/9 87/8 87/22 88/22 88/23 104/23
106/3 141/22 145/8 145/13 162/15
168/14 174/19 182/10 182/14 183/19
**able [14]** 59/19 83/6 87/25 88/5 88/18
89/10 89/14 89/16 124/10 144/10
158/17 177/23 182/17 183/3
**about [201]**
**above [3]** 21/6 44/11 190/4
**above-entitled [1]** 190/4
**absence [2]** 178/7 178/21
**absent [1]** 140/17
**absolute [1]** 53/22
**absolutely [6]** 42/13 46/8 78/12 101/5
107/15 125/13
**abstract [10]** 23/12 24/6 27/14 30/1 33/7
69/3 70/6 84/15 93/15 144/22

**accept [13]** 10/11 51/25 52/20 53/17
62/14 87/7 140/12 145/13 145/14 146/7
164/22 166/9 175/10
**acceptable [1]** 53/19
**acceptance [20]** 11/21 12/4 18/12 39/19
44/2 45/25 48/1 48/13 50/9 51/4 52/2
55/1 57/3 60/19 63/12 88/16 91/21
166/11 168/17 179/23
**accepted [4]** 21/14 47/11 117/13 145/3
**accepting [11]** 12/19 13/6 47/1 48/8
48/11 49/19 53/25 62/16 64/15 142/18
174/13
**accepts [7]** 62/8 93/11 141/3 169/5
169/7 173/16 175/8
**access [5]** 17/4 37/22 38/4 108/3 115/6
**accessible [1]** 104/14
**accommodate [2]** 104/18 104/20
**according [3]** 14/22 157/12 169/3
**accrue [1]** 151/23
**accurate [1]** 73/4
**achieve [1]** 138/14
**acknowledge [2]** 99/24 177/17
**acknowledged [1]** 156/4
**acknowledges [2]** 177/2 177/21
**acquire [1]** 46/22
**across [4]** 56/10 86/16 136/11 186/21
**act [17]** 16/5 17/16 27/11 31/17 69/10
69/22 71/13 75/3 81/8 83/24 145/19
146/12 146/16 153/10 155/23 163/8
164/14
**acting [12]** 24/23 114/14 114/15 115/11
118/7 148/1 167/10 168/7 168/16 169/5
169/6 170/20
**action [42]** 1/3 5/19 22/9 22/12 22/18
22/18 45/18 58/2 59/1 62/4 74/14 74/18
74/22 81/17 82/3 83/25 95/12 95/13
95/16 95/16 95/17 95/20 97/13 99/22
99/23 99/25 100/3 111/3 111/4 112/21
113/2 113/6 114/13 129/2 131/20
132/22 140/18 142/25 147/20 153/22
180/3 186/15
**actions [13]** 54/17 56/15 81/25 84/23
85/11 101/1 101/13 131/5 132/3 147/20
153/6 164/22 182/15
**activities [2]** 83/12 169/18
**activity [2]** 70/18 140/25
**actor [1]** 131/23
**actors [4]** 55/25 75/3 87/24 113/14
**acts [9]** 29/1 55/10 58/6 74/16 99/3
147/15 163/5 163/5 164/24
**actual [11]** 47/3 47/4 48/5 60/2 92/1
92/21 110/12 113/20 136/25 143/8
149/4
**actually [19]** 3/6 51/9 63/23 66/6 72/18
77/22 79/22 86/25 104/2 110/20 112/8
114/15 120/14 121/18 121/21 128/21
128/24 131/25 178/15
**add [5]** 21/2 117/23 144/4 170/12
183/25
**added [1]** 101/4
**addition [2]** 19/13 167/22
**additional [4]** 15/3 111/18 150/6 156/3
**address [16]** 5/4 5/11 6/10 29/2 38/16
48/5 86/4 139/23 156/16 167/13 168/2
173/21 178/11 178/14 180/6 180/22
**addressable [1]** 117/14

**A**

**addressed [11]** 56/9 100/16 125/17
125/20 127/23 144/7 146/19 147/21
148/11 152/18 163/22
**addresses [1]** 113/12
**addressing [2]** 31/2 174/10
**adjudicate [1]** 144/25
**adjudicated [2]** 22/7 22/16
**administration [3]** 105/8 150/13 151/3
166/16 166/18
**Administration's [1]** 17/24
**administrative [3]** 150/24 150/25 151/1
**admission [1]** 4/4
**admits [1]** 69/18
**admitted [2]** 4/3 4/11
**advance [3]** 4/19 7/24 10/5
**advanced [1]** 14/9
**advantage [5]** 12/12 64/1 118/21 161/8
161/11
**advice [1]** 152/12
**advised [1]** 152/11
**advisory [4]** 100/22 100/23 171/17
171/22
**affairs [2]** 150/4 163/17
**affect [1]** 88/22
**affected [11]** 56/15 59/17 63/4 85/7 87/9
88/13 88/14 90/9 91/20 181/20 182/1
**affecting [3]** 57/21 66/6 131/19
**affects [5]** 55/17 63/15 82/9 91/11 93/17
**affidavits [3]** 41/15 60/6 60/12
**affiliate [1]** 132/1
**affiliation [1]** 131/24
**affirmed [1]** 146/4
**Affordable [2]** 27/11 69/22
**afield [6]** 38/6 51/3 83/17 84/25 85/15
123/13
**after [8]** 47/18 48/25 52/10 52/11 98/22
138/4 145/19 154/23
**afternoon [7]** 39/9 75/25 77/16 80/11
91/25 99/1 102/20
**afterwards [2]** 47/24 52/9
**again [26]** 20/3 29/23 35/8 35/9 69/21
71/11 77/10 82/17 84/18 85/20 85/22
89/24 90/24 102/15 108/12 122/22
136/22 139/19 158/25 159/12 161/25
167/1 169/19 180/9 188/7 188/12
**against [128]** 5/5 10/3 10/13 14/21
23/16 23/18 23/22 24/11 25/21 26/14
26/20 27/2 27/10 27/17 28/12 28/21
29/5 29/9 29/18 29/19 29/24 31/12
31/23 32/7 33/9 33/11 33/13 33/24
34/11 34/13 34/21 34/24 44/22 44/23
45/1 45/2 45/4 45/8 45/9 45/13 45/15
45/17 45/20 45/22 46/3 46/7 47/3 54/16
57/25 58/2 58/9 58/12 58/24 59/1 59/7
68/2 68/18 70/3 71/25 74/23 81/1 81/6
81/13 81/15 81/17 81/21 81/25 82/3
82/25 83/6 83/24 84/19 84/20 84/22
84/23 85/1 96/3 96/6 97/11 98/9 98/10
99/3 100/10 100/13 101/10 101/13
101/14 102/2 102/3 102/6 113/16
127/16 128/16 137/11 137/21 144/14
145/8 145/24 146/2 146/8 146/11
146/14 146/17 146/23 147/1 151/21
152/21 161/20 161/24 162/9 162/11

162/19 163/16 164/4 164/10 164/12
164/17 168/12 170/12 170/17 171/14
175/17 185/12 185/16 185/18 185/22
185/23 186/5
**agencies [3]** 108/16 108/23 113/14
**agency [1]** 83/24
**agenda [1]** 61/10
**agent [1]** 72/24
**ago [2]** 168/13 172/25
**agree [6]** 44/7 65/9 138/21 178/24 185/1
187/12
**agreed [1]** 15/2
**agreement [1]** 47/23
**agrees [1]** 187/20
**ahead [13]** 18/9 29/6 42/16 73/22 90/16
93/6 103/16 135/18 136/6 137/25 156/9
163/14 171/12
**AIDED [1]** 1/24
**aids [1]** 55/10
**Air [1]** 83/23
**airport [1]** 104/15
**Akhil [1]** 88/4
**al [2]** 1/4 3/4
**alert [1]** 4/18
**Alfred [4]** 11/10 81/12 84/17 85/9
**ALIKHAN [12]** 1/13 3/11 38/18 38/19
86/5 100/24 102/19 128/13 157/23
165/8 172/23 179/12
**Alito [1]** 117/21
**all [153]** 3/6 3/20 4/2 4/10 4/25 7/10
11/4 12/1 13/6 13/22 16/7 21/13 21/18
22/20 23/2 23/5 28/2 30/21 30/25 31/3
31/19 32/11 32/16 33/6 33/6 33/8 33/12
34/3 37/1 37/6 38/13 38/14 38/19 40/18
41/4 42/11 42/20 46/5 46/17 48/9 49/17
51/19 55/12 60/19 61/21 61/24 65/16
66/1 66/16 74/10 75/20 79/17 82/15
82/16 85/2 85/4 93/4 98/4 98/10 98/19
98/21 101/21 101/24 102/15 103/16
106/25 110/4 111/20 111/21 113/19
113/23 117/15 119/15 121/2 121/22
123/7 125/5 126/15 127/11 127/14
128/12 132/24 133/5 133/15 134/10
135/15 135/20 136/20 136/24 137/23
138/14 139/11 139/14 139/17 140/9
142/10 143/1 143/2 143/17 144/4 144/5
145/15 146/25 147/2 147/12 147/13
147/25 148/13 148/20 149/8 149/14
149/17 151/16 151/24 152/1 152/2
152/7 152/22 152/23 153/5 153/6 155/1
156/24 157/10 157/11 160/16 164/5
165/2 168/3 169/9 169/24 170/1 170/3
171/2 172/16 172/22 174/16 175/20
176/2 179/10 182/23 183/3 183/11
183/13 183/21 184/8 184/10 187/8
187/22 188/9 189/13 189/13 189/16
**allegation [32]** 15/22 16/16 36/5 36/25
40/17 40/17 60/17 72/11 73/5 73/17
74/7 76/22 80/5 80/16 84/24 93/19
112/13 116/15 116/16 120/5 121/9
124/4 124/9 124/17 135/22 135/25
136/2 140/3 144/23 157/12 158/9
158/18
**allegations [33]** 19/13 21/12 40/16 40/25
41/2 41/14 41/14 41/17 41/23 48/10
66/25 72/3 74/3 77/14 78/21 79/1 79/8

117/13 121/13 124/8 124/8 127/13
132/8 135/21 136/12 143/8 147/14
155/16 174/25 176/9 176/12 184/7
184/14
**allege [17]** 23/11 24/6 35/3 48/12 54/20
63/3 77/23 94/10 104/7 111/15 112/2
114/6 124/12 136/23 137/3 157/13
180/2
**alleged [32]** 8/11 27/23 28/25 30/6 36/8
37/1 41/9 43/25 52/1 57/20 60/13 66/21
67/23 79/23 80/18 85/16 87/16 94/6
94/20 110/23 111/3 117/9 121/21
121/22 123/14 124/5 125/4 133/11
136/4 136/20 137/3 138/18
**allegedly [5]** 35/15 69/2 70/1 78/3
147/15
**alleges [1]** 55/2
**alleging [6]** 36/17 45/12 52/24 159/19
159/19 160/10
**Allen [1]** 142/8
**allocated [1]** 65/19
**allow [10]** 37/25 58/15 61/15 113/15
116/25 128/7 136/10 138/24 142/11
175/23
**allowed [10]** 15/1 62/13 62/14 70/18
129/8 129/16 130/9 130/12 131/15
132/2
**allowing [5]** 37/24 53/25 114/21 114/22
119/4
**allows [5]** 50/14 123/10 135/11 139/12
174/17
**alluded [1]** 132/19
**almost [6]** 49/9 88/21 113/21 137/1
138/16 159/9
**alone [2]** 130/3 182/19
**along [3]** 5/4 5/11 143/3
**already [4]** 124/12 149/13 152/16
167/22
**also [54]** 5/6 10/3 10/7 15/2 16/12 19/15
23/15 23/22 24/5 43/18 46/15 47/21
48/5 54/10 58/19 61/10 61/19 74/21
75/14 75/17 80/9 82/18 84/17 84/24
85/19 85/22 89/4 92/7 92/8 92/16 101/4
101/10 101/19 103/1 103/21 105/1
105/11 105/16 106/24 107/19 108/17
111/25 120/16 128/25 131/16 139/3
159/19 164/1 170/13 174/7 175/16
179/22 181/18 182/9
**although [7]** 5/14 8/20 20/6 20/18 22/19
66/19 83/1
**always [3]** 96/3 154/13 156/21
**am [2]** 4/4 188/16
**Amar's [1]** 88/4
**ambassador [1]** 52/12
**amend [15]** 33/16 46/8 46/15 95/23
97/24 98/7 101/10 159/18 167/14
167/23 171/1 184/2 184/9 184/17
185/13
**Amended [3]** 179/1 183/25 185/2
**amending [2]** 73/18 170/11
**amendment [8]** 26/5 98/1 129/9 129/10
129/16 130/8 167/25 179/7
**amendments [1]** 184/7
**amenities [3]** 88/17 106/2 174/18
**America [2]** 1/8 92/18
**American [3]** 9/12 127/8 127/15

**A**

**Americans [2]** 127/11 127/14
**amicus [3]** 5/8 92/24 133/2
**among [8]** 14/13 39/13 39/25 62/12 73/9
180/25 181/20 182/3
**amorphous [1]** 144/21
**amount [3]** 77/6 88/11 91/19
**amounts [2]** 10/5 77/1
**analogous [1]** 115/16
**analogy [1]** 115/24
**analyses [1]** 19/16
**analysis [14]** 10/23 11/7 20/22 30/21
30/22 35/9 63/23 84/3 128/23 136/17
146/13 147/6 173/11 178/5
**analyze [1]** 27/8
**and/or [2]** 144/14 184/21
**anew [1]** 30/24
**angle [2]** 96/25 97/4
**announced [3]** 14/5 47/18 49/1
**annual [1]** 110/22
**annually [1]** 16/24
**another [32]** 5/24 6/8 7/21 8/18 14/17
14/23 15/11 18/21 43/25 44/5 53/19
56/3 56/24 68/6 71/19 81/23 82/24
85/20 106/10 108/20 108/22 113/7
114/18 114/23 119/15 134/17 138/17
146/9 146/22 147/14 183/25 185/4
**answer [19]** 4/21 4/23 7/13 21/19 40/8
44/5 63/17 64/22 87/17 98/2 109/23
110/1 110/4 128/8 128/18 137/22
175/25 184/11 186/6
**answers [2]** 5/1 148/14
**anti [12]** 37/6 37/7 37/10 85/23 91/1
121/25 122/4 123/2 123/3 123/5 132/19
136/16
**anti-corruption [1]** 91/1
**anti-trust [11]** 37/6 37/7 37/10 85/23
121/25 122/4 123/2 123/3 123/5 132/19
136/16
**anticipate [1]** 184/23
**any [127]** 4/13 5/22 5/25 7/3 9/20 9/20
9/21 9/23 9/25 10/10 10/11 10/12 10/12
11/12 12/23 12/23 12/23 18/2 20/7
22/18 25/22 26/22 30/16 31/8 34/2 34/7
34/22 35/14 36/15 37/13 37/14 38/6
40/13 41/12 42/5 43/23 45/14 47/1 47/1
47/2 48/11 48/22 52/19 54/1 57/2 62/4
62/7 63/12 63/20 64/14 65/1 67/21 68/7
70/9 72/6 72/12 74/7 74/10 74/19 74/22
76/4 76/22 77/18 79/12 79/18 79/24
80/2 84/16 85/18 86/3 86/3 87/8 87/16
88/18 88/23 89/11 94/10 94/11 98/1
100/14 102/3 109/2 112/8 113/18
114/12 116/3 116/12 118/13 119/5
120/13 126/11 126/11 126/13 126/17
126/25 127/15 132/21 137/4 137/22
137/23 142/21 142/25 143/5 145/7
146/2 150/14 151/17 153/19 154/24
155/18 156/19 160/21 161/4 161/22
164/25 166/21 169/4 169/9 169/25
170/13 171/8 175/25 179/7 182/21
183/4 184/3 189/14
**anybody [5]** 61/13 103/12 128/5 154/24
155/5
**anyone [5]** 4/13 21/1 126/8 130/23

189/7
**anything [15]** 44/11 70/9 70/9 72/13
77/11 84/4 85/24 114/20 152/14 166/15
167/21 178/9 182/23 184/19 187/24
**anyway [4]** 29/2 73/22 171/12 174/12
**anywhere [1]** 171/8
**APA [1]** 74/14
**apart [1]** 104/13
**apologize [1]** 7/23
**appeal [1]** 106/19
**appealing [2]** 10/2 43/18
**appeals [2]** 56/10 133/7
**appear [2]** 7/24 185/11
**appearance [1]** 4/9
**APPEARANCES [2]** 1/12 2/1
**appellate [1]** 170/23
**applicable [4]** 26/13 45/24 88/2 130/25
**application [1]** 90/25
**applied [4]** 21/12 118/12 118/13 163/10
**applies [5]** 19/3 56/11 91/4 91/23 129/4
**apply [24]** 6/13 6/14 20/5 24/16 26/17
26/24 29/12 32/13 33/23 44/8 45/6
46/10 61/24 66/9 84/23 101/6 123/3
175/13 176/6 176/15 178/6 181/2
182/21 185/10
**appointee's [1]** 17/23
**Appointing [1]** 149/13
**Appreciate [1]** 38/15
**appropriate [5]** 16/1 31/19 68/14 70/23
180/6
**appropriations [1]** 71/17
**approval [1]** 52/22
**approve [1]** 53/14
**apt [1]** 70/19
**Arab [1]** 35/23
**Arabia [2]** 52/3 90/1
**Arabian [1]** 89/18
**arbitrary [1]** 74/11
**are [328]**
**area [4]** 38/11 77/25 145/16 158/13
**areas [2]** 14/7 22/19
**aren't [6]** 25/4 70/20 80/4 127/15 137/19
137/20
**arena [1]** 19/14 104/1 104/7 106/7
**arguably [2]** 6/18 116/24
**argue [3]** 7/22 65/20 127/2
**argued [5]** 70/16 165/18 166/5 173/9
185/17
**argues [1]** 20/25
**arguing [17]** 5/7 7/14 22/21 25/17 29/4
41/25 49/2 58/20 64/23 78/24 79/14
79/16 115/21 116/7 143/23 154/12
185/4
**argument [59]** 12/24 18/8 21/20 28/21
29/3 38/18 40/9 40/20 42/11 45/14
59/12 61/18 64/2 64/12 64/13 76/7 76/8
85/5 86/9 87/2 95/24 99/12 102/22
103/6 103/8 103/18 103/23 109/19
111/9 115/17 127/1 128/14 143/24
144/4 144/6 147/11 147/16 148/6 155/6
156/6 156/10 157/10 158/15 159/1
165/10 165/14 169/1 174/21 176/21
178/12 180/22 181/2 181/9 181/13
181/17 182/18 183/16 186/13 187/16
**arguments [15]** 6/12 6/13 6/16 8/15 21/2
52/18 98/2 98/2 131/2 154/17 171/10

174/4 182/21 184/4 186/14
**arise [1]** 153/11
**arises [2]** 37/21 112/23
**armistice [1]** 145/19
**Armory [2]** 74/9 124/23
**around [14]** 7/11 7/11 61/14 61/14 62/25
68/20 70/21 82/2 100/7 149/9 159/5
164/9 188/19 188/20
**arrangements [1]** 90/1
**arsenal [1]** 149/19
**article [13]** 8/8 8/13 9/3 12/16 16/13
20/7 34/5 66/22 72/18 72/20 76/19
140/17 141/11
**as [258]**
**Asia [1]** 134/23
**Asian [1]** 51/21
**aside [2]** 108/7 111/23
**ask [15]** 4/22 7/15 21/18 26/3 35/4 46/2
53/17 86/20 100/20 103/2 112/10
167/24 180/20 183/13 186/9
**asked [7]** 24/22 27/1 86/18 86/19 136/7
151/15 176/9
**asked for [1]** 86/18
**asking [28]** 19/24 27/1 37/3 37/14 41/5
41/12 51/9 74/24 75/3 77/10 94/12
112/14 118/6 118/23 122/4 122/18
122/18 124/4 137/5 138/3 138/4 158/6
159/15 163/16 164/16 177/9 177/9
188/8
**asks [1]** 175/22
**aspect [1]** 184/4
**aspects [3]** 7/10 33/18 61/22
**assert [11]** 12/9 18/22 20/19 21/14 68/7
68/13 68/15 72/2 111/25 176/16 183/3
**asserted [11]** 8/17 8/24 9/9 12/3 30/16
66/12 67/21 79/10 145/10 166/7 176/8
**asserting [6]** 68/16 123/6 166/3 181/24
181/24 181/25
**assertion [2]** 20/17 144/9
**assess [1]** 20/12
**assessment [4]** 72/19 72/21 73/4 73/11
**assets [1]** 152/20
**Associate [1]** 92/18
**Association [1]** 133/5
**assume [7]** 15/3 45/14 63/25 64/2
109/18 135/22 135/24
**assumes [1]** 135/20
**assuming [12]** 31/18 64/5 68/2 72/2
111/7 126/23 127/7 154/15 155/11
160/1 184/5 186/10
**assumption [1]** 178/2
**assurance [1]** 189/9
**assures [1]** 46/21
**at [202]**
**at Complaint [1]** 18/3
**ate [1]** 47/16
**atmosphere [1]** 131/14
**attached [2]** 19/16 105/21
**attack [2]** 5/21 15/2
**attempt [1]** 111/25
**attention [2]** 14/13 181/1
**attenuated [1]** 78/9
**Attorney [3]** 1/14 1/19 4/8
**attorneys [1]** 150/21
**attracting [1]** 115/18
**attractions [1]** 104/15

**A**

**audience [1]**  103/3
**audio [1]**  103/4
**auspices [1]**  108/17
**authorities [3]**  21/11 110/7 132/25
**authority [15]**  21/7 22/12 25/22 25/23
 31/22 100/11 102/9 145/2 145/10
 145/17 148/20 149/3 169/12 169/15
 169/21
**authorized [1]**  150/16
**AV [1]**  104/22
**available [2]**  148/20 162/20
**avarice [2]**  10/2 43/18
**Avenue [1]**  2/4
**avert [1]**  178/20
**avoid [2]**  15/23 32/11
**await [1]**  149/20
**away [13]**  6/7 22/24 49/10 57/9 78/2
 89/12 93/18 94/1 123/15 123/20 134/12
 142/3 161/10

**B**

**back [33]**  41/20 47/19 60/21 65/22 66/8
 67/9 79/4 80/25 86/6 92/9 95/21 100/22
 101/3 105/25 112/9 117/2 139/4 152/18
 152/19 159/1 165/8 165/20 166/15
 167/11 171/9 171/21 172/17 173/24
 173/24 176/13 177/20 186/19 187/17
**background [1]**  150/18
**bad [5]**  74/25 152/1 170/24 177/22
 177/22
**Bahrain [5]**  52/4 52/6 57/16 105/14
 174/7
**balance [2]**  86/15 129/25
**ball [1]**  132/14
**ballgame [1]**  5/10
**ballroom [1]**  105/11
**ballrooms [1]**  104/18
**Baltimore [1]**  1/20
**banding [1]**  159/5
**bar [4]**  13/9 68/20 84/22 168/9
**barred [2]**  54/2 166/12
**barrell [1]**  73/21
**bars [1]**  18/2
**base [3]**  39/21 59/21 90/8
**based [27]**  19/2 33/4 33/7 37/12 37/16
 62/2 76/15 78/20 93/20 94/12 97/4
 112/1 112/20 119/14 121/4 122/19
 122/25 124/17 126/25 127/1 128/24
 137/6 155/6 158/3 158/7 175/4 189/11
**bases [9]**  8/17 9/1 9/2 11/2 12/15 40/18
 140/7 141/8 173/12
**basic [5]**  17/8 55/8 59/16 113/19 136/23
**basically [5]**  111/9 129/2 141/13 141/20
 161/7
**basis [15]**  12/2 12/7 13/20 15/9 16/12
 18/5 18/11 18/17 19/6 21/13 21/14
 42/15 111/19 140/12 188/24
**be [277]**
**Beach [2]**  14/20 14/24
**bear [2]**  56/18 98/24
**bears [1]**  48/4
**beautiful [1]**  186/19
**became [4]**  131/10 147/16 147/20 186/2
**because [199]**

**Beck [1]**  177/1
**become [2]**  148/12 153/9
**becomes [4]**  53/24 140/24 141/20 147/7
**beds [1]**  135/7
**been [40]**  4/3 11/4 11/17 13/18 13/19
 16/16 16/18 22/6 36/22 38/6 38/7 48/19
 68/9 81/15 81/15 84/22 86/18 89/20
 89/20 92/3 96/5 98/10 99/6 115/23
 122/7 136/13 139/23 142/11 142/24
 147/1 148/8 149/14 150/9 150/10
 151/20 152/11 159/8 160/2 167/4
 184/21
**befalls [1]**  45/25
**before [32]**  1/11 3/2 3/5 4/14 6/4 11/6
 67/7 73/19 115/2 115/3 115/4 117/12
 121/19 131/9 133/12 136/3 136/8
 138/18 143/4 144/6 147/15 147/20
 150/1 150/1 150/2 150/18 153/7 158/4
 167/3 180/4 180/8 186/2
**beg [2]**  92/11 109/13
**begin [3]**  38/18 39/12 39/22
**beginning [3]**  40/9 143/7 183/7
**behalf [7]**  3/22 3/23 3/25 23/7 27/17
 74/25 75/1 81/8 81/21 182/10 182/15
 182/20
**behavior [1]**  75/5
**behind [1]**  124/6
**beholding [1]**  50/8
**being [56]**  11/16 15/11 24/22 25/16 26/4
 26/9 26/9 27/1 28/20 30/16 33/2 54/4
 54/9 54/11 54/12 57/2 57/9 57/22 60/14
 63/4 69/10 72/4 75/4 76/16 76/22 88/5
 88/13 88/14 90/8 91/12 94/4 96/13
 110/23 111/8 111/9 111/18 118/1 127/5
 127/5 131/19 132/18 132/20 134/12
 138/22 142/16 145/10 160/21 161/6
 165/24 166/7 181/20 182/1 187/5
 188/23 189/5 190/2
**believe [36]**  4/3 8/11 21/9 38/22 41/13
 45/23 46/9 47/10 49/4 49/17 52/11 61/7
 89/15 91/3 105/21 106/18 109/20
 109/24 110/19 129/16 130/18 131/3
 138/5 138/7 138/22 140/23 148/1 149/1
 173/22 173/25 174/21 175/19 180/6
 181/2 182/17 186/17
**believes [1]**  41/17
**believing [1]**  50/11
**bend [1]**  128/6
**beneficiaries [3]**  43/9 106/15 130/21
**beneficiary [1]**  130/8
**benefit [21]**  9/23 11/13 18/3 38/23 38/24
 46/13 49/16 63/20 64/1 87/23 91/2
 114/18 114/19 114/24 126/24 127/8
 142/12 142/16 142/19 150/15 155/11
**benefiting [4]**  5/8 17/20 28/16 104/2
**benefits [4]**  9/17 28/23 49/13 99/18
**besides [2]**  171/22 181/25
**best [9]**  40/14 42/2 50/16 55/19 133/7
 151/13 168/1 189/11 189/12
**Bethesda [8]**  74/8 75/24 83/3 105/10
 105/14 106/23 108/8 135/5
**better [5]**  7/21 30/23 109/17 135/7 135/8
**between [25]**  30/7 30/11 42/18 70/6
 76/23 79/19 80/3 95/5 96/15 97/7 99/22
 107/6 114/6 121/12 123/14 129/25
 131/23 136/20 137/14 147/6 154/2

156/12 159/13 163/5 177/13
**beyond [15]**  7/8 27/24 44/11 44/16 54/5
 63/23 66/20 79/19 92/23 132/16 145/25
 148/1 187/3 188/25 189/1
**bicameralism [2]**  130/13 130/15
**bind [1]**  134/15
**binding [1]**  156/10
**bit [8]**  60/22 74/5 75/9 89/1 129/23
 142/2 146/22 161/6
**Bivens [1]**  102/1
**black [4]**  24/19 34/11 71/6 81/5
**blind [2]**  149/12 150/9
**BLT [5]**  47/17 59/20 60/25 62/25 91/17
**board [1]**  186/21
**body [2]**  52/15 141/3
**bolster [1]**  41/15
**Bond [3]**  20/23 129/7 137/8
**bonds [1]**  110/7
**book [1]**  88/5
**books [1]**  86/12
**booming [1]**  80/1
**border [2]**  88/10 91/8
**borders [1]**  67/17
**borne [5]**  40/21 47/11 88/4 99/21 99/21
**boss [1]**  165/12
**both [40]**  6/12 6/14 6/16 9/10 9/13 9/15
 11/23 32/8 38/25 44/19 45/24 47/3 52/6
 54/12 57/6 57/9 57/20 59/14 80/20
 91/12 96/8 96/9 104/4 104/13 104/14
 104/17 104/19 104/20 104/24 108/9
 108/14 108/15 110/17 133/5 144/19
 174/21 175/5 181/6 189/2 189/4
**bother [1]**  42/5
**bottle [1]**  138/15
**bound [2]**  30/24 44/19
**boundaries [4]**  54/5 62/22 84/12 188/25
**boundary [2]**  63/12 83/11
**branch [5]**  24/23 26/16 95/18 99/5 99/9
**branches [2]**  32/10 164/2
**break [11]**  30/12 65/21 101/22 142/17
 153/7 154/3 154/22 155/22 165/6 170/6
 172/17
**breaks [2]**  30/13 156/13
**Brennan [1]**  20/10
**BRETT [3]**  2/2 3/21 23/7
**brief [28]**  5/8 8/19 16/22 22/15 25/19
 32/12 32/13 39/11 63/1 65/24 92/10
 92/24 101/13 106/11 133/1 133/2
 137/24 138/2 140/14 142/23 145/7
 146/11 163/3 165/4 172/21 177/2
 179/14 183/2
**briefing [6]**  47/12 48/24 92/11 92/23
 168/23 186/17
**briefly [10]**  4/23 21/19 32/21 66/13 93/8
 142/1 170/10 172/17 182/25 183/15
**briefs [3]**  27/7 153/13 178/11
**bring [49]**  27/16 33/10 33/13 34/12
 34/14 34/21 34/24 39/5 50/18 53/10
 53/17 54/6 56/2 57/24 58/2 58/9 58/11
 59/1 68/1 68/3 68/17 70/4 71/25 74/17
 81/1 81/5 81/17 82/3 82/7 82/25 83/5
 83/6 83/6 83/22 83/24 83/24 93/24 94/24
 101/10 117/18 118/18 119/24 131/15
 132/2 132/21 175/17 177/15 177/24
 182/10 182/14
**bringing [8]**  27/9 27/13 46/3 59/9 97/11

**B**

**bringing... [3]**  118/15 123/5 180/9
**broad [4]**  9/11 43/12 46/24 80/22
**broad one [1]**  80/22
**broadly [1]**  188/4
**broke [2]**  30/9 153/22
**Brotherhood [1]**  140/21
**brought [28]**  9/6 26/20 39/1 44/6 45/22
52/23 69/9 69/21 71/10 81/15 82/4 84/1
84/19 95/22 96/5 96/8 97/17 98/10
101/19 102/6 118/9 123/2 149/4 153/18
170/16 173/7 178/24 182/20
**bucket [5]**  67/22 68/20 76/16 91/24
183/8
**buckets [5]**  32/16 32/17 32/18 67/9
68/21
**buffet [1]**  105/1
**build [2]**  14/25 49/12
**built [1]**  140/3
**Bullwinkle [1]**  165/22
**burden [9]**  24/18 24/21 76/11 94/7 94/17
94/20 95/3 117/18 118/6
**burdens [1]**  147/23
**burdensome [1]**  187/7
**business [79]**  12/10 13/4 17/3 28/17
35/5 35/14 35/14 35/18 35/24 36/9
36/19 36/23 37/5 37/9 37/18 37/19 38/2
51/15 57/2 57/5 57/9 72/12 78/6 78/22
79/24 79/25 80/3 89/20 89/23 90/5
102/25 103/8 103/10 103/20 105/3
105/7 106/13 107/17 107/21 107/22
108/10 108/12 109/10 112/6 112/9
112/11 112/23 114/4 114/24 114/25
115/18 116/24 117/4 117/5 118/24
118/25 119/20 122/21 124/10 124/16
126/11 131/12 132/13 133/15 133/17
133/19 133/24 134/12 145/23 156/23
157/3 159/17 163/17 168/24 174/5
174/6 174/8 186/25 187/2
**business to [1]**  174/5
**business' [1]**  75/13
**businesses [60]**  11/18 14/11 16/24 17/5
17/6 19/8 23/14 23/18 23/19 24/11 33/4
34/19 35/2 35/3 35/15 37/2 37/2 38/10
38/10 38/12 54/24 57/3 59/18 60/15
60/17 61/3 63/3 63/15 72/6 74/1 74/1
74/3 75/12 77/22 77/25 78/21 79/21
82/14 82/20 82/25 89/20 94/19 103/22
109/4 112/1 116/16 119/23 119/24
120/14 121/17 126/12 131/6 139/10
153/3 154/3 157/1 160/13 168/18 174/5
174/16
**but [206]**
**buy [2]**  51/11 171/4
**buys [1]**  107/20
**bye [1]**  98/6

**C**

**call [3]**  55/8 103/13 184/24
**called [3]**  28/11 75/16 177/1
**calling [1]**  96/24
**calls [1]**  49/8
**Camp [2]**  133/3 133/4
**can [106]**  5/21 5/22 6/5 9/10 14/9 16/8
16/10 17/5 20/19 21/4 22/24 24/6 26/1

26/1 29/14 31/5 32/12 37/24 38/6 40/13
41/20 42/8 46/9 57/24 61/12 61/20
61/21 63/9 66/17 67/12 68/7 68/13
76/12 79/7 81/4 85/7 87/15 88/2 93/6
96/11 97/24 98/2 98/15 100/15 102/6
104/18 104/20 104/21 105/25 106/3
106/8 109/21 109/23 109/24 111/1
112/20 113/1 114/9 114/25 115/7
118/18 124/17 125/11 125/17 127/17
127/18 129/13 133/22 135/8 135/13
135/22 135/24 138/5 143/24 145/14
145/24 146/3 146/17 146/19 148/3
148/7 148/23 148/25 149/21 150/14
153/12 155/16 156/17 157/5 161/2
164/9 164/11 165/20 166/16 167/19
167/21 168/8 170/16 172/12 175/5
176/16 182/16 183/17 184/15 185/25
187/23
**can't [47]**  25/21 30/13 30/14 31/7 31/14
34/2 37/13 58/2 58/25 70/20 79/12
79/12 79/18 82/8 82/22 85/9 89/11 94/1
94/9 94/11 95/2 100/9 100/13 107/18
112/7 115/24 119/10 120/20 120/24
127/21 128/5 128/9 147/16 154/13
154/15 155/7 155/13 155/16 155/18
155/23 157/6 160/19 161/9 167/10
169/1 184/22 185/24
**can't solve [1]**  155/16
**candidly [1]**  6/12
**cannot [30]**  11/20 21/5 27/16 28/1 33/10
35/13 53/18 53/23 60/11 66/20 68/1
68/6 68/8 68/15 68/17 81/1 81/5 81/25
144/7 144/7 148/6 156/13 158/5 161/22
166/8 168/5 168/5 168/18 179/18
179/19
**capable [2]**  20/22 167/6
**capacities [2]**  96/9 179/2
**capacity [74]**  1/7 5/6 5/10 26/4 26/5
26/19 26/20 28/20 29/9 29/20 29/24
33/21 44/7 44/18 44/18 44/23 45/3
45/10 45/11 45/23 46/4 46/7 46/14
58/11 59/1 59/6 59/7 62/10 96/4 96/6
96/11 97/14 97/18 98/11 98/14 98/16
98/20 99/7 100/25 101/1 101/9 101/10
101/19 101/25 102/1 102/7 102/11
167/10 167/12 167/15 167/23 168/7
170/13 170/20 170/24 170/25 175/8
175/12 175/13 175/15 175/17 175/22
178/23 178/25 183/23 184/1 184/3
184/16 184/21 185/6 185/21 185/23
185/25 186/8
**capriciously [1]**  74/17
**care [3]**  7/19 27/11 69/22
**carefully [1]**  35/10
**cares [2]**  148/15 166/8
**Carlton [1]**  52/7
**carry [3]**  85/13 175/5 181/6
**case [258]**
**cases [71]**  10/19 20/18 22/7 22/15 31/11
31/25 37/6 37/7 37/10 37/17 37/21 42/5
55/19 56/9 68/9 69/5 71/10 81/4 92/4
92/9 92/15 92/17 93/2 93/2 93/3 95/9
95/10 95/10 96/2 98/18 102/8 112/20
113/20 114/20 115/10 115/21 116/5
116/12 116/13 121/25 123/4 123/5
123/7 129/6 131/15 131/16 132/19

133/3 133/6 133/7 136/17 136/18
136/19 136/24 137/9 137/14 138/24
140/15 142/4 142/14 142/21 143/12
144/1 145/15 147/2 147/22 147/23
163/19 164/3 168/8 168/11
**casino [10]**  19/18 19/20 19/25 82/14
107/1 107/3 107/18 108/4 108/5 108/7
**cast [1]**  185/7
**categories [1]**  120/2
**category [1]**  124/1
**catering [1]**  104/24
**causation [13]**  15/13 30/9 30/12 30/13
116/10 140/16 141/13 153/7 153/23
154/4 154/22 155/23 156/14
**cause [8]**  5/19 15/22 113/22 129/2
137/1 140/4 165/16 186/15
**caused [4]**  19/7 141/15 182/11 187/3
**causes [1]**  130/2
**causing [1]**  140/25
**celebration [3]**  52/5 57/17 57/19
**celebrations [2]**  50/24 52/8
**center [37]**  19/10 19/10 36/20 75/14
75/15 75/24 82/17 83/3 89/13 104/10
104/12 105/6 105/10 105/14 105/16
105/22 106/1 106/24 108/8 108/9
108/16 109/1 109/1 109/6 109/9 109/10
110/12 110/18 110/20 123/20 124/18
135/5 135/6 169/12 169/18 175/3 175/4
**centered [2]**  62/24 187/1
**Central [1]**  173/3
**certain [19]**  5/18 9/6 34/19 35/2 35/18
35/23 50/20 50/20 55/14 55/15 55/24
61/22 67/4 112/1 112/20 149/11 149/12
167/5 188/5
**certainly [55]**  28/3 28/7 35/5 35/14
35/20 36/17 37/15 40/22 46/15 48/23
55/13 66/12 66/22 66/24 78/5 78/22
79/6 79/7 79/11 89/16 94/8 108/2
111/11 112/10 112/22 113/3 113/22
114/3 114/10 115/19 117/5 118/15
118/25 122/20 124/14 128/19 130/23
137/1 148/7 148/9 148/23 149/3 149/18
167/3 167/6 168/4 168/15 175/18
176/24 177/3 178/21 184/25 185/9
185/12 187/6
**certainty [4]**  55/5 55/6 66/10 159/4
**CERTIFICATE [1]**  190/1
**certify [1]**  190/2
**cetera [1]**  104/23
**Chadha [1]**  130/12
**chain [10]**  30/9 30/12 30/13 73/24 153/7
153/22 154/3 154/22 155/22 156/14
**challenge [16]**  21/2 55/22 60/8 69/9
69/22 74/14 81/7 87/16 95/8 127/25
128/6 132/22 143/18 150/19 153/14
153/18
**challenged [5]**  30/6 61/1 71/13 71/20
111/18
**challenges [1]**  95/10
**challenging [16]**  23/10 27/10 29/17
70/21 74/17 76/14 95/12 95/15 96/17
96/18 96/19 96/21 128/1 133/12 138/19
164/13
**chance [4]**  93/7 98/6 170/9 172/17
**change [2]**  159/20 167/23
**changed [4]**  3/6 40/21 131/10 166/18

# C

changes [2] 5/10 14/9
Chapter [1] 92/17
character [1] 69/17
characterization [1] 183/22
characterizing [2] 70/12 185/16
charged [1] 129/8
charity [1] 15/1
check [1] 105/24
chefs [1] 135/12
chemical [1] 129/8
Chief [1] 145/21
Chinese [2] 6/24 7/2
choice [2] 121/4 154/13
choices [1] 119/8
choose [3] 30/19 63/7 174/12
chosen [1] 136/14
circle [1] 167/11
Circuit [26] 27/7 27/14 30/5 55/20 56/4
69/7 81/19 81/23 92/7 92/8 92/16 95/14
100/9 112/19 113/9 116/12 132/1 133/8
133/9 140/23 142/10 153/8 153/13
156/11 158/3 177/1
Circuit's [2] 93/14 176/22
circuits [1] 116/11
circumscribed [3] 63/14 90/5 188/2
circumspect [1] 186/24
circumstances [5] 14/8 20/21 67/12
67/18 166/18
cite [5] 27/7 78/19 92/16 156/5 171/6
cited [17] 8/14 10/19 22/15 28/11 31/11
92/10 92/19 95/13 100/14 116/19 120/5
141/9 142/22 146/11 147/2 157/21
177/2
cites [2] 14/18 145/12
citing [6] 81/22 82/1 118/1 123/7 140/20
163/20
citizen [4] 26/3 85/6 85/11 99/7
citizens [21] 20/13 27/17 33/12 34/9
50/7 50/12 54/18 58/5 81/8 81/11 81/22
82/16 83/9 83/10 85/2 85/4 85/17 90/22
90/24 182/11 182/15
citizens' [1] 81/9
City [3] 141/9 141/15 145/25
civil [3] 1/3 3/3 145/20
claim [57] 7/1 7/3 8/24 16/6 23/17 26/21
27/9 32/24 34/14 34/14 34/22 41/3 61/8
67/12 68/3 68/17 70/12 71/25 72/2
74/11 74/17 77/18 78/25 79/1 81/6 82/5
82/25 83/2 83/6 83/6 83/12 83/16 83/23
83/24 84/1 84/20 101/10 102/3 105/23
118/15 118/19 118/19 119/24 127/17
129/9 132/3 146/11 165/16 166/1
170/12 177/10 177/15 177/24 182/8
182/10 183/10 187/14
claimed [5] 69/10 71/21 76/15 76/16
94/16
claiming [13] 32/22 34/18 34/18 69/11
75/10 80/20 97/5 131/24 142/12 161/6
183/4 183/5 188/19
claims [31] 10/22 24/8 25/3 26/20 27/8
27/13 28/2 29/16 29/25 34/1 34/13
69/10 75/25 81/15 84/18 85/24 98/10
102/1 102/2 111/24 125/24 153/4 153/5
159/14 166/4 178/11 183/4 183/8 183/9

188/14 188/19
Clapper [18] 24/24 28/4 35/20 66/13
66/15 79/5 87/1 118/5 142/22 143/11
143/14 176/13 176/15 176/25 178/19
179/15 180/1 180/3
clarification [1] 7/15
clarified [1] 147/4
clarify [1] 101/2
Clark [1] 133/4
class [2] 22/4 105/4
classic [2] 113/4 123/9
clause [70] 6/19 9/18 10/3 10/6 10/9
10/13 10/16 12/21 13/12 13/24 15/9
21/25 22/1 22/2 22/3 22/13 22/14 22/5
23/11 24/5 26/13 26/14 26/17 42/19
42/22 43/10 43/12 44/9 48/13 49/5
49/18 49/24 49/25 50/1 50/2 50/6 50/18
51/2 52/16 52/25 54/3 57/15 57/16
57/21 62/11 70/15 70/17 86/12 86/13
86/20 87/6 87/9 88/22 93/20 108/13
108/14 108/18 108/23 126/2 126/4
134/3 134/4 148/17 150/13 154/14
154/18 155/2 155/4 155/10 163/10
clauses [83] 6/11 6/17 8/16 9/9 9/11
9/13 10/20 11/24 12/14 15/19 21/4 22/5
22/6 22/12 22/16 23/17 23/23 24/9
26/17 26/24 29/12 32/25 33/23 38/25
39/3 43/8 44/8 44/19 45/6 45/24 46/10
46/19 46/19 48/2 57/7 58/17 59/11 62/4
68/25 69/2 70/8 84/6 86/10 86/11 87/23
87/25 88/3 93/22 98/10 98/15 98/16
100/21 101/6 106/16 125/23 125/24
126/7 126/12 126/13 126/16 127/5
127/10 128/15 130/21 135/10 143/9
144/19 149/25 171/20 173/5 173/8
175/12 175/14 177/11 177/12 180/12
180/17 185/10 185/24 185/25 186/3
189/3 189/9
clean [2] 83/23 102/13
clear [25] 6/15 12/22 17/19 20/8 21/3
25/25 32/17 42/18 43/11 54/11 61/7
75/20 76/23 78/23 82/7 120/7 130/22
136/23 139/1 153/8 164/12 172/9
172/13 180/13 183/8
cleared [1] 41/8
clearly [12] 56/18 66/14 81/4 81/24
83/14 115/21 121/3 130/9 146/15
150/14 168/9 182/13
clears [1] 56/13
clerk [2] 4/11 103/3
clientele [1] 78/2
clients [1] 11/20
climbing [1] 117/22
Clinton [10] 100/8 100/15 141/9 145/25
146/2 147/14 164/5 164/11 168/6
168/20
close [7] 61/16 61/17 104/14 104/15
152/14 159/9 176/4
closed [2] 122/15 122/16
closely [1] 59/13
closer [1] 123/24
closing [2] 15/3 172/12
closings [1] 165/8
cloth [1] 50/1
club [1] 15/1
co [7] 47/13 65/15 105/24 109/14

109/21 184/12 188/1
co-counsel [7] 47/13 65/15 105/24
109/14 109/21 184/12 188/1
coal [2] 18/20 77/4
coast [1] 48/21
coastal [1] 84/11
coastline [1] 84/13
code [2] 67/16 88/23
coffers [2] 46/13 107/8
cognizable [9] 27/16 27/23 28/13 33/8
34/5 67/21 70/10 82/5 83/2
colleague [15] 44/7 49/11 52/16 94/3
95/5 101/25 113/9 140/10 161/21 163/6
167/14 168/23 178/9 179/15 187/12
colleagues [1] 4/21
collect [1] 77/7
collision [2] 32/10 164/3
colorably [1] 168/18
COLUMBIA [70] 1/3 1/13 1/15 3/4 3/12
3/14 3/16 7/3 8/5 8/20 9/7 11/8 39/1
39/4 39/23 42/22 50/3 50/10 50/17
50/19 51/5 52/24 53/3 53/4 54/3 54/8
54/23 55/25 57/1 57/23 61/17 62/2
62/10 63/3 63/6 63/8 64/10 65/6 65/12
86/14 87/12 88/8 88/11 91/2 91/8 91/13
102/25 103/20 104/4 106/12 107/17
109/3 123/19 130/25 131/7 132/12
173/6 174/22 179/17 180/24 181/14
181/21 181/23 182/7 182/8 182/9
182/16 182/20 188/25 189/2
Columbia's [1] 140/2
combination [1] 150/24
combine [1] 61/3
combined [1] 169/22
come [25] 14/15 37/11 41/20 43/21
50/25 51/22 60/21 65/22 73/12 92/15
94/2 98/4 108/17 109/21 142/15 150/1
150/21 165/8 168/5 171/9 172/17 177/6
184/12 186/19 187/17
comes [11] 3/4 14/13 24/24 28/4 45/25
103/17 106/10 144/8 172/1 182/13
184/23
comfortable [1] 151/7
coming [4] 101/3 107/16 152/20 159/25
command [1] 146/15
Commander [1] 145/21
comment [1] 189/13
commerce [3] 70/17 105/9 162/10
commercial [2] 14/7 47/19
commission [1] 100/1
committee [2] 169/17 169/21
common [4] 113/19 119/2 136/24 164/7
Commonwealth [3] 27/12 70/4 70/11
communications [1] 176/19
community [1] 51/13
companies [1] 77/5
Company [4] 122/1 122/1 122/2 133/4
Comparability [1] 146/12
comparable [4] 104/22 105/1 124/5
160/12
compare [1] 124/4
compelled [1] 73/25
compels [1] 168/15
compensated [1] 10/4
compensation [3] 9/19 44/10 44/16
compete [52] 16/25 17/3 17/6 17/11

**C**

**compete... [48]** 19/8 19/14 19/22 24/10 35/3 37/2 37/17 38/12 56/19 56/20 56/22 56/23 56/24 59/19 60/24 61/3 77/24 77/25 78/3 78/8 78/10 78/11 92/3 103/22 104/1 104/5 104/6 106/5 112/2 113/25 116/15 116/17 118/24 120/14 120/16 121/23 124/9 124/13 126/11 132/7 132/12 141/14 141/22 156/25 161/9 174/23 180/25 183/20
**competes [3]** 77/22 124/18 135/24
**competing [11]** 17/7 33/2 35/15 103/7 103/19 115/2 115/4 121/19 121/20 135/5 135/6
**competition [75]** 23/14 37/4 37/19 38/1 39/18 39/21 54/25 55/10 55/23 55/23 56/5 56/11 56/14 59/16 61/5 61/6 71/6 77/19 79/19 80/10 88/15 92/2 94/12 107/5 110/24 112/5 112/11 112/24 113/16 113/21 114/3 114/6 114/10 114/24 115/8 116/14 118/25 119/7 121/18 121/22 122/3 122/20 123/12 123/14 123/14 124/15 125/4 126/8 127/4 128/17 131/5 132/20 133/12 135/11 135/23 136/16 136/20 136/25 137/21 138/12 138/16 138/20 138/25 139/5 139/8 139/10 140/16 140/19 141/1 153/2 153/2 156/24 160/21 161/7 166/2
**competitive [46]** 11/19 12/12 17/15 24/2 24/3 24/8 30/17 33/4 54/17 55/15 55/16 55/17 57/4 60/22 75/12 76/10 77/17 78/4 91/20 106/7 109/2 114/13 115/10 120/5 120/6 123/6 124/24 125/24 127/16 131/13 134/21 135/3 136/5 137/2 137/16 138/11 139/12 139/24 139/24 159/14 161/5 174/14 174/15 179/22 179/24 179/24
**competitively [2]** 133/11 138/18
**competitor [53]** 35/4 35/21 37/12 37/25 38/1 38/5 38/7 38/9 51/23 54/22 55/7 56/8 60/14 61/4 62/23 91/16 91/22 91/25 92/15 92/20 93/1 103/24 112/9 112/15 113/4 113/7 113/12 113/24 114/18 114/21 114/23 115/16 115/23 116/10 118/1 118/22 119/4 120/11 123/12 123/17 131/3 131/9 132/2 132/21 133/13 136/15 136/19 138/23 140/10 140/14 141/4 142/3 186/1
**competitor's [1]** 132/3
**competitors [17]** 38/4 53/5 55/11 91/19 113/15 116/21 116/23 116/23 119/8 120/2 132/16 132/17 132/18 132/20 140/18 165/18 165/19
**complain [1]** 15/7
**complainant [1]** 113/20
**complaint [61]** 10/6 10/17 11/3 14/18 18/3 29/8 29/8 33/16 37/1 41/14 47/11 48/24 51/10 52/2 59/24 60/1 67/7 68/23 71/3 72/7 73/19 74/3 79/8 80/8 80/17 80/21 86/22 91/6 93/19 93/21 94/5 94/21 97/18 97/21 97/22 98/2 98/5 104/10 121/10 127/13 134/1 134/22 135/21 136/4 136/12 136/24 158/7 160/4 167/15 169/11 170/12 179/1

179/3 183/25 184/3 184/6 184/13 185/2 185/13 187/5 187/10
**Complaint's [1]** 19/13
**complaints [1]** 14/21
**complete [1]** 23/18
**completely [2]** 140/11 154/17
**compliance [3]** 23/10 39/2 173/8
**complicated [1]** 63/22
**complies [1]** 16/11
**comply [10]** 59/10 65/10 150/3 150/3 171/19 173/4 173/23 175/9 175/14 186/3
**complying [3]** 69/2 70/7 146/24
**component [1]** 29/4
**components [2]** 144/5 188/6
**composition [1]** 113/2
**compromised [1]** 10/15
**COMPUTER [1]** 1/24
**COMPUTER-AIDED [1]** 1/24
**concede [1]** 53/13
**conceded [2]** 162/24 163/1
**concededly [1]** 66/19
**conceived [1]** 175/22
**concept [1]** 66/20
**concern [9]** 75/23 128/14 146/4 148/12 164/9 167/11 177/17 177/21 189/5
**concerned [2]** 156/25 159/16
**concerns [11]** 20/12 31/20 32/9 33/7 88/22 144/11 147/21 148/21 163/15 163/18 164/2
**concession [2]** 73/2 73/12
**concessions [6]** 14/17 72/6 72/8 73/9 73/25 74/2
**conclude [6]** 17/9 17/14 39/20 55/8 78/5 124/22
**concluded [2]** 24/5 147/25
**concludes [1]** 86/1
**conclusion [1]** 17/24
**conclusions [1]** 176/10
**conclusory [1]** 84/9
**concrete [22]** 14/25 24/7 27/25 28/10 30/1 41/14 52/1 66/6 70/9 70/9 70/24 71/18 77/7 77/11 84/8 84/16 93/17 130/2 144/23 174/25 177/15 178/7
**concurrence [1]** 20/10
**concurring [4]** 32/6 100/16 163/19 163/20
**conditions [2]** 13/23 112/25
**conduct [29]** 15/15 16/6 16/7 17/8 17/17 26/22 26/23 26/23 28/9 28/12 29/14 29/17 30/1 30/5 30/7 30/18 41/1 84/15 128/2 153/19 156/15 158/2 164/18 164/19 169/18 174/1 175/11 178/18 178/21
**conducted [1]** 148/23
**confer [9]** 4/22 28/10 37/24 80/7 107/19 154/8 155/21 157/15 158/11
**conference [14]** 19/10 105/10 105/14 105/16 106/1 106/24 108/8 109/9 109/9 110/17 110/19 135/6 169/12 169/18
**conferencing [1]** 104/23
**conferred [1]** 75/5
**confess [1]** 186/23
**confession [1]** 169/10
**confine [1]** 141/8
**confined [1]** 76/6

**confirm [1]** 21/10
**conflicted [1]** 70/1
**confronted [1]** 167/12
**Congress [32]** 10/5 10/11 21/21 21/25 22/5 22/9 22/11 22/14 22/17 22/18 22/22 22/25 44/16 52/15 52/19 52/21 52/23 53/2 53/7 53/9 53/9 53/11 53/13 53/17 53/18 53/23 53/25 83/23 84/4 127/25 128/2 146/15
**congressmen [1]** 53/12
**conjectural [2]** 56/7 139/7
**conjunction [1]** 25/13
**connection [3]** 14/3 119/22 121/12
**connections [1]** 7/6
**consent [4]** 10/11 22/5 22/14 52/21
**consequence [1]** 169/25
**consequences [1]** 130/13
**consider [3]** 22/10 85/10 151/15
**consideration [3]** 6/21 14/14 15/10
**considerations [3]** 5/2 118/16 147/8
**considered [1]** 130/14
**consistent [1]** 41/18
**constituents [1]** 36/19
**constitute [3]** 66/24 67/19 176/24
**constituted [1]** 166/19
**Constitution [30]** 8/16 15/12 20/14 21/6 22/11 22/13 39/1 45/19 48/17 58/15 86/12 87/6 87/23 88/2 88/5 129/5 129/12 130/9 130/11 137/17 144/2 145/8 148/14 148/15 148/21 166/8 166/13 173/3 173/4 173/23
**Constitution's [3]** 20/19 23/10 70/8
**constitutional [23]** 8/12 8/21 13/22 16/10 22/4 32/11 39/24 43/5 65/10 69/21 70/20 87/16 87/22 125/19 129/25 130/16 137/10 148/22 155/2 166/7 175/10 177/8 180/10
**constitutionality [1]** 143/19
**constitutionally [2]** 12/20 42/23
**constructed [1]** 110/14
**construe [1]** 45/20
**consult [1]** 109/14
**consultation [1]** 8/1
**contacts [1]** 174/25
**contained [4]** 93/22 104/10 174/24 184/14
**contemplate [1]** 89/25
**contemplating [1]** 102/3
**contention [3]** 15/6 25/12 26/1
**context [7]** 13/8 22/19 29/14 79/14 102/11 108/13 112/23
**continue [5]** 10/24 17/19 26/2 149/15 180/5
**CONTINUED [2]** 2/1
**continuing [1]** 149/16
**contours [1]** 65/2
**Contractors [3]** 92/18 141/7 141/18
**contrast [1]** 76/23
**contravention [1]** 169/6
**contributions [1]** 154/24
**control [5]** 30/13 59/8 156/13 157/6 158/5
**controlling [7]** 37/21 38/4 115/6 115/12 119/3 158/3 163/25
**controls [1]** 113/5
**controversy [3]** 8/7 16/4 16/8

## C

convention [21]  19/10 36/20 75/15
75/24 82/17 83/3 89/13 104/9 104/12
105/6 105/22 108/9 108/16 109/1 109/1
109/6 123/19 124/18 135/4 175/3 175/4
conversation [1]  60/13
convey [1]  14/8
convinced [1]  124/13
cope [1]  28/19
core [3]  24/13 130/24 177/13
corner [1]  9/10
corporation [2]  109/12 155/1
correct [12]  4/4 5/12 16/9 21/5 24/1 25/6
42/7 131/8 144/8 188/16 188/17 190/3
correctly [2]  183/24 188/2
corrupting [1]  43/17
corruption [8]  47/4 48/5 48/6 49/22 91/1
101/7 126/3 137/19
cost [2]  15/3 32/11
could [76]  6/19 31/8 33/16 34/13 42/14
44/12 45/7 46/8 46/15 47/7 48/23 50/25
53/13 56/12 61/9 62/4 62/19 64/19 68/3
70/4 70/11 70/15 72/2 74/17 76/5 76/25
77/6 80/1 82/2 82/25 83/2 90/4 99/25
100/7 101/11 101/19 107/13 107/23
107/25 108/2 113/7 116/13 125/2 131/1
133/15 133/16 134/8 135/17 146/8
147/11 150/21 150/22 150/23 151/10
151/23 153/25 156/2 156/3 157/13
157/20 159/18 159/24 160/4 162/5
162/22 166/17 167/1 167/2 173/21
178/17 178/24 180/21 184/2 184/5
184/8 186/24
couldn't [11]  30/17 33/13 35/10 78/9
81/7 89/2 89/3 98/14 108/1 119/1
166/22
counsel [16]  3/9 3/10 4/2 4/5 47/13
65/15 98/12 105/24 109/14 109/21
151/21 152/13 152/17 184/12 188/1
189/16
count [1]  135/12
countervailing [1]  145/11
counties [2]  88/10 91/7
countless [1]  144/25
countries [2]  35/24 121/6
country [5]  56/10 61/14 61/21 188/19
189/11
county [23]  14/20 14/24 15/2 75/14
75/15 75/22 76/6 82/18 90/2 105/10
105/15 105/22 109/1 109/6 110/10
110/15 111/7 153/14 153/18 153/20
169/16 169/17 175/3
couple [8]  10/17 40/11 51/7 77/17 86/6
114/5 118/4 167/18
course [16]  5/16 21/14 32/10 44/4 46/15
85/2 104/25 134/8 134/23 139/25
147/18 164/3 168/23 181/4 181/5 186/6
court [299]
Court's [16]  4/22 21/16 76/11 77/13
92/11 95/6 100/6 109/13 149/19 161/20
162/10 162/11 167/17 171/19 171/21
177/17
courthouse [1]  186/20
courtroom [3]  7/21 103/12 103/12
courts [17]  21/6 22/10 31/11 31/11

34/25 56/10 75/2 112/20 114/20 142/10
144/1 144/9 147/16 147/22 164/4 167/4
168/14
covered [1]  171/1
craft [3]  102/13 148/20 167/5
created [5]  11/21 83/23 84/5 141/16
181/15
creates [2]  12/19 58/10
creating [2]  67/15 71/6
credit [1]  79/7
credits [1]  10/22
Crew [7]  29/22 30/15 114/1 115/1
125/17 125/20 126/6
criminal [4]  129/10 129/14 130/5 137/9
crisis [1]  32/11
criteria [1]  16/13
crucial [1]  178/1
cry [1]  145/21
Cultural [1]  89/18
curable [1]  97/20
cure [1]  161/5
cured [2]  46/9 153/11
curing [1]  98/6
curiosity [1]  19/17
curricular [1]  96/21
curry [3]  36/1 63/9 108/24
customer [1]  80/6
customers [6]  17/5 30/19 112/3 154/21
157/14 160/24
cut [1]  50/1

## D

D.C [39]  1/16 2/4 23/11 36/16 36/17
38/10 51/22 55/20 68/6 68/8 68/13
68/14 72/6 72/10 72/13 72/20 73/2 73/8
74/7 74/9 74/23 77/25 80/3 87/17 87/17
92/7 100/8 111/25 113/9 123/22 124/18
124/22 124/23 133/8 134/18 140/23
153/3 180/21 180/23
damage [1]  166/3
damages [2]  102/2 102/3
Daniels [12]  24/3 30/15 30/25 38/8
114/1 115/1 125/20 126/5 128/20 142/2
156/4 156/5
Data [1]  133/3
date [1]  180/4
dating [1]  92/9
day [7]  24/14 50/24 52/5 52/7 57/17
57/18 144/3
days [2]  98/7 167/18
deal [3]  78/17 87/18 116/4
dealing [2]  10/3 102/12
dealings [1]  48/15
decades [1]  14/20
decide [18]  5/18 6/4 20/12 30/4 96/11
117/9 120/7 125/9 125/17 136/3 145/14
156/17 172/6 185/3 186/13 187/9
187/16 187/24
decided [3]  120/21 155/19 171/18
decides [1]  171/15
decision [24]  11/12 14/4 55/22 63/10
119/14 119/15 124/20 127/1 127/9
133/12 138/20 143/17 153/25 154/7
156/16 157/9 158/4 159/14 159/11 162/22
171/20 171/24 181/11 185/3 189/7
decision-maker [1]  158/4

decision-makers [1]  156/16
decision-making [4]  11/12 14/4 127/9
189/7
decisions [10]  8/14 119/11 120/17
126/22 126/25 154/5 155/24 157/5
178/1 189/11
declaration [14]  16/11 31/16 35/11 65/9
65/10 104/11 105/3 120/15 120/16
124/18 132/8 149/22 166/17 174/24
declarations [12]  16/21 19/16 21/13
30/22 56/17 60/5 60/23 77/23 78/21
104/3 132/7 155/24
declaratory [30]  15/24 16/3 16/5 31/17
31/23 32/7 65/1 65/5 100/7 100/9
100/13 100/17 100/20 102/5 144/14
145/24 146/1 146/4 146/8 146/19 148/6
148/9 161/24 163/23 164/1 167/7
171/14 171/16 171/19 171/24
declare [3]  24/23 164/18 166/17
declared [2]  25/22 35/24
declaring [3]  15/25 16/9 35/8
defect [1]  97/21
defend [2]  101/21 173/2
defendant [19]  1/9 2/2 3/20 16/7 30/8
30/12 32/1 32/4 98/3 129/11 140/25
144/23 145/3 156/12 164/16 167/2
172/19 172/25 178/22
defendant's [12]  16/6 30/5 30/18 39/2
41/1 58/23 60/25 101/12 140/17 156/15
158/2 175/23
defendants [7]  5/22 40/20 41/19 60/3
137/9 137/10 164/8
defense [4]  3/10 4/2 44/21 137/11
defer [2]  4/23 184/11
deficiency [1]  184/5
define [2]  63/24
defined [2]  9/22 115/23
definite [1]  147/7
definitely [1]  144/15
definition [3]  155/1 156/21 186/15
definitive [3]  40/10 64/22 125/1
definitively [5]  5/18 6/4 63/17 116/20
125/8 172/6
degree [2]  78/10 110/25
delayed [1]  83/25
delegations [1]  51/20
deliberate [1]  85/12
delineated [1]  111/12
demand [2]  67/16 132/11
demonstrate [5]  117/13 125/2 132/22
134/16 184/5
demonstrated [1]  14/4
demonstrating [1]  20/23
denial [4]  12/17 13/21 14/12 15/15
denied [5]  15/11 83/17 84/1 142/16
145/8
denies [2]  16/7 50/3
deny [4]  124/21 144/3 175/23 186/21
denying [1]  15/19
Department [9]  2/3 3/22 3/23 29/10 53/1
74/15 105/8 105/8 140/22
depend [4]  73/14 153/6 188/9 188/21
depends [2]  8/23 135/12
deposing [1]  89/25
deregulatory [1]  138/19
derived [1]  12/12

**D**

derives [1] 168/24
described [1] 113/10
designed [4] 15/19 39/24 49/5 129/10
desired [1] 14/8
desk [1] 103/14
despite [2] 105/18 106/2
destroy [1] 154/17
detail [2] 92/25 110/25
detailed [2] 11/7 91/6
details [1] 169/19
determination [2] 6/7 124/17
determine [6] 122/18 122/19 145/2 146/13 149/3 178/17
determined [3] 147/22 166/22 184/20
determines [2] 148/8 166/24
determining [1] 147/9
detriment [5] 48/14 54/19 60/15 132/4 138/14
development [2] 13/5 45/10
developments [1] 5/4
dialogue [1] 93/7
did [11] 48/23 52/6 89/10 141/6 152/21 163/23 173/20 178/11 178/14 181/15 183/13
didn't [4] 66/5 71/1 94/6 99/2
difference [3] 125/7 147/6 159/6
different [42] 4/19 23/24 29/23 37/11 41/22 60/12 62/1 78/2 81/15 83/9 85/22 85/25 102/12 109/19 118/19 119/10 119/25 119/25 120/2 120/2 120/18 123/3 123/15 136/18 142/6 142/17 142/20 143/3 143/10 156/1 156/19 157/16 158/21 159/22 159/22 160/3 160/9 164/15 164/23 169/7 175/20 177/11
differently [1] 85/18
difficult [3] 13/17 94/7 142/15
difficulty [1] 150/23
diffuse [2] 38/3 119/7
dilemma [6] 13/13 33/1 71/2 71/9 72/4 178/12
diminished [1] 60/18
diminishes [2] 12/6 18/14
diminution [2] 59/12 61/6
diplomat [4] 51/19 51/21 121/14 160/5
diplomatic [5] 51/13 51/14 105/2 109/10 187/2
diplomats [7] 35/23 51/16 134/22 135/25 155/19 158/10 174/5
direct [23] 19/11 36/22 37/8 43/8 49/21 55/2 55/3 56/5 56/14 59/23 79/19 91/19 95/19 103/21 108/3 129/22 129/24 130/8 139/5 139/8 139/10 157/1 184/18
directing [3] 19/4 175/9 175/14
directions [1] 102/10
directly [9] 19/22 36/11 36/11 54/25 60/24 104/5 107/8 143/22 152/3
director [1] 51/13
disabuse [1] 99/13
disadvantage [6] 11/19 17/10 17/15 50/10 51/5 71/8
disadvantaged [1] 18/20
disadvantages [2] 12/4 18/12
disagree [1] 181/4

disagreement [2] 69/4 84/15
disagreements [1] 23/12
disagrees [1] 184/13
discerned [1] 134/1
discovery [21] 40/21 41/6 89/15 89/19 90/4 94/19 117/6 133/21 134/8 135/18 136/1 136/7 137/2 137/4 138/3 138/4 160/1 186/22 186/24 188/3 188/7
discretion [5] 69/19 145/13 146/15 156/13 158/5
discretionary [5] 99/23 100/3 163/5 163/8 164/24
discrimination [3] 85/1 85/22 85/23
discuss [4] 34/4 93/9 91/25 106/11
discussed [7] 20/5 47/13 49/12 130/20 140/9 156/4 179/8
discussing [6] 24/14 38/13 39/12 39/20 62/7 128/21
discussion [9] 6/22 86/1 95/22 98/25 137/8 139/23 163/14 164/1 171/14
dismiss [45] 5/17 6/1 10/8 11/4 23/9 23/20 36/6 40/15 40/24 41/2 60/10 60/20 72/23 73/13 73/19 78/12 78/14 78/16 78/24 79/9 89/8 92/14 92/23 94/17 94/24 95/2 96/7 97/22 101/15 117/12 120/8 124/22 135/20 138/5 171/3 175/23 179/4 179/5 184/8 184/9 184/15 186/14 186/21 187/13 187/18
dismissed [42] 23/21 187/20
disproportionate [1] 46/22
dispute [11] 27/24 68/13 69/17 70/6 70/22 93/16 93/25 97/7 97/8 177/13 178/6
disqualifies [1] 5/23
disrupted [1] 11/17
dissenting [1] 128/21
distant [1] 7/6
distinct [7] 8/17 8/18 32/18 41/16 67/7 67/8 83/20
distinction [13] 68/16 95/5 96/15 97/13 99/20 99/21 99/22 112/12 115/11 137/13 159/13 163/4 163/6
distinctions [1] 168/19
distinguish [1] 152/3
distinguishable [1] 88/21
district [114] 1/1 1/1 1/3 1/11 1/13 1/15 3/3 3/11 3/13 3/15 7/3 8/5 8/19 9/7 11/8 11/18 12/9 13/12 16/18 16/23 17/2 19/7 21/9 39/1 39/4 39/10 39/23 42/22 45/3 47/15 48/14 50/3 50/10 50/12 50/17 50/19 51/5 52/24 52/24 53/3 53/4 54/3 54/8 54/23 55/25 56/20 57/1 57/10 57/10 57/23 59/9 61/16 62/2 62/10 63/3 63/6 63/8 63/15 64/10 65/6 65/12 86/14 87/12 88/8 88/10 91/2 91/8 91/13 102/25 103/9 103/20 104/4 105/25 106/6 106/12 106/18 107/17 108/8 109/3 123/19 130/25 131/7 132/12 134/13 139/9 140/1 146/5 148/13 162/11 162/18 166/3 173/6 174/16 174/22 175/4 179/17 180/24 181/3 181/8 181/14 181/18 181/21 181/23 182/7 182/8 182/9 182/15 182/17 182/20 182/22 183/2 183/17 188/25 189/1
District's [9] 11/14 12/17 15/15 19/9

39/16 56/1 64/20 91/6 166/1
diversion [2] 159/8 160/2
diverted [2] 57/9 106/13
divested [1] 17/25
divestment [2] 149/10 149/11
divests [2] 161/11 164/19
DIVISION [1] 1/2
do [108] 5/18 6/6 7/17 8/1 19/17 19/22 21/22 25/16 27/3 28/17 31/12 34/12 34/23 36/3 37/6 41/5 41/18 45/16 45/23 46/8 46/9 51/6 53/18 58/8 58/14 61/14 61/24 64/19 64/21 65/9 72/22 77/24 78/7 78/12 78/12 83/8 85/4 89/25 89/25 90/11 92/1 92/21 94/18 94/20 95/25 96/4 97/7 98/21 100/20 101/11 101/16 101/20 105/17 105/24 106/18 107/18 107/21 108/10 110/1 117/25 118/21 120/4 120/7 120/15 121/13 124/20 124/25 125/8 129/16 138/2 138/6 145/5 145/6 146/3 148/3 148/25 150/17 150/17 152/12 152/17 154/19 155/14 157/10 158/6 159/21 160/12 161/2 164/19 165/10 166/16 166/21 167/18 167/19 168/14 168/24 171/2 175/18 175/18 175/19 177/16 178/15 180/22 180/25 184/10 184/18 185/1 185/13 186/20
do-over [1] 159/21
doctrine [36] 34/7 37/20 54/21 55/7 55/15 56/8 60/14 61/4 77/17 78/4 91/23 92/1 92/20 92/25 103/24 103/25 112/10 112/15 112/16 112/18 113/5 113/12 116/11 118/22 120/11 123/8 123/8 123/17 123/21 131/3 131/4 133/14 136/15 136/19 138/24 179/25
documented [2] 86/22 89/7
does [55] 4/21 8/10 19/18 22/10 22/22 25/17 25/17 27/3 28/19 36/15 46/24 48/6 48/22 53/7 53/18 55/14 58/10 59/8 59/8 64/17 70/22 74/6 74/15 81/16 86/20 88/7 91/24 105/6 109/11 109/22 110/5 111/9 111/10 111/15 118/10 120/15 138/10 141/4 142/2 143/25 146/14 150/7 155/5 157/10 161/5 162/22 168/4 168/20 180/23 181/2 182/9 182/17 183/12 185/11 187/16
doesn't [21] 19/20 20/1 31/17 35/11 36/13 45/11 47/22 53/9 82/22 85/5 94/14 99/7 118/20 128/10 136/10 145/5 149/13 151/5 170/13 171/7 171/8
doing [29] 25/13 26/2 28/15 36/4 43/23 46/16 47/6 50/21 66/4 66/5 79/25 89/6 90/6 96/19 96/21 99/11 99/14 99/15 99/17 107/21 114/19 115/9 115/20 122/10 133/16 142/1 160/7 177/23 187/2
dollars [3] 16/23 72/16 77/2
domestic [53] 9/15 9/18 10/6 12/21 12/22 13/12 13/24 15/8 21/24 22/1 22/19 38/25 42/18 42/19 42/21 43/8 43/10 43/11 44/9 46/18 46/19 47/10 48/12 49/5 49/18 49/23 53/21 55/1 57/14 57/20 58/16 62/3 62/11 63/12 86/12 87/6 91/11 93/22 103/19 105/2 106/15 107/16 108/17 108/22 126/4 130/20 134/12 135/10 173/4 173/17

## D

**domestic... [3]** 180/12 180/17 189/2
**Domestics [1]** 50/2
**dominating [1]** 37/8
**don't [98]** 5/1 6/11 7/13 19/17 24/4 24/9
25/12 26/7 29/6 31/24 36/12 37/7 37/8
42/5 53/2 53/3 53/4 53/5 53/13 55/1
55/21 60/2 63/7 64/22 65/13 67/20
68/13 73/15 76/3 76/12 76/21 79/22
79/25 80/1 80/5 80/15 82/21 83/1 83/4
84/4 85/4 85/5 85/24 91/3 94/18 94/25
96/23 97/12 97/15 98/5 98/20 99/20
100/12 100/14 102/2 106/25 111/1
111/10 111/11 111/12 114/4 116/5
116/19 123/16 123/25 127/19 128/23
131/2 133/14 133/15 136/1 143/21
144/20 146/25 150/22 151/1 151/16
151/19 155/13 156/5 159/2 160/9 161/4
164/22 165/13 167/21 171/3 172/2
172/6 173/12 177/18 180/1 182/21
183/19 185/15 187/5 189/9 189/15
**DONALD [7]** 1/7 3/4 25/4 29/20 33/14
58/21 59/5
**done [16]** 5/7 48/3 73/5 74/19 80/15
100/4 101/24 108/9 109/10 115/9
121/24 147/15 152/10 152/12 164/25
185/6
**donor [1]** 166/10
**door [3]** 7/21 122/15 122/16
**down [17]** 7/24 63/18 75/13 80/14 80/16
83/13 89/1 89/14 90/18 103/14 104/21
105/1 129/23 136/9 136/9 170/21
184/20
**drafted [1]** 23/1
**drafting [1]** 9/22
**draw [6]** 95/5 137/6 157/25 158/6
159/12 176/9
**drawing [1]** 97/12
**drawn [2]** 57/2 168/19
**draws [1]** 163/4
**drew [3]** 122/1 122/1 150/13
**drilling [4]** 48/21 49/15 49/21 74/12
**driven [1]** 88/16
**dropped [1]** 141/12
**Drug [1]** 105/8
**due [9]** 12/4 17/2 17/7 18/11 18/19
18/22 77/19 111/6 112/11
**during [8]** 4/20 10/22 14/4 66/3 127/25
151/18 151/18 165/9
**duties [10]** 28/18 145/20 146/25 147/24
148/1 162/16 162/17 168/17 169/2
169/5
**duty [9]** 81/9 144/18 144/19 144/20
146/12 146/24 169/6 185/5 186/3

## E

**each [16]** 4/15 6/25 7/13 9/1 9/2 12/15
32/21 42/11 43/20 53/14 64/24 65/3
67/8 67/9 68/21 188/12
**eager [1]** 117/17
**earlier [11]** 25/11 31/8 52/14 72/18
76/14 76/24 83/11 100/6 159/2 168/22
188/5
**early [1]** 93/1
**earned [1]** 151/18

**earning [2]** 152/1 152/2
**easier [1]** 7/20
**easily [6]** 46/8 70/11 115/7 120/20
140/17 140/24
**east [3]** 48/21 51/19 134/22
**Eastern [1]** 121/5
**easy [4]** 105/13 113/1 116/4 119/6
**eat [6]** 63/7 119/9 119/12 120/18 154/6
157/6
**eBay [1]** 147/5
**economic [21]** 11/15 17/8 17/10 17/14
19/3 20/4 34/15 54/12 54/15 55/3 55/4
55/8 55/25 57/22 59/16 80/24 85/23
91/11 113/13 119/2 182/11
**economics [1]** 112/21
**economies [4]** 11/15 16/14 17/2 56/16
**economy [10]** 18/17 34/10 39/18 54/15
54/16 54/18 102/23 103/7 103/19 166/3
**effect [10]** 42/5 58/12 65/11 90/22 127/2
127/3 131/13 134/20 160/10 160/20
**effected [1]** 150/10
**effecting [2]** 54/18 86/15
**effectively [1]** 68/10
**effects [2]** 85/10 135/3
**efficiently [1]** 167/20
**efforts [1]** 85/13
**eight [6]** 10/8 65/21 65/23 77/5 172/16
172/20
**either [10]** 12/13 21/15 36/14 53/8 59/7
75/17 107/13 126/21 142/16 167/19
**elastic [1]** 66/19
**elected [3]** 18/2 115/4 150/14
**election [7]** 14/19 14/23 14/24 52/10
52/11 80/6 121/20
**element [1]** 155/16
**elements [4]** 6/5 6/6 27/20 116/9
**eliminate [1]** 148/22
**else [7]** 21/1 67/25 71/16 120/16 142/15
144/8 158/23
**elucidate [1]** 6/20
**elucidates [1]** 174/9
**embassies [1]** 105/13
**embassy [2]** 105/13 105/16
**embraced [1]** 41/2
**emolument [22]** 9/20 9/22 9/23 10/11
17/22 47/1 47/2 50/9 52/20 52/20 53/17
54/1 62/8 63/25 64/6 93/11 98/10
107/19 166/19 166/23 186/15 187/3
**emoluments [200]**
**emphasis [1]** 142/4
**emphasize [1]** 112/13
**empire [1]** 145/23
**employees [2]** 82/20 146/10
**employers [2]** 84/19 84/20
**enables [1]** 17/8
**enact [1]** 141/11
**end [13]** 73/18 104/24 116/6 116/11
128/4 134/18 144/13 148/8 149/5
153/11 176/24 177/21 178/4
**end-quote [3]** 153/11 176/24 178/4
**endeavor [1]** 179/14
**endorse [1]** 141/4
**enforce [12]** 53/10 81/9 84/5 90/25
93/25 99/3 144/2 144/10 145/8 145/18
146/12 154/14
**enforced [2]** 88/3 166/14

**enforcement [2]** 130/1 180/3
**enforcing [1]** 67/15
**engage [4]** 42/24 70/18 107/10 136/10
**enjoin [7]** 99/25 100/5 147/12 162/15
163/8 164/11 167/10
**enjoined [2]** 148/17 169/1
**enlarge [1]** 44/15
**enormous [1]** 82/23
**enough [26]** 5/19 28/4 28/10 36/3 61/16
65/1 67/3 71/17 78/3 114/1 114/2 117/3
117/13 118/3 119/13 119/17 122/3
124/12 124/13 128/6 134/19 134/20
139/1 159/10 169/22 176/10
**enshrined [1]** 38/24
**ensure [11]** 9/11 10/14 66/21 84/12
87/12 126/4 137/18 137/18 149/24
150/7 179/19
**ensures [1]** 50/6
**ensuring [2]** 10/4 16/11
**enter [4]** 4/9 100/20 114/21 160/23
**entered [1]** 146/5
**entering [1]** 93/23
**enterprise [1]** 61/24
**enterprises [9]** 7/11 12/5 18/13 61/15
104/5 131/12 134/13 149/12 175/20
**enterprising [1]** 150/20
**enticement [1]** 135/2
**entire [3]** 74/22 75/1 77/25
**entirely [17]** 8/18 14/23 72/5 72/13
74/21 77/14 79/21 79/23 80/2 80/9
80/12 88/21 94/11 124/11 154/6 160/20
161/16
**entities [11]** 43/9 54/5 57/11 59/15
60/23 107/21 108/23 134/5 173/19
179/21 188/13
**entitled [8]** 16/15 20/12 50/14 142/19
144/24 145/4 147/19 190/4
**entity [5]** 20/11 20/22 59/2 133/4 182/14
**entrant [1]** 37/24
**entry [1]** 123/10
**enures [1]** 127/14
**envision [1]** 188/2
**EPA [7]** 50/16 58/7 58/18 83/15 83/17
118/10 118/12
**equal [35]** 9/24 11/11 14/12 15/9 15/16
17/3 17/7 39/22 42/14 42/24 43/3 43/21
59/19 62/12 87/13 106/5 107/15 141/8
141/10 141/14 141/16 141/22 161/9
173/15 173/24 174/15 179/18 179/19
181/2 181/5 181/9 181/19 182/3 182/8
183/16
**equality [2]** 40/7 43/5
**equally [2]** 17/11 24/20
**equidistant [1]** 105/12
**equipment [1]** 104/22
**eroding [1]** 84/13
**escape [1]** 143/16
**especially [4]** 24/21 50/19 52/23 118/5
**Esquire [9]** 1/13 1/13 1/14 1/17 1/18
1/18 2/2 2/2 2/3
**essence [1]** 84/11
**essential [2]** 43/6 84/3
**essentially [6]** 49/9 99/11 127/11 177/8
179/2 179/6
**establish [16]** 21/13 21/16 24/18 76/18
89/3 89/21 90/8 92/21 119/18 125/18

**E**

**establish... [6]** 125/21 134/11 139/11 176/16 177/5 177/14

**established [27]** 8/13 21/10 24/20 33/10 54/21 68/4 75/2 80/25 81/24 92/20 94/23 103/24 106/14 106/18 131/4 132/6 133/13 138/6 140/15 140/24 144/15 169/12 169/15 173/16 176/6 177/3 188/12

**establishes [3]** 66/14 91/18 138/8

**establishing [1]** 66/9

**establishment [1]** 88/18

**estate [2]** 49/8 169/21

**et [3]** 1/4 3/4 104/23

**ethnic [1]** 85/1

**Etna [1]** 117/23

**evaluate [1]** 162/19

**evaluating [1]** 176/6

**even [25]** 13/16 28/24 30/24 34/13 48/9 49/19 51/2 51/24 68/2 68/4 72/2 82/2 106/17 108/7 115/1 115/3 116/12 122/8 130/7 130/18 131/21 147/23 160/23 168/7 170/23

**event [11]** 5/25 13/9 15/1 25/15 36/20 56/22 75/17 104/20 104/21 105/14 137/5

**events [6]** 15/4 16/22 104/19 105/16 108/25 133/24

**ever [10]** 17/5 34/25 142/23 142/25 143/4 154/14 154/23 155/5 164/25 165/20

**Everest [1]** 117/23

**every [9]** 7/1 10/14 47/4 83/10 85/6 85/14 144/20 181/11 181/11

**everybody [2]** 82/19 143/21

**everyone [2]** 9/10 91/15

**everything [2]** 117/12 136/3

**evidence [13]** 56/5 56/14 60/21 89/7 90/7 104/3 117/18 119/16 122/7 139/5 139/8 149/4 154/11

**evidentiary [1]** 6/8

**evidently [1]** 21/1

**exact [1]** 151/12

**exactly [9]** 38/8 70/5 70/13 76/21 93/10 126/9 130/12 132/5 167/11

**example [28]** 6/5 7/2 13/1 14/15 34/20 41/25 43/25 47/14 47/21 48/6 57/13 57/14 67/15 67/17 73/10 89/17 101/24 111/5 111/17 118/18 122/6 122/9 134/21 138/12 151/2 174/7 174/7 174/9

**examples [9]** 10/5 10/16 47/10 52/1 57/12 57/15 118/1 119/20 155/18

**except [3]** 20/14 147/7 148/17

**exception [2]** 58/10 58/18 91/4

**exceptions [1]** 49/15

**excess [1]** 9/23

**excessive [1]** 98/18

**exclusive [1]** 21/21

**exclusively [1]** 35/4

**excuse [5]** 54/16 74/1 74/5 99/18 137/18

**execute [1]** 173/1

**executive [9]** 26/15 95/13 95/16 95/16 95/18 95/20 99/5 99/9 162/9

**exempted [1]** 48/20

**exercise [2]** 67/14 69/18

**exercised [1]** 22/11

**exercising [1]** 168/9

**exist [4]** 20/7 111/15 149/13 175/19

**existence [1]** 49/20

**expand [1]** 115/24

**expansion [1]** 112/16

**expected [1]** 148/25

**expedition [3]** 94/18 136/10 187/6

**expeditiously [2]** 167/20 189/17

**expend [1]** 138/13

**expenditures [1]** 13/25

**expense [1]** 106/10

**experience [1]** 9/13

**expert [4]** 60/5 120/5 124/6 174/24

**experts [3]** 78/19 132/9 139/9

**explain [5]** 23/20 25/19 67/20 68/3 147/11

**explained [12]** 18/3 18/18 24/3 24/8 25/19 30/6 40/2 52/16 125/21 126/5 140/10 156/15

**explaining [1]** 143/17

**explanation [2]** 9/1 150/22

**export [1]** 22/15

**exposed [2]** 121/18 124/15

**expressly [2]** 18/2 53/23

**extend [2]** 85/6 110/20

**extensive [2]** 145/20 145/23

**extent [24]** 12/12 45/17 45/18 50/19 52/21 74/11 107/7 108/23 111/11 130/23 130/24 131/11 134/5 135/2 138/21 140/9 149/5 149/14 171/18 178/14 178/25 181/16 182/21 185/21

**extra [1]** 96/21

**extra-curricular [1]** 96/21

**extraordinary [3]** 23/9 23/15 162/12

**eyebrows [1]** 162/13

**F**

**F.3d [1]** 140/22

**face [5]** 72/22 136/4 136/12 159/16 184/22

**faced [3]** 121/21 160/21 161/6

**faces [2]** 80/10 150/6

**facilities [14]** 19/14 19/22 36/23 104/17 105/5 108/25 121/7 133/18 153/15 153/21 158/13 160/12 174/18 188/19

**facility [5]** 105/9 106/2 109/2 134/18 153/24

**facing [5]** 59/15 65/7 130/15 133/13 138/12

**fact [62]** 9/3 12/18 17/1 17/9 17/9 17/12 17/13 18/15 27/21 27/23 27/24 33/22 36/18 36/22 37/17 38/11 38/17 39/6 40/6 40/17 47/24 48/25 51/13 55/9 61/7 61/23 65/4 65/18 66/24 104/7 113/7 113/13 113/14 113/22 114/22 118/11 118/23 119/14 120/22 122/19 124/3 126/23 131/23 134/16 137/1 138/6 140/13 156/16 156/25 159/22 159/22 160/14 161/14 164/1 172/13 176/7 176/17 177/5 179/9 181/5 181/8 186/1

**factor [1]** 156/1

**factors [1]** 156/1

**facts [9]** 6/3 40/20 41/3 111/18 137/13 149/4 158/7 159/23 169/4

**factual [6]** 13/5 40/10 40/25 72/3 79/7

176/8

**Factually [1]** 6/6

**fail [2]** 32/17 153/5

**failed [2]** 83/25 177/16

**fails [2]** 89/5 176/21

**fair [5]** 72/21 73/3 73/4 78/17 116/3

**fairly [7]** 15/14 15/16 17/15 19/1 30/4 158/2 176/17

**faith [2]** 74/25 75/3

**faithfully [1]** 173/1

**fall [5]** 24/4 24/9 112/9 125/24 128/11

**fallback [1]** 131/3

**falls [4]** 58/17 125/18 125/22 177/19

**familiar [1]** 9/2

**fan [1]** 165/22

**far [19]** 9/10 14/16 38/6 51/3 51/3 58/4 61/13 61/24 65/13 72/3 83/17 84/24 85/15 116/5 123/13 136/6 142/20 142/20 145/21

**far-flung [2]** 51/3 61/24

**farther [1]** 7/6

**fashion [1]** 24/24

**fast [1]** 159/7

**favor [6]** 13/14 36/1 63/9 108/24 113/6 138/23

**favorable [1]** 44/2

**favors [1]** 48/7

**fears [1]** 23/13

**feature [2]** 143/10 143/12

**featuring [1]** 15/1

**federal [103]** 9/25 10/1 11/9 11/11 12/18 14/9 18/2 20/9 20/14 20/15 21/6 25/2 27/10 28/13 28/24 29/19 33/9 33/11 33/11 34/11 34/13 39/14 40/4 43/21 43/24 44/4 47/5 47/19 48/15 50/5 50/5 50/7 50/21 54/4 58/2 58/6 58/9 58/12 58/14 58/21 58/25 59/1 59/2 59/5 62/15 64/14 69/9 69/11 69/15 70/1 70/7 70/18 70/21 70/23 71/14 71/16 71/16 71/20 72/1 72/10 74/22 75/1 76/14 76/17 81/2 81/10 81/13 81/17 81/25 82/4 83/24 84/12 84/21 84/22 84/23 85/17 85/20 90/25 91/1 92/25 95/8 97/8 97/12 100/2 101/14 102/2 102/3 108/16 108/21 108/24 126/12 137/19 144/9 145/9 145/9 145/10 146/12 150/14 151/4 164/13 173/20 177/14 181/1

**federalism [4]** 129/9 129/13 130/3 130/7

**Federalist [5]** 43/11 43/16 43/19 88/4 130/23

**feel [8]** 72/8 73/25 108/24 109/17 151/7 184/2 184/4 184/6

**feeling [2]** 71/15 178/12

**feels [1]** 175/16

**feet [1]** 105/11

**felt [1]** 109/16

**few [13]** 4/25 27/22 47/9 52/17 93/9 129/6 131/1 131/16 144/22 173/13 175/7 176/4 180/20

**fiction [4]** 98/21 98/22 102/10 185/20

**Fidelity [1]** 130/3

**field [16]** 11/17 16/14 16/17 17/16 18/16 37/8 42/25 114/13 115/10 132/9 135/11 161/9 181/10 181/11 183/20 189/5

**figure [1]** 63/6

**file [4]** 98/5 179/1 179/4 185/1

**F**

**filed [3]**  16/21 94/21 136/8
**files [1]**  161/15
**final [2]**  97/25 101/23
**finality [1]**  124/5
**finally [10]**  9/5 19/6 39/20 80/13 90/10
91/5 178/23 180/8 185/15 186/10
**financial [4]**  9/16 11/12 127/8 188/3
**find [8]**  65/4 89/19 133/20 142/4 143/12
145/6 178/3 186/10
**finding [4]**  64/22 124/3 125/1 125/3
**findings [1]**  40/10
**finds [2]**  79/8 188/10
**fine [2]**  4/24 4/24
**fines [1]**  14/20
**finish [1]**  165/7
**first [43]**  3/9 5/5 6/4 7/18 8/20 11/7
13/20 24/13 24/17 27/22 40/12 41/21
42/18 47/13 53/16 62/1 67/14 68/23
69/5 70/25 72/5 77/21 86/8 102/19
104/9 111/6 113/13 117/19 118/5
120/13 128/20 131/2 131/18 134/17
135/17 138/3 149/13 152/25 170/11
172/22 173/15 187/1 188/11
**fishing [3]**  94/18 136/10 187/5
**fit [1]**  160/12
**fits [2]**  67/22 165/13
**Fitzgerald [1]**  168/8
**five [4]**  18/6 18/8 104/21 172/19
**fixed [2]**  10/5 111/6
**flaws [1]**  98/5
**Florida [21]**  14/20 48/20 49/8 49/11
49/21 61/19 71/12 71/19 71/20 71/21
71/22 74/12 76/13 76/14 86/23 88/20
88/23 88/24 92/17 141/7 141/18
**flounder [1]**  165/23
**flung [2]**  51/3 61/24
**flushes [1]**  186/17
**focus [7]**  8/25 24/12 39/6 80/24 102/22
114/5 153/1
**focused [1]**  28/22
**focuses [3]**  103/7 103/8 103/19
**focusing [1]**  76/3
**fold [1]**  32/23
**folks [2]**  98/22 102/15
**following [1]**  149/23
**follows [1]**  59/13
**food [2]**  104/24 105/7
**foods [1]**  88/18
**footing [17]**  11/11 14/13 17/3 17/7 43/21
57/5 59/19 62/12 87/13 106/5 141/14
141/17 141/22 173/24 174/15 179/19
182/3
**footnote [6]**  14/18 81/14 81/14 84/21
141/12 183/1
**forbidding [1]**  12/17
**force [3]**  25/1 98/18 145/11
**forced [2]**  73/9 138/13
**forces [1]**  85/13
**fore [1]**  160/1
**foregoing [1]**  190/2
**foreign [97]**  9/15 10/9 10/12 10/13 10/16
10/25 22/2 22/3 35/8 35/9 42/18
49/25 50/1 50/2 50/6 50/8 50/9 50/18
51/2 51/10 51/14 51/15 51/16 52/2

52/15 52/20 52/25 53/21 54/1 54/2 55/1
57/9 57/15 57/20 58/16 62/3 62/9 62/15
62/17 62/19 63/12 64/6 64/14 81/18
86/13 90/6 91/11 93/22 97/2 103/8
103/20 105/2 106/3 106/15 107/16
108/13 108/14 115/18 115/20 118/1
119/16 121/14 122/7 126/2 126/21
130/21 134/3 134/4 134/5 134/5 134/11
135/10 135/25 137/18 142/24 143/5
154/13 154/14 154/18 154/25 155/10
155/18 156/20 156/21 157/14 158/9
160/4 173/4 173/17 173/19 174/5
176/19 179/21 180/12 180/17 187/2
189/2
**forests [1]**  47/20
**forget [1]**  6/11
**forgetting [1]**  135/19
**forgive [2]**  90/15 182/7
**form [11]**  14/17 17/23 59/23 111/13
112/22 138/11 138/17 147/14 149/4
172/7 172/7
**forth [9]**  6/24 8/13 10/6 11/3 58/7 64/24
86/6 105/3 174/25
**fortune [1]**  168/21
**forward [13]**  5/24 6/5 31/1 38/13 46/18
106/19 111/16 139/13 155/13 158/17
182/16 184/15 186/22
**found [4]**  22/7 114/20 132/1 144/21
**founders [11]**  13/17 13/23 14/12 38/22
47/3 48/4 49/23 87/23 101/6 126/10
180/12
**founders' [1]**  9/13
**four [29]**  8/17 9/1 9/2 11/2 11/4 11/6
21/13 36/1 36/9 36/19 41/16 52/1 52/1
52/6 57/17 67/7 68/22 80/4 81/4 91/15
115/22 119/21 152/24 155/17 157/18
158/19 165/24 173/9 173/12
**fourth [18]**  12/9 19/6 27/6 27/14 30/5
69/7 81/19 81/23 93/14 95/14 112/19
116/12 142/9 153/7 153/13 156/10
158/3 177/1
**framed [1]**  148/15
**framers [4]**  15/23 23/1 49/25 126/7
**framework [2]**  27/8 27/18
**Frank [1]**  142/9
**Franklin [7]**  32/6 100/15 146/6 162/5
162/7 162/8 163/18
**fraudulently [1]**  86/9
**free [1]**  134/9
**free-ranging [1]**  134/9
**frequent [1]**  121/6
**frequenting [1]**  13/8
**friend [1]**  113/23
**friends [1]**  112/17
**fully [2]**  149/22 150/3
**function [10]**  52/22 68/10 96/14 96/16
96/18 99/12 99/14 162/24 162/25
180/11
**fundamental [3]**  43/4 115/10 179/8
**funding [2]**  153/15 153/21
**funds [2]**  47/14 97/1
**funneled [2]**  89/20 89/21
**funneling [1]**  57/13
**further [15]**  8/25 16/2 16/10 36/22 42/5
65/17 106/20 111/1 131/11 141/25
166/21 169/9 169/10 170/2 186/13

**fuse [1]**  6/13
**future [19]**  28/2 28/5 28/6 28/7 37/14
66/25 79/17 105/17 108/11 112/14
122/23 137/3 137/5 159/13 159/20
160/10 176/20 179/16 180/2

**G**

**gain [6]**  9/23 64/1 101/8 126/24 127/8
155/12
**gained [1]**  106/9
**gallery [1]**  165/11
**gamble [6]**  107/8 107/13 107/17 107/23
108/1 108/4
**gambling [3]**  19/11 107/11 108/6
**gases [1]**  83/19
**gate [3]**  5/18 41/5 41/8
**gauge [1]**  152/11
**gave [1]**  44/3
**Gaylord [15]**  34/20 34/21 34/23 80/1
80/5 82/15 88/13 89/17 89/23 91/15
120/22 121/15 155/19 158/10 160/5
**general [15]**  1/14 1/19 6/21 17/24 34/4
40/25 41/2 76/18 77/9 92/18 150/13
150/25 151/3 162/14 166/16
**General's [1]**  4/8
**generalized [5]**  28/9 28/12 42/4 128/3
177/22
**generally [5]**  32/15 56/25 58/1 79/16
88/2
**generate [1]**  16/22
**generated [1]**  19/11
**generators [1]**  132/11
**generically [1]**  79/15
**gentlemen [1]**  65/25
**Georgia [5]**  52/12 54/10 54/14 54/14
85/19
**get [48]**  4/14 7/15 22/24 28/24 44/13
44/14 50/14 52/21 63/18 64/17 68/20
75/25 76/12 77/16 78/4 78/11 82/2
94/18 94/25 96/20 99/16 100/7 105/25
109/17 109/18 117/17 117/19 118/3
122/3 125/9 133/22 136/11 136/19
138/10 139/15 143/19 150/2 164/9
166/24 167/8 171/8 172/5 172/8 183/25
185/6 187/21 187/22 189/17
**gets [3]**  5/17 110/23 165/20
**getting [14]**  25/15 28/23 76/11 89/22
95/19 96/1 99/19 103/4 116/2 127/8
136/6 150/23 163/13 166/15
**gifts [1]**  47/7
**give [25]**  8/19 8/25 13/13 14/16 32/12
32/13 40/16 47/4 56/1 58/8 64/22 70/10
73/9 90/7 93/6 95/23 98/6 117/6 128/8
151/16 152/13 170/8 172/17 178/15
184/9
**given [8]**  9/14 31/23 50/20 115/15
123/22 124/12 142/16 152/4
**gives [6]**  49/21 56/12 87/20 101/18
119/6 132/21
**giving [6]**  15/10 48/7 49/11 49/13 49/15
114/17
**glad [2]**  118/9 123/2
**glitch [2]**  170/23 171/1
**globe [2]**  7/12 61/14
**go [63]**  5/2 5/24 6/5 6/8 7/8 7/21 18/9
29/3 29/6 42/5 42/16 51/7 51/20 60/23

# G

**go... [49]** 61/9 61/14 61/21 66/8 70/21 73/20 73/22 78/5 80/25 86/6 90/16 93/6 94/6 103/16 104/21 106/19 107/8 107/10 107/13 107/13 107/18 107/23 108/1 108/6 111/16 116/5 128/17 134/17 136/9 136/9 137/25 139/12 148/25 151/14 154/23 155/13 156/1 156/9 158/10 158/17 160/8 161/12 171/12 173/12 174/12 176/13 177/19 182/16 186/22
**goes [10]** 15/6 40/12 63/23 113/17 117/2 143/11 143/14 146/13 147/9 188/24
**going [70]** 5/24 6/16 7/7 24/14 25/19 29/2 37/25 37/25 38/1 38/11 38/16 46/18 47/9 58/4 59/17 59/19 60/18 63/4 63/9 64/4 73/10 75/13 79/2 80/7 89/9 89/12 90/13 95/21 97/25 99/13 107/23 111/2 112/4 114/23 121/16 124/10 124/15 127/3 134/9 135/1 139/21 139/22 141/15 142/12 143/16 143/22 146/18 146/22 149/20 149/21 150/3 151/10 151/11 152/14 152/18 155/19 155/20 161/12 161/16 161/18 165/10 167/13 170/6 174/13 177/23 184/18 184/22 188/3 188/8 189/10
**gone [4]** 80/14 80/16 132/16 139/23
**good [17]** 3/21 4/7 23/6 38/20 56/3 65/11 65/20 75/3 92/7 98/6 102/20 103/4 125/15 128/6 144/8 152/11 158/15
**good-bye [1]** 98/6
**got [7]** 38/8 64/23 73/3 115/19 116/1 116/22 154/18
**governing [2]** 74/16 128/24
**government [132]** 10/1 11/20 13/3 13/4 16/22 17/22 18/23 24/23 25/2 27/10 28/9 28/13 29/19 32/10 33/9 33/11 33/12 34/11 34/13 37/21 38/22 39/6 43/22 43/24 45/2 45/5 45/18 47/5 48/15 50/7 55/9 55/22 57/13 58/3 58/6 58/9 58/21 58/25 59/3 59/6 62/9 64/6 64/6 64/14 64/15 69/12 69/15 70/7 70/18 70/21 70/23 71/16 72/1 72/13 72/20 72/25 73/3 73/8 74/19 74/22 75/1 75/2 75/6 81/2 81/10 81/13 81/18 82/1 82/4 83/24 84/13 84/21 84/22 84/23 85/17 85/21 90/6 90/22 97/2 97/8 97/12 101/14 103/8 103/20 105/7 108/10 108/12 108/21 108/24 112/3 113/5 114/12 114/14 114/17 114/21 114/24 115/6 115/8 115/11 115/12 123/10 130/1 131/16 131/25 132/2 132/13 133/17 133/22 133/23 133/24 134/12 137/11 137/15 138/20 142/12 142/16 142/18 145/9 153/20 156/20 156/22 160/24 164/2 169/16 173/19 173/20 174/11 177/14 177/23 178/1 181/1 189/8
**government's [5]** 85/11 112/21 112/24 113/1 137/7
**governmental [3]** 29/17 131/20 131/23
**governments [21]** 4/20 8/16 9/15 10/25 11/13 16/19 25/16 51/11 62/16 62/17

62/19 115/9 115/18 118/2 119/16 122/7 126/21 154/13 154/14 154/18 155/10
**governor [2]** 13/25 47/16
**governor's [1]** 14/5
**grant [11]** 33/2 72/8 73/25 74/2 78/13 97/24 162/11 168/1 171/25 178/13 178/15
**granted [2]** 14/25 188/4
**granting [5]** 26/25 74/12 74/23 114/18 114/19
**grants [2]** 43/22 123/11
**grease [1]** 46/21 174/19
**great [2]** 51/1 143/14
**Greenbelt [1]** 1/7
**greenhouse [1]** 83/18
**grievances [4]** 28/9 28/12 128/3 177/22
**grip [1]** 125/10
**grips [1]** 168/6
**ground [4]** 47/6 56/9 110/13 110/21
**grounded [1]** 156/24
**grounds [2]** 39/5 173/10
**group [3]** 82/9 82/14 85/9
**GSA [1]** 47/21
**guard [1]** 10/13
**guess [5]** 44/12 90/12 121/24 159/11 188/11
**guidance [2]** 167/7 167/17
**gun [7]** 153/14 153/16 153/17 153/18 153/21 153/25 154/1

# H

**hac [2]** 4/3 4/11
**had [45]** 14/20 26/19 30/19 48/9 52/6 69/17 69/24 69/25 70/14 70/16 77/4 80/5 81/15 83/20 83/22 83/23 84/22 85/2 85/21 94/6 95/22 96/5 96/7 97/6 99/6 121/14 128/14 133/17 139/6 139/21 142/24 144/25 145/20 147/15 147/22 152/20 153/20 160/5 165/19 167/4 168/14 170/25 182/14 182/20 186/10
**hadn't [3]** 4/3 30/1 178/9
**half [1]** 187/13
**Hamilton [3]** 43/15 43/16 130/22
**Hampton [1]** 43/19
**hand [1]** 22/10
**handled [1]** 152/20
**handy [1]** 111/1
**happened [4]** 14/4 37/1 51/4 167/3
**happening [4]** 55/24 58/13 179/18 179/25
**happens [6]** 41/6 98/4 142/1 149/25 171/25 175/12
**happy [7]** 86/3 101/9 101/20 137/22 167/14 175/25 186/19
**Harbor [14]** 19/12 75/12 75/21 76/3 77/23 78/6 79/20 79/21 80/10 82/13 83/4 88/10 89/13 106/24
**hard [3]** 152/2 159/7 166/21
**harder [1]** 151/12
**hardly [1]** 177/4
**harm [59]** 14/11 15/22 16/14 17/1 18/22 19/6 24/2 24/6 24/9 28/5 29/18 29/25 30/4 30/17 32/14 33/4 35/21 35/22 36/15 46/16 49/21 61/5 61/6 64/20 65/11 68/24 70/24 70/25 75/7 79/12

79/17 79/18 80/24 83/11 83/12 93/15 97/5 102/22 102/24 103/7 103/19 122/23 123/12 126/14 126/14 127/3 153/1 159/13 159/13 159/15 159/16 159/19 159/20 166/1 174/14 177/15 178/16 178/20 182/19
**harmed [5]** 39/23 64/16 69/1 106/13 155/17
**harmonious [1]** 43/6
**harms [6]** 18/17 27/15 28/6 39/9 45/25 182/11
**harshly [1]** 71/23
**has [121]** 8/7 10/23 11/17 13/18 15/2 16/18 18/21 19/25 20/8 20/20 21/1 21/16 21/25 22/11 22/16 22/18 25/1 25/16 25/22 28/17 28/24 29/20 30/5 36/22 37/1 38/6 38/7 40/4 40/21 47/11 48/3 49/7 51/8 51/10 52/19 52/21 52/25 53/1 53/8 53/23 56/9 61/9 62/21 65/9 66/8 67/11 68/9 70/13 71/9 72/12 74/19 74/19 80/15 81/24 84/4 86/21 89/17 89/18 89/20 92/3 95/25 98/3 99/24 100/4 102/11 105/9 105/16 106/18 106/20 107/18 107/20 108/16 109/7 109/10 111/15 112/18 112/24 115/23 116/11 117/5 124/13 129/1 129/22 129/24 134/7 135/7 135/7 135/8 139/23 140/10 141/24 143/24 144/12 144/12 144/18 144/24 147/3 147/4 148/8 149/3 150/1 152/9 152/15 152/16 156/13 157/2 158/1 158/5 160/2 162/15 164/25 168/23 168/24 169/17 172/13 175/4 175/25 182/8 182/9 182/20 188/4
**hasn't [1]** 111/12
**haste [1]** 167/18
**have [342]**
**have the [1]** 94/20
**haven't [18]** 68/4 70/8 74/18 78/24 79/23 80/2 82/4 86/18 86/19 94/17 117/8 121/21 125/14 132/16 136/8 136/15 137/3 156/15
**having [13]** 11/11 23/18 24/10 46/20 69/14 104/6 105/18 108/3 126/11 132/22 152/3 152/3 156/25
**he [99]** 5/13 9/19 15/21 15/22 16/1 17/25 24/8 25/13 25/25 26/1 26/1 26/3 26/4 26/10 26/15 26/16 28/24 29/9 29/11 29/12 30/20 32/4 32/6 33/21 33/22 44/9 44/19 44/19 47/1 49/8 49/8 49/14 49/15 49/18 50/14 51/11 51/12 53/18 55/5 86/17 86/21 88/7 88/7 96/11 96/12 98/15 99/4 99/10 99/15 101/4 107/20 107/21 114/15 114/15 114/16 115/2 115/3 115/3 115/4 115/17 117/22 121/14 125/21 126/22 130/14 130/16 131/8 131/9 131/10 131/11 131/16 133/18 134/25 138/17 144/5 144/24 145/3 145/22 147/15 147/20 148/7 148/9 162/25 163/22 168/12 168/24 169/5 169/7 171/20 175/19 181/8 181/13 184/13 185/5 185/11 185/17 185/24 186/1 186/2
**he's [52]** 5/7 5/8 5/9 5/13 25/9 26/2 26/9 28/15 28/20 44/14 44/15 48/8 49/14 51/8 51/9 52/20 87/3 87/3 89/9 89/13 96/1 96/13 96/20 96/21 98/16 99/8 99/8

# H

**he's... [25]** 99/14 99/17 99/17 99/18
101/1 101/13 115/17 116/2 116/2 119/4
119/14 121/16 126/22 126/23 126/24
127/7 132/15 135/3 142/19 155/20
160/7 167/22 169/4 169/6 185/6
**head [5]** 22/24 26/15 95/17 99/4 99/8
**health [2]** 54/9 54/11
**hear [12]** 18/9 23/3 25/24 29/4 65/21
66/5 86/5 109/25 128/12 149/8 170/7
186/13
**heard [13]** 51/17 66/3 67/1 76/24 83/11
93/9 93/18 95/5 110/8 149/10 159/1
171/10 187/18
**hearing [2]** 3/5 187/16
**heartland [1]** 180/11
**heavily [1]** 144/17
**heavy [1]** 117/23
**held [5]** 52/4 56/10 129/11 133/24
182/14
**helipad [1]** 15/1
**helipads [1]** 49/12
**help [5]** 8/6 103/13 123/22 136/10 137/4
**helpful [1]** 6/17
**helps [1]** 10/3
**Hence [1]** 13/19
**her [2]** 4/4 129/13
**here [115]** 3/7 5/7 5/15 5/16 5/20 6/11
8/6 16/6 17/1 17/6 17/18 20/7 21/1
21/22 24/7 24/16 24/18 26/20 26/21
27/9 28/3 28/19 29/11 29/16 30/10
34/14 34/20 36/12 38/10 40/5 40/24
41/22 42/8 45/6 56/13 58/13 58/20 60/9
60/13 68/3 68/5 69/11 70/5 70/13 70/19
72/3 73/10 73/24 76/21 77/9 77/14
77/17 78/23 82/5 84/4 84/14 84/14 85/3
85/24 89/7 93/7 94/2 94/9 94/16 95/12
95/16 99/12 99/14 99/18 102/13 107/4
114/5 114/14 114/16 115/12 115/17
116/1 116/12 116/15 119/2 120/1
120/12 121/4 122/4 122/10 126/16
127/1 127/12 128/8 130/5 130/18 132/5
138/6 138/11 139/15 143/7 144/6
144/11 146/24 156/6 159/5 159/9 160/1
163/13 166/5 167/12 171/23 177/5
178/6 180/4 180/18 182/18 183/4 183/4
185/2
**here's [1]** 125/23
**heretofore [1]** 115/23
**herring [1]** 183/18
**high [1]** 104/24
**higher [2]** 117/18 184/23
**highlights [1]** 181/7
**highly [1]** 105/1
**him [36]** 9/16 19/4 29/12 29/15 33/23
33/24 44/3 44/12 44/13 46/3 46/11 48/8
49/11 49/13 50/14 50/25 59/7 71/7 80/8
101/6 107/21 107/22 109/25 127/4
131/19 138/18 155/21 164/19 174/19
175/9 175/13 175/14 175/17 179/21
185/12 185/16
**himself [7]** 31/10 132/1 142/18 162/12
168/22 173/3 186/18
**hired [1]** 51/13
**his [130]** 1/7 5/5 5/9 9/23 10/2 11/21

13/25 14/10 14/22 16/7 16/19 17/19
17/23 17/25 20/10 21/2 21/2 25/13
25/16 26/4 26/4 26/19 26/20 28/17
28/18 28/20 29/9 29/14 29/20 29/24
30/21 30/22 33/20 43/14 43/18 44/1
44/13 44/15 44/17 44/22 45/23 45/23
45/25 46/4 46/7 46/11 46/12 46/13
46/14 49/7 50/13 50/24 50/25 51/21
62/18 63/21 87/2 88/7 95/25 95/25 96/6
96/14 97/14 98/11 98/14 98/16 99/6
99/12 99/14 100/16 101/1 101/7 101/9
101/10 102/7 108/25 121/14 125/18
125/21 128/23 131/11 131/12 134/23
134/24 135/1 135/3 143/23 144/20
145/7 145/16 145/23 147/16 147/20
148/1 148/2 158/14 160/25 162/16
162/21 162/23 162/25 163/19 164/18
164/19 166/10 167/10 167/15 168/16
168/17 168/21 168/21 168/23 168/24
168/24 169/2 169/5 169/6 170/12
170/20 170/24 174/1 175/10 175/12
175/13 175/14 175/17 175/20 179/1
185/6 186/3
**history [3]** 93/1 126/7 128/15
**Hodges [2]** 81/23 95/14
**hold [2]** 54/24 103/2
**holding [8]** 10/10 29/15 44/13 46/13
89/24 128/2 147/18 152/5
**holds [3]** 17/4 29/11 29/12
**home [2]** 49/10 49/10
**Honor [62]** 3/21 4/7 4/12 4/17 7/23 8/4
13/10 13/10 18/10 23/4 23/6 24/1 25/18
29/8 31/1 31/24 33/15 38/20 66/2 72/17
73/15 86/2 86/7 90/15 92/14 93/8 95/4
96/23 98/8 101/5 101/23 102/20 103/13
109/8 110/3 111/16 111/22 117/2 118/4
119/19 122/16 127/19 133/22 135/16
138/1 139/16 139/20 139/21 150/2
150/2 162/6 163/1 165/1 170/5 170/11
171/6 172/9 172/24 176/3 179/11
187/11 189/15
**HONORABLE [1]** 1/11
**hope [1]** 144/9
**hopefully [2]** 184/12 187/19
**hospitality [14]** 11/19 12/5 16/17 16/23
18/13 18/23 57/2 82/11 88/11 91/7 91/9
91/10 132/10 160/12
**host [6]** 15/1 105/14 153/15 153/21
153/25 154/1
**hosted [5]** 89/17 89/18 105/7 105/16
108/16
**hotel [157]** 6/22 7/4 7/10 12/6 13/8 13/9
14/1 14/10 16/20 16/25 17/21 18/1
18/15 18/22 19/2 19/9 19/15 19/18
19/21 19/22 19/23 19/25 25/15 34/20
35/25 36/10 36/24 37/18 47/16 47/17
50/13 50/24 50/25 51/12 51/16 51/20
51/21 52/4 52/5 52/9 52/13 56/21 56/22
56/24 56/25 57/14 57/18 57/19 59/20
59/20 59/25 60/25 61/16 62/25 63/5
63/8 63/10 64/7 64/8 64/9 72/9 72/19
74/6 75/16 75/19 77/20 77/22 78/1
79/20 80/7 80/11 82/15 89/17 89/19
89/21 89/23 90/1 90/6 91/16 91/17
94/13 103/22 104/6 104/13 105/15
105/19 105/21 106/8 106/14 106/24

107/4 107/5 107/6 107/10 107/24 108/3
108/6 110/17 110/20 112/2 112/4
112/11 113/25 114/7 115/3 116/22
118/2 119/9 119/22 120/14 120/21
121/16 121/19 122/20 123/16 123/25
124/1 124/11 124/19 132/13 133/16
133/18 133/25 134/6 134/7 134/11
134/23 134/24 135/1 135/3 135/5 135/6
135/23 136/1 139/11 154/8 155/20
156/2 156/4 156/18 157/3 157/9 157/10
157/12 159/17 160/6 160/25 161/13
166/2 169/16 174/6 174/9 174/15
174/23 186/25 188/15 188/23
**Hotel's [1]** 12/11
**hotels [2]** 63/21 88/13
**hour [1]** 68/4
**house [1]** 53/14
**how [46]** 7/2 24/15 30/14 32/7 32/12
32/13 36/15 55/21 61/13 61/24 63/23
66/5 67/2 70/13 74/6 79/25 82/20 86/5
87/18 89/11 90/20 109/6 111/4 113/18
119/11 120/4 120/7 121/13 128/17
133/20 137/4 139/5 140/10 145/14
152/1 152/19 154/19 154/23 155/4
155/23 156/15 156/15 156/19 161/5
185/6 188/23
**however [16]** 8/14 20/25 45/6 45/22
64/17 65/5 101/9 108/2 113/19 130/20
172/10 175/16 180/11 180/25 185/12
185/24
**huge [1]** 57/1
**HUGHES [3]** 1/18 3/18 3/18
**human [1]** 9/14
**hundreds [1]** 77/2
**hurdle [5]** 56/13 61/7 100/8 136/11
139/2
**hurt [3]** 127/7 127/7 138/18
**hurts [4]** 55/22 109/3 131/6 133/11
**hypothetical [2]** 56/7 139/7

# I

**I'd [15]** 4/9 7/24 8/1 8/20 24/12 24/15
27/21 66/13 67/8 78/13 128/20 131/21
152/24 176/5 177/6
**I'll [26]** 7/15 23/3 23/20 29/7 40/25
67/20 68/3 69/5 71/10 77/15 86/3 86/8
87/17 95/23 98/6 99/23 113/11 113/11
127/2 138/2 151/18 157/23 161/25
170/8 171/25 171/25
**I'm [55]** 4/8 5/12 12/21 28/22 29/2 30/24
31/18 33/17 42/11 44/23 50/6 56/20
57/10 64/3 64/3 73/7 73/21 75/17 75/20
82/20 89/24 95/24 96/25 97/15 100/25
107/4 109/17 110/9 111/4 118/9 120/19
123/2 128/17 130/14 139/21 146/18
147/17 147/17 149/24 150/1 150/21
151/17 152/5 152/5 159/24 161/2
161/18 165/10 175/25 184/18 184/19
185/3 185/17 186/6 186/23
**I've [7]** 7/17 116/1 121/24 124/12 171/4
171/10 183/21
**idea [4]** 6/7 43/20 89/11 102/10
**ideas [1]** 47/6
**identical [2]** 22/5 111/7
**identifiable [3]** 82/9 82/14 85/9
**identified [2]** 34/3 114/8

**I**

**identify [3]** 3/9 4/15 34/2
**identifying [1]** 8/21
**if [138]** 4/11 4/20 5/9 5/11 5/12 7/15
7/19 7/21 7/24 9/14 10/21 13/3 13/3
15/10 21/14 21/15 22/4 22/11 22/24
26/18 30/7 31/13 31/18 32/12 33/16
34/13 34/22 40/18 41/16 41/19 42/6
42/8 42/10 42/14 46/6 47/19 48/9 48/9
53/7 53/18 59/16 60/11 61/2 61/9 64/6
64/10 65/8 65/17 66/13 68/16 73/8
75/17 82/2 89/18 92/24 94/23 95/1
95/22 96/5 97/19 97/21 100/19 101/11
101/14 107/9 107/12 107/15 109/5
109/24 111/5 111/8 111/16 111/17
117/22 119/15 119/24 120/22 123/7
130/18 131/1 131/21 133/22 134/11
135/17 140/5 140/12 141/21 142/8
142/23 144/8 146/3 148/7 149/13 152/1
153/12 157/8 157/13 159/21 160/4
160/23 162/5 164/10 166/1 166/22
167/8 167/19 167/23 167/25 168/1
168/7 168/14 169/24 170/22 170/23
171/1 171/15 171/23 172/7 174/12
174/25 175/2 175/3 175/16 175/25
176/1 177/18 178/2 183/25 184/13
184/16 184/19 185/13 186/19 186/20
186/21 187/16 188/10 189/6
**ignoring [2]** 158/10 158/12
**illegal [13]** 17/8 22/22 39/18 39/21 43/1
55/21 104/2 131/5 131/12 132/20
133/11 138/18 179/22
**illegally [1]** 92/3
**illustrate [1]** 14/16
**illustrated [1]** 13/24
**illustrates [1]** 137/13
**image [1]** 105/4
**imagine [3]** 70/11 127/21 187/5
**immediately [4]** 4/22 7/9 158/15 159/3
**immigration [1]** 130/13
**imminence [2]** 66/19 142/5
**imminent [12]** 27/25 79/4 79/5 79/6
79/11 86/25 94/7 113/20 125/4 159/16
177/15 179/16
**immuned [1]** 147/17
**immunity [1]** 147/19
**impact [6]** 24/7 30/2 67/2 77/4 84/16
188/24
**impacted [3]** 71/23 85/2 85/14
**impacting [1]** 71/21
**impacts [1]** 189/8
**impairment [3]** 34/4 76/18 77/10
**impended [1]** 66/22
**impending [26]** 28/3 28/8 35/5 35/14
35/21 37/15 66/12 66/24 67/4 78/5
78/22 79/6 79/11 94/8 112/10 112/22
113/3 114/3 114/10 117/5 118/25
122/21 124/14 176/24 177/3 178/21
**impermissible [2]** 171/2 171/3
**implausible [4]** 78/14 78/18 78/20
161/14
**implement [1]** 146/16
**implementation [1]** 167/2
**implicate [2]** 13/4 142/25
**implicated [2]** 189/3 189/6

**import [1]** 22/15
**import/export [1]** 22/15
**importance [1]** 8/9
**important [25]** 21/23 24/23 29/4 29/22
31/6 31/10 32/17 33/22 67/22 68/21
83/20 91/1 91/22 94/14 105/2 112/12
124/7 129/12 142/6 143/10 143/16
143/22 143/25 168/5 183/8
**imposed [1]** 147/22
**imposing [1]** 151/7
**impossible [2]** 69/14 71/14
**impression [1]** 14/8
**improper [10]** 32/8 66/4 72/24 73/16
73/17 75/5 111/3 136/9 170/13 170/15
**improperly [2]** 71/5 73/5
**impropriety [1]** 46/3
**in [739]**
**inability [2]** 48/16 106/5
**inaction [1]** 84/12
**inappropriate [1]** 164/21
**inasmuch [2]** 59/6 185/24
**inauguration [1]** 131/9
**incapsulated [1]** 93/9
**inception [1]** 60/11
**inclinations [1]** 43/14
**include [2]** 19/9 48/24
**included [2]** 75/15 82/18
**includes [1]** 54/12
**including [5]** 22/7 38/17 47/15 141/5
173/4
**income [1]** 168/24
**inconsistent [1]** 176/23
**increase [29]** 23/13 37/3 37/4 37/18
38/1 54/24 55/23 80/10 112/5 112/24
113/2 113/21 113/21 114/2 114/9
114/23 115/8 116/13 118/24 119/7
121/18 121/22 122/20 123/11 124/15
125/4 136/25 136/25 140/25
**increased [4]** 113/15 138/12 138/16
140/19
**increases [4]** 55/10 55/22 133/12
138/20
**increasing [1]** 131/5
**incurable [2]** 33/19 33/20
**independence [1]** 126/5
**independent [12]** 30/11 137/18 153/6
153/22 153/25 156/11 156/13 156/16
158/4 158/5 160/19 162/23
**independently [4]** 39/5 151/24 171/21
173/10
**indicate [1]** 149/21
**indicated [2]** 51/8 140/14
**indication [5]** 36/21 58/24 99/10 101/18
150/11
**indirect [3]** 76/20 85/10 95/19
**individual [35]** 5/7 26/5 27/10 28/23
28/23 43/20 44/7 44/12 45/10 46/7
46/20 57/5 63/6 96/3 96/3 96/16 101/10
101/19 101/25 102/1 126/17 129/1
129/10 129/22 129/24 130/7 170/20
170/25 171/11 175/8 175/17 183/22
184/1 184/21 185/21
**individual's [1]** 131/4
**individualized [1]** 119/10
**individually [6]** 5/8 33/14 46/4 58/22
98/20 101/4

**individuals [9]** 20/18 67/14 85/10 91/9
119/11 122/5 132/9 134/22 135/1
**induced [4]** 32/24 68/25 86/10 93/19
**inducement [2]** 181/14 181/16
**inducements [1]** 93/23
**indulgence [3]** 4/22 92/12 109/13
**industries [2]** 16/24 133/5
**industry [6]** 82/11 88/11 91/7 91/9
132/10 165/25
**inevitably [2]** 18/16 143/18
**infer [17]** 35/5 35/13 37/3 37/14 71/6
74/25 94/12 106/8 112/10 112/14
112/20 114/9 114/25 115/7 124/10
158/19 158/22
**inference [9]** 37/13 113/1 119/2 119/6
120/20 120/24 122/22 122/24 157/25
**inferences [6]** 118/22 120/10 120/10
122/24 137/6 158/7
**inferior [2]** 48/18 85/13
**inflicted [1]** 178/16
**influence [7]** 9/16 10/14 11/21 12/20
46/22 126/3 137/20
**influenced [4]** 11/12 13/19 126/23 189/7
**influencing [1]** 10/1
**information [3]** 133/22 134/6 134/7
**ingratiate [4]** 88/6 106/4 135/9 135/13
**inherent [2]** 99/11 163/15
**inherently [8]** 34/2 34/6 34/14 34/16
35/7 38/9 77/18 97/7
**inheritance [3]** 71/21 71/24 76/15
**initial [1]** 176/21
**injunction [26]** 16/1 16/10 23/16 25/21
25/23 27/2 31/12 31/14 65/1 99/2
100/22 144/14 148/10 149/5 149/22
150/2 152/7 160/21 160/23 161/20
162/23 164/7 164/10 164/17 166/25
171/16
**injunctions [3]** 147/1 163/12 164/4
**injunctive [13]** 31/17 31/21 32/7 100/7
100/18 102/5 148/7 161/24 162/9
162/11 162/19 172/1 172/7
**injure [1]** 74/7
**injured [12]** 12/11 26/22 62/10 62/11
74/13 74/19 87/3 87/8 106/5 111/4
173/7 174/1
**injures [2]** 138/16 173/17
**injuries [23]** 24/4 27/4 28/2 28/3 28/7
30/16 31/15 32/19 32/22 34/7 34/8
59/21 67/6 67/6 67/21 67/23 68/5 68/7
80/18 86/2 160/20 175/19 180/5
**injuring [2]** 55/24 88/8
**injury [201]**
**inquire [1]** 166/12
**inquiry [3]** 8/25 41/22 141/20
**INS [1]** 130/12
**insidious [1]** 58/16
**insight [1]** 9/14
**insist [1]** 150/12
**instance [3]** 35/25 41/21 134/17
**instances [1]** 157/21
**instead [6]** 50/13 89/12 107/23 112/9
122/8 122/9
**insufficient [1]** 159/10
**integrated [1]** 19/21
**integrating [1]** 87/13
**integrity [1]** 43/18

**I**

**intelligence [2]** 142/24 143/5
**intended [12]** 9/11 16/5 23/17 47/3
87/11 126/8 126/10 126/13 137/17
137/20 166/13 189/10
**intent [1]** 51/24
**intention [1]** 134/17
**interacting [1]** 87/14
**interaction [1]** 43/23
**intercepted [1]** 176/19
**interest [110]** 11/8 12/10 12/17 17/25
20/17 24/4 24/9 32/20 34/9 34/18 34/19
35/2 35/16 36/13 36/14 36/18 38/17
39/10 39/17 40/2 40/4 40/6 42/23 54/9
61/24 62/21 67/11 67/23 68/12 75/19
76/4 76/7 80/22 81/3 82/13 82/16 83/9
84/7 84/10 86/2 90/10 90/21 102/18
102/24 106/17 106/17 109/7 110/6
111/13 111/14 111/25 112/1 114/8
116/21 118/2 119/18 120/23 122/9
124/23 125/11 125/16 125/18 125/18
125/22 125/25 127/14 127/15 128/10
128/11 128/14 128/20 128/21 128/23
129/1 129/14 129/13 129/15 129/19
129/20 129/22 129/24 130/10 130/10
130/15 130/19 130/24 131/2 131/12
131/14 137/9 140/1 140/8 144/1 150/25
151/25 153/4 157/3 161/8 169/23
177/19 180/14 180/16 180/16 180/18
181/24 181/25 182/1 182/3 182/17
183/3
**interested [1]** 107/22
**interesting [4]** 64/17 69/23 120/17 146/9
**interests [8]** 11/5 11/15 19/7 39/7 41/16
50/8 75/25 182/2
**Interior [2]** 48/20 74/15
**intermediary [1]** 30/7
**international [109]** 6/22 7/4 7/10 12/11
13/1 13/8 14/1 16/20 16/25 17/21 19/2
19/8 19/15 19/18 35/17 35/19 35/25
36/9 36/24 37/18 47/16 47/17 51/12
51/16 51/20 52/4 52/5 52/9 52/13 56/21
56/22 56/24 56/25 57/14 57/18 57/19
59/20 60/24 61/16 62/25 72/9 72/19
74/6 77/19 77/22 78/1 79/20 80/1
89/12 89/19 89/21 90/2 90/6 91/17
94/13 103/22 104/6 104/13 105/15
106/8 106/13 107/3 107/6 107/9 107/24
108/1 108/5 112/2 112/4 112/11 113/25
114/7 115/3 116/22 118/2 119/17
119/22 120/14 120/21 121/7 121/16
121/19 122/8 123/16 123/25 124/11
124/19 132/13 133/16 133/25 134/6
134/7 134/10 134/19 135/23 136/1
139/11 140/21 154/8 157/3 159/17
160/6 160/24 161/12 161/13 174/9
174/15 174/23 188/15
**interpret [2]** 144/2 155/4
**interpretation [3]** 129/3 171/19 177/12
**intervene [1]** 58/5
**intervention [1]** 20/13
**into [32]** 4/14 9/14 11/7 19/21 26/14
28/24 33/2 37/24 49/22 51/15 51/22
61/20 64/3 65/13 67/25 68/19 77/16
90/5 96/20 99/16 107/8 110/20 114/22

122/3 123/10 136/19 152/20 156/1
168/21 178/15 181/13 187/4
**intolerable [5]** 13/13 33/1 71/2 72/4
178/12
**intricacies [1]** 111/12
**introductory [1]** 7/25
**invaded [1]** 58/8
**invasion [1]** 40/6
**Investment [1]** 133/4
**invidious [2]** 85/1 85/16
**invitation [1]** 128/18
**invite [1]** 29/2
**invited [1]** 7/18
**invoke [1]** 123/7
**invoking [1]** 20/9
**involve [3]** 8/15 95/10 95/10
**involved [9]** 28/11 30/8 85/22 118/11
118/16 142/10 142/23 143/3 166/6
**involvement [4]** 122/25 123/22 137/7
143/5
**involving [8]** 14/22 22/16 23/22 27/15
31/10 85/20 127/25 153/14
**irrelevant [5]** 165/25 166/4 166/6 166/11
186/2
**IRS [1]** 89/18
**is [802]**
**isn't [23]** 26/3 31/22 32/2 47/25 56/7
75/15 86/24 88/1 88/12 91/14 97/20
100/12 114/15 114/17 115/8 115/14
119/3 119/13 119/17 128/6 134/9
142/17 175/11
**issuance [1]** 15/24
**issue [38]** 5/11 5/16 6/10 8/9 8/22 25/21
25/23 27/2 29/3 31/2 31/12 31/14 38/17
40/10 63/18 87/18 87/19 99/2 100/9
100/13 122/4 125/12 125/19 143/22
144/7 144/14 146/17 161/20 161/24
163/13 163/23 164/4 164/7 164/16
168/4 171/15 178/19 183/1
**issued [2]** 110/7 146/1
**issues [6]** 14/21 22/8 22/16 37/11
143/16 186/17
**issuing [3]** 163/15 164/9 168/12
**it [298]**
**it's [211]**
**Item [1]** 164/13
**its [41]** 7/5 7/10 9/20 10/23 14/1 16/25
20/12 20/13 20/13 20/15 22/24 27/17
34/9 34/21 36/19 43/1 47/15 54/12
54/16 57/16 57/18 58/5 58/12 59/21
66/20 74/16 81/8 90/8 90/22 91/2 93/24
138/13 138/14 141/15 151/13 156/6
166/19 177/13 182/11 182/15 182/20
**itself [10]** 8/6 16/3 20/6 58/4 58/19 73/3
123/1 143/15 144/17 163/14

**J**

**Jacksonville's [1]** 141/16
**JAMES [1]** 2/3
**January [4]** 1/8 79/22 115/5 175/21
**January 19th [1]** 175/21
**January 20th [1]** 115/5
**JEAN [2]** 2/2 3/23
**Jefferson [1]** 168/13
**jeopardized [1]** 54/4
**Jessi [1]** 4/6

**Jim [1]** 3/25
**job [2]** 51/14 95/25
**Johnson [8]** 98/25 99/3 99/6 144/16
145/5 145/18 161/25 162/14
**join [6]** 32/24 68/25 86/10 93/19 181/14
181/15
**joined [3]** 70/14 70/16 97/6
**joining [2]** 32/23 50/21
**Jones [3]** 147/14 168/6 168/20
**Jordan [1]** 95/9
**judge [18]** 1/11 24/3 30/15 30/25 38/8
44/5 61/9 114/1 115/1 125/20 126/5
128/14 128/20 142/2 146/21 156/4
156/5 168/12
**judges [1]** 146/7
**judgment [34]** 6/1 10/15 15/25 16/3
20/15 31/17 40/19 41/6 43/14 60/5 60/9
60/11 78/17 89/6 89/7 94/4 94/16 95/1
100/20 111/17 116/20 117/16 136/2
144/14 145/24 146/2 146/4 146/8
146/20 148/7 148/10 167/7 171/19
171/21
**Judgments [1]** 16/5
**judicial [4]** 69/17 69/18 143/17 162/13
**judicially [3]** 27/23 33/7 82/4
**judiciary [1]** 8/10
**jump [1]** 118/23
**jurisdiction [14]** 8/8 20/9 21/17 23/14
25/20 40/12 67/15 75/10 82/10 99/2
162/15 168/8 168/10 185/23
**jurisdictional [4]** 6/3 135/18 136/7 138/3
**jurisdictions [8]** 33/5 34/19 36/16 66/6
68/10 82/2 82/5 86/23
**just [123]** 4/9 4/10 4/18 6/16 10/17 11/6
18/18 18/19 19/17 23/21 26/12 28/12
29/7 29/19 30/20 33/17 35/10 35/12
36/18 37/7 38/12 41/24 42/2 42/11
42/14 47/18 49/1 51/24 52/17 53/2 53/3
53/5 53/12 53/21 53/23 59/4 62/6 64/3
67/9 68/5 70/21 73/6 73/24 74/9 75/21
77/17 78/2 79/14 79/22 80/1 80/12 83/2
83/8 88/9 91/3 92/23 94/3 97/10 100/10
100/19 101/23 105/13 108/7 108/13
108/22 109/17 111/5 112/12 114/22
116/22 117/3 119/19 120/20 120/23
122/12 124/12 127/6 128/4 128/8 132/8
134/19 134/20 137/5 137/13 137/24
138/23 140/9 146/3 148/3 149/7 149/23
151/2 151/16 152/3 154/17 155/7
157/21 158/20 158/24 159/24 161/14
163/2 166/11 166/16 168/20 170/7
170/10 171/7 172/9 172/13 172/25
176/4 176/10 179/13 182/8 182/25
183/1 183/15 184/3 184/16 188/1
188/15 188/22

**justice [13]** 2/3 3/22 3/23 8/2 20/10
29/10 32/5 53/1 100/16 117/21 163/19
165/10 168/11
**justiciable [2]** 22/8 53/25
**justify [1]** 154/20

**K**

**keep [16]** 5/1 5/25 7/14 18/9 26/8 28/8
32/17 37/13 66/16 68/6 68/21 96/24
101/3 122/17 138/2 145/22
**Keeps [1]** 41/11

# K

**key [3]** 24/17 27/22 125/5
**kind [9]** 10/12 14/11 43/23 102/12 123/15 147/4 165/19 169/25 187/1
**kinds [1]** 40/4
**king [1]** 10/12
**know [64]** 13/17 19/18 43/7 46/19 48/15 49/7 49/13 50/22 50/25 52/22 53/15 61/10 64/2 64/23 67/1 79/23 79/25 80/1 80/6 80/15 82/21 87/22 89/17 98/22 101/13 102/8 105/6 105/25 107/12 109/15 109/22 110/1 111/10 111/11 116/19 117/17 120/4 121/14 127/4 127/5 127/19 128/14 133/15 143/21 144/1 146/17 146/20 152/1 152/2 159/2 165/13 167/21 168/13 172/2 172/4 174/4 174/4 174/6 174/7 174/8 180/10 185/23 188/22 188/23
**knowing [1]** 144/8
**known [6]** 11/1 70/14 70/17 97/6 112/15 143/4
**knows [1]** 21/15
**Krasner [2]** 142/9 153/12
**Kuwait [4]** 52/6 52/6 57/18 174/7

# L

**labor [1]** 85/13
**lack [2]** 23/21 187/20
**lacks [4]** 25/20 31/13 145/2 161/23
**ladies [1]** 65/25
**Lago [7]** 6/23 14/22 14/25 15/4 15/6 49/7 83/13
**land [1]** 75/19 109/16 169/16
**language [2]** 22/6 176/14
**large [8]** 14/6 37/5 62/24 91/12 104/19 105/11 132/14 141/3
**larger [2]** 104/19 184/1
**largesse [1]** 43/14
**last [12]** 35/1 35/1 66/3 95/4 110/8 139/3 139/15 161/18 161/19 170/7 170/9 171/4
**latent [2]** 22/8 22/17
**later [8]** 31/2 34/5 37/20 41/19 113/17 125/9 151/24 180/4
**laudable [1]** 180/10
**law [53]** 5/23 6/25 16/7 16/10 20/14 21/6 21/8 24/19 34/12 41/25 42/2 45/10 58/12 60/7 60/16 68/1 72/25 73/20 76/11 76/13 76/17 77/3 77/13 78/14 78/18 81/5 90/22 90/25 91/1 93/13 95/6 95/8 99/21 112/20 115/16 128/24 140/11 141/4 142/20 144/2 144/10 144/16 144/22 145/10 145/12 145/15 153/8 153/14 153/18 153/20 163/4 168/15 169/2
**laws [4]** 58/14 85/23 129/25 130/2
**lawsuit [18]** 23/22 27/17 33/9 33/10 34/11 34/21 34/24 34/25 61/15 68/2 70/3 81/1 81/3 83/5 83/23 94/25 97/11 183/6
**lawsuits [1]** 98/9
**lawyer [1]** 186/23
**layered [1]** 76/10
**lead [10]** 20/15 37/4 37/19 112/6 112/21 113/2 114/3 114/10 123/11 143/18

**leads [1]** 122/20
**LEAH [3]** 1/18 3/19 4/8
**leap [2]** 37/5 186/4
**lease [9]** 18/1 18/3 47/21 75/19 110/13 110/21 150/11 166/16 169/16
**leases [1]** 110/15
**least [15]** 5/8 6/19 9/5 16/17 28/22 35/25 36/21 52/1 73/23 109/23 111/8 115/15 116/19 116/24 116/25
**leave [5]** 95/23 97/24 168/1 183/22 184/9
**leaves [1]** 17/11
**leaving [1]** 146/20
**LEBSACK [3]** 1/14 3/15 3/15
**led [1]** 112/24
**left [3]** 99/24 167/2 178/7
**legal [5]** 67/16 151/21 152/12 152/17 166/21
**legally [1]** 40/6
**legislation [1]** 141/11
**legitimacy [1]** 20/16
**legitimate [3]** 11/5 90/21 140/13
**length [3]** 92/25 140/9 173/13
**lens [2]** 29/21 69/23
**less [4]** 104/13 107/10 141/20 186/10
**let [21]** 4/25 12/22 15/5 21/18 30/3 41/5 46/2 61/12 80/19 89/24 103/2 103/13 106/20 127/2 128/12 149/7 156/6 157/23 180/20 183/13 186/9
**let's [13]** 32/21 34/8 38/16 41/6 64/2 68/21 86/5 116/25 120/9 159/12 161/10 171/24 172/16
**letter [3]** 24/19 34/12 81/5
**letting [1]** 41/7
**level [11]** 11/16 16/14 16/16 18/16 42/25 121/25 135/11 181/10 181/11 183/20 189/5
**Lexmark [1]** 128/25
**lie [2]** 146/14 146/23
**life [2]** 148/2 168/21
**lift [1]** 113/14
**light [1]** 14/16
**like [67]** 4/9 7/25 8/1 8/20 24/12 24/15 24/22 27/21 29/18 32/1 39/12 42/9 46/4 53/2 53/4 53/5 60/6 66/13 67/8 70/10 72/13 77/9 80/8 81/5 84/4 84/14 85/3 85/24 93/2 97/10 100/1 105/17 107/17 108/10 109/16 109/17 109/25 110/13 112/18 113/10 114/20 128/20 131/6 132/19 139/25 141/24 150/12 151/5 152/24 158/16 158/18 158/19 158/20 160/25 161/1 161/1 162/9 167/20 170/20 170/21 176/5 177/6 181/21 182/4 182/16 184/16 187/17
**liked [1]** 51/1
**likelihood [4]** 147/7 159/4 176/18 176/22
**likely [10]** 31/5 31/7 55/9 55/13 107/7 107/10 108/4 161/17 172/11 172/13
**likes [3]** 51/11 107/20 107/21
**likewise [1]** 24/7
**limit [1]** 83/11
**limitation [2]** 59/8 151/4
**limitations [1]** 148/24
**limited [6]** 58/18 67/12 89/15 90/5 133/21 186/22

**limiting [1]** 83/14
**LIN [2]** 2/2 3/23
**LINDA [1]** 1/23 190/2 190/8
**line [7]** 138/15 138/23 140/14 142/3 142/14 160/8 164/13
**links [1]** 73/24
**listen [1]** 89/24
**listening [1]** 51/18
**litany [2]** 147/21 154/25
**litigant [4]** 9/8 20/11 145/7 148/4
**litigants [3]** 20/8 118/20 149/2
**litigated [1]** 14/20
**litigation [5]** 39/8 41/19 153/10 175/6 179/6
**LITOS [3]** 1/13 3/13 3/13
**little [10]** 30/22 74/5 75/9 89/1 93/7 104/21 109/5 129/23 142/2 146/22
**local [7]** 57/9 62/9 102/23 103/7 103/19 109/2 187/2
**locally [3]** 56/19 56/21 104/25
**located [2]** 88/12 110/12
**location [3]** 75/17 156/2 161/1
**lock [1]** 73/20
**logging [4]** 14/7 47/20 47/24 74/12
**logic [7]** 17/8 17/14 19/3 30/24 55/8 59/16 119/2
**long [9]** 29/12 37/9 122/2 142/14 143/16 146/13 148/19 152/18 168/13
**longer [1]** 41/20
**look [22]** 27/18 30/23 31/1 38/13 44/2 48/2 50/17 55/19 56/3 82/24 92/24 98/4 101/15 104/9 116/8 124/7 142/8 152/11 152/19 170/21 170/21 180/1
**looked [2]** 60/6 112/18
**looking [8]** 7/24 28/25 40/15 59/4 59/5 90/10 101/12 186/24
**looks [2]** 69/24 113/10
**LOREN [3]** 1/13 3/11 38/18
**lose [7]** 38/1 71/16 75/21 117/4 124/10 124/16 138/12
**losing [6]** 28/14 34/7 75/11 75/16 88/24 166/2
**loss [45]** 12/3 17/2 17/10 17/11 18/11 18/16 18/22 32/23 33/3 34/2 35/5 35/14 35/18 37/5 37/8 37/19 42/4 56/12 59/23 60/2 67/18 70/9 76/11 78/6 78/22 79/24 89/5 92/1 92/22 112/6 112/8 112/10 112/22 114/3 114/25 117/4 118/25 122/21 140/8 141/14 141/16 141/21 153/2 159/3 159/17
**losses [5]** 55/3 55/4 59/14 60/6 122/5
**lost [19]** 18/19 36/9 36/19 42/1 61/23 77/2 77/18 79/13 79/15 79/22 80/2 94/10 94/12 106/9 106/9 116/24 116/24 117/1 132/22
**lot [19]** 6/21 18/9 49/8 61/10 66/3 66/5 67/1 68/19 95/8 105/12 139/22 161/21 164/23 164/24 165/9 170/19 171/10 179/15 185/17
**lots [1]** 38/3
**lower [1]** 138/13
**loyalty [9]** 9/12 10/15 43/1 50/11 50/22 51/6 54/5 62/18 179/20
**Lujan [7]** 24/20 40/13 40/25 41/18 117/19 118/13 139/5
**lunch [1]** 101/22

**L**

**lunge [1]** 184/12
**lure [1]** 51/14
**luxury [1]** 124/1

**M**

**madam [2]** 4/11 103/3
**made [20]** 20/8 21/20 42/17 42/17 47/23 54/11 78/15 90/2 94/3 98/3 110/23 114/4 130/22 149/15 149/16 150/7 167/9 180/13 180/21 183/21
**Madison [1]** 168/11
**magnitude [1]** 152/15
**mail [3]** 165/9 165/22 167/8
**main [2]** 14/15 26/21
**Maine [15]** 13/25 14/7 43/25 47/14 47/24 47/24 48/3 48/6 49/20 57/12 74/6 74/8 74/13 86/23 174/9
**Maine's [1]** 47/20
**mainly [1]** 104/10
**maintained [1]** 81/25
**majority [4]** 53/14 53/15 128/22 163/23
**make [48]** 4/14 6/6 7/19 8/1 26/12 26/13 40/10 63/10 64/21 76/5 113/1 119/1 119/8 119/11 119/14 119/15 120/17 120/20 120/24 122/22 124/3 124/17 124/20 124/25 125/3 126/22 126/25 150/7 152/24 153/25 154/5 154/7 154/15 155/24 155/25 156/5 157/5 159/11 161/19 167/25 168/19 168/19 170/9 171/15 177/6 181/12 181/13 189/10
**maker [1]** 158/4
**makers [1]** 156/16
**makes [14]** 43/11 45/24 46/14 83/4 83/13 90/1 109/2 128/25 136/22 142/14 145/22 171/21 175/20 184/6
**making [15]** 7/1 11/12 14/4 28/20 29/16 35/11 120/19 122/24 124/2 127/1 127/9 154/18 157/9 185/3 189/7
**man [1]** 38/24
**management [2]** 169/17 169/21
**mandamus [3]** 146/14 146/17 146/23
**mandate [1]** 27/11
**mandating [1]** 16/1
**manipulation [1]** 179/22
**manner [2]** 66/7 118/8
**many [12]** 65/5 77/24 82/20 89/11 119/8 119/8 119/9 120/1 120/18 120/18 156/1 178/1
**map [1]** 39/11
**Mar [7]** 6/23 14/22 14/25 15/4 15/6 49/7 83/13
**Mar-a-Lago [7]** 6/23 14/22 14/25 15/4 15/6 49/7 83/13
**marker [1]** 41/13
**market [45]** 12/20 17/6 18/23 37/9 37/22 37/23 37/24 38/5 38/5 39/21 59/15 60/14 71/6 92/2 112/25 112/25 113/5 113/6 114/16 114/16 114/17 114/22 115/3 115/7 115/12 115/13 116/3 116/3 116/18 119/4 119/5 119/6 120/1 122/2 122/25 123/1 123/10 123/23 123/23 131/17 135/4 137/6 137/7 157/4 186/1
**marketed [1]** 49/9

**marketplace [26]** 54/23 55/16 55/18 57/4 59/17 60/22 88/15 88/15 91/10 91/20 104/2 107/16 109/3 131/5 131/10 131/13 131/19 131/20 132/3 132/4 132/21 134/21 138/25 174/14 174/17 179/23
**markets [6]** 11/19 38/3 51/12 119/7 120/19 155/25
**Marriott [5]** 74/8 75/16 75/24 83/3 110/16
**MARSHALL [3]** 1/23 190/2 190/8
**MARYLAND [152]** 1/1 1/7 1/18 1/19 1/20 3/17 3/18 3/19 4/8 4/18 7/2 8/5 8/20 9/7 11/8 11/14 12/3 12/5 12/17 15/15 16/17 16/23 18/13 18/21 21/9 23/11 34/6 34/9 34/20 36/13 36/15 39/1 39/4 39/9 39/16 39/23 42/22 45/3 48/14 50/3 50/10 50/17 50/19 51/5 53/3 53/4 54/3 54/8 54/23 55/25 56/1 56/23 57/1 57/10 57/10 57/22 58/7 58/18 59/9 59/12 59/13 59/15 59/15 59/18 59/21 60/15 60/16 60/16 60/17 60/24 61/3 61/6 61/8 61/17 62/2 62/9 62/23 63/3 63/7 63/13 63/15 64/11 64/19 65/6 65/12 65/15 68/7 68/25 70/6 70/13 71/7 72/7 74/7 74/23 75/9 75/11 80/3 80/4 80/15 81/5 82/16 83/9 85/17 86/9 86/13 87/12 88/8 88/14 90/7 91/2 91/8 91/12 93/24 102/25 103/9 103/21 104/4 105/9 105/25 106/6 106/12 106/22 106/23 107/9 109/3 109/7 110/6 110/7 111/25 123/18 130/25 131/6 132/12 133/17 134/13 134/17 139/9 140/1 153/3 153/15 167/3 173/6 174/3 174/16 174/22 179/16 181/5 182/6 182/9 182/18 182/19 182/22
**Maryland's [12]** 11/18 12/6 12/10 17/2 18/14 18/17 19/7 19/10 19/11 39/20 89/22 110/6
**Massachusetts [21]** 50/16 69/5 69/8 71/11 71/12 81/6 81/22 82/1 83/15 83/19 84/2 84/7 84/9 84/13 90/11 93/13 118/10 118/11 146/6 162/5 162/8
**Massachusetts' [1]** 83/18
**material [3]** 93/23 181/14 181/16
**Maternity [3]** 69/9 71/13 81/7
**matter [27]** 3/2 3/4 5/23 7/12 8/7 14/23 16/9 21/21 26/18 41/25 47/23 69/18 72/25 73/20 78/10 78/14 78/18 94/14 99/7 116/4 119/2 138/19 169/2 169/3 176/21 183/12 190/4
**mattered [1]** 99/6
**matters [5]** 9/5 68/16 82/21 86/6 94/15
**may [56]** 5/3 5/19 5/24 7/4 11/5 13/4 20/22 23/6 26/12 26/13 30/14 31/23 38/21 41/1 49/10 53/17 58/5 58/11 61/17 65/5 65/11 66/13 67/19 73/5 73/12 73/18 74/13 98/24 102/21 110/20 111/16 117/3 123/24 136/17 138/11 138/12 142/4 150/17 154/13 158/23 159/25 160/24 161/23 164/8 166/20 167/6 169/19 169/20 171/9 172/2 172/7 172/8 174/12 176/4 176/12 186/18
**maybe [20]** 36/21 70/15 86/6 95/23 96/2 97/15 109/16 110/9 117/22 121/5 125/9 149/11 150/6 155/17 159/24 160/13

170/18 171/25 171/25 175/7
**McDonald [1]** 177/2
**me [52]** 4/25 5/3 5/22 6/15 6/20 12/22 15/5 21/18 22/25 28/14 30/3 41/5 46/2 54/16 61/12 64/22 74/1 74/5 78/13 80/19 89/24 90/15 95/16 97/19 99/13 99/18 101/2 102/1 103/2 103/13 109/5 115/25 116/4 120/6 124/2 124/4 128/12 137/19 149/7 150/22 156/5 158/18 163/21 180/20 181/4 182/7 183/13 184/10 184/12 186/9 187/24 188/11
**meal [2]** 104/25 135/7
**mean [31]** 28/14 28/18 35/9 59/4 73/7 74/24 76/6 78/8 82/21 95/24 96/2 97/25 98/21 102/12 107/12 109/11 109/15 110/13 111/5 115/17 115/21 118/10 118/20 123/23 124/4 128/10 155/13 155/15 159/4 172/1 172/2
**meaning [3]** 13/8 151/23 166/23
**meaningful [1]** 16/4
**meaningless [2]** 155/2 168/20
**means [13]** 21/8 53/14 64/1 126/24 135/4 148/20 150/10 152/8 154/15 154/19 155/11 167/2 181/5
**meant [10]** 24/10 64/1 91/2 118/14 125/25 126/17 126/19 127/10 127/15 127/20
**measurable [2]** 77/4 77/6
**measure [2]** 151/19 152/10
**measures [2]** 9/11 150/7
**meet [4]** 94/19 95/2 123/8 184/4
**meeting [2]** 56/25 104/22
**Mellon [23]** 58/1 58/3 58/4 58/10 58/18 58/19 58/24 59/8 69/6 69/8 71/11 71/12 71/12 71/19 76/13 81/6 81/22 82/1 88/20 90/11 90/20 91/3 93/14
**members [4]** 52/23 53/2 127/25 128/2
**memberships [1]** 128/2
**mention [3]** 89/5 165/24 180/9
**mentioned [7]** 10/17 31/8 109/18 117/22 143/7 178/9 180/8
**mere [4]** 10/20 47/24 48/1 161/7
**merely [8]** 16/8 34/23 35/8 35/15 37/16 100/23 116/23 120/23
**merits [6]** 8/9 8/23 10/22 79/2 79/2 166/24
**message [1]** 51/17
**MESSITTE [1]** 1/11
**met [5]** 94/17 110/23 111/8 111/9 123/17
**metaphor [1]** 41/10
**mete [1]** 64/19
**Metro [4]** 38/11 77/25 104/14 105/12
**MGM [16]** 19/12 19/22 75/21 82/14 88/13 89/13 107/6 107/7 107/10 107/13 107/14 107/18 107/23 108/1 108/6 108/7
**MGM to [1]** 107/10
**Microsoft [1]** 147/5
**Middle [3]** 51/19 121/5 134/22
**might [33]** 4/22 40/19 48/17 50/14 51/3 62/18 65/2 67/2 83/5 100/2 119/11 119/13 119/25 119/25 122/10 128/13 148/13 149/5 149/19 150/4 150/5 151/8 151/13 151/13 155/8 158/8 163/13 167/24 169/19 174/11 176/11 180/10

**M**

might... **[1]** 184/4
mile **[2]** 104/13 123/20
miles **[2]** 78/1 123/15
military **[1]** 128/3
million **[1]** 72/16
millions **[1]** 16/23
mind **[13]** 5/2 5/25 7/14 18/9 28/8 37/13
45/1 68/6 68/21 121/14 122/17 166/10
166/10
mine **[1]** 184/24
mined **[1]** 77/4
minimum **[1]** 152/9
mining **[1]** 77/5
ministerial **[5]** 99/22 99/25 100/3 163/5
164/22
minute **[3]** 105/19 125/12 153/12
minutes **[11]** 7/18 18/6 18/8 65/21 65/23
172/16 172/18 172/18 172/19 172/20
172/23
misread **[1]** 60/4
misreading **[1]** 97/15
Mission **[1]** 89/18
Mississippi **[7]** 98/25 144/16 145/5
145/18 161/25 162/7 162/14
mistaken **[1]** 75/17
misunderstands **[1]** 181/9
mix **[1]** 149/17
mold **[1]** 160/12
moment **[7]** 61/15 63/25 67/9 67/20 87/9
88/7 150/23
money **[12]** 25/15 26/2 57/13 96/1
144/20 144/24 145/3 145/22 146/25
152/1 152/2 168/17
monies **[3]** 51/15 162/23 162/25
monitor **[1]** 149/16
monitors **[1]** 149/13
monopoly **[1]** 17/4
Montgomery **[19]** 19/10 75/14 75/15
75/22 76/6 82/18 89/12 90/2 105/10
105/15 105/20 105/22 109/1 109/6
110/10 110/15 111/7 169/15 175/2
month **[1]** 72/18
monthly **[1]** 111/6
months **[1]** 171/24
moot **[3]** 179/3 179/4 185/2
more **[53]** 3/8 6/23 6/23 6/23 7/6 7/24
11/7 18/6 18/8 21/24 23/12 34/17 36/18
37/20 42/4 46/7 46/14 51/24 63/14
64/17 65/19 69/3 71/1 71/23 77/16
79/15 79/16 80/11 82/6 93/2 107/7
108/4 108/20 109/5 116/2 116/17
128/12 137/23 138/13 139/15 142/4
144/13 144/23 147/25 149/19 169/11
169/19 182/23 185/13 186/9 187/24
188/4 188/22
morning **[13]** 3/8 3/21 4/7 23/6 38/20
39/6 39/12 40/9 47/13 49/12 62/7 71/1
130/20
most **[8]** 40/1 112/23 124/9 129/6
148/23 175/21 182/13 186/25
mostly **[1]** 63/1
motion **[43]** 1/10 5/16 6/1 6/1 10/7 11/3
36/6 40/14 40/18 40/24 41/1 60/10
60/20 72/23 73/13 73/19 78/11 78/13

**N**

nail **[1]** 89/14
name **[3]** 160/25 164/3 186/7
names **[1]** 179/1
narrow **[3]** 58/10 67/18 82/22
narrowly **[1]** 187/6
nation **[1]** 21/5
national **[20]** 19/12 50/24 52/5 52/7

78/16 78/24 79/9 89/8 92/13 92/23
94/17 95/2 101/15 117/12 120/8 124/21
135/19 136/8 138/5 175/23 179/3 179/4
184/8 184/9 184/15 186/14 186/21
187/13 187/18
motions **[2]** 3/5 171/3
motivated **[1]** 122/8
motive **[1]** 166/6
Mount **[2]** 117/22 117/23
mountain **[1]** 117/22
move **[5]** 4/4 30/3 161/18 167/20 184/15
moved **[3]** 57/16 57/18 119/21
moving **[7]** 18/5 77/13 88/9 116/21
118/2 174/5 174/6
MR **[31]** 3/18 3/25 23/3 29/4 38/14 44/8
55/2 58/1 66/1 89/4 90/19 93/6 101/22
106/21 111/21 131/2 132/7 135/15
138/21 139/14 152/23 161/11 167/24
170/3 176/2 181/7 182/23 183/24 185/1
187/8 189/14
Mr. **[14]** 7/18 14/19 14/21 14/24 17/23
23/2 109/24 110/1 133/18 139/19
157/23 161/3 165/4 187/25
Mr. President **[1]** 161/3
Mr. Sullivan **[7]** 7/18 23/2 109/24 110/1
139/19 157/23 165/4 187/25
Mr. Trump **[2]** 14/21 17/23
Mr. Trump's **[3]** 14/19 14/24 133/18
MS **[13]** 3/13 3/15 3/19 4/7 38/19 86/5
100/24 102/19 128/13 157/23 165/8
172/23 179/12
much **[18]** 10/25 33/22 35/9 51/11 71/1
82/22 91/24 102/13 143/9 145/14
150/20 161/2 169/7 180/19 181/21
182/8 182/16 188/23
Muller **[2]** 57/17 60/23
multi **[1]** 148/13
multi-district **[1]** 148/13
multiple **[3]** 8/16 142/22 164/8
museums **[1]** 104/15
mush **[1]** 68/19
must **[25]** 10/22 20/6 27/25 27/25 27/25
28/3 28/7 30/23 31/7 35/9 66/23 79/5
79/6 79/11 94/24 125/21 153/10 158/25
161/17 172/11 176/6 176/15 176/23
177/4 177/14
my **[57]** 4/9 4/20 5/21 6/24 7/24 24/12
32/15 39/11 44/7 47/13 49/11 52/16
65/15 80/25 86/1 86/8 94/3 95/5 97/25
101/25 105/24 109/14 109/21 112/17
113/9 113/23 116/6 117/3 121/24 125/8
140/10 149/23 151/17 151/18 152/25
156/10 158/2 160/17 161/18 161/21
163/6 167/8 167/11 167/14 168/23
171/13 171/24 172/12 176/1 178/9
179/15 183/21 184/12 187/12 188/1
188/11 188/11

**N**

nail **[1]** 89/14
name **[3]** 160/25 164/3 186/7
names **[1]** 179/1
narrow **[3]** 58/10 67/18 82/22
narrowly **[1]** 187/6
nation **[1]** 21/5
national **[20]** 19/12 50/24 52/5 52/7

57/17 57/18 75/12 76/3 77/23 78/6
79/20 79/21 80/10 82/13 83/4 88/10
106/24 130/1 146/10 173/19
nature **[15]** 8/24 9/14 37/23 57/25 94/15
99/11 112/25 123/1 123/23 137/6
141/15 141/21 147/3 150/24 186/16
necessarily **[8]** 37/4 37/19 37/25 38/11
114/23 123/11 151/6 158/14
necessary **[8]** 33/17 41/3 60/20 111/17
149/5 149/19 150/8 151/5
need **[53]** 5/1 6/15 6/20 7/13 13/19
17/10 28/8 35/22 36/3 40/10 49/17 55/2
55/3 55/6 55/14 55/21 60/2 65/4 66/11
78/23 83/5 85/4 85/5 90/8 92/1 92/1
92/21 96/20 101/2 108/24 121/25
122/17 123/8 125/9 127/4 133/10
133/14 136/1 136/3 137/2 138/17 142/5
146/21 148/20 149/20 149/22 166/12
170/18 171/9 175/16 180/1 188/3 188/6
needed **[2]** 3/8 148/25
needs **[4]** 20/12 59/22 78/4 125/16
neither **[2]** 20/25 106/2
never **[9]** 21/4 58/5 60/25 89/9 89/14
121/25 136/7 172/8 187/21
new **[20]** 21/20 23/21 35/6 37/24 37/25
38/10 53/5 60/10 63/5 94/2 119/4
123/10 128/14 134/1 141/9 146/1 164/6
164/11 165/18 179/4
news **[1]** 14/18
next **[15]** 7/21 38/16 69/20 116/6 116/25
118/3 129/19 167/18 171/24 172/5
186/11 186/12 187/10 187/11 187/19
nexus **[2]** 107/4 107/5
nicer **[1]** 135/7
Ninth **[5]** 56/4 92/8 92/16 132/1 133/9
Nixon **[1]** 146/11
no **[86]** 1/3 4/5 8/23 10/9 17/4 19/20
19/24 20/1 20/11 21/5 21/25 23/24 24/7
27/14 30/21 36/25 40/11 41/20 42/10
46/21 49/1 62/21 63/11 64/9 64/9 64/9
65/3 71/25 72/11 73/4 73/12 73/17 74/3
74/7 76/17 80/16 81/8 83/9 83/11 83/13
83/14 85/16 90/4 90/21 94/24 96/8 98/6
100/4 107/3 108/15 112/13 116/16
118/4 119/19 119/22 120/7 121/12
122/12 126/16 131/22 139/16 145/9
145/12 145/14 146/15 147/6 147/10
148/2 148/5 148/14 149/22 150/14
156/14 158/9 162/15 164/23 165/7
165/19 165/20 165/25 170/2 175/3
178/2 178/3 179/7 186/23
nobody **[2]** 143/24 143/24
nominal **[7]** 34/17 68/5 82/6 82/8 82/9
83/4 91/5
non **[7]** 29/1 30/9 53/25 54/17 87/19
153/24 173/8
non-competitive **[1]** 54/17
non-compliance **[1]** 173/8
non-justiciable **[1]** 53/25
non-official **[1]** 29/1
non-profit **[2]** 30/9 153/24
non-sovereignty **[1]** 87/19
none **[2]** 94/10 121/13
nor **[5]** 21/1 28/8 126/12 133/14 164/25
normal **[5]** 20/8 44/4 45/1 45/10 118/15
Northeast **[1]** 92/17

**N**

Northeastern [2]  141/7 141/18
not [339]
not enough [1]  67/3
notable [1]  173/13
note [3]  4/10 128/20 141/19
notes [3]  1/24 7/24 90/17
nothing [23]  20/14 23/12 25/16 28/17
34/17 48/9 69/3 74/18 77/9 80/8 82/6
84/14 85/3 95/25 101/16 126/6 126/6
126/10 128/15 144/17 168/9 168/24
171/22
notice [1]  44/21
notion [1]  145/1
notwithstanding [2]  22/8 22/17
novel [2]  8/9 177/4
now [153]  3/2 4/4 5/1 7/4 7/14 9/9 10/9
10/19 11/2 11/23 12/15 12/22 13/20
13/24 15/5 15/13 16/12 16/16 17/13
18/5 20/6 21/22 22/20 22/21 25/1 27/20
28/22 31/24 32/1 32/12 32/12 32/15
34/1 34/7 34/8 34/10 36/2 36/7 40/1
40/8 40/12 41/5 42/8 42/21 43/3 44/5
47/9 49/7 52/14 53/1 54/20 55/2 55/7
56/15 57/6 59/12 59/22 60/21 61/9
64/13 67/5 68/9 68/23 69/1 69/3 69/8
70/11 72/2 73/20 74/5 74/5 75/10 77/13
77/23 78/23 79/15 80/20 80/25 82/2
83/8 83/15 86/17 86/25 94/3 94/22
94/23 102/18 102/25 104/3 106/6
109/11 110/9 111/23 111/24 112/3
112/7 112/23 113/4 114/17 115/21
115/25 119/24 120/15 121/1 121/20
123/3 124/20 126/2 127/1 129/9 131/1
132/6 136/14 137/8 139/3 140/9 141/24
144/11 145/24 147/1 147/13 148/11
149/23 151/17 153/2 155/9 158/14
159/2 159/7 159/19 160/8 163/12
165/22 165/24 166/25 167/8 170/19
172/4 175/2 175/20 176/8 177/17
177/20 179/17 179/18 179/24 179/25
182/6 183/24 185/6 186/9 186/19
188/13
number [21]  3/3 16/24 22/5 22/18 36/3
69/25 72/5 82/21 83/22 98/7 112/18
119/3 120/11 122/23 127/12 143/12
152/18 164/3 164/20 176/8 176/9
numerous [1]  31/11
NW [2]  1/15 2/4

**O**

oath [2]  46/11 172/25
obey [1]  146/15
object [1]  151/8
objecting [1]  129/25
objection [1]  185/16
objectively [3]  28/5 176/18 176/22
obligations [2]  72/7 175/10
observance [1]  40/3
observation [1]  183/21
obstacles [2]  26/25 144/5
obvious [2]  140/24 152/16
obviously [12]  5/14 10/18 22/19 28/24
57/12 78/8 114/21 140/2 140/19 163/25
180/25 181/15

occupancy [3]  12/6 18/15 18/22
occurred [3]  5/3 48/25 148/14
occurring [2]  22/21 86/25
off [2]  135/10 174/18
offer [6]  11/20 16/10 17/5 88/19 104/24
106/3
offered [1]  174/18
offering [1]  9/16
office [25]  1/14 1/19 4/9 10/10 10/11
29/11 29/13 29/15 44/14 44/20 46/11
46/14 99/12 101/8 115/2 131/11 150/1
150/11 151/17 151/20 152/12 152/17
152/20 166/17 173/1
officeholders' [1]  10/14
officer [6]  100/2 102/4 142/18 148/17
148/19 154/24
officers [1]  102/2
official [11]  1/7 1/23 5/6 5/9 25/14 26/4
26/5 26/20 26/23 28/20 28/25 29/1 29/9
29/24 44/7 44/18 44/18 44/22 45/2 45/4
45/11 45/18 45/23 46/4 46/12 46/14
49/10 59/6 59/7 62/9 73/12 96/3 96/15
97/18 98/11 98/16 98/20 99/14 100/25
101/1 101/1 101/9 101/25 102/7 107/16
126/3 145/9 147/24 148/1 150/14
156/20 162/16 162/17 162/24 162/25
167/10 168/7 168/16 169/2 170/24
175/8 175/12 175/13 175/14 175/22
178/25 179/2 183/23 184/16 184/21
185/5 185/21 185/22 185/22 186/7
190/8
official's [1]  126/12
officials [14]  14/25 18/2 47/15 51/17
90/7 98/23 106/3 133/23 133/24 134/5
137/19 151/4 162/9 164/13
offshore [3]  48/21 49/15 49/21
often [5]  8/24 13/17 67/24 96/9 112/23
oh [5]  22/24 51/22 70/13 116/5 170/24
oil [1]  48/20
okay [15]  4/15 13/9 20/2 65/19 72/25
72/25 76/1 99/16 100/12 100/24 109/15
147/11 156/7 161/10 172/15
Oklahoma [10]  12/8 18/19 18/20 42/3
42/7 59/22 76/24 77/3 77/3 77/4
on [274]
once [2]  140/15 168/16
one [88]  4/20 4/20 5/8 6/14 6/17 6/19
8/18 14/4 14/10 14/15 14/17 15/10 21/5
21/14 21/18 21/24 24/22 25/11 26/25
32/21 32/23 33/17 35/25 36/18 38/24
40/4 40/8 44/5 44/12 46/9 53/18 53/23
55/10 57/24 63/21 71/1 72/7 75/24
80/22 83/22 89/14 92/7 98/24 100/15
101/23 102/8 102/9 103/2 104/1 106/9
106/9 113/7 113/8 114/12 114/18
114/21 119/3 119/15 125/8 129/1
131/17 131/24 132/1 138/17 138/23
139/15 144/20 147/13 148/24 149/19
149/21 156/3 157/3 161/6 164/5 164/8
165/20 169/2 169/10 174/17 175/7
178/3 182/19 183/2 183/9 184/20 185/3
188/11
onerous [2]  141/20 151/6
ones [7]  87/25 97/17 123/5 123/6
127/16 136/14 165/16
ongoing [1]  143/8

only [49]  6/14 10/4 12/3 14/15 20/22
22/13 24/6 26/17 26/24 29/12 29/14
33/23 33/24 46/10 49/14 52/8 67/11
72/10 74/25 75/10 76/6 80/14 82/9 96/5
96/11 98/15 99/16 100/15 102/6 114/5
120/22 133/23 137/2 137/3 138/2
148/16 163/10 164/15 166/8 170/16
171/15 171/16 171/16 178/24 182/16
183/5 184/19 185/10 185/25
open [5]  14/6 99/24 127/18 128/18
129/3
opening [1]  24/12
operate [1]  104/5
operated [3]  110/16 115/3 171/4
operates [1]  108/22
operating [1]  145/16
operation [5]  43/6 46/12 58/12 97/1
107/3
operations [3]  19/19 19/25 152/15
operative [1]  179/3
opinion [20]  30/21 30/23 30/25 32/6
93/14 100/17 100/22 100/23 113/17
126/9 128/4 128/22 128/22 147/25
162/6 163/19 163/21 171/17 171/22
177/21
opinions [1]  152/17
opportunities [1]  144/25
opportunity [4]  9/15 11/20 92/2 141/14
opposed [5]  48/21 55/13 108/25 124/3
184/21
opposite [1]  143/23
opposition [5]  10/7 11/3 16/22 19/16
92/13
opted [1]  121/6
opting [1]  119/17
or [245]
order [14]  17/17 19/4 26/6 36/1 52/21
59/10 131/11 141/17 153/10 173/22
174/2 175/9 175/13 177/5
orders [3]  140/6 150/4 188/5
ordinarily [1]  7/25
ordinary [1]  20/11
organization [5]  24/7 72/12 95/20 188/4
188/6
organizational [1]  24/6
organizations [1]  20/19
organized [1]  43/7
original [1]  95/21
other [91]  5/16 6/2 6/10 6/14 6/17 6/20
6/21 7/10 9/17 9/20 10/25 11/12 11/13
14/10 17/4 20/7 21/2 33/2 35/11 36/20
38/1 46/20 48/21 52/17 54/17 54/17
61/9 61/10 61/19 62/13 62/19 63/8
67/16 69/13 71/8 71/23 71/24 73/9
73/23 73/24 74/1 74/1 77/24 83/10
85/18 87/12 95/10 100/11 102/11
103/11 103/12 109/2 110/10 112/17
113/23 114/20 115/9 116/11 116/13
116/21 118/13 121/3 124/23 131/1
131/15 132/3 134/2 137/9 137/10 140/7
142/4 145/7 147/11 150/10 158/12
158/12 158/16 160/11 160/13 163/19
164/13 164/20 168/11 173/18 177/6
184/4 184/7 186/6 187/13 188/16 189/6
others [3]  43/13 92/19 189/17
otherwise [6]  6/4 50/14 60/3 107/22

**O**

otherwise... **[2]** 113/15 147/8
ought **[2]** 38/22 184/20
our **[105]** 4/14 8/6 8/11 9/1 10/7 10/22
11/2 11/3 11/19 12/2 12/18 13/20 13/21
14/18 15/16 15/21 16/12 16/14 16/16
16/22 16/24 18/5 18/11 19/6 19/16 21/5
21/10 21/12 22/15 25/18 26/21 27/7
38/22 39/6 40/18 41/14 41/16 42/23
42/24 48/24 48/24 49/23 51/9 52/1 54/5
58/15 59/24 59/25 59/25 61/10 71/15
79/9 86/22 87/5 87/8 90/24 91/6 91/14
92/11 92/13 92/23 95/21 106/11 113/20
124/21 133/1 134/1 134/21 136/24
138/23 140/3 140/7 140/14 144/9
146/11 150/1 153/13 158/15 161/22
167/5 168/7 168/13 169/11 173/15
173/17 173/18 176/23 177/2 177/25
179/3 180/11 180/16 180/25 181/2
181/9 181/19 184/13 185/13 186/14
186/17 187/1 187/4 187/13 187/18
188/4
ours **[1]** 158/16
ourselves **[3]** 135/18 136/6 163/14
out **[31]** 19/17 33/17 40/19 40/21 47/11
48/4 56/4 56/18 57/2 63/7 73/20 75/4
75/21 88/4 95/4 95/9 99/21 99/22 117/8
133/8 133/9 133/20 143/10 144/8
151/17 165/12 168/22 184/19 184/23
186/17 187/23
outcome **[3]** 56/6 139/6 159/20
outlined **[1]** 51/9
outside **[4]** 58/17 86/24 112/18 168/16
outstanding **[1]** 110/8
over **[20]** 8/7 9/10 14/21 46/22 51/7 52/3
61/21 67/14 97/23 112/17 113/7 114/18
134/8 139/23 159/21 161/18 168/8
168/10 172/25 179/7
over-simplify **[1]** 112/17
overreads **[1]** 58/3
overriding **[1]** 20/14
oversees **[1]** 169/17
overview **[4]** 8/19 24/15 32/12 32/13
overwhelming **[1]** 82/3
own **[21]** 12/10 12/10 17/23 19/7 19/8
34/21 36/12 36/13 46/13 75/5 82/25
84/12 104/4 106/25 109/12 131/7 156/6
156/6 167/5 178/18 180/16
owned **[7]** 56/19 56/21 57/10 109/16
122/9 122/11 132/11
owner **[2]** 17/20 28/17
owners **[3]** 57/5 102/25 103/10
ownership **[8]** 19/11 37/17 109/9 109/20
151/25 157/2 161/8 169/21
owns **[7]** 35/16 106/1 110/11 110/16
120/23 121/15 169/16

**P**

P-R-O-C-E-E-D-I-N-G-S **[1]** 3/1
p.m **[3]** 102/17 102/17 189/20
page **[5]** 92/13 101/15 133/2 177/2
183/2
pages **[1]** 133/2
paid **[1]** 52/3
pains **[1]** 143/14

palm **[4]** 14/19 14/24 46/21 174/19
papers **[1]** 97/12
paperwork **[1]** 161/15
paragraph **[4]** 10/18 14/18 93/21 104/10
80/21 104/11
parallel **[1]** 23/22
parameters **[2]** 115/24 151/12
paren **[1]** 27/16
parens **[51]** 11/14 16/13 18/17 19/3
29/18 33/8 34/10 34/25 39/17 54/7
54/20 56/1 57/25 58/2 58/11 59/1 59/9
59/13 62/24 63/13 64/10 67/24 68/1
70/2 81/1 81/3 81/11 81/17 81/25 82/3
82/8 83/16 84/22 85/21 90/14 91/5
91/23 95/6 97/11 102/22 103/6 103/18
103/23 140/8 166/1 166/4 174/3 180/15
182/10 182/14 183/6
part **[19]** 10/22 42/10 76/7 81/8 99/14
105/23 110/11 110/11 140/15 141/2
143/17 150/3 150/18 162/24 165/25
166/2 169/16 184/1 187/18
partake **[3]** 149/11 161/3 161/14
participant **[2]** 114/16 115/13
participants **[3]** 9/25 15/16 16/15
participate **[6]** 11/10 50/4 87/8 153/17
181/10 182/4
participates **[1]** 40/3
participating **[2]** 17/20 114/16
participation **[2]** 44/4 150/15
particular **[16]** 25/1 40/22 46/25 47/7
54/1 59/24 62/3 76/13 88/18 113/19
126/17 127/15 130/2 133/14 178/11
188/24
particularize **[1]** 89/10
particularized **[7]** 28/1 66/7 77/8 84/9
158/25 160/14 177/15
particularly **[2]** 31/9 44/2
parties **[23]** 16/9 30/11 30/14 81/13 83/4
131/24 153/6 153/10 154/2 154/5
154/19 155/1 155/13 155/22 157/5
157/8 157/11 157/11 160/19 165/15
174/11 175/5 181/6
partners **[1]** 82/6
parts **[1]** 8/16
party **[10]** 30/19 34/17 82/8 82/9 91/5
153/22 153/24 154/21 156/11 156/21
passage **[1]** 138/9
passed **[2]** 69/25 153/20
past **[19]** 37/13 41/13 71/10 76/25 77/7
79/12 79/18 94/5 94/6 94/10 105/16
108/10 112/13 137/2 147/23 159/13
159/15 159/19 160/2
patents **[2]** 6/24 7/2
path **[1]** 138/9
patriae **[51]** 11/14 18/17 19/3 27/17
29/18 33/9 34/11 34/25 39/17 54/7
54/21 56/1 57/25 58/2 58/11 59/1 59/9
59/14 62/24 63/13 64/10 67/24 68/1
70/3 81/1 81/3 81/11 81/17 81/25 82/3
82/8 83/16 84/23 85/21 90/14 91/5
91/24 95/6 97/11 102/22 103/6 103/18
103/23 140/8 166/1 166/4 174/3 180/15
182/10 182/15 183/6
patriae's **[1]** 16/13
PATRICK **[2]** 1/18 3/18

patron **[1]** 134/18
patronize **[2]** 50/24 160/24
patronizes **[1]** 50/13
patronizing **[1]** 14/10
Paul **[1]** 1/20
pause **[3]** 103/5 103/15 146/2
pay **[5]** 12/24 13/13 110/7 146/12
155/11
paying **[2]** 108/20 174/19
payment **[3]** 110/22 111/6 156/19
payments **[7]** 95/19 110/8 149/14
149/16 154/15 154/18 164/23
pending **[1]** 3/2
penned **[1]** 64/2
Pennsylvania **[3]** 2/4 54/10 85/19
people **[24]** 9/13 18/9 38/23 89/11 98/4
103/3 104/19 104/20 107/20 119/8
120/17 121/1 121/2 121/3 127/4 127/9
128/16 143/3 144/3 145/1 149/14 158/8
161/12 161/15
perceived **[2]** 47/4 48/6
percent **[1]** 77/4
perfectly **[1]** 167/14
perform **[2]** 144/18 145/20
performance **[3]** 28/18 95/25 162/16
performed **[1]** 185/5
performing **[2]** 25/14 147/24
perhaps **[6]** 4/23 41/21 49/12 49/14
90/17 151/8
permanent **[1]** 147/7
permanently **[1]** 147/12
permissible **[1]** 171/7
permission **[1]** 14/25
permit **[4]** 26/6 47/19 177/9 177/10
permits **[2]** 17/14 43/23
permitted **[1]** 18/19
person **[5]** 10/10 126/11 142/13 148/15
148/16
personal **[13]** 26/19 29/20 44/13 96/6
97/14 98/14 99/6 101/8 167/15 167/23
168/17 170/12 179/2
personally **[3]** 5/13 28/16 104/1
persons **[1]** 153/10
persuade **[1]** 163/21
pertaining **[2]** 143/5 147/20
pertinent **[2]** 21/10 82/19
PETER **[1]** 1/11
Petition **[1]** 83/18
phase **[5]** 6/8 36/6 78/16 116/20 120/8
phrased **[1]** 113/18
physical **[1]** 54/12
pick **[2]** 102/15 103/16
piece **[1]** 89/4
pieces **[1]** 62/1
pitch **[1]** 170/9
pitting **[1]** 164/2
PJM **[2]** 1/4 3/3
place **[9]** 1/20 54/22 75/22 89/13 143/9
158/13 158/14 158/15 173/25
placed **[1]** 72/4
places **[4]** 104/22 121/3 158/12 158/16
plaintiff **[26]** 1/5 1/17 23/25 24/6 28/10
30/8 55/9 109/22 117/24 118/17 125/17
125/21 127/2 127/11 133/11 140/18
142/12 143/4 154/16 156/12 172/18
172/19 172/23 175/22 178/19 187/14

**P**

**plaintiff's [9]**  4/5 5/12 27/4 30/4 31/6 39/13 132/4 154/3 160/20
**plaintiffs [65]**  1/13 3/7 3/9 4/19 5/6 7/8 16/6 19/15 21/1 21/15 23/11 23/24 24/10 24/18 24/21 26/19 27/1 27/23 28/4 29/2 29/23 30/2 30/11 31/15 31/18 35/22 56/6 66/9 68/3 68/5 74/13 78/24 80/20 83/5 98/1 99/13 103/25 112/7 121/13 122/10 122/11 126/15 127/19 127/21 128/1 128/7 128/10 137/15 138/5 139/6 142/25 144/6 155/25 158/24 160/15 160/22 161/23 172/18 173/6 176/6 177/18 178/8 178/25 184/2 187/17
**plaintiffs' [3]**  27/8 32/14 56/16
**plan [1]**  14/5
**plans [1]**  47/18
**plausibility [2]**  66/10 172/5
**plausible [21]**  14/3 15/22 19/13 21/12 40/15 40/16 40/17 41/17 41/23 60/17 79/8 121/4 122/6 143/8 157/20 158/1 160/2 172/11 172/14 174/25 176/12
**plausibly [9]**  60/13 78/8 78/9 78/11 79/1 111/15 116/25 117/3 117/9
**play [1]**  13/13
**playing [14]**  11/16 16/14 16/16 17/16 18/16 42/25 114/13 115/10 135/11 161/9 181/10 181/11 183/20 189/5
**plead [1]**  160/4
**pleading [1]**  94/22
**pleadings [1]**  26/6
**please [5]**  23/6 38/21 102/21 152/24 176/4
**pled [1]**  30/1
**plenty [1]**  152/19
**plurality [2]**  146/7 163/23
**plus [1]**  169/21
**pocketbook [1]**  189/12
**pockets [1]**  160/8
**podium [2]**  7/20 7/22
**point [70]**  7/15 11/1 25/22 30/25 32/5 38/6 40/2 42/12 57/7 61/1 69/5 71/11 71/19 77/1 77/11 78/15 78/15 78/17 79/4 79/12 79/12 79/18 79/19 80/3 80/25 81/4 93/11 93/20 94/3 94/11 95/4 100/8 101/23 113/7 116/11 116/12 116/19 117/3 118/10 120/19 129/6 129/7 133/15 143/10 146/16 151/12 152/25 153/8 155/16 155/18 155/25 157/17 158/2 160/17 161/18 161/19 161/19 161/22 161/25 166/20 170/8 170/11 171/13 171/15 172/8 176/14 176/20 177/6 183/1 186/23
**pointed [5]**  59/24 70/8 80/2 119/20 168/22
**pointing [2]**  83/12 184/19
**points [13]**  25/11 77/17 93/9 102/9 118/4 137/24 138/2 138/23 152/25 170/10 173/14 176/4 179/13
**police [3]**  98/18 98/19 98/19
**policy [4]**  14/9 18/21 88/25 141/16
**political [26]**  23/12 27/15 32/23 33/7 69/4 69/17 70/6 70/22 84/15 93/15 93/16 94/1 96/24 96/25 96/25 97/2 97/4

97/7 99/11 110/10 144/22 177/13 178/1 178/6 178/7 186/15
**population [1]**  85/7
**populist [1]**  143/15
**portion [1]**  106/1
**pose [1]**  152/7
**position [9]**  5/12 25/18 39/25 62/14 69/14 71/15 163/17 166/19 173/18
**positioned [1]**  34/21
**possesses [1]**  90/21
**possession [2]**  21/21 129/8
**possibilities [1]**  149/8
**possibility [1]**  34/3
**possible [8]**  28/5 66/25 67/1 67/3 144/13 167/25 171/1 189/18
**possibly [2]**  149/17 167/21
**post [5]**  14/20 72/18 150/11 166/17 167/18
**potential [5]**  53/9 53/17 54/16 122/3 152/6
**potentially [3]**  124/25 151/16 152/8
**power [18]**  27/3 27/15 31/12 31/14 32/23 67/14 69/12 70/17 71/16 71/18 93/16 93/24 94/1 145/10 147/10 161/20 161/24 162/10
**powers [7]**  2/3 3/25 3/25 31/21 32/9 163/15 168/18
**precedent [4]**  21/10 82/3 156/11 158/3
**precise [2]**  48/4 49/22
**precisely [2]**  49/5 108/21
**preclude [2]**  63/19 162/22
**predecessors [3]**  144/20 149/24 152/10
**predict [3]**  30/14 119/11 155/23
**predominant [1]**  88/11
**preempt [1]**  88/23
**preemptive [1]**  178/20
**prefer [1]**  167/19
**prejudice [1]**  78/15
**preliminary [4]**  4/13 7/18 7/19 147/10
**premise [2]**  19/21 22/23
**prepared [5]**  139/22 167/24 175/18 186/6 186/18
**prerogatives [1]**  50/20
**presence [1]**  160/19
**present [8]**  8/9 10/11 13/24 32/8 63/24 64/3 93/2 159/20
**presentation [3]**  38/15 39/11 42/10
**presentations [1]**  187/24
**presented [3]**  52/19 53/8 139/8
**presents [4]**  14/11 31/20 100/17 154/24
**preservation [1]**  188/5
**preserve [1]**  173/2
**presidencies [1]**  150/9
**president [321]**
**president's [75]**  9/21 10/4 11/12 12/4 12/13 14/3 14/10 15/14 18/12 23/10 23/19 24/11 26/22 29/25 30/18 35/3 35/15 37/2 37/17 38/12 39/15 39/19 43/1 43/18 46/21 50/2 50/11 52/2 54/5 54/25 55/17 57/3 59/17 60/18 63/14 72/6 72/11 73/25 74/2 80/7 84/15 88/16 91/10 91/21 94/19 101/16 101/17 102/23 116/16 118/24 121/8 122/25 123/22 134/13 139/1 144/4 148/5 155/20 156/3 156/18 157/1 157/10 158/8 158/13 160/8 161/7 163/17

165/10 165/14 173/7 174/19 179/20 179/23 182/12 189/6
**presidential [5]**  12/20 96/18 126/5 127/9 131/11
**presidents [4]**  147/1 147/23 151/20 152/19
**press [5]**  48/19 116/19 121/1 121/5 181/18
**pressing [1]**  181/19
**pressure [3]**  14/16 178/13 178/15
**pressured [3]**  33/2 71/15 72/8
**presumably [3]**  73/10 82/19 94/5
**presume [2]**  41/2 75/2
**pretty [5]**  102/13 130/14 152/16 158/15 159/8
**prevent [13]**  13/23 14/12 15/19 16/2 43/17 46/25 49/6 49/23 59/8 88/5 101/7 122/24 126/3
**prevented [1]**  17/7
**preventing [3]**  9/25 34/15 80/23
**prevents [1]**  46/25
**previous [3]**  17/24 20/5 151/20
**previously [2]**  105/7 133/17
**price [3]**  138/13 156/3 161/1
**primarily [1]**  13/12
**Prime [4]**  47/17 59/20 60/25 91/17
**prince [1]**  10/12
**principally [1]**  92/5
**principals [1]**  21/10
**principle [7]**  25/1 38/24 43/3 75/2 81/18 83/14 132/24
**principles [10]**  8/13 24/13 24/16 24/17 27/22 29/17 32/13 47/6 130/3 130/6
**prior [5]**  14/19 79/13 147/22 150/9 165/19
**prison [1]**  145/1
**private [19]**  9/7 20/18 26/3 26/23 28/17 81/13 84/19 84/20 97/1 118/20 131/23 148/2 148/4 162/21 162/22 168/21 168/21 185/6 185/25
**privately [3]**  99/15 99/17 162/23
**privity [1]**  111/8
**pro [6]**  4/3 4/11 46/25 48/11 49/19 49/20
**probably [8]**  7/20 44/25 45/9 65/20 147/13 150/21 152/16 183/24
**probe [1]**  61/20
**problem [12]**  30/15 46/9 47/25 48/4 53/20 121/24 146/19 148/3 151/11 154/1 175/11 184/22
**problematic [3]**  33/18 99/18 153/9
**problems [3]**  100/17 153/9 179/8
**procedural [3]**  83/22 84/1 84/5
**proceed [8]**  21/11 41/18 139/18 147/17 149/1 175/24 177/10 180/22
**proceeded [1]**  167/5
**proceedings [5]**  1/10 4/20 103/5 185/2 190/3
**proceeds [4]**  19/11 106/25 107/8 138/4
**process [1]**  178/7
**processes [1]**  178/2
**Processing [1]**  133/3
**Producers [1]**  18/20
**product [1]**  8/1
**profit [6]**  9/23 10/10 30/9 44/13 44/14 153/24
**profiteering [1]**  162/21

**P**

**profiting [1]**  5/13
**program [2]**  4/14 7/17
**prohibit [2]**  9/21 127/6
**prohibited [8]**  10/24 12/20 13/11 48/2
101/2 120/10 127/6 174/13
**prohibition [4]**  21/3 53/20 81/21 90/20
**prohibitions [2]**  93/21 93/25
**project [1]**  110/8
**prongs [1]**  173/11
**proof [6]**  36/22 56/5 73/14 125/2 139/6
159/7
**proper [6]**  46/7 52/15 96/11 101/8
102/14 171/7
**properly [5]**  46/14 68/4 141/11 145/3
175/21
**properties [24]**  35/6 36/13 36/14 76/4
78/1 78/3 112/4 112/8 113/25 114/7
122/11 123/14 123/24 124/23 131/6
132/7 132/11 135/24 136/21 157/15
157/18 157/20 174/22 188/16
**property [21]**  14/22 18/1 63/8 71/22
72/10 72/11 72/15 73/4 73/11 76/15
78/6 84/11 110/12 110/12 116/16
120/23 121/8 158/8 158/9 160/25 161/8
**prophylactic [5]**  9/11 13/19 23/1 43/12
46/24
**propose [1]**  78/18
**proposition [7]**  21/3 21/5 31/22 92/5
101/3 123/20 132/25
**proprietary [41]**  12/10 19/7 32/19 35/2
36/18 39/10 75/18 75/25 76/4 76/7
90/10 90/12 90/14 91/24 102/18 102/24
103/8 106/17 106/18 109/7 109/18
110/6 111/13 111/14 111/24 112/1
114/8 119/18 119/22 124/23 131/2
140/8 150/25 153/3 169/23 174/21
175/5 180/15 181/24 181/25 188/14
**proprietors [3]**  103/21 106/12 109/4
**prosecute [1]**  137/12
**prosecution [3]**  129/14 130/6 130/6
**prospect [1]**  43/13
**protect [30]**  10/3 16/14 23/18 24/10 34/9
34/18 39/25 43/12 58/5 58/11 67/25
84/10 84/11 86/13 87/11 90/24 126/8
126/11 126/14 126/17 126/18 126/19
127/11 127/16 127/20 137/21 151/21
152/21 173/2 180/13
**protected [11]**  40/6 42/23 43/9 58/15
125/19 125/25 126/20 127/5 128/16
165/25 180/17
**protecting [6]**  9/24 11/15 39/17 67/17
80/23 90/21
**protection [4]**  20/13 38/23 141/8 141/10
**protectionist [1]**  18/21
**protects [1]**  46/20
**prove [12]**  24/21 66/11 94/9 95/1 116/10
116/20 117/18 118/6 136/1 136/23
137/2 137/5
**provide [6]**  16/3 24/15 27/8 39/11 47/7
111/18
**provided [1]**  13/15
**provides [2]**  40/13 176/14
**proving [1]**  94/7
**provision [9]**  87/11 88/2 91/1 125/19

129/5 129/12 130/15 130/16 130/20
**provisions [12]**  8/22 20/20 22/4 23/1
39/24 65/11 126/1 126/8 137/11 137/17
137/20 166/7
**proximity [2]**  7/5 123/24
**prudential [1]**  21/19
**public [6]**  8/9 98/23 144/1 144/6 153/15
187/4
**Puerto [9]**  68/10 84/19 84/25 85/1 85/2
85/13 85/15 182/13 182/16
**pure [5]**  73/6 73/16 119/19 121/16
158/24
**purely [2]**  74/9 122/12
**purpose [7]**  8/6 9/21 10/13 66/20 126/2
126/4 179/7
**purposes [13]**  8/21 20/9 26/16 64/3
66/22 79/9 79/9 104/8 108/6 108/22
125/23 134/14 181/21
**pursue [2]**  40/5 111/1
**pursuing [1]**  188/13
**purview [1]**  65/9
**put [11]**  3/7 48/17 61/12 64/24 69/13
87/23 124/6 134/1 151/4 187/4 187/8
**puts [11]**  11/18 13/12 32/9 49/22 50/9
51/4 71/7 71/14 173/24 173/24 174/15
**putting [3]**  57/5 100/1 108/7
**puzzled [1]**  97/19

**Q**

**qua [2]**  87/24 183/19
**qualified [1]**  166/23
**quality [3]**  135/12 156/2 174/17
**quarter [2]**  60/7 60/7
**quasi [38]**  11/8 12/16 25/3 27/13 32/19
34/8 39/7 54/9 58/7 67/6 67/10 67/10
67/23 68/4 68/12 68/13 68/17 80/19
80/22 81/2 82/5 84/7 84/18 85/5 86/2
95/7 95/9 111/24 118/19 126/14 136/5
140/1 183/1 183/3 183/5 183/10 183/17
188/18
**quasi-sovereign [37]**  11/8 12/16 25/3
27/13 32/19 34/8 39/7 54/9 58/7 67/6
67/10 67/23 68/4 68/12 68/13 68/17
80/19 80/22 81/2 82/5 84/7 84/18 85/5
86/2 95/7 95/9 111/24 118/19 126/14
136/5 140/1 183/1 183/3 183/5 183/10
183/17 188/18
**question [62]**  5/17 6/9 7/7 8/10 21/18
30/3 39/22 42/7 46/2 52/14 53/24 61/13
61/13 62/1 62/6 62/23 63/5 63/22 73/7
78/10 79/10 86/3 86/24 88/1 88/9 88/12
94/20 97/25 99/24 100/6 109/23 115/14
117/7 117/25 122/15 122/18 123/4
125/16 127/19 127/24 129/1 129/2
129/3 129/16 129/19 135/17 145/25
149/10 155/3 155/4 163/7 166/15
166/20 169/19 169/20 171/6 172/4
178/23 184/1 184/12 186/9 187/9
**questions [20]**  4/25 5/18 7/14 40/8 44/5
61/9 61/11 64/18 65/17 106/20 125/8
130/14 137/22 141/25 152/7 170/2
175/25 180/20 186/15 188/11
**quick [2]**  93/9 187/23
**quickly [6]**  11/6 90/17 167/25 170/4
185/14 188/1
**quid [4]**  46/25 48/11 49/19 49/20

**quintessential [1]**  16/4
**quite [11]**  56/18 66/14 82/7 88/20 90/4
108/4 136/22 142/17 153/8 164/12
186/24
**quo [4]**  46/25 48/11 49/19 49/20
**quote [16]**  14/23 40/25 43/13 66/15
81/16 113/11 126/6 139/3 146/18 153/8
153/11 162/9 176/16 176/24 177/25
178/4
**quotes [1]**  72/20
**quoting [1]**  162/14

**R**

**radical [1]**  112/16
**railroad [2]**  54/16 85/20
**railroads [2]**  54/11 54/17
**raise [4]**  129/9 129/15 130/13 167/22
**raised [13]**  8/15 25/11 40/8 40/13 52/14
126/16 136/13 144/12 162/12 163/6
163/18 167/23 186/14
**raises [3]**  53/19 163/18 164/1
**raising [1]**  98/9
**Rajinski [2]**  105/3 174/24
**range [1]**  152/6
**ranges [1]**  104/25
**ranging [2]**  134/9 134/9
**rather [9]**  9/7 45/8 47/7 77/11 88/16
112/4 157/23 158/8 172/14
**ratings [1]**  88/17
**rational [1]**  35/10
**rationale [2]**  35/12 129/18
**re [1]**  49/13
**re-route [1]**  49/13
**reach [1]**  143/24
**reaches [2]**  144/17 146/16
**react [1]**  30/14
**read [15]**  5/9 6/12 30/21 30/21 30/23
66/13 67/6 71/3 97/12 117/4 138/9
146/10 149/8 162/5 176/13
**reading [1]**  42/6
**ready [2]**  139/17 144/10
**real [5]**  110/12 165/16 165/16 169/21
186/23
**realized [2]**  17/10 152/17
**really [58]**  5/7 5/17 6/2 7/7 21/20 26/3
27/15 28/15 28/25 30/1 30/24 33/8
34/17 42/12 45/11 53/11 68/5 78/10
78/25 82/13 83/10 83/11 83/13 83/13
96/22 97/13 102/6 111/1 111/12 115/14
119/10 123/25 126/16 127/13 133/23
134/10 141/2 147/6 147/10 148/2 148/5
150/11 155/13 155/13 163/7 164/21
164/25 165/19 168/20 171/2 171/4
171/22 172/1 172/2 179/7 184/23
184/24 185/19
**realm [1]**  172/5
**reason [13]**  30/12 68/15 98/13 128/6
135/1 147/25 156/20 166/9 166/22
170/23 178/3 181/7 184/19
**reasonable [7]**  28/6 64/25 148/24 151/4
151/11 176/18 176/22
**reasonably [1]**  35/13
**reasons [18]**  20/4 21/23 40/11 72/5
83/20 106/17 114/9 114/9 114/11 119/1
119/10 120/1 120/18 123/16 123/21
124/12 160/18 166/13

# R

**reassure [1]** 143/15
**rebuttal [3]** 86/8 172/19 176/1
**recalcitrant [1]** 150/5
**receipt [34]** 9/21 11/17 12/13 13/11
15/17 15/25 16/2 16/19 17/18 18/24
19/2 21/2 39/15 43/2 46/12 48/3 50/2
53/20 53/24 54/2 55/17 59/18 63/14
91/10 101/16 102/23 106/14 134/14
135/2 139/1 140/4 162/22 166/11
182/12
**receive [14]** 9/19 9/19 10/24 14/14 18/14
26/2 47/1 51/8 54/1 86/21 142/19
148/17 166/9 173/23
**received [9]** 10/23 11/13 13/18 17/21
17/22 86/22 145/3 165/9 188/23
**receives [3]** 44/11 60/16 162/25
**receiving [15]** 10/23 15/21 44/12 44/15
49/14 63/20 65/9 86/14 87/4 88/7
126/23 142/19 144/24 162/23 169/24
**recent [1]** 147/4
**recently [1]** 49/1
**recess [5]** 65/22 65/24 102/17 172/21
189/20
**recognition [1]** 67/16
**recognizable [1]** 42/2
**recognize [3]** 8/14 113/21 137/1
**recognized [13]** 11/4 11/9 12/7 20/20
30/16 43/4 67/11 81/20 114/1 115/1
116/11 116/13 146/23
**recognizes [2]** 58/18 58/19
**recognizing [2]** 68/9 113/13
**recollect [2]** 96/15 100/12
**Reconstruction [2]** 99/3 145/19
**record [3]** 94/25 187/4 190/3
**records [5]** 134/10 186/25 188/3 188/7
188/22
**recoup [1]** 151/24
**rectify [1]** 52/15
**red [1]** 183/18
**redound [1]** 48/14
**redounding [1]** 54/19
**redress [10]** 16/4 16/10 31/5 31/8 31/14
62/5 65/5 151/11 160/19 175/15
**redressability [32]** 9/4 20/4 25/20 27/21
31/5 31/7 31/9 63/18 64/18 64/25 64/25
65/5 65/14 99/1 116/10 139/18 140/16
141/13 142/5 143/11 144/11 152/6
152/25 153/9 160/18 161/17 170/8
172/4 172/10 172/10 174/10 179/9
**redressable [13]** 15/23 17/13 17/17 19/4
27/4 62/22 130/2 138/7 140/5 140/24
141/23 173/22 174/1
**redressed [1]** 141/17
**reduced [4]** 72/19 76/16 76/22 77/5
**reduction [6]** 72/15 72/16 73/11 76/15
77/1 77/15
**refer [2]** 56/16 131/21
**reference [1]** 169/14
**referenced [2]** 101/24 113/10
**referred [2]** 67/24 76/24
**refers [1]** 58/1
**refile [1]** 170/18
**reflect [1]** 9/13
**regard [8]** 6/5 7/5 15/4 64/24 106/4

122/11 173/15 184/3
**regarding [1]** 47/23
**Regardless [1]** 113/18
**regular [1]** 138/4
**regulate [2]** 83/18 137/15
**regulated [1]** 148/16
**regulating [1]** 137/12
**regulation [2]** 47/19 112/24
**regulations [1]** 14/6
**regulator [3]** 114/14 114/15 115/11
**regulatory [6]** 112/21 113/6 113/14
114/12 119/5 138/19
**reiterated [1]** 66/23
**rejected [4]** 28/6 35/6 71/9 147/18
**rejoins [1]** 86/5
**relate [2]** 96/16 139/4
**related [5]** 18/23 39/21 54/25 153/1
160/17
**relation [1]** 81/9
**relatively [1]** 60/10
**relax [1]** 118/20
**relaxed [1]** 118/11
**relevance [1]** 48/22
**relevant [3]** 40/1 138/22 169/25
**reliance [1]** 142/8
**reliant [1]** 156/10
**relied [1]** 162/4
**relief [32]** 26/25 31/16 31/17 31/21
31/23 32/7 32/7 32/9 33/24 49/22 65/1
65/5 100/7 100/10 100/13 100/7
100/18 102/6 147/4 147/6 147/10 148/7
162/9 162/11 162/19 163/16 163/23
164/1 171/14 171/16 172/1 172/7
**relies [10]** 55/7 103/1 103/23 118/22
143/13 144/17 145/15 146/7 174/11
179/15
**relieves [1]** 174/14
**reluctant [1]** 142/11
**rely [8]** 19/15 35/3 83/15 84/17 85/19
92/5 132/25 136/14
**relying [5]** 35/19 112/15 128/21 137/17
142/3
**remain [1]** 179/18
**remake [1]** 145/19
**remarks [7]** 4/13 7/18 7/19 7/25 24/12
172/12 172/22
**remedy [11]** 16/5 23/15 74/14 148/3
148/11 148/21 159/15 161/22 167/5
175/11 175/15
**remedying [1]** 65/11
**remember [6]** 29/22 31/6 67/22 94/4
147/13 161/16
**reminded [1]** 101/25
**remote [1]** 76/19
**render [2]** 179/2 179/3
**renting [1]** 25/15
**repeal [1]** 14/6
**repeatedly [1]** 66/23
**report [3]** 14/18 14/22 48/19
**reporter [4]** 1/23 66/16 190/1 190/8
**reports [3]** 121/1 121/5 134/2
**representative [1]** 54/14
**representing [1]** 29/11
**represents [1]** 81/10
**republic [1]** 43/7
**requested [2]** 15/24 188/5

**require [4]** 13/4 31/17 164/19 164/24
**required [2]** 77/3 139/11
**requirement [9]** 15/13 31/4 31/9 113/13
113/19 118/12 136/24 176/23 177/3
**requirements [5]** 8/12 9/3 12/16 118/21
140/16
**requires [1]** 100/3
**requiring [1]** 17/17
**requisite [1]** 20/23
**reservation [2]** 160/5 160/6
**reserve [2]** 128/2 176/1
**reserved [1]** 52/6
**residents [15]** 11/16 34/10 34/15 39/17
54/10 54/13 57/21 57/22 58/12 63/4
63/16 80/23 91/3 91/7 91/12
**resist [2]** 45/14 45/16
**resolve [1]** 16/8
**resolving [1]** 16/4
**resources [2]** 138/14 181/1
**respect [11]** 8/15 13/20 20/16 27/20
27/22 30/17 30/25 35/1 100/6 148/24
178/10
**respective [1]** 109/4
**respects [2]** 9/6 110/5
**respond [4]** 58/21 157/23 170/4 170/11
**respondents [2]** 176/16 178/2
**response [8]** 29/8 48/3 102/14 111/21
118/5 165/4 165/5 183/14
**responses [2]** 131/1 131/17
**responsive [1]** 50/7
**rest [3]** 143/15 167/8 182/22
**restaurant [11]** 19/22 47/17 51/16 56/4
59/20 59/25 60/25 63/5 88/18 91/16
119/9
**restaurants [8]** 14/2 16/25 56/19 56/21
56/23 88/14 91/19 104/16
**restoring [1]** 11/16
**restraint [1]** 148/2
**restricted [1]** 153/15
**restricting [2]** 131/17 153/20
**restrictions [1]** 113/15
**rests [1]** 88/21
**result [5]** 49/10 56/12 60/7 77/2 138/25
**resulting [1]** 41/1
**results [4]** 17/21 18/15 18/24 20/21
**resuming [1]** 102/17
**retains [1]** 93/24
**retaliate [1]** 74/23
**retaliation [1]** 75/5
**revealing [1]** 14/19
**revenue [26]** 12/6 18/11 18/14 18/20
33/4 34/3 34/7 59/23 59/25 75/11 75/13
76/12 76/18 77/2 77/7 77/10 77/15
79/13 79/15 79/22 80/15 89/6 89/22
94/10 94/12 169/25
**revenues [18]** 12/3 34/1 34/4 41/24 42/1
42/4 60/2 61/7 61/23 67/19 71/22 75/9
76/22 77/18 109/19 149/11 153/2 161/4
**reversal [2]** 17/23 150/19
**reverse [1]** 150/17
**review [6]** 8/11 14/6 47/18 143/16
143/18 143/22
**reviewed [3]** 21/4 143/20 165/21
**revisit [1]** 40/23
**rewards [1]** 9/16
**Rican [1]** 85/15

# R

**Ricans [1]** 85/2
**Rico [6]** 68/10 84/19 84/25 85/3 182/13 182/16
**Rico's [1]** 85/13
**right [87]** 3/6 3/7 3/20 4/2 4/10 4/25 6/7 11/24 12/1 13/6 21/11 21/18 21/22 22/20 23/2 23/3 23/5 23/25 26/10 27/8 27/18 28/22 31/3 32/5 36/6 38/8 38/14 38/19 41/4 42/11 42/20 46/17 55/12 63/2 65/16 66/1 66/16 75/23 83/22 84/5 90/21 93/4 101/21 102/15 103/16 110/4 111/16 111/20 111/21 117/15 121/11 124/7 125/5 126/9 128/12 132/24 135/15 137/23 139/14 139/17 152/22 152/23 156/6 159/7 160/16 165/2 168/3 169/9 169/24 170/1 170/3 170/19 172/16 172/22 176/2 179/10 182/23 183/11 183/13 183/21 184/9 187/8 187/22 188/9 188/15 189/13 189/16
**rightful [6]** 11/9 12/18 13/21 15/11 140/2 173/17
**rights [7]** 50/21 58/8 74/12 74/12 81/9 91/14 142/9
**rigorous [1]** 24/21
**rise [7]** 40/16 49/21 56/1 56/12 58/8 70/10 119/6
**risk [1]** 13/14
**Ritz [9]** 36/8 52/7 57/19 80/3 119/21 155/17 157/17 158/19 165/24
**rivals [1]** 138/13
**road [6]** 39/11 63/18 136/9 136/9 170/21 184/20
**roadblocks [1]** 144/5
**roads [1]** 15/3
**Roginsky [3]** 56/17 60/23 104/11
**rolled [1]** 47/19
**room [1]** 135/8
**rooms [1]** 25/15
**roots [1]** 143/17
**route [1]** 49/13
**roving [3]** 70/20 177/7 180/9
**RPR [1]** 190/8
**rude [2]** 51/22 134/24
**rule [11]** 13/19 43/12 46/24 117/12 118/7 124/21 136/12 166/22 186/18 187/12 187/15
**Rulemaking [1]** 83/18
**rules [1]** 128/6
**run [4]** 4/25 11/6 45/1 149/7
**runs [1]** 33/24

# S

**Sadly [1]** 14/15
**safe [1]** 151/9
**safeguard [1]** 47/3
**said [69]** 7/17 8/22 20/23 27/14 28/7 29/25 30/20 31/11 51/19 51/21 53/1 53/2 53/4 53/5 69/16 69/22 70/2 70/19 71/14 71/17 71/24 72/21 72/25 76/17 80/6 81/7 81/8 81/14 81/16 81/24 83/19 84/2 84/6 84/21 85/8 85/12 85/14 96/8 99/2 99/5 100/9 101/19 102/5 107/20 109/16 113/23 115/20 117/8 117/21 120/25 121/2 123/18 128/1 128/4

129/21 150/2 153/19 160/1 163/2 165/11 167/14 168/6 168/23 170/5 170/24 178/9 178/14 183/7 188/2
**Saint [1]** 1/20
**salary [1]** 9/24
**sale [1]** 133/14
**sales [9]** 12/6 18/14 18/22 51/14 106/8 106/9 132/23 138/12 138/14
**same [37]** 11/20 17/6 17/14 18/16 19/3 19/14 20/4 22/6 22/6 31/20 37/9 42/3 50/1 76/5 76/9 83/6 100/17 104/1 104/7 105/4 105/4 106/3 106/7 118/12 122/10 123/21 124/1 128/8 130/12 138/14 147/8 154/1 164/2 178/5 182/10 187/8 189/5
**sanctioned [2]** 34/25 45/18
**satisfied [3]** 20/4 31/18 140/17
**satisfies [6]** 8/12 9/2 12/16 12/18 16/12 87/1
**satisfy [5]** 8/6 20/6 111/18 148/21 169/22
**Saudi [3]** 52/3 89/18 90/1
**say [78]** 4/18 5/21 7/9 21/7 22/24 28/19 28/19 29/7 36/4 36/21 40/14 42/1 42/5 44/12 51/22 53/18 53/23 58/24 61/19 65/1 73/10 73/12 78/9 78/14 78/17 81/4 86/20 89/4 96/2 96/20 98/5 98/6 99/16 101/12 105/13 108/12 113/17 116/5 117/3 117/25 120/15 121/2 122/6 128/25 129/2 132/8 132/15 139/3 139/14 139/25 146/2 146/19 147/3 151/9 151/12 151/13 159/10 159/10 159/18 161/3 161/10 165/22 168/8 171/3 171/9 171/23 174/11 175/7 175/18 182/5 182/24 183/2 183/14 183/16 183/18 184/8 185/18 186/6
**saying [48]** 13/6 13/7 25/12 25/25 26/8 47/22 53/11 53/12 72/23 72/24 75/20 78/15 82/19 86/9 86/11 87/3 87/15 87/19 87/21 89/9 89/14 95/15 100/17 100/25 115/22 116/17 116/23 117/6 126/20 127/3 128/25 134/16 134/23 141/13 155/12 157/1 157/19 157/22 159/8 159/14 159/16 159/25 160/11 165/20 170/19 171/11 181/19 186/5
**says [22]** 31/19 58/1 58/4 66/15 86/17 86/21 87/6 100/12 120/16 144/17 145/12 146/17 146/18 146/21 150/14 154/14 154/16 155/10 161/10 168/9 177/25 183/24
**Scalia [3]** 100/16 163/19 163/20
**Scalia's [1]** 32/6
**scenario [3]** 14/11 144/25 168/1
**scenarios [2]** 152/18 167/1
**scheme [2]** 43/6 165/14
**Schlesinger [3]** 28/11 127/24 177/20
**Scholars [2]** 92/25 133/2
**scope [4]** 148/11 166/25 188/10 188/10
**screen [4]** 33/8 70/2 97/1 103/11
**searched [1]** 35/10
**Seasons [12]** 36/1 36/9 36/19 52/7 57/17 80/4 91/15 119/21 155/17 157/18 158/19 165/24
**seated [1]** 65/25
**seating [1]** 3/7
**Sebelius [13]** 27/6 55/20 69/7 69/20

90/19 92/6 93/3 93/15 97/10 113/8 113/9 131/14 136/22
**second [16]** 8/25 11/14 16/12 24/15 33/1 53/20 67/16 71/2 75/6 79/19 84/6 118/9 119/5 160/17 171/13 176/21
**secondly [3]** 62/4 131/21 138/9
**Secretary [2]** 48/20 162/10
**section [3]** 25/20 176/17 176/20
**sector [5]** 12/5 16/17 18/13 56/16 57/2
**sectors [1]** 11/20
**secure [1]** 39/2
**secured [1]** 14/9
**securing [1]** 40/2
**security [5]** 15/3 38/23 50/4 105/1 133/4
**see [15]** 9/10 35/10 38/16 41/6 46/4 73/21 96/25 107/4 116/25 152/7 165/12 167/8 171/25 172/20 187/10
**seeing [3]** 187/1 187/2 187/3
**seek [10]** 8/11 9/15 23/15 39/8 46/8 129/13 135/10 167/17 180/18 183/17
**seeking [24]** 4/21 33/24 34/9 43/23 44/15 72/6 82/12 82/13 82/15 83/2 83/8 84/7 84/10 84/11 84/25 86/14 95/7 102/5 122/22 127/13 130/16 136/8 137/12 137/15
**seem [8]** 5/9 6/12 6/13 115/22 151/5 154/12 165/15 185/4
**seemed [1]** 151/2
**seems [4]** 115/24 154/17 159/5 167/11
**seen [2]** 157/21 187/4
**segment [2]** 66/3 67/5
**seize [2]** 17/17 19/5
**Seldin [1]** 8/23
**self [2]** 10/3 178/16
**self-dealing [1]** 10/3
**self-inflicted [1]** 178/16
**seller [5]** 138/12 138/17 153/14 153/17 154/1
**selling [1]** 101/7
**sense [8]** 5/21 63/19 65/2 83/13 119/2 122/14 156/1 169/4
**sentence [2]** 30/20 101/21
**separate [1]** 62/23
**separation [4]** 31/21 32/9 147/10 163/15
**serious [2]** 42/7 147/22
**seriously [1]** 51/17
**serve [1]** 78/2
**serves [1]** 9/12
**service [6]** 10/4 101/17 135/8 150/13 156/2 168/25
**services [8]** 17/24 18/24 25/14 104/24 105/2 150/25 151/3 166/16
**set [9]** 8/13 10/6 11/2 19/20 23/1 44/16 105/3 142/24 143/19
**sets [3]** 44/10 58/7 174/25
**setting [3]** 111/23 149/12 149/15
**settled [1]** 68/1
**seven [4]** 65/21 65/22 172/16 172/20
**several [7]** 10/17 39/5 61/3 88/13 92/19 102/10 108/16
**severance [2]** 18/20 77/6
**shake [1]** 73/3
**shall [7]** 9/19 9/19 10/10 47/1 86/20 86/21 87/7
**share [2]** 18/2 116/3
**shares [1]** 109/12

**S**

sharp [1] 49/22
she [4] 129/13 129/18 130/7 130/9
she's [2] 4/10 129/15
sheets [2] 135/13 161/1
Shelby [4] 43/4 133/8 133/10 133/10
Sherley [9] 55/20 92/6 113/8 117/4
131/14 133/10 136/22 138/10 138/21
shocked [1] 145/1
shoes [4] 33/12 34/23 67/25 83/3
short [4] 9/1 165/5 165/6 170/6
shot [1] 183/25
should [32] 20/14 21/21 23/9 23/20 26/4
26/5 32/11 41/13 44/6 96/2 97/22 101/4
103/14 126/21 127/6 148/9 148/25
158/16 158/19 162/12 162/19 164/25
165/11 170/25 173/25 178/6 181/10
181/10 185/11 187/9 187/12 187/20
shouldn't [3] 119/1 155/10 158/22
show [45] 5/22 6/25 17/10 35/22 37/7
37/8 37/13 37/15 37/16 41/16 41/20
41/25 49/7 49/18 55/3 55/6 60/2 64/25
67/3 79/3 92/1 92/2 103/25 104/1 111/2
112/7 113/20 113/24 113/24 114/2
132/11 133/14 134/19 134/20 134/25
136/15 136/24 138/24 142/5 153/18
153/25 159/3 159/3 160/2 188/22
showing [3] 62/17 114/4 140/13
shown [3] 16/21 104/6 106/6
shows [6] 60/22 61/4 104/4 153/16
153/21 163/14
SHUMATE [30] 2/2 3/21 23/3 23/7 29/4
38/14 44/8 55/2 58/1 66/1 89/4 90/19
93/6 101/22 106/21 111/21 132/7
135/15 138/21 139/14 152/23 167/24
170/3 176/2 181/7 182/23 183/24 185/1
187/8 189/14
Shumate's [1] 131/2
shuttled [1] 134/12
side [4] 3/7 109/23 112/17 113/23
side's [1] 42/11
sides [1] 6/12
significant [3] 56/16 91/18 108/10
similar [15] 22/4 24/2 27/13 29/16 29/23
69/10 71/9 105/9 105/18 106/2 127/24
141/6 142/6 158/22 160/18
similarly [3] 19/4 104/18 142/22
Simon [1] 142/9
simple [5] 144/18 144/19 144/19 146/12
146/24
simplest [1] 146/25
simplify [1] 112/17
simply [7] 70/22 116/15 144/3 145/22
157/2 166/6 167/23
since [6] 5/12 14/23 14/24 79/22 80/6
107/19
single [2] 80/5 145/7
sir [2] 4/15 23/5
sister [6] 39/13 39/25 62/12 179/19
180/25 182/3
site [1] 75/19
sitting [4] 23/16 27/2 31/13 164/17
situation [9] 13/16 15/18 45/11 85/16
85/16 142/10 142/20 143/10 144/18
situations [1] 78/8

sizeable [2] 16/24 85/6
sized [1] 104/18
skepticism [1] 45/7
skew [3] 113/6 114/13 115/10
skewed [7] 39/18 59/15 60/15 88/15
91/10 91/21 138/25
skewing [7] 18/23 57/4 114/17 119/4
131/13 132/4 157/4
skews [1] 17/16
skip [1] 161/18
slate [1] 102/13
slice [1] 82/22
slightly [1] 11/7
slow [3] 66/16 89/1 129/23
slowly [1] 113/11
small [2] 104/19 104/22
smaller [1] 104/21
smoke [3] 33/8 70/2 97/11
Snapp [11] 11/10 20/10 40/1 54/10
81/12 82/7 84/17 85/9 95/9 111/12
182/13
Snapp is [1] 85/9
so [236]
So there [1] 147/10
solace [1] 47/5
sold [1] 62/19
sole [4] 31/25 32/4 51/6 51/14
solemn [1] 172/25
solicit [1] 51/25
solicited [1] 133/19
solicitude [4] 41/13 117/24 118/9
118/14
solve [4] 155/16 170/13 171/8 179/7
some [85] 6/3 6/7 6/7 6/12 6/13 6/14 7/5
7/10 7/19 8/1 10/19 13/5 20/18 20/21
24/13 24/17 28/23 41/5 47/23 50/19
51/9 55/3 57/12 61/17 78/8 88/1 96/15
98/2 99/10 99/25 101/18 103/3 109/7
110/22 113/6 114/24 114/24 115/19
115/20 117/6 119/13 119/16 119/20
120/5 121/1 121/3 121/5 121/24 122/7
122/7 124/4 124/6 127/9 128/12 137/9
140/9 145/16 148/12 149/7 149/12
150/1 150/23 154/11 155/11 157/11
157/11 160/1 161/15 165/22 169/13
169/19 169/20 170/23 171/13 172/7
176/20 177/14 178/20 180/3 180/3
181/16 184/2 184/19 187/5 188/7
somebody [13] 28/16 37/7 64/23 89/25
102/11 107/12 109/22 120/20 128/9
142/15 155/7 156/2 158/23
somehow [6] 25/13 69/1 72/24 74/13
76/6 150/17
someone [15] 50/13 50/13 63/4 67/25
107/7 107/9 107/22 129/4 129/7 130/12
135/8 142/15 149/15 180/23 185/22
something [31] 5/23 22/22 28/19 49/2
61/20 74/15 91/23 93/17 96/19 97/16
99/15 100/1 100/2 100/3 100/4 102/13
109/15 109/17 120/16 142/17 150/12
151/6 162/3 164/24 170/19 181/18
183/14 183/17 185/6 186/5 187/23
sometimes [1] 149/25
somewhat [2] 66/19 115/16
somewhere [1] 5/11
sons [2] 151/17 152/4

SONYA [2] 1/14 3/15
sophisticated [1] 98/11
sorry [5] 50/6 56/20 57/10 90/14 103/11
sort [19] 10/14 28/23 32/15 33/18 41/12
49/3 49/4 55/3 59/6 87/20 110/22
149/12 155/11 160/1 165/12 170/9
170/22 181/16 187/5
sought [5] 13/23 14/12 15/23 43/9 72/12
sounds [1] 170/19
source [1] 8/24
sourced [1] 104/25
south [1] 145/19
SOUTHERN [1] 1/2
sovereign [92] 11/8 12/16 20/11 20/17
23/25 25/3 25/3 27/13 27/13 32/18
32/19 32/22 34/7 34/8 39/7 39/7 54/9
58/7 61/23 62/10 62/21 63/11 67/5 67/6
67/10 67/11 67/13 67/14 67/19 67/21
67/23 68/4 68/7 68/12 68/13 68/15
68/17 68/19 68/24 69/11 69/25 70/10
70/24 70/25 71/3 71/15 71/18 75/7 75/8
80/17 80/19 80/22 81/2 82/5 84/7 84/18
85/5 86/2 86/2 87/9 93/12 93/24 95/7
95/9 97/5 111/23 111/24 118/18 118/19
126/14 126/14 136/5 136/5 140/1
178/10 180/16 180/21 180/22 181/5
181/24 182/23 182/25 183/1 183/3 183/4
183/5 183/9 183/10 183/16 183/17
188/18 188/18
sovereigns [4] 67/17 68/11 173/15
189/8
sovereignty [27] 27/15 39/13 39/22
42/14 42/24 43/3 64/12 64/13 64/20
65/8 65/12 69/14 70/9 76/8 86/8 87/17
87/18 87/19 93/16 94/1 97/9 179/18
181/2 181/9 181/17 182/9 183/16
space [6] 3/8 13/9 48/18 54/4 56/22
56/25
spaces [2] 25/15 36/20
speak [7] 4/16 45/11 106/21 109/21
113/11 125/11 153/12
Speaking [1] 62/6
speaks [1] 178/19
special [6] 48/7 87/20 117/24 118/9
118/14 118/16
specific [19] 12/3 34/2 40/5 41/3 42/3
42/4 59/23 59/24 67/18 76/16 76/22
77/1 77/8 77/12 77/14 79/24 109/5
122/4 159/3
specifically [11] 7/13 44/10 48/16 58/25
65/8 73/9 75/21 116/24 121/2 129/7
130/22
specificity [1] 122/1
specifics [1] 75/20
speculate [4] 28/5 75/4 77/11 176/10
speculated [1] 164/20
speculation [7] 10/20 73/6 73/16 119/20
121/17 121/17 158/24
speculative [46] 13/22 22/13 28/1 31/7
33/6 34/2 34/6 34/15 34/16 35/7 37/5
38/9 42/1 66/21 72/3 72/5 72/14 73/24
74/9 74/21 76/19 77/14 77/19 77/21
79/21 79/23 80/2 80/9 80/12 80/13
86/17 86/18 94/11 120/9 120/10 120/13
122/13 122/14 122/15 122/23 124/11
143/2 154/7 160/20 161/16 161/17

# S

**spends** [1]  49/8
**spent** [2]  14/1 47/14
**spoke** [3]  43/5 131/16 161/21
**Spokeo** [1]  136/18
**square** [1]  105/11 115/22
**squarely** [4]  58/17 138/22 163/18
176/14
**squeeze** [1]  139/15
**staff** [1]  14/1
**stage** [27]  40/15 40/19 40/24 41/19 60/3
60/10 60/11 60/20 78/13 89/6 89/8 94/4
94/14 94/16 94/17 94/22 95/1 95/2 95/2
111/17 117/7 117/10 117/11 118/3
120/4 135/20 136/2
**staged** [1]  15/2
**stake** [4]  56/6 109/9 109/20 139/6
**stamp** [1]  100/1
**stand** [7]  4/15 30/11 34/23 35/11 83/2
144/9 156/6
**standard** [20]  35/18 35/19 66/8 66/10
66/11 66/11 66/14 78/7 78/12 79/5 87/1
113/10 113/18 117/17 158/1 172/13
176/5 176/15 176/22 177/4
**standards** [1]  123/3
**standing** [186]  6/6 6/6 6/10 6/19 6/25
6/25 7/3 7/4 7/8 8/10 8/11 8/15 8/17
8/20 8/23 9/1 9/3 10/22 11/2 12/7 12/15
13/21 15/6 15/13 16/12 16/13 18/5
18/18 18/19 18/21 19/6 20/7 20/21 21/1
21/11 21/13 21/16 21/19 23/21 24/13
24/19 24/21 27/20 31/4 32/16 34/12
35/4 35/7 35/21 37/11 37/12 38/7 38/9
39/4 39/13 40/5 40/11 40/12 40/16
40/18 40/19 40/22 42/15 50/18 53/2
53/3 53/5 53/6 53/10 54/6 54/7 54/22
55/7 55/15 56/8 56/13 59/14 60/14 61/4
61/5 61/8 62/23 64/11 64/25 65/3 66/9
67/24 71/25 77/17 78/4 79/3 81/16 83/1
83/14 83/16 83/20 84/3 85/21 87/20
91/23 91/25 92/15 92/20 93/1 93/10
94/21 94/23 94/24 95/1 95/7 97/5
103/24 104/8 106/19 111/25 112/9
112/15 113/4 113/12 113/24 115/17
115/23 116/9 116/11 117/19 118/6
118/10 118/12 118/20 118/22 120/11
123/4 123/17 128/5 128/7 128/10
128/11 131/3 131/4 132/2 132/21
133/13 134/14 136/15 136/16 136/16
136/17 136/17 136/19 138/8 138/24
139/2 139/12 139/24 140/10 141/4
141/7 142/3 142/11 143/24 154/2 155/3
155/5 155/8 156/12 165/19 170/14
173/9 173/11 173/12 175/4 175/5
177/18 177/19 178/2 178/3 178/4
179/25 181/6 186/11 187/9 187/17
187/21 188/10 188/12 188/24
**stands** [3]  18/1 30/7 33/12
**star** [1]  124/1
**start** [10]  8/20 11/6 42/14 86/8 97/22
128/13 128/19 136/6 142/3 176/5
**started** [2]  125/7 168/13
**starting** [2]  168/11 179/6
**state** [108]  1/18 1/19 3/17 3/18 3/19 9/6
9/25 10/13 12/23 12/24 13/12 13/25

15/10 15/10 15/11 20/11 20/12 20/16
20/22 25/2 27/16 33/10 34/16 34/22
36/15 40/4 43/20 43/25 44/3 46/22 47/4
47/14 47/15 50/7 54/8 58/2 58/4 58/5
58/11 62/8 63/20 64/6 64/14 64/14
67/12 67/24 68/1 68/7 69/9 69/12 69/13
69/24 70/6 71/7 71/13 71/14 76/25 79/1
81/1 81/5 81/7 81/16 82/8 83/10 83/22
84/16 85/6 85/18 85/21 87/17 87/24
90/6 90/21 93/17 93/24 97/2 97/8 103/7
106/3 108/20 108/22 109/7 110/5 110/6
110/7 110/11 111/7 111/15 117/24
118/15 118/17 118/18 123/18 126/17
137/13 145/7 149/20 150/4 167/3
177/14 180/25 181/8 181/11 181/22
182/4 183/19 183/19 187/14
**state's** [8]  18/21 20/17 40/2 58/9 67/18
70/24 81/9 130/8
**stated** [4]  5/20 20/10 51/10 78/25
**statement** [2]  167/9 180/21
**statements** [3]  116/18 120/6 124/2
**states** [138]  1/1 1/8 1/11 2/3 3/24 4/1
5/14 7/11 9/18 9/20 10/9 10/25 10/25
11/5 13/14 14/12 14/13 15/9 15/17
15/18 17/22 20/8 20/24 21/22 23/8
23/16 25/7 25/10 26/8 26/11 26/14
26/16 27/3 27/18 28/21 29/5 29/10
29/15 31/13 33/2 33/23 34/12 34/16
39/14 39/25 43/3 43/6 43/8 43/12 43/17
44/23 45/8 45/15 45/17 45/21 45/25
46/20 46/21 47/2 48/7 48/10 48/21
50/11 50/12 54/17 58/25 61/19 62/8
62/12 62/13 62/15 62/18 63/20 67/2
67/17 68/2 68/18 69/4 69/13 70/3 70/20
71/8 71/10 71/23 71/24 72/4 73/9 74/1
81/6 81/10 81/16 81/21 81/21 86/15
86/16 86/24 87/7 87/12 87/24 87/24
88/3 88/5 88/24 90/23 93/23 95/18
106/15 108/19 115/18 115/20 118/11
126/22 129/16 130/1 130/3 130/18
130/22 140/22 164/18 173/2 173/18
174/8 177/7 179/19 179/20 180/13
180/13 180/14 180/16 180/25 181/20
182/3 183/20 185/17 185/18 186/5
189/6 189/8
**states'** [2]  9/24 88/22
**status** [12]  9/24 11/9 12/18 13/21 15/11
15/15 33/21 39/14 45/23 140/2 173/17
181/19
**statute** [6]  69/9 70/1 70/1 71/14 74/16
164/13
**statutes** [1]  95/11
**statutory** [4]  37/11 123/4 129/3 136/17
**stay** [32]  22/10 51/21 63/7 64/7 66/17
80/7 107/13 107/25 108/5 119/9 119/12
120/17 120/21 121/3 121/6 121/16
122/8 134/23 134/24 135/2 147/19
154/6 154/7 154/9 155/19 155/20
156/17 157/6 157/9 158/6 158/8 158/13
**stayed** [7]  47/16 47/24 51/23 52/12
120/22 121/15 133/24
**staying** [10]  13/2 74/6 74/8 89/11 108/3
134/6 135/25 154/12 157/12 157/14
**stays** [5]  63/21 107/7 107/9 156/2
170/22
**stemming** [1]  102/23

**stems** [1]  181/17
**STENOTYPE** [1]  1/24
**step** [12]  5/24 22/9 65/14 67/8 116/6
116/25 172/5 186/11 186/12 187/10
187/11 187/19
**STEPHANIE** [2]  1/13 3/13
**Stephen** [1]  3/17
**stepping** [1]  67/25
**steps** [8]  16/2 143/3 149/23 150/6 151/5
151/10 167/5 178/20
**STEVEN** [2]  1/17 4/17
**stigmatize** [1]  85/13
**still** [15]  28/14 41/10 48/12 95/24 98/22
110/8 111/18 120/10 129/11 130/24
160/24 161/12 168/12 184/9 185/4
**sting** [1]  85/14
**stock** [1]  73/20
**stop** [7]  15/5 22/25 65/9 140/6 140/25
141/17 161/15
**stops** [1]  146/18
**story** [1]  116/6
**strange** [2]  45/20 151/6
**streaming** [1]  7/20
**streamline** [1]  139/21
**Street** [1]  1/15
**stretched** [1]  66/20
**strong** [3]  56/5 139/6 159/4
**strongly** [1]  167/4
**structural** [8]  20/20 87/11 129/5 129/12
130/10 130/16 130/19 137/10
**stuck** [2]  44/24 185/17
**study** [1]  132/10
**styled** [1]  29/8
**subdivision** [3]  12/23 63/21 110/11
**subject** [4]  137/19 140/18 148/6 148/9
**submit** [4]  55/24 75/18 108/3 131/18
**submitted** [3]  41/15 92/24 155/24
**subordinates** [1]  164/10
**subpoena** [1]  168/12
**subsidy** [2]  114/19 123/11
**substantiality** [1]  20/16
**success** [2]  147/7 147/8
**such** [21]  9/21 9/23 22/14 37/23 59/18
61/19 68/3 71/25 72/2 73/11 81/5
112/25 145/15 145/21 148/2 149/16
149/23 167/6 170/16 186/14 186/18
**sue** [9]  24/19 98/19 98/19 102/11 128/7
142/15 167/15 177/23 178/3
**sued** [17]  5/9 26/4 26/4 26/9 26/9 26/19
28/20 33/21 45/3 45/4 45/4 96/11 96/13
98/14 99/6 170/24 178/24
**sues** [1]  142/12
**suffer** [12]  38/11 39/10 55/9 55/13 55/13
59/21 62/2 93/11 103/9 103/21 113/14
180/5
**suffered** [7]  17/1 17/9 39/7 112/8 159/14
180/5 182/19
**suffering** [10]  78/22 112/5 122/19
124/24 124/25 125/1 157/14 160/14
161/23 179/17
**suffice** [2]  21/15 41/1
**sufficient** [12]  21/16 34/5 39/5 61/5
66/25 76/18 104/7 134/14 136/4 151/21
173/10 184/14
**sufficiently** [1]  125/4
**suggest** [4]  5/9 48/7 69/24 164/4

## S

**suggested [1]** 167/4
**suggesting [1]** 60/3
**suggestion [8]** 73/6 73/8 115/19 116/2 126/13 126/16 151/16 158/14
**suggests [3]** 126/7 126/10 128/16
**suing [8]** 25/2 25/4 25/7 44/17 81/21 97/1 100/24 118/17
**suit [59]** 5/5 26/14 29/5 29/18 29/19 39/2 39/5 44/6 44/22 44/23 45/1 45/2 45/4 45/8 45/9 45/12 45/14 45/16 45/20 45/22 46/3 46/6 46/14 52/23 53/10 54/6 56/2 56/6 57/25 58/5 58/9 58/11 59/7 59/8 59/9 82/8 93/24 95/22 96/2 101/8 101/14 101/18 131/23 139/7 170/16 173/7 175/22 178/25 180/9 184/3 185/7 185/11 185/16 185/18 185/22 185/23 186/5 186/8
**suits [5]** 46/4 96/8 101/25 102/1 185/21
**SULLIVAN [11]** 1/17 3/17 4/17 7/18 23/2 109/24 110/1 139/19 157/23 165/4 187/25
**summarize [1]** 172/18
**summary [16]** 6/1 40/18 41/6 60/5 60/9 60/11 78/16 89/6 89/7 94/4 94/16 95/1 111/17 116/20 117/16 136/2
**summation [1]** 40/14
**super [1]** 53/15
**superimpose [1]** 20/15
**supervise [1]** 164/19
**supervising [1]** 163/17
**supplement [1]** 94/25
**support [3]** 41/3 83/16 84/17
**supported [1]** 140/11
**supports [1]** 120/18
**suppose [2]** 127/22 169/24
**supposed [6]** 15/9 96/1 107/4 126/22 126/25 163/21
**supposition [1]** 6/18
**Supremacy [1]** 88/21
**Supreme [41]** 8/22 11/4 20/7 20/20 22/7 22/16 28/6 43/4 56/9 67/11 69/6 71/9 71/17 71/24 76/11 76/17 81/24 83/19 84/2 84/6 84/21 92/9 92/17 93/2 93/13 95/6 99/23 100/11 111/11 127/23 128/24 133/3 133/5 141/6 141/12 143/25 146/1 147/4 162/4 169/3 170/23
**sure [25]** 8/1 29/7 42/6 42/13 42/17 46/16 49/17 61/25 66/18 73/7 73/21 75/20 82/20 95/8 95/12 96/19 109/8 110/9 125/13 128/17 128/19 130/14 150/1 156/8 161/2
**surely [1]** 138/16
**surrender [3]** 43/14 69/14 71/15
**surrendered [1]** 50/20
**surveillance [2]** 142/24 143/6
**sustained [1]** 140/5
**sustaining [1]** 63/23
**Swan [1]** 100/8
**swath [1]** 91/12
**swayed [2]** 43/1 50/23
**switch [2]** 90/2 142/2
**system [17]** 9/25 11/9 11/11 12/18 13/22 15/16 16/15 39/14 40/4 44/4 47/5 50/5 54/4 62/15 104/14 140/2 177/25

## T

**table [2]** 135/11 174/19
**tailored [1]** 187/6
**take [35]** 16/1 21/21 22/9 22/12 22/17 22/18 32/21 41/24 61/2 65/20 67/8 72/22 74/22 83/25 98/18 101/22 111/14 118/21 126/21 135/10 135/17 142/25 144/20 146/25 150/7 151/10 151/17 151/18 161/10 165/5 165/6 167/4 168/21 170/6 172/16
**taken [4]** 102/17 149/23 149/24 180/3
**takes [6]** 113/6 141/10 174/18 178/20 186/4 188/11
**taking [11]** 35/24 46/11 51/17 90/17 97/1 97/13 101/1 114/12 115/8 143/9 174/8
**talk [24]** 30/10 37/20 42/18 55/20 61/23 67/7 67/9 71/1 77/16 80/11 81/2 90/11 92/14 92/20 98/25 101/15 102/18 107/2 117/16 120/9 125/15 153/13 155/9 172/12
**talked [9]** 71/1 74/5 75/9 76/13 101/13 125/14 125/23 164/23 166/25
**talking [31]** 4/6 6/16 11/23 12/21 28/15 28/16 31/25 43/22 57/6 61/22 64/10 65/8 67/5 78/25 79/2 79/3 80/14 81/3 82/21 108/13 120/1 133/23 136/6 138/10 156/23 162/12 165/15 172/10 182/5 188/15 188/16
**talks [7]** 32/7 56/4 63/1 89/5 90/20 90/20 139/5
**tax [63]** 12/3 12/6 18/11 18/14 18/20 18/22 18/22 33/3 34/1 34/3 34/4 34/7 39/21 41/24 42/4 59/12 59/13 59/21 59/23 59/25 60/2 60/6 61/6 61/8 61/23 62/24 63/13 64/11 71/21 71/22 71/24 72/15 73/11 75/8 75/11 76/14 76/18 76/22 76/25 77/1 77/2 77/7 77/10 77/15 77/18 79/12 80/15 88/9 88/23 88/24 89/5 89/22 90/8 94/10 94/12 114/19 140/8 142/16 153/2 174/3 182/18 182/22
**taxes [10]** 12/7 18/15 60/1 60/16 60/18 76/15 76/16 77/6 77/6 80/14 88/24
**taxing [2]** 70/17 149/1
**technical [1]** 170/22
**technology [1]** 104/23
**tell [10]** 30/23 35/9 50/25 95/16 97/22 117/7 141/17 149/21 168/14 184/10
**telling [4]** 98/8 115/25 120/6 140/25
**Tellingly [1]** 173/20
**tells [1]** 22/25
**temporarily [1]** 147/12
**temporary [3]** 147/3 147/6 147/9
**tempting [1]** 43/13
**ten [2]** 172/18 172/23
**tender [3]** 43/1 60/12 62/13
**tendering [7]** 44/1 46/23 48/8 48/10 64/15 88/6 179/21
**Tennessee [1]** 99/7
**tens [1]** 16/22
**Tenth [4]** 129/9 129/10 129/15 130/8
**tenure [1]** 151/18
**term [1]** 96/14
**terms [11]** 6/2 6/18 40/3 50/4 51/3

104/17 104/21 108/15 116/9 133/9 185/7
**terrorist [1]** 15/2
**test [3]** 79/1 130/24 137/9
**testimony [7]** 61/1 61/2 91/18 124/6 132/9 139/9 174/24
**text [2]** 8/21 126/6
**than [35]** 6/23 6/23 6/23 7/24 9/7 13/16 21/24 23/12 34/17 35/11 36/18 45/8 47/7 51/24 63/8 69/3 71/24 77/11 82/6 83/10 85/18 88/16 104/13 108/5 108/20 112/4 116/3 116/17 118/19 144/23 158/8 172/14 175/21 186/6 188/22
**thank [29]** 7/23 8/4 18/10 23/2 23/4 31/1 38/14 38/20 66/2 86/7 93/5 93/8 102/15 102/20 111/22 135/16 138/1 139/13 139/16 139/20 165/3 172/24 176/3 179/11 180/19 187/23 189/16 189/16 189/19
**that [1417]**
**that's [120]** 4/24 4/24 5/19 7/20 13/11 15/18 15/21 18/3 22/23 22/25 24/1 25/6 25/11 26/3 28/18 29/3 29/16 31/18 33/15 33/17 36/2 36/4 36/5 37/2 37/25 41/10 41/21 43/18 44/23 44/25 49/2 58/13 67/3 68/8 73/6 75/6 76/21 78/15 81/18 82/15 85/16 87/11 89/13 92/14 94/9 96/4 96/13 99/1 99/20 99/21 100/4 105/9 105/23 109/19 112/12 115/19 115/20 116/4 117/9 117/17 118/19 119/19 120/25 120/25 121/3 122/3 123/4 123/13 124/14 125/5 125/9 126/9 127/11 127/18 131/19 132/5 134/6 134/7 136/2 136/18 140/11 140/13 140/23 141/15 141/18 143/25 145/25 146/10 149/18 152/16 154/11 154/19 155/17 156/24 157/3 157/17 157/18 157/18 157/22 158/23 159/9 159/10 163/6 165/25 166/13 168/1 172/1 175/20 176/24 178/5 182/19 183/7 184/22 184/24 185/7 185/17 186/25 187/18 187/19 189/7
**the executive [1]** 99/5
**the zone [1]** 130/15
**their [132]** 7/9 9/14 10/15 11/9 11/10 11/15 11/16 12/10 17/5 19/8 23/14 23/18 24/19 25/12 32/19 33/5 33/16 34/4 34/10 34/10 34/19 35/2 35/24 37/2 39/7 39/10 39/13 39/13 39/14 39/17 39/25 39/25 40/20 42/6 43/14 44/5 45/2 48/15 48/16 50/22 50/23 51/6 52/4 52/7 52/21 54/4 54/9 54/19 56/6 57/13 62/10 62/12 62/12 62/14 64/20 67/22 67/23 69/10 69/14 70/12 71/2 71/22 73/18 75/5 75/6 75/8 75/11 75/24 78/19 80/13 80/21 80/23 81/22 82/25 83/14 83/16 84/10 84/12 84/18 93/10 93/18 94/17 95/15 96/3 97/4 97/12 98/20 101/15 108/25 109/4 112/1 112/3 112/4 113/15 113/24 119/18 119/18 120/4 121/3 124/3 130/21 133/18 135/24 139/7 142/8 147/24 155/18 157/15 157/17 157/20 158/9 158/18 158/20 161/5 174/5 174/6 174/8 174/16 176/18 176/19 178/10 178/12 178/18 179/17 179/19 181/25 183/2 184/3 184/4

# T

**their... [3]**  185/22 185/23 188/7

**them [64]**  8/2 9/20 25/24 32/16 32/21 36/3 37/14 47/2 48/8 48/11 48/17 49/15 49/16 51/9 51/11 51/11 51/25 52/8 53/10 67/25 68/25 69/13 74/10 74/19 83/4 86/4 86/21 86/22 87/8 93/18 95/23 97/22 97/24 98/10 98/20 113/16 118/3 119/15 120/11 124/6 124/9 127/3 136/10 137/4 137/12 137/12 137/21 141/17 142/10 157/2 157/7 157/18 164/5 164/9 165/20 166/1 171/8 173/13 176/1 177/9 180/5 180/7 185/22 189/4

**themselves [8]**  88/6 103/10 103/21 106/4 135/9 140/4 156/17 178/20

**then [60]**  3/10 10/23 15/11 21/16 24/15 31/14 39/16 41/6 41/17 44/2 51/6 53/10 53/18 61/5 63/19 64/5 65/21 68/17 77/5 80/13 81/12 82/19 86/6 92/19 94/25 95/4 96/10 96/20 101/22 106/8 107/8 107/16 108/6 116/5 117/23 117/25 127/17 136/17 139/17 140/13 140/23 141/22 146/9 146/18 151/24 160/5 165/4 165/5 170/4 170/8 171/25 171/25 172/20 177/18 178/25 179/4 185/15 186/4 186/22 187/12

**theoretical [1]**  67/2

**theoretically [1]**  74/17

**theories [19]**  20/5 29/23 32/14 32/16 33/6 64/24 67/1 67/7 67/8 68/22 69/25 71/10 79/17 86/3 97/5 126/15 140/7 153/1 187/1

**theory [33]**  19/4 24/2 33/1 33/3 35/1 35/6 40/22 54/7 54/21 59/14 63/11 65/3 67/22 68/23 68/24 70/25 71/2 71/5 75/6 75/8 75/11 76/10 77/24 80/19 80/21 83/14 93/10 94/2 112/3 139/12 140/10 141/4 156/24

**there [189]**  4/2 5/19 5/23 6/3 6/7 6/13 10/17 11/7 11/23 11/25 13/2 15/5 20/21 23/24 23/25 24/1 24/7 30/10 30/18 30/20 31/22 32/15 36/22 37/11 37/18 38/6 40/15 40/19 40/21 41/21 41/22 42/3 43/5 47/13 47/21 47/25 48/9 49/8 50/9 55/12 56/14 56/19 56/21 56/23 59/22 60/5 61/2 61/17 61/18 61/22 61/25 63/11 65/17 68/9 69/4 70/24 71/25 72/11 72/15 72/16 72/17 72/17 72/20 73/5 73/8 73/21 74/3 74/9 74/11 74/13 77/15 77/24 78/5 80/15 83/11 83/13 84/14 86/11 91/9 91/18 92/19 94/10 94/24 95/9 96/15 98/1 98/5 98/9 99/10 100/12 103/14 109/15 109/16 110/22 111/14 111/14 112/13 114/6 114/8 114/25 115/19 117/17 118/16 120/11 121/16 122/7 126/10 126/13 127/12 131/22 132/11 132/20 133/16 134/5 134/11 134/16 135/23 135/25 136/20 137/8 141/12 143/21 144/2 144/3 145/1 145/9 145/24 146/5 146/8 146/11 146/23 147/1 147/10 147/14 148/5 148/5 148/5 148/8 150/9 150/23 151/10 153/21 154/5 154/9 154/12 154/25 155/22 156/1 156/14 156/16 157/5 157/8 158/3 159/5 159/9 160/2

160/4 160/11 160/13 161/16 164/8 164/10 165/12 165/19 166/15 167/1 167/3 169/11 169/13 169/19 169/20 169/23 171/13 172/3 173/11 173/12 174/4 174/12 176/18 180/20 181/16 182/21 183/9 184/2 184/5 184/7 185/7 187/9 187/21

**there's [70]**  5/8 6/21 7/6 21/23 30/7 30/22 36/21 36/25 48/5 48/5 48/19 52/3 52/4 60/17 60/22 73/4 73/17 74/7 76/23 78/8 80/16 85/15 88/10 92/8 97/25 98/6 98/13 99/17 100/11 102/9 105/21 106/24 107/3 111/6 116/16 119/16 121/12 122/2 122/23 125/7 126/6 126/16 128/15 133/3 142/14 143/16 144/22 145/12 145/14 145/16 146/14 146/22 147/5 148/2 151/25 152/14 155/10 156/11 156/21 157/1 158/9 159/8 165/24 167/21 168/9 168/15 169/22 170/2 184/8 187/24

**thereby [1]**  9/24

**therefore [15]**  27/4 42/5 51/15 56/13 62/17 86/15 87/24 88/23 91/20 105/4 106/16 112/5 113/2 158/16 173/25

**therein [2]**  174/25 184/14

**these [113]**  5/2 5/4 7/5 7/7 7/10 7/25 10/20 12/15 14/8 15/18 19/14 21/11 22/12 22/13 24/8 25/2 26/17 27/14 27/23 29/12 32/12 32/17 33/6 33/23 34/1 35/5 38/3 38/10 39/2 39/24 44/8 44/15 45/6 45/24 47/7 51/2 51/8 51/25 53/12 57/5 58/15 59/10 61/11 62/19 65/10 66/6 66/9 67/9 68/2 72/8 74/13 78/1 78/21 79/17 82/2 85/12 86/10 87/23 88/3 98/9 98/22 101/5 105/18 106/2 106/17 112/8 119/7 120/13 120/19 121/12 121/17 121/25 122/5 123/7 125/24 125/25 126/8 126/15 127/5 127/10 127/19 128/1 128/7 128/10 128/15 132/6 132/7 134/25 137/15 137/20 143/9 143/15 144/6 145/13 147/21 148/9 149/25 152/7 153/5 154/15 158/24 159/23 160/15 164/22 165/15 175/10 175/12 175/19 176/11 177/18 177/22 180/5 186/17

**they [384]**

**they'd [1]**  53/13

**they're [90]**  25/4 25/7 25/12 28/14 28/16 29/16 32/22 33/24 36/12 36/14 37/3 37/14 37/16 41/25 53/11 53/12 72/23 75/3 75/20 76/3 77/10 82/12 82/12 82/15 83/2 94/11 95/7 96/18 97/5 97/17 98/19 102/2 102/5 104/14 104/15 105/12 105/12 106/16 107/7 108/4 112/5 112/14 112/14 116/17 117/6 117/17 118/6 118/21 118/23 122/2 122/19 122/22 123/5 123/5 123/6 124/5 124/10 124/14 127/13 135/19 136/14 136/18 137/5 137/16 157/1 157/19 157/22 158/6 158/14 158/20 159/8 159/14 159/15 159/16 160/11 161/6 161/6 163/16 164/16 166/2 166/4 169/24 170/19 171/10 177/9 177/9 183/4 183/5 183/8 187/2

**they've [12]**  34/3 36/8 51/17 79/13 116/22 120/5 120/25 121/22 124/5

124/6 157/21 167/9

**thing [16]**  6/2 42/3 49/3 49/4 68/6 95/4 103/2 117/23 139/3 139/15 141/6 149/21 166/8 167/6 169/8 169/10

**things [19]**  24/13 28/15 29/7 29/18 51/11 61/10 66/4 68/19 70/21 99/17 107/20 115/19 134/25 144/22 164/20 164/23 165/14 177/22 186/16

**think [232]**

**thinking [4]**  30/23 57/24 74/8 111/5

**thinks [1]**  165/11

**third [28]**  12/2 18/5 18/11 30/14 30/19 31/4 33/3 67/18 75/8 142/13 153/6 153/10 153/24 154/2 154/5 154/19 154/21 155/1 155/12 155/22 156/11 156/21 157/5 157/8 160/19 161/19 165/15 174/11

**third-party [1]**  30/19

**this [347]**

**Thomas [1]**  168/13

**those [71]**  7/3 7/14 7/14 13/14 22/6 22/16 24/15 28/3 29/17 30/14 33/18 34/7 34/12 36/13 36/14 36/15 36/23 37/12 38/13 41/17 44/2 48/13 50/23 50/24 51/4 53/1 53/8 57/3 60/12 60/16 67/8 69/2 76/4 80/4 80/17 82/20 82/25 83/5 86/3 87/25 89/20 93/25 95/10 98/16 102/1 102/8 106/14 107/8 116/12 119/11 119/23 119/24 121/13 123/16 123/24 130/1 133/5 134/11 136/18 137/14 142/6 142/21 149/7 154/21 160/9 161/4 180/16 180/18 186/3 186/18 188/22

**though [14]**  8/18 28/24 44/17 46/10 51/2 65/20 87/15 115/14 119/13 121/4 124/8 127/22 130/7 159/1

**thought [10]**  6/8 46/6 51/1 87/2 117/21 130/6 151/3 163/2 169/13 169/13

**thousands [1]**  77/2

**thread [1]**  135/12

**threat [5]**  42/25 46/20 48/5 56/11 79/17

**threatened [7]**  39/14 54/24 58/8 62/13 62/16 66/23 176/23

**threatens [1]**  173/18

**three [20]**  6/6 9/2 27/20 32/16 32/18 32/23 77/1 80/17 98/9 104/25 116/9 133/5 137/24 138/2 140/7 170/10 171/24 173/9 173/11 183/9

**three-course [1]**  104/25

**three-fold [1]**  32/23

**threshold [2]**  41/8 162/18

**thrilling [1]**  146/10

**through [42]**  4/25 5/2 5/3 5/17 11/6 13/23 14/9 15/24 16/19 29/3 39/8 41/5 41/8 44/18 44/19 47/9 49/11 60/1 60/6 60/23 73/19 76/11 76/12 78/11 78/18 89/19 94/7 104/11 117/19 129/13 132/6 132/10 133/2 133/21 143/2 145/22 146/19 147/9 147/21 149/7 168/17 173/12

**throughout [1]**  24/14

**throw [1]**  75/3

**throwing [1]**  33/17

**throws [1]**  144/5

**Thursday [1]**  1/8

**thus [4]**  14/16 66/23 93/22 175/22

**T**

tie [1]  61/5
tilted [1]  16/18
time [31]  4/15 9/22 37/7 40/13 46/5 49/8
57/2 62/7 64/14 65/19 65/20 94/21 98/4
98/19 98/21 101/24 111/6 125/15
146/18 146/21 146/22 151/3 157/11
157/11 164/5 168/13 171/2 172/22
176/1 179/4 184/10
times [1]  142/23
timing [1]  167/17
title [1]  10/12
today [31]  5/19 5/23 8/6 23/20 24/14
26/21 28/8 30/10 31/2 32/22 34/5 36/12
37/20 61/11 64/3 78/25 79/2 86/11
93/25 101/11 101/13 121/20 136/8
164/20 171/10 173/9 173/20 176/5
178/10 179/8 180/4
today's [1]  8/25
toes [1]  65/14
told [3]  103/3 151/20 160/7
tonnage [1]  22/14
too [8]  65/13 66/21 72/3 82/21 97/19
97/25 158/18 170/24
took [3]  115/2 154/24 172/25
top [1]  76/10
total [1]  166/3
touch [5]  9/5 27/22 52/17 141/25 173/13
touched [2]  144/12 167/1
tourist [1]  104/15
Tower [1]  6/23
trace [1]  93/1
traceability [26]  9/3 17/18 20/3 27/21
30/3 64/18 64/23 65/4 65/13 139/18
139/23 140/3 141/2 141/25 142/5
152/25 153/1 153/5 153/9 155/15 158/1
159/2 170/8 174/10 178/10 179/9
traceable [21]  15/14 15/16 17/13 17/15
19/1 30/4 30/6 30/17 111/3 117/14
138/7 141/22 153/19 156/14 158/2
173/21 174/1 176/17 178/17 178/18
178/22
trademarks [1]  50/14
traditional [1]  115/16
traditionally [1]  27/16
traffic [1]  49/13
TrafficSchool [3]  106/10 131/22 139/4
TrafficSchool.com [5]  56/4 92/8 92/16
93/2 133/9
transaction [2]  55/21 133/11
transactions [2]  138/18 148/13
transcript [3]  1/10 30/22 190/3
TRANSCRIPTION [1]  1/24
transfer [1]  36/23
transferred [2]  52/8 160/6
transferring [1]  36/1
transform [1]  26/13
transforming [1]  44/22
Transportation [1]  140/22
tread [1]  65/13
Treasury [2]  105/8 146/10
treat [1]  45/8
treated [5]  45/2 45/4 71/22 181/21 186/7
treating [2]  69/12 85/17
trial [2]  168/12 186/23

tried [2]  64/7 136/15
tries [1]  181/13
triggers [1]  5/15
trio [3]  56/9 92/9 133/3
trips [1]  47/15
trod [2]  56/8 61/4
troubled [1]  175/2
true [6]  73/1 96/13 117/13 131/25
135/22 174/12
TRUMP [153]  1/7 3/4 6/22 6/23 7/4 7/9
7/11 12/11 13/1 13/8 14/1 14/21 16/11
16/19 16/25 17/20 17/23 17/25 19/2
19/8 19/14 19/18 19/23 19/24 25/4
29/20 33/14 35/16 35/25 36/9 36/23
37/18 47/16 47/17 47/18 48/3 49/7
51/12 51/15 51/20 52/4 52/5 52/8 52/12
56/20 56/22 56/23 56/25 57/13 57/17
57/19 58/22 59/5 59/19 60/24 61/14
61/15 62/25 63/5 63/8 63/10 64/7 64/8
64/9 72/8 72/12 72/19 74/6 77/19 77/21
78/1 79/20 80/10 89/12 89/19 89/21
90/2 90/5 91/16 94/13 95/20 103/22
104/5 104/12 105/15 106/7 106/13
107/3 107/6 107/9 107/19 107/20
107/24 107/25 108/5 112/2 112/4
112/11 113/25 114/7 115/3 116/21
116/21 118/2 119/17 119/21 120/14
120/21 121/7 121/16 121/19 122/8
123/15 123/24 124/10 124/19 131/8
132/13 133/16 133/25 134/6 134/7
134/10 134/19 135/5 135/6 135/23
135/25 139/10 152/15 154/7 157/3
159/17 160/6 160/24 161/11 161/13
166/2 166/19 174/6 174/8 174/15
174/23 175/8 185/10 186/25 188/4
188/6 188/12 188/15 188/16 188/19
188/23
Trump's [12]  11/17 14/19 14/24 15/17
15/25 16/18 17/3 17/18 18/24 19/1
56/15 133/18
trust [15]  10/10 37/6 37/7 37/10 85/23
121/25 122/4 123/2 123/3 123/5 132/19
136/16 149/12 149/13 150/10
truth [3]  135/20 135/24 136/2
try [18]  46/12 46/13 51/14 53/10 64/19
68/19 68/20 93/18 94/2 94/19 94/25
95/1 113/11 137/2 139/21 141/8 165/10
187/22
trying [29]  34/23 37/16 44/14 48/4 49/23
52/20 54/15 58/14 60/7 63/6 64/3 90/24
90/25 91/14 95/24 96/25 100/25 102/13
109/17 111/4 118/21 127/12 129/5
132/1 136/19 137/16 152/6 159/24
180/2
TULIN [4]  3/19 3/19 4/7 4/8
TULN [1]  1/18
turn [14]  22/23 32/21 34/8 39/16 42/8
68/21 69/20 80/19 131/1 133/1 134/8
139/4 140/9 141/24
turning [3]  49/25 54/7 111/24
turns [3]  8/24 40/19 141/3
two [34]  4/19 6/11 6/13 7/8 8/16 8/16
8/21 9/9 12/14 16/21 21/3 21/23 21/24
24/12 29/7 32/10 58/14 59/24 61/25
67/9 69/5 71/10 73/23 83/20 86/11
88/10 91/7 104/3 110/5 114/5 114/9

114/11 119/1 131/17 131/23 133/7
136/20 147/2 164/2 169/3 179/13 182/2
184/22
type [17]  7/1 13/11 32/9 32/11 33/10
34/14 34/24 48/11 49/22 52/19 85/22
102/3 119/5 123/9 142/4 163/15 187/3
types [9]  25/3 34/12 59/24 67/19 88/17
88/17 88/17 115/9 163/12
typically [2]  37/21 102/1

**U**

U.S [3]  92/18 141/19 177/20
ultimate [4]  56/12 79/10 122/17 176/11
ultimately [3]  177/8 177/16 178/6
un [1]  10/15
un-compromised [1]  10/15
unclear [1]  137/4
unclouded [1]  10/14
unconstitutional [2]  24/24 58/6 118/8
under [50]  8/8 8/13 12/13 15/8 15/11
18/17 19/23 21/6 21/24 22/12 40/3
40/24 42/2 43/7 44/9 50/4 50/4 54/20
55/7 55/15 59/22 60/14 62/11 74/14
77/24 78/3 83/23 91/25 93/13 103/25
108/17 117/19 129/9 130/9 131/14
133/13 139/12 139/24 140/14 141/11
142/19 144/15 144/19 145/10 145/21
146/12 166/18 166/23 176/20 179/24
undercut [1]  111/9
underlying [2]  76/9 110/16
understand [25]  5/6 8/5 13/7 22/20
25/12 26/12 29/6 32/14 41/4 45/7 58/23
62/7 64/4 75/23 80/20 95/24 100/25
111/4 127/3 141/21 152/6 159/25
181/23 183/9 188/14
understanding [6]  5/12 6/3 6/24 9/14
32/15 42/11
understood [4]  13/17 22/1 61/18 107/2
undisputed [5]  24/18 68/8 68/14 91/17
112/7
undivided [1]  9/12
undividedly [1]  62/18
undue [3]  127/8 128/16 137/19
unduly [3]  115/18 149/1 187/7
unequal [1]  57/5
unequally [2]  69/13 71/22
unfair [6]  39/18 136/16 141/16 161/7
161/8 161/11
uninformed [1]  126/3
union [16]  32/23 32/24 50/8 50/21 69/1
70/14 70/16 86/10 87/9 93/20 93/23
97/6 146/10 181/14 181/15 181/15
unique [6]  99/4 99/8 116/1 120/19
126/15 155/25
uniqueness [1]  115/15
UNITED [62]  1/1 1/8 1/11 2/3 3/24 4/1
5/14 7/11 9/20 10/25 15/18 17/22 20/24
23/8 23/16 25/7 25/10 26/8 26/11 26/14
26/16 27/3 27/18 28/21 29/5 29/10
29/15 31/13 33/23 44/23 45/8 45/15
45/17 45/21 47/2 50/12 62/8 62/15
62/18 63/20 68/22 68/18 69/4 70/3 81/6
81/10 81/16 81/21 86/24 87/7 88/22
88/24 90/23 95/18 108/19 140/22
164/18 173/2 179/20 185/17 185/18
186/5

**U**

**United States [49]**  3/24 4/1 5/14 7/11
9/20 10/25 15/18 17/22 20/24 23/8
23/16 25/7 26/8 26/11 26/14 26/16 27/3
27/18 28/21 29/5 29/10 29/15 31/13
33/23 44/23 45/8 45/15 45/17 45/21
62/8 62/15 62/18 63/20 68/2 68/18 69/4
70/3 81/6 81/16 86/24 87/7 90/23
108/19 164/18 173/2 179/20 185/17
185/18 186/5
**United States' [1]**  88/22
**universal [1]**  85/14
**universe [1]**  188/8
**unlawful [9]**  12/13 15/25 16/2 16/6
17/16 17/17 140/19 141/1 164/18
**unlawfully [1]**  16/18
**unless [10]**  5/22 17/25 22/21 22/24
61/11 106/20 141/24 170/2 171/4
187/24
**unlike [1]**  10/19
**unquote [1]**  146/18
**unreasonable [1]**  150/12
**unreasonably [2]**  83/25 84/1
**unrebutted [12]**  16/21 19/15 21/12 56/14
60/21 61/1 61/2 91/18 104/3 132/9
139/9 174/24
**unrelated [1]**  8/18
**until [6]**  22/22 22/25 53/25 55/21 133/10
138/17
**unwillingness [1]**  48/17
**up [33]**  14/6 19/21 21/2 37/11 38/16
50/20 53/25 73/18 80/14 80/16 94/2
100/23 102/15 102/19 103/16 104/18
104/20 118/9 123/2 135/17 139/19
142/24 143/19 144/4 149/12 149/15
150/13 150/21 151/19 152/10 165/5
171/21 185/7
**upheld [1]**  38/7
**upon [2]**  43/7 46/11
**upset [2]**  88/3 129/25
**urge [3]**  136/11 178/5 187/15
**us [16]**  4/20 41/7 42/17 58/15 64/17
71/14 117/6 138/24 139/12 144/1 160/7
172/5 173/24 173/24 184/16 187/20
**use [2]**  77/3 113/4
**used [2]**  55/5 165/22
**useful [2]**  163/25 169/20
**using [6]**  44/20 55/12 108/25 131/11
137/10 151/2
**usurping [1]**  69/12
**utilities [1]**  77/3
**utmost [1]**  8/8

**V**

**vague [1]**  84/8
**value [1]**  72/23
**variability [1]**  17/19
**variety [1]**  180/14
**various [9]**  14/21 22/12 54/23 56/10
60/23 92/14 92/17 132/10 148/13
**vary [1]**  138/11
**ventures [1]**  12/11
**verify [1]**  149/14
**versus [63]**  3/4 12/7 20/24 27/6 42/3
42/7 45/10 50/16 54/10 58/7 58/18

59/22 69/5 69/6 69/8 69/20 71/11 71/12
71/12 71/19 71/22 76/13 76/24 81/6
81/22 82/1 83/15 85/19 88/20 90/11
90/19 92/6 93/14 93/15 97/10 98/25
100/8 100/15 113/9 118/10 118/12
133/4 133/4 136/22 140/22 141/9 142/9
144/16 145/5 145/18 145/25 146/6
147/14 161/25 162/5 162/8 162/14
164/5 164/11 175/8 177/1 183/22
185/21
**versus Johnson [1]**  98/25
**very [59]**  4/13 8/3 15/18 15/22 21/19
22/6 27/13 29/23 30/22 38/3 42/18
45/20 48/13 49/11 51/4 51/11 52/16
55/23 60/12 60/17 65/11 67/12 67/18
69/10 78/2 82/22 83/20 85/24 91/22
93/8 98/11 119/7 120/2 120/16 122/4
123/15 130/22 133/16 141/15 142/11
142/14 144/22 144/25 146/9 150/20
152/2 155/25 157/16 160/3 160/9
164/15 168/5 170/10 172/17 174/12
180/19 182/25 183/7 188/11
**vested [1]**  21/7
**Veto [1]**  164/14
**vetoed [1]**  53/24
**via [1]**  19/2
**viable [1]**  61/18
**vice [2]**  4/3 4/11
**vicinity [1]**  7/9
**video [1]**  104/23
**Vietnam [1]**  127/25
**view [2]**  26/22 69/3
**viewed [2]**  29/14 29/20
**vigorous [1]**  118/5
**vindicate [25]**  11/5 39/8 54/15 58/14
82/13 82/15 83/8 84/8 84/10 85/1 87/25
91/14 127/12 127/14 127/17 129/5
129/13 130/4 130/9 130/17 130/19
137/16 180/18 182/18 183/17
**violate [5]**  48/17 70/14 98/15 185/24
185/25
**violated [4]**  10/21 52/25 87/10 130/6
**violates [2]**  16/7 74/16
**violating [3]**  45/19 98/15 177/11
**violation [17]**  7/7 18/1 22/21 39/24
42/23 48/12 49/18 50/18 57/15 64/19
85/23 87/5 87/16 100/21 148/22 149/24
152/21
**violations [16]**  8/12 10/6 10/16 20/19
22/11 51/3 52/15 57/16 57/21 58/16
62/3 65/6 143/8 148/9 151/22 187/3
**Virginia [16]**  27/6 27/9 27/12 69/6 69/20
69/21 70/4 70/12 70/12 70/15 81/20
84/20 90/19 93/14 97/10 177/7
**virtue [20]**  39/19 44/1 44/13 44/14 46/23
54/3 57/3 60/16 60/18 62/19 63/4 86/10
88/6 88/24 131/18 132/18 132/20
134/13 138/24 179/23
**vis [10]**  62/15 62/15 69/13 69/13 71/8
71/8 173/18 173/18 173/19 173/19
**vis-a-vis [5]**  62/15 69/13 71/8 173/18
173/19
**visits [1]**  14/5
**voluntarily [1]**  171/18
**vow [1]**  173/3
**vulnerable [1]**  184/6

**W**

**wait [7]**  55/21 70/23 105/19 133/10
138/17 167/19 171/24
**waiting [1]**  36/22
**waiver [1]**  72/12
**waivers [1]**  74/2
**walk [2]**  93/18 94/1
**Walter [1]**  19/9
**want [52]**  5/1 5/22 6/10 13/7 25/25
52/17 60/21 63/19 65/13 65/14 66/8
73/20 80/7 90/11 101/21 104/9 112/13
114/5 123/7 128/17 134/3 138/9 139/3
139/14 144/1 154/8 154/9 155/21
156/17 157/25 158/10 159/21 160/8
161/3 165/6 167/22 167/24 170/3 170/7
172/9 172/13 173/12 175/7 176/13
177/17 180/8 180/22 180/23 182/24
183/13 187/7 189/13
**wanted [13]**  4/3 4/18 50/22 50/22 95/4
101/7 101/11 107/13 119/24 143/21
153/17 157/15 161/19
**wanting [1]**  159/7
**wants [4]**  145/6 145/22 166/20 186/13
**war [2]**  128/1 145/20
**warrant [1]**  20/13
**Warth [1]**  8/22
**was [155]**  4/2 9/22 16/5 17/22 18/19
19/24 21/20 23/1 24/2 24/7 24/8
25/19 27/9 27/9 27/12 29/8 30/15 30/21
35/11 36/19 41/21 43/7 46/6 47/3 47/18
48/9 48/11 49/1 49/5 51/1 54/14 54/15
54/18 60/4 60/4 68/12 69/12 69/12
71/21 71/25 72/15 72/17 72/17 72/19
73/5 73/9 73/16 73/17 74/8 74/10 76/14
76/16 76/25 77/7 77/7 77/8 77/8 79/16
81/13 83/17 83/19 84/1 84/3 84/6 84/7
84/8 84/9 84/19 84/20 84/25 85/1 86/9
87/2 88/24 89/6 90/8 90/17 91/1 92/24
94/4 99/11 99/11 99/11 99/14 99/14
99/15 100/16 103/3 109/15 115/2 115/4
115/4 117/21 123/20 125/6 128/21
129/8 129/10 129/11 129/12 129/21
130/5 130/7 130/8 130/9 130/13 130/14
130/16 130/16 131/8 131/9 131/17
131/22 131/23 131/24 131/25 132/2
134/16 134/18 137/8 139/22 141/9
141/10 142/20 143/19 143/3 145/8
145/9 145/18 146/3 146/3 146/5 146/11
147/3 147/16 147/18 147/19 151/2
151/3 153/24 160/4 162/20 164/5
164/12 166/10 166/10 167/1 168/12
169/11 169/13 171/13 180/20 182/14
186/1
**Washington [14]**  1/16 2/4 6/22 19/9
51/22 72/18 104/9 104/12 105/6 108/9
108/16 133/17 135/4 175/4
**wasn't [4]**  72/16 84/8 84/13 99/10
**watchdogs [4]**  70/20 87/22 177/8
180/10
**way [42]**  5/4 5/12 5/22 8/23 12/5 18/13
22/25 26/22 53/19 55/10 59/7 67/2 67/3
67/6 70/15 74/7 74/20 82/24 89/10
93/17 96/4 98/1 99/16 115/23 119/5
119/15 127/9 131/6 135/18 140/13
143/4 144/21 148/23 149/1 151/14

**W**

way... **[7]** 152/18 163/13 166/13 167/19 184/2 185/4 185/7

ways **[6]** 49/15 51/7 51/9 92/21 142/6 142/7

we **[308]**

we'd **[2]** 101/20 186/19

we'll **[27]** 25/24 30/10 34/4 37/20 38/18 60/12 63/18 65/21 65/22 71/16 73/21 75/25 80/11 86/6 91/24 98/25 101/22 102/15 102/18 103/16 117/7 159/19 165/4 165/8 170/4 172/17 172/20

we're **[72]** 5/16 7/20 16/15 24/14 28/25 31/25 36/4 36/6 38/16 41/12 45/3 58/14 59/4 59/5 60/9 60/9 62/7 64/10 65/8 67/5 73/19 73/21 78/16 78/16 78/24 78/25 79/2 79/3 80/6 80/14 81/3 86/11 87/21 90/24 90/25 91/5 94/16 102/12 111/24 115/20 116/18 116/20 116/23 116/23 117/11 120/1 131/15 133/23 135/18 135/19 138/3 138/4 138/10 150/3 155/19 155/20 156/23 158/18 158/19 159/5 159/9 159/19 163/13 167/14 167/18 167/24 172/2 172/10 180/2 180/9 187/3 188/8

we've **[11]** 8/14 8/17 11/2 19/16 22/15 25/18 28/10 43/25 117/1 149/10 187/4

wealth **[1]** 47/7

weapon **[1]** 129/8

welcome **[1]** 40/22

Welfare **[1]** 142/9

well **[177]** 4/10 4/16 8/3 8/13 9/2 11/16 11/25 19/19 21/10 21/23 21/24 23/24 24/20 25/4 25/24 26/1 26/7 26/15 31/16 33/10 33/15 33/16 34/20 35/12 35/20 36/5 36/17 37/10 41/10 41/24 42/14 44/25 45/12 46/2 49/2 49/11 52/17 53/11 54/9 54/11 54/12 54/21 56/8 57/22 58/20 58/23 61/4 61/12 61/13 63/25 64/21 68/9 70/15 70/16 71/9 72/10 72/22 72/24 73/2 73/7 73/11 73/13 73/18 73/23 74/6 74/13 75/2 76/5 76/8 76/9 77/24 78/7 80/25 82/11 82/12 82/17 82/24 85/8 86/5 87/1 88/4 91/12 92/20 93/13 95/12 95/21 95/23 96/1 96/23 97/19 97/21 97/24 98/18 102/8 102/22 103/6 103/18 103/24 105/9 105/12 105/19 107/5 107/25 109/5 109/8 110/20 110/25 111/2 111/10 115/4 116/8 117/2 117/15 120/9 120/21 120/25 122/10 122/14 123/22 123/23 125/7 127/2 131/4 132/15 132/18 133/13 133/16 134/4 139/17 141/25 144/15 147/3 147/18 149/18 151/25 152/5 152/9 155/5 155/9 155/12 157/5 157/20 159/1 159/8 159/12 159/18 159/21 160/7 160/11 163/4 163/22 164/4 167/9 167/13 167/16 170/18 171/1 171/9 171/23 171/23 172/2 174/11 174/12 177/3 177/18 178/19 181/23 182/2 183/15 183/21 184/11 185/15 185/18 186/12 187/22 188/9 188/21

well-being **[6]** 11/16 54/9 54/11 54/12 57/22 91/12

well-established **[13]** 8/13 21/10 24/20 33/10 54/21 75/2 80/25 92/20 103/24 131/4 133/13 144/15 177/3

well-trod **[2]** 56/8 61/4

went **[7]** 47/5 60/6 132/10 133/18 134/18 143/2 147/21

were **[56]** 15/19 23/17 25/2 30/1 30/16 30/18 32/24 41/22 42/7 43/8 48/4 48/10 48/10 49/23 54/18 60/5 60/7 69/11 71/23 72/6 72/20 74/11 74/13 83/17 84/10 84/11 88/5 93/19 93/22 100/19 103/4 107/15 110/8 121/18 126/13 126/17 128/1 128/16 131/21 132/4 137/20 146/7 147/15 147/23 157/13 157/14 160/7 160/23 163/12 170/6 171/23 175/21 180/13 181/15 185/1 186/10

weren't **[4]** 24/10 30/17 127/20 130/18

what **[194]**

what's **[15]** 18/7 48/1 58/13 92/4 96/25 107/4 112/15 116/6 127/5 129/18 162/2 181/20 189/11 189/11

whatever **[19]** 10/12 12/23 25/13 41/25 53/14 61/19 75/16 111/8 121/6 123/20 126/24 148/25 151/18 152/20 154/25 156/20 166/9 166/9 166/10

whatnot **[1]** 165/16

whatsoever **[1]** 121/13

when **[72]** 13/18 14/5 14/13 17/6 21/12 37/21 39/13 43/21 43/22 43/22 43/23 45/3 45/3 45/4 47/5 48/2 50/8 51/10 55/9 58/8 61/22 62/13 62/16 63/20 65/22 77/16 81/2 82/9 83/25 87/13 89/5 91/9 91/20 96/16 102/10 106/13 107/20 113/14 117/17 118/11 118/15 118/16 125/9 129/4 130/1 131/4 131/9 131/9 131/18 132/20 135/4 135/5 137/5 142/1 142/2 144/4 145/14 146/21 148/1 151/17 152/6 153/9 159/2 166/25 168/12 169/5 169/7 170/21 172/7 172/8 173/16 186/6

whenever **[2]** 93/10 103/17

where **[89]** 6/18 7/16 18/1 20/21 22/15 24/22 31/11 31/25 38/6 42/3 44/23 47/15 51/3 63/7 63/7 64/4 67/24 69/8 71/13 71/20 73/10 76/25 78/4 78/9 78/24 85/17 85/21 88/11 92/10 92/10 92/14 94/22 99/1 100/9 101/24 102/9 102/9 110/12 112/23 114/20 114/22 115/7 116/1 117/7 118/6 119/11 119/20 120/1 120/6 120/17 120/18 120/19 123/9 125/23 135/11 135/19 135/20 137/9 137/14 137/16 142/11 142/18 144/18 145/7 145/9 145/14 146/16 147/23 149/20 154/6 154/6 155/18 156/11 157/6 157/6 158/5 159/10 159/25 164/3 164/8 164/15 165/13 167/2 173/25 178/19 182/13 184/23 185/17 186/25

whereas **[2]** 14/19 89/7

wherever **[1]** 15/10

whether **[103]** 7/6 7/8 10/20 13/17 13/18 15/14 19/24 26/22 28/22 31/7 33/17 34/6 38/9 40/9 40/15 41/22 44/6 47/23 49/2 49/20 49/20 52/14 53/19 57/24 58/24 59/2 59/2 59/4 59/5 62/1 62/4

62/22 63/5 63/9 66/9 66/11 70/7 73/16 74/9 74/21 77/15 77/21 78/11 79/1 79/10 79/21 80/9 80/13 80/16 86/22 86/23 86/23 86/25 87/3 87/3 87/17 88/1 88/12 90/1 90/8 94/16 99/24 101/3 102/11 104/25 115/15 117/12 120/13 121/17 125/24 129/1 129/4 132/13 135/8 135/13 136/3 141/3 142/23 143/4 144/13 145/2 147/9 149/16 149/19 153/25 154/7 158/24 159/4 162/19 163/7 167/21 169/20 171/7 173/16 173/21 176/6 180/14 180/15 180/15 183/16 186/4 186/13 188/2

whether would **[1]** 163/7

which **[145]** 6/7 6/8 6/15 7/9 8/7 9/9 9/22 11/18 12/2 12/4 12/11 14/6 16/9 16/15 17/4 18/2 18/12 19/9 19/22 20/12 22/4 22/7 25/22 27/7 27/9 28/2 33/21 34/8 36/16 39/7 40/2 40/3 40/14 43/7 44/16 44/19 47/14 50/4 51/7 53/20 54/14 54/24 55/20 56/4 56/17 58/1 60/5 61/4 62/6 64/1 65/8 66/14 66/20 67/12 67/22 69/18 69/21 69/21 69/23 70/3 70/24 71/2 72/7 75/9 75/25 76/14 76/24 77/4 77/5 78/5 78/12 78/25 81/13 83/9 85/2 90/19 91/24 92/18 92/21 96/11 98/1 98/25 102/10 105/2 106/11 106/25 108/9 110/25 111/11 113/5 113/21 114/8 115/21 116/25 119/6 119/8 119/9 120/18 122/20 127/24 128/14 129/7 131/16 131/22 131/24 133/22 133/24 136/7 136/16 136/25 138/10 139/4 141/7 141/9 142/20 144/16 144/24 145/3 145/15 145/16 146/6 149/14 150/6 152/1 153/13 158/15 161/20 162/1 162/4 166/18 167/11 168/6 169/7 178/24 179/15 183/2 183/3 183/5 184/2 184/9 185/7 186/1 187/4 187/13 188/24

while **[5]** 46/13 126/19 147/17 162/9 180/10

Whitehouse **[1]** 49/9

who **[50]** 28/16 30/19 35/24 47/7 50/13 50/13 50/23 50/24 51/19 51/21 82/19 90/1 91/15 107/17 107/22 116/23 117/21 126/19 126/20 127/4 127/4 127/6 127/7 127/17 127/18 127/21 128/5 129/7 130/5 130/6 130/13 133/22 135/7 135/7 135/7 135/12 142/13 143/3 145/1 145/22 146/24 148/17 155/8 156/16 157/8 164/11 177/18 177/19 177/23 189/10

whoever **[1]** 134/18

whole **[5]** 45/5 53/13 59/3 165/14 188/8

wholly **[1]** 136/9

whose **[1]** 51/14

why **[37]** 8/19 9/2 9/5 12/15 21/21 26/3 29/16 42/5 45/7 50/17 51/21 52/17 67/20 68/4 68/15 77/18 78/15 114/9 126/7 129/18 129/19 147/11 150/22 151/16 154/12 156/1 156/17 158/8 159/9 163/20 163/21 166/13 166/22 170/15 180/6 183/7 186/1

wide **[1]** 134/9

wide-ranging **[1]** 134/9

wider **[1]** 65/9

will **[69]** 5/11 8/25 9/5 10/21 10/24 13/4

## W

**will... [63]** 13/14 16/3 37/4 37/19 39/9
39/16 39/20 42/18 43/1 43/20 44/2
46/22 55/9 59/21 63/7 63/10 74/2 89/16
101/12 103/25 108/17 112/6 112/21
113/2 113/21 114/3 114/10 114/25
122/20 123/3 123/11 123/12 128/19
128/25 137/1 143/18 148/21 148/24
149/1 149/22 151/11 152/13 155/23
155/24 161/15 166/23 167/25 175/18
175/18 176/1 176/19 179/13 179/20
184/11 184/12 184/25 185/9 185/12
185/13 186/7 187/22 188/21 189/17
**willing [3]** 51/8 146/7 167/18
**willingly [1]** 152/12
**wind [1]** 165/5
**window [1]** 75/4
**Winter [2]** 49/9 147/5
**wisdom [1]** 151/13
**wiser [1]** 150/21
**within [37]** 11/9 23/14 24/4 24/9 33/5
34/19 36/14 39/14 44/4 47/4 55/25
62/15 67/15 82/10 92/19 101/9 106/16
108/23 125/18 125/22 125/25 128/9
128/11 130/10 130/15 130/19 130/23
134/10 145/16 149/18 162/10 168/18
169/5 172/5 173/18 175/12 180/11
**without [16]** 10/10 11/11 17/10 22/5
22/14 35/9 42/25 48/11 49/19 65/1
84/16 100/22 132/22 146/2 171/21
187/15
**withstand [2]** 138/5 184/14
**woman [1]** 130/5
**won't [4]** 10/21 43/24 145/6 151/17
**wonder [2]** 97/19 146/3
**wondered [1]** 49/2
**word [5]** 55/5 55/12 90/18 169/5 175/7
**words [3]** 159/5 175/7 184/8
**work [3]** 36/20 139/22 145/5
**worked [2]** 5/3 102/11
**working [2]** 52/22 150/21
**works [2]** 41/11 91/15
**world [2]** 148/12 188/20
**worried [1]** 146/22
**worry [4]** 43/24 143/21 166/12 175/3
**worse [1]** 13/16
**worth [1]** 47/9
**would [188]** 4/11 6/17 7/2 9/15 12/24
14/6 17/25 21/14 22/23 31/18 31/19
32/8 37/10 39/12 42/1 42/7 42/8 45/19
46/3 46/8 47/6 47/19 48/12 48/13 48/15
50/23 50/23 50/25 51/20 51/22 53/16
56/16 57/14 63/2 63/19 64/21 64/23
65/4 70/10 70/14 70/17 74/22 75/16
76/7 77/15 78/11 78/14 79/4 81/14
84/23 88/23 89/4 89/21 89/22 90/7 90/8
93/20 96/6 96/10 97/7 100/2 100/8
101/9 105/13 105/15 105/17 106/20
107/17 107/17 107/22 107/23 108/5
108/10 109/6 109/13 111/13 112/16
113/8 120/22 121/14 123/10 124/22
127/21 128/5 128/8 128/9 128/10
130/18 131/18 132/7 133/1 133/20
134/16 134/23 134/24 136/8 136/11
137/1 137/4 139/25 140/5 140/18 141/8

141/24 141/25 142/25 142/25 143/3
143/4 143/4 143/10 143/19 145/1
146/23 147/11 148/3 148/12 149/10
150/6 151/5 151/5 151/15 151/19
152/11 153/21 153/24 154/23 155/2
157/16 158/15 159/20 159/21 159/22
160/3 160/9 160/21 163/7 164/24 166/5
167/17 167/19 167/20 167/22 168/19
169/22 169/25 170/22 171/7 171/15
171/16 171/20 172/6 175/11 175/15
177/18 177/19 178/3 178/5 178/16
178/17 179/2 179/3 179/4 179/6 179/7
181/17 181/18 182/22 183/1 183/24
184/16 184/23 185/22 186/11 186/12
187/6 187/7 187/10 187/11 187/15
187/17 187/19 188/2 188/6 188/9
188/24 189/1 189/2
**wouldn't [15]** 26/18 51/21 65/14 70/13
70/16 73/13 78/3 78/7 97/6 99/5 107/12
107/14 123/22 151/7 155/2
**Wright [1]** 142/8
**wrong [4]** 90/18 169/2 169/3 171/4
**wrote [1]** 90/18
**Wyoming [16]** 12/7 42/3 42/6 59/22 60/4
60/4 76/23 76/25 77/5 77/6 89/4 89/5
89/10 94/3 94/6 128/22

## Y

**yeah [4]** 107/2 114/20 116/5 154/23
**year [2]** 162/2 172/25
**years [4]** 77/1 79/13 147/5 171/5
**yes [30]** 4/7 4/12 4/15 4/17 11/25 12/25
13/3 13/10 13/10 15/8 22/23 36/8 43/16
48/1 52/11 55/6 57/8 63/11 64/5 64/14
110/3 114/6 119/20 121/9 140/21 144/9
146/14 164/7 172/6 189/4
**yet [4]** 5/6 116/1 125/14 154/14
**York [12]** 21/20 23/21 35/6 38/10 53/5
63/5 128/14 141/9 146/1 164/6 164/11
165/18
**you [296]**
**you'd [2]** 109/24
**you'll [3]** 89/14 143/12 170/18
**you're [58]** 6/16 7/1 7/14 11/23 13/6
13/7 13/8 28/14 28/20 35/19 37/9 37/25
41/5 41/7 45/12 47/22 47/22 49/2 55/12
61/21 61/22 64/4 72/24 82/20 87/3
87/19 89/9 89/11 95/15 96/17 98/22
100/24 102/19 111/2 111/4 111/16
114/22 115/21 115/25 116/6 117/22
120/6 122/4 124/2 124/4 126/20 139/19
140/15 152/1 152/2 155/12 159/7
159/25 168/7 184/22 188/14 188/15
188/19
**you've [4]** 64/23 115/19 140/15 154/18
**your [104]** 3/21 4/7 4/12 4/17 5/4 6/16
6/25 7/23 8/4 12/24 13/10 13/10 15/5
18/8 18/10 23/4 23/6 24/1 25/18 26/1
29/3 29/8 31/1 31/24 33/15 38/15 38/20
41/10 42/10 45/7 47/25 51/23 62/1 63/1
63/19 64/1 66/2 71/18 72/17 73/15
78/13 86/2 86/7 90/15 92/10 92/14 93/8
95/4 96/23 98/8 101/5 101/23 102/20
103/13 105/23 109/8 110/3 111/9
111/16 111/22 117/2 117/19 118/4
119/19 122/16 127/19 133/21 135/12

135/13 135/16 138/1 139/16 139/20
139/21 140/13 150/2 150/2 154/17
155/6 156/6 157/10 162/6 163/1 163/2
164/25 165/8 165/12 168/7 170/5 170/9
170/10 171/6 172/9 172/24 176/3
179/11 183/25 184/11 184/24 185/7
185/16 187/11 187/23 189/15
**yourself [3]** 4/15 135/13 161/11
**yourselves [1]** 3/9

## Z

**zone [25]** 24/4 24/9 38/17 106/16
125/11 125/16 125/18 125/22 125/25
128/9 128/11 128/13 128/19 128/21
128/23 128/25 129/4 129/15 129/19
129/19 130/15 130/19 130/24 137/8
177/19