## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

THE DISTRICT OF COLUMBIA, et al.,

                                 *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States and in his individual
capacity,

                                 *Defendants.*

No. 8:17-cv-1596-PJM

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT IN HIS INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

   I. This Court Lacks Both Venue and Personal Jurisdiction over the President in His
     Individual Capacity ..................................................................................................................... 4

     A. The District of Maryland is not a proper venue for suing the President in his individual
       capacity. ................................................................................................................................ 4

     B. There is no personal jurisdiction over the President in his individual capacity. ........................ 8

     C. The claims against the President in his individual capacity should be dismissed for lack of
       venue and personal jurisdiction. ......................................................................................... 13

   II. Plaintiffs Fail to State a Claim under the Emoluments Clauses against the President
      in His Individual Capacity ........................................................................................................ 14

     A. A claim under the Emoluments Clauses must be brought against the President in his
       official capacity. .................................................................................................................. 14

     B. There is no cause of action to sue the President in his individual capacity under the
       Emoluments Clauses. ......................................................................................................... 17

        1. There is no *Bivens* action against a federal official for declaratory and
          injunctive relief. ........................................................................................................... 17

        2. There is no *Bivens* action for violations of the Emoluments Clauses even if that
          disfavored remedy extends to cases in equity. ................................................................... 20

          a. Plaintiffs' claims are subject to a special-factors analysis because they arise in
             a new *Bivens* context. ......................................................................................... 21

          b. A *Bivens* remedy is not available because special factors counsel hesitation. ............... 22

   III. The President Has Absolute Immunity ..................................................................................... 24

CONCLUSION ............................................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251 (D.D.C. 2013) ...................................................... 20

*Adhikari v. KBR, Inc.*, No. 15-1248, 2016 WL 4162012 (E.D. Va. Aug. 4, 2016) .................................... 6

*AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, No. 08-3388, 2009 WL 1921152 (D. Md. July 1, 2009).. 10

*Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676 (D. Md. 2011) ................................................................................................................................. 9

*Alltech, Inc. v. Carter*, No. 08-00325, 2010 WL 988987 (E.D. Ky. Mar. 15, 2010)................................... 7

*Andrean v. Sec'y of U.S. Army*, 840 F. Supp. 1414 (D. Kan. 1993)................................................... 4

*Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963) ..................................................... 1

*Ashbourne v. Geithner*, No. 11-2818, 2012 WL 2874012 (D. Md. July 12, 2012) ...................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 21

*Bartko v. Wheeler*, No. 13-1006, 2014 WL 29441 (M.D.N.C. Jan. 3, 2014) .............................................. 6

*Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167 (D. Md. 1990) ................................................ 13

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ........................17, 18

*Broadnax Bey v. Pedersen*, No. 15-cv-3073, 2016 WL 3181763 (D. Md. June 8, 2016)........................9, 10

*Bush v. Lucas*, 462 U.S. 367 (1983) ................................................................................. 22

*Byrd v. United States*, No. 09-1208, 2010 WL 4922519 (E.D. Va. Nov. 29, 2010) .................................... 5

*Cady v. Arenac Cty.*, 574 F.3d 334 (6th Cir. 2009) ................................................................ 25

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003)............................8, 9, 12

*CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724 (D. Md. 2017)....................................................... 6

*Carlson v. Greene*, 446 U.S. 14 (1980)........................................................................17, 20

*Chang v. United States*, 246 F.R.D. 372 (D.D.C. 2007) ............................................................. 25

*Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367 (2004) ....................................... 23

*Christopher v. Harbury*, 536 U.S. 403 (2002) ...................................................................... 22

*Cioca v. Rumsfeld*, 720 F.3d 505 (4th Cir. 2013) ................................................................20, 21

*Clinton v. Jones*, 520 U.S. 681 (1997) .............................................................................15, 26

*CMA CGM (Am.), LLC v. RLI Ins. Co.*, No. 12-03306, 2013 WL 588978 (D. Md. Feb. 13, 2013)...... 6

*Consulting Eng'gs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) ................................11, 12

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ....................................................... 15, 19, 20

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ......................................6, 7

*Davis v. Passman*, 442 U.S. 228 (1979) ...........................................................................17, 20

*DeLong v. IRS*, 908 F.2d 966, 1990 WL 101402 (4th Cir. 1990) (table opinion)..................................18

*District of Columbia v. Jones*, 919 A.2d 604 (D.C. 2007) ...........................................................25

*Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002) ........................................................................18

*Dring v. Sullivan*, 423 F. Supp. 2d 540 (D. Md. 2006)...............................................................11

*Du Daobin v. Cisco Sys., Inc.*, 2 F. Supp. 3d 717 (D. Md. 2014)..............................................10, 12

*Duck Dive LP v. Heydari*, No. 13-1477, 2013 WL 5724050 (S.D. Cal. Oct. 21, 2013) ............................. 6

*ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) ...................................................11

*Farmer v. Perrill*, 275 F.3d 958 (10th Cir. 2001) ...................................................................15

*Glynn v. EDO Corp.*, 536 F. Supp. 2d 595 (D. Md. 2008)......................................................10, 12

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005) ........................................................ 6

*Hand Held Prods., Inc. v. Code Corp.*, 265 F. Supp. 3d 640 (D.S.C. 2017) ......................................13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)..........................................................................25

*Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505
(D. Md. 2004) ...................................................................................................10, 13

*Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591 (D. Md. 2014)................................................ 9

*Hernandez v. Mesa*, 137 S. Ct. 2003 (2017).........................................................................20

*Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230 (D. Md. 1997) ............................................... 4

*Higazy v. Templeton*, 505 F.3d 161 (2d. Cir. 2007)..................................................................19

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ...........................................................................25

*Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir. 2018) ........................... 20

*Jesner v. Arab Bank, PLC*, No. 16-499, --- S. Ct. ---, 2018 WL 1914663 (2018) .................... 2

*Johnson v. Helicopter & Airplane Servs. Corp.*, 389 F. Supp. 509 (D. Md. 1974) ........................... 1

*Johnson v. U.S. Dep't of Justice*, No. 14-4008, 2016 WL 4593467 (D. Md. Sept. 2, 2016) .................. *passim*

*Joyner v. Reno,* 466 F. Supp. 2d 31 (D.D.C. 2006) ........................................................ 5

*Kentucky v. Graham,* 473 U.S. 159 (1985) ................................................................. 18

*Kirby v. City of Elizabeth*, 388 F.3d 440 (4th Cir. 2004) ................................................ 19

*Kirtman v. Helbig*, No. 16-2839, 2016 WL 8193637 (D.S.C. Sept. 21, 2016) ............................... 5

*Kurzberg v. Ashcroft*, 619 F.3d 176 (2d Cir. 2010) ...................................................... 19

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ................................... 18, 19

*Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) ..................................................... 22, 23

*Lewis v. Clarke*, 137 S. Ct. 1285 (2017) ......................................................... 15, 16, 25

*Mackey v. Compass Mktg., Inc.*, 892 A.2d 479 (Md. 2006) ................................................. 8

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691 (D. Md. 2012) .... 12, 13

*Miss. v. Johnson*, 71 U.S. 475 (1867) .................................................................. 27

*Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004) ........................................................ 6

*MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561 (D. Md. 2003) ........................................ 6

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) ........................................... 8

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982) ........................................................ 25, 26, 27

*Polidi v. Bannon*, 226 F. Supp. 3d 615 (E.D. Va. 2016) ................................................. 25

*Proctor v. Morrissey*, 45 F.3d 427, 1995 WL 3840 (4th Cir. 1995) (table opinion) ...................... 4

*Raney v. Sec'y of Commerce*, No. 09-00012, 2009 WL 742191 (W.D. Va. Mar. 19, 2009) .................... 5

*Robroy Indus., Inc. v. Schwalbach*, No. 05-1732, 2006 WL 1437173 (W.D. Pa. Feb. 15, 2006) ............. 7

*Rodearmel v. Clinton*, 666 F. Supp. 2d 123 (D.D.C. 2009) ............................................... 16

*Screen v. Equifax Info. Sys., LLC*, 303 F. Supp. 2d 685 (D. Md. 2004) .................................. 13

*Sigalia v. ABR of VA, Inc.*, 145 F. Supp. 3d 486 (D. Md. 2015) .................................................. 8

*Solida v. McKelvey*, 820 F.3d 1090 (9th Cir. 2016) ..............................................................18, 19

*Stafford v. Briggs*, 444 U.S. 527 (1980) .................................................................................*passim*

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .............................................................................................. 19

*Wood v. Moss*, 134 S. Ct. 2056 (2014) ................................................................................................. 20

*Woodke v. Dahm,* 70 F.3d 983 (8th Cir. 1995) ................................................................................. 7

*Zhang v. Lockheed Martin Corp.*, No. 13-3898, 2014 WL 6646979 (D. Md. Nov. 21, 2014) .................. 14

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .............................................................................*passim*

**Constitutional Provisions**

U.S. Const. art. I, § 6 ................................................................................................................... 16

U.S. Const. art. I, § 9 ................................................................................................................... 14

U.S. Const. art. II, § 1 ................................................................................................................. 14

**Statutes**

28 U.S.C. § 1391 ...............................................................................................................4, 5, 7

28 U.S.C. § 1406 ............................................................................................................................ 13

42 U.S.C. § 1983 ............................................................................................................................ 17

Md. Code Ann., Cts. & Jud. Proc. § 6-103 ..........................................................................9, 11

N.Y. C.P.L.R. 308 ......................................................................................................................... 5

**Treatises**

Charles A. Wright et al., *Federal Practice & Procedure* (2d ed. 1986) ..................................... 13

Charles Alan Wright et al., *Federal Practice & Procedure* (3d ed. 2007) ...........................7, 13

**Other Authorities**

Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability under Bivens*, 88 Geo. L. J. 65 (1999) ............................................................................... 18

## INTRODUCTION

The motion to dismiss the Amended Complaint against the President in his official capacity argues why Plaintiffs, the State of Maryland and the District of Columbia, have failed to state a claim under the Foreign Emoluments Clause and the Domestic Emoluments Clause, and why injunctive relief is unavailable in any event. The President, defending this action in his individual capacity, joins those arguments.[1] But those issues can no longer be reached as the case is now postured. That is because it is settled law that "[q]uestions of personal jurisdiction and venue will be resolved first before proceeding to the merits of the case." *Johnson v. Helicopter & Airplane Servs. Corp.*, 389 F. Supp. 509, 518 (D. Md. 1974) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (Friendly, J.)). Plaintiffs' (albeit reluctant) decision to name the President as a defendant in his individual capacity has created venue and personal jurisdiction issues that must be resolved before the Court reaches any other issues, including those scheduled for oral argument on June 11, 2018. In short, the case cannot proceed in this forum as it now stands.

There is no venue in this District over the President in his individual capacity because section 1391(e)—the sole provision on which Plaintiffs rely—applies only to the President in his official capacity, and there is no basis for invoking this forum under section 1391(b)'s general venue criteria. There is no personal jurisdiction over the President in his individual capacity because he lacks personal contacts with Maryland. The claims against the President in his individual capacity should be dismissed for these reasons alone.

But even if this were a proper forum for hearing these claims against the President in his individual capacity, dismissal would still be required. Although the problem manifests itself under a

---

[1] That motion also correctly argued that Plaintiffs lack standing and a cause of action regardless of whether these claims are brought against the President in his official or individual capacity. Thus, although the President, appearing in his individual capacity, respects the Court's ruling, he notes his disagreement in order to ensure those issues are preserved for appeal.

series of interrelated legal doctrines, the Amended Complaint's fundamental defect is uncomplicated: there is no such thing as a claim for equitable relief against a government official in his or her individual capacity. That is why claims under the Emoluments Clauses must be brought against the President in his official capacity. It also is why Plaintiffs lack a cause of action under the Constitution generally, and the Emoluments Clauses specifically. The only constitutional claim the Supreme Court has fashioned against federal officials in their individual capacity is one for money damages to remedy violations of the Fourth, Fifth, and Eighth Amendments. Plaintiffs neither seek money damages nor to remedy any such violations. That should be the end of the line. Just last week, the Supreme Court reiterated that "recent precedents cast doubt on the authority of courts to extend or create private causes of action" because "a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Jesner v. Arab Bank, PLC*, No. 16-499, --- S. Ct. ---, 2018 WL 1914663, at *15 (2018) (citations and quotations omitted). It is difficult to imagine a more glaring failure to heed this guidance than the creation of a new private right of action under the Emoluments Clauses to sue the President in his individual capacity for equitable relief.

Finally, even if this Court had venue and personal jurisdiction, and Plaintiffs had a cause of action against the President in his individual capacity and viable claims under the Emoluments Clauses, the President still is absolutely immune. Absolute immunity bars individual-capacity lawsuits against the President for actions taken upon assumption of office. The Supreme Court has concluded that the costs to the Nation of allowing such suits to distract the President from his official duties outweigh any countervailing interests. That choice must be respected.

## BACKGROUND

Plaintiffs claim that the President is violating both the Foreign Emoluments Clause and the Domestic Emoluments Clause. In their original complaint, Plaintiffs sued the President in his official capacity. *See* Doc. 1. On March 12, 2018, Plaintiffs amended their complaint to name the President in

his individual capacity as well. *See* Doc. 95 ("Am. Compl.") ¶¶ 1, 20. Other than that one change, the Amended Complaint did not alter any of the allegations against the President or the basis for bringing this action. Among other things, the Amended Complaint relies exclusively on 28 U.S.C. § 1391(e)(1) for venue. *See id.* ¶ 22. In seeking to amend their complaint, moreover, Plaintiffs candidly reiterated their reluctance to do so. "Plaintiffs continue to believe that suing the President for violating these Clauses in his official capacity is proper and reflects 'the reality that the defendant's conduct is illegal by virtue of the fact that he is President.'" Doc. 90-1 at 2 (quoting Doc. 56-1, Br. of Scholars as Amici Curiae at 18).

On March 28, 2018, the Court issued an opinion in which it held that Plaintiffs have standing to bring this action. *See* Doc. 101. Importantly, however, the Court did not accept every argument that Plaintiffs made. The Court agreed with Plaintiffs that they "have standing to challenge the actions of the President with respect to the Trump International Hotel and its appurtenances in Washington, D.C., as well as the operations in the Trump Organization with respect to them." *Id.* at 2. However, the Court rejected Plaintiffs' "standing with respect to the operations of the Trump Organization and the President's involvement in the same outside the District of Columbia." *Id.*; *see also id.* at 38 (holding there is no "injury-in-fact to these particular Plaintiffs that is traceable to the Trump Organization's or, through it, the President's conduct outside the District of Columbia"); *id.* at 38 ("Plaintiffs lack standing to challenge the operations of the Trump Organization or the benefits the President may receive from its operations outside the District of Columbia.").

## ARGUMENT

The claims against the President in his individual capacity should be dismissed. First, the District of Maryland is not a proper venue for suing the President in his individual capacity. Second, there is no personal jurisdiction in Maryland over the President in his individual capacity. Third, the President is not subject to suit under the Emoluments Clauses in his individual capacity. Fourth,

Plaintiffs lack a cause of action that allows them to pursue declaratory and injunctive relief against the President in his individual capacity for violating the Constitution. Fifth, even assuming such a cause of action exists, it cannot be expanded to the Emoluments Clauses. Sixth, if Plaintiffs overcome all of these obstacles, the President still has absolute immunity.

## I.    This Court Lacks Both Venue and Personal Jurisdiction over the President in His Individual Capacity.

A "district court which lacks venue or personal jurisdiction shall dismiss or, if it is in the interest of justice, transfer a case to a district in which venue is proper and jurisdiction is present." *Proctor v. Morrissey*, 45 F.3d 427, 1995 WL 3840, at *1 (4th Cir. 1995) (table opinion) (citations omitted). Here, the Court lacks both venue and personal jurisdiction. The interests of justice warrant dismissal of the claims against the President in his individual capacity.

### A.    The District of Maryland is not a proper venue for suing the President in his individual capacity.

"[I]n a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant." *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 240 (D. Md. 1997). The Amended Complaint relies on 28 U.S.C. § 1391(e), Am. Compl. ¶ 22, which establishes venue for "[a]ctions where defendant is officer or employee of the United States," 28 U.S.C. § 1391(e). But section 1391(e) provides for venue for cases against federal officials in their official capacity. *See Stafford v. Briggs*, 444 U.S. 527, 542-45 (1980); *Andrean v. Sec'y of U.S. Army*, 840 F. Supp. 1414, 1422 (D. Kan. 1993) (explaining that "it is settled law that § 1391(e) may not be used to assert proper venue in suits against officials in their individual capacities" (citing *Briggs*, 444 U.S. at 542)). The statute makes clear, moreover, that venue must be established separately over "[a]dditional persons." 28 U.S.C. § 1391(e)(1). Plaintiffs must establish—independent of section 1391—that venue is proper in this District over the President in his individual capacity.

In individual-capacity suits against federal officials, "venue is established by 28 U.S.C. § 1391(b)." *Ashbourne v. Geithner*, No. 11-2818, 2012 WL 2874012, at *3 (D. Md. July 12, 2012) (citing *Stafford*, 444 U.S. at 544), *aff'd*, 491 F. App'x 429 (4th Cir. 2012); *see also Kirtman v. Helbig*, No. 16-2839, 2016 WL 8193637, at *3 (D.S.C. Sept. 21, 2016) ("Plaintiff is a federal prisoner suing federal employees in their *individual* capacity. As such, venue is governed by 28 U.S.C. § 1391(b) and not 28 U.S.C. § 1391(e)."); *Byrd v. United States*, No. 09-1208, 2010 WL 4922519, at *2 (E.D. Va. Nov. 29, 2010) (same); *Raney v. Sec'y of Commerce*, No. 09-00012, 2009 WL 742191, at *1 n.3 (W.D. Va. Mar. 19, 2009) (same). "While § 1391(e) applies to suits against government officials acting in their official capacities, … the proper venue provision for this and other cases in which federal officials are sued in their individual capacities based on federal question jurisdiction is 28 U.S.C. § 1391(b)." *Joyner v. Reno,* 466 F. Supp. 2d 31, 41 (D.D.C. 2006) (citation and footnote omitted).

But venue is not proper as to the President in his individual capacity under section 1391(b) either. Venue exists under that subsection in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As an initial matter, there is no venue under subsection (b)(1) because not "all defendants are residents of the State" given that the President does not personally reside in Maryland. *See* Doc. 103 at 2 & n.1 (justifying service of the Amended Complaint on the President in his individual capacity in New York because it is his "'dwelling place or usual place of abode'") (quoting N.Y. C.P.L.R. 308(2)).

Thus, the Court must turn to subsection (b)(2) to determine whether there is venue. But a "substantial part of the events or omissions giving rise" to Plaintiffs' claims did not occur in Maryland; nor is "a substantial part of property that is the subject of the action" located in Maryland. "The Fourth Circuit," to be sure, "has instructed courts to look to 'the entire sequence of events underlying the claim,' rather than just those that are 'in dispute' or that 'directly led to the filing of the action.'" *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). But that does not mean the forum state's role in the dispute can be anything other than *substantial*. "Events that relate only tangentially to the claim cannot constitute a 'substantial part of the events or omissions giving rise to the claim'; indeed, strictly speaking, they do not 'give rise to' the claim at all." *MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003); *see also CMA CGM (Am.), LLC v. RLI Ins. Co.*, No. 12-03306, 2013 WL 588978, at *2 (D. Md. Feb. 13, 2013). "In other words, courts 'take seriously the adjective 'substantial.''" *Adhikari v. KBR, Inc.*, No. 15-1248, 2016 WL 4162012, at *4 (E.D. Va. Aug. 4, 2016) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Bartko v. Wheeler*, No. 13-1006, 2014 WL 29441, at *9 (M.D.N.C. Jan. 3, 2014).

It should go without saying, then, that venue is improper given that Plaintiffs cannot "show that *any* of the events or actions giving rise to the claims in this case occurred in [Maryland]." *Duck Dive LP v. Heydari*, No. 13-1477, 2013 WL 5724050, at *3 (S.D. Cal. Oct. 21, 2013). The Amended Complaint does not allege any relevant events occurred in Maryland or that there is any subject property in Maryland. The Court's ruling on standing cements the point. The Court held that "these particular Plaintiffs lack standing to challenge the operations of the Trump Organization or the benefits the President may receive from its operations outside the District of Columbia." Doc. 101 at 38. That was, at least in part, because "Plaintiffs [had] conceded that their competitive injuries (i.e., to their proprietary and *parens patriae* interests) were limited to the District of Columbia-based Hotel."

*Id.*; *see also id.* at 11-12, 19-20. "It is a considerable stretch," in sum, "to find the requisite injury-in-fact to these particular Plaintiffs that is traceable to the Trump Organization's or, through it, the President's conduct *outside the District of Columbia.*" *Id.* at 38 (emphasis added). None of the events or property giving rise to this dispute—let alone a "substantial part" of them—are in Maryland.

Maryland's only relevance to this dispute is that it is the locus of some of the alleged harm. *See* Am. Compl. ¶¶ 1, 103-18, 130-32; Doc. 101 at 19-29. But the location where the harm is felt is not a proper venue. "[T]he relevant inquiry for determining proper venue is where the events or omissions giving rise to the claims occurred, not where the resulting harm is felt." *Robroy Indus., Inc. v. Schwalbach*, No. 05-1732, 2006 WL 1437173, at *7 (W.D. Pa. Feb. 15, 2006) (citing *Cottman*, 36 F.3d at 295); *see also Woodke v. Dahm,* 70 F.3d 983, 985-86 (8th Cir. 1995) (explaining that "by referring to 'events and omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff," and holding venue improper where plaintiff felt the effects of alleged trademark violations); *Alltech, Inc. v. Carter*, No. 08-00325, 2010 WL 988987, at *3 (E.D. Ky. Mar. 15, 2010) ("[T]he suffering of economic harm within a district is not sufficient for purposes of establishing venue in that district. … Otherwise, venue would almost always be proper at the place of a plaintiff's headquarters or residence, an option that Congress removed from the diversity portion of the venue statute in 1990.") (citing 14D Charles Alan Wright et al., Federal Practice & Procedure § 3806 (3d ed. 2007)). The Fourth Circuit has reached the same conclusion with respect to personal jurisdiction. *See infra* at 11-12. There is no reason to draw a different line for venue.

In fact, doing so would contradict the scheme Congress created in section 1391. Congress purposefully crafted a regime under which federal officers acting in their official capacity could be subject to nationwide venue, *see* 28 U.S.C. § 1391(e)(1)(C), but officers sued in their individual capacity could not be, *see Stafford*, 444 U.S. at 542-45. For important policy reasons, Congress made clear that it would be inappropriate to subject federal officers sued in their individual capacity to litigation "in

any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction." *Id.* at 544. Yet allowing venue to be found wherever the harm is allegedly felt would mean just that: the plaintiff could bring an individual-capacity suit anywhere in the United States. Indeed, allowing venue to be found anywhere the harm is felt would dramatically alter and expand the scope of section 1391(b) for all defendants—subjecting them all to the nationwide venue Congress carefully limited to official-capacity suits against federal officers. "Absent a clear indication that Congress intended such a sweeping effect," a court should "not infer such a purpose nor [should it] interpret a statute to effect that result." *Id.* at 545.

Plaintiffs thus are left to argue that venue is proper under subsection (b)(3) because there is no other district with venue and the President is subject to personal jurisdiction in Maryland. But that argument fails. Among other reasons (including that venue may be appropriate in another judicial district), the President is not subject to personal jurisdiction in Maryland in his individual capacity. This Court lacks venue.

### B.     There is no personal jurisdiction over the President in his individual capacity.

Personal jurisdiction over a nonresident defendant is proper only when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion or that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Though Maryland's long-arm statue is "coextentsive with … the due process clause," *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003), the Maryland Court of Appeals has explained that courts may not "simply dispense with analysis under the long-arm statute," *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). Plaintiffs must establish that a defendant's contacts with the forum state satisfy both the Maryland long-arm statute and due process. *See, e.g., Sigalia v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 490 (D. Md. 2015) ("[T]here may be cases where

personal jurisdiction is proper under constitutional due process but not under Maryland's long-arm statute."); *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 597-603 (D. Md. 2014).

Plaintiffs have not even attempted to meet their burden: they have not alleged *any* facts that establish personal jurisdiction over the President under either prong of the analysis. *See, e.g.*, *Broadnax Bey v. Pedersen*, No. 15-cv-3073, 2016 WL 3181763, at *4 (D. Md. June 8, 2016) ("Plaintiff has not alleged facts that satisfy any prong of Maryland's long-arm statute. Moreover, he has not presented allegations showing that [the defendant] purposefully established even 'minimum contacts' with Maryland such that maintenance of the suit comports with 'traditional notions of fair play and substantial justice.'"). Nor could they. "In order to establish general personal jurisdiction, a defendant's activities in [Maryland] must have been 'continuous and systematic.'" *Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 684 (D. Md. 2011) (quoting *Carefirst of Md.*, 334 F.3d at 397). Plaintiffs have no chance of showing that the President has this level of contact in Maryland in his individual capacity.

Thus, Plaintiffs must try for specific jurisdiction. In Maryland, specific jurisdiction is available "over a person, who directly or by an agent":

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

It does not require close review of the Maryland long-arm statute to recognize that Plaintiffs cannot establish specific jurisdiction either. "It is firmly established in this district that a corporate officer is not subject to this Court's jurisdiction simply by virtue of his or her corporation's activities in Maryland." *AGV Sports Grp., Inc. v. Protus IP Sols., Inc.*, No. 08-3388, 2009 WL 1921152, at *7 (D. Md. July 1, 2009). It thus is irrelevant whether Trump International Realty is registered to conduct business in Maryland. *See* Am. Compl. ¶ 108. "Instead, a corporate officer may only be hailed into a foreign court based on the corporate officer's *individual* contacts in the forum." *AGV Sports Grp.*, 2009 WL 1921152, at *7 (emphasis added). "Personal jurisdiction," therefore, "must be based on [the President's] personal contacts with the state of Maryland, not his status as an officer, director, employee, and owner of [his] corporations." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 514 (D. Md. 2004); *see also Du Daobin v. Cisco Sys., Inc.*, 2 F. Supp. 3d 717, 723 (D. Md. 2014) (Messitte, J.) ("Personal jurisdiction must be based on [the defendant's] personal contacts with Maryland, not merely his role as CEO."); *see, e.g., Broadnax Bey*, 2016 WL 3181763, at *3 ("[The Corporation's] contacts with Maryland—whatever they may be—are not sufficient to establish personal jurisdiction over an individual officer or employee."); *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 604 (D. Md. 2008) (same). As a consequence, Plaintiffs cannot attribute the Hotel's contacts with Maryland—or any other corporate entity's contacts with Maryland—to the President for purposes of trying to establish specific jurisdiction over him.

The analysis thus is straightforward. The Amended Complaint contains no allegations that the President has had contacts with Maryland in his personal capacity, much less any that could satisfy Maryland's long-arm statute. Nowhere in the Amended Complaint do Plaintiffs allege the President personally "[t]ransacts any business or performs any character of work or services," "[c]ontracts to supply goods, food, services, or manufactured products," "regularly does or solicits business," or "[c]ontracts to insure or act as a surety" in Maryland. Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1)-

(2), (4), (6). Nor does it allege that the President personally has "an interest in, uses, or possesses real property" in Maryland. *Id.* § 6-103(b)(5). And there is no allegation that he has "[c]ause[d] tortious injury in the State by an act or omission in the State." *Id.* § 6-103(b)(3). As a result, the Plaintiffs "ha[ve] not alleged facts that satisfy any prong of the Maryland long-arm statute" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 547 (D. Md. 2006).

The President's lack of contacts in Maryland also means this Court's exercise of jurisdiction would fail to satisfy due process. The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test." *Consulting Eng'gs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Under that test, courts must "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* To carry their burden, then, Plaintiffs must allege both that the President had contacts with Maryland and that those contacts underlie Plaintiffs' claims.

Here too, the Plaintiffs fail because they have not alleged any contacts with Maryland. For example, the Amended Complaint does not allege that the President "maintains offices or agents," "solicit[s] or initiate[s] business," or "deliberately engage[d] in significant or long-term business activities" in the state. *Id.* There are simply no allegations of personal contact with Maryland. Personal jurisdiction, as a result, would not be "ground[ed] … on a defendant's decision to 'purposely avail [ ] [himself] of the privilege of conducting activities within the forum state,' or on a defendant's activities 'expressly aimed' at the forum state." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997). Personal jurisdiction would instead be grounded on where the plaintiff allegedly felt the harm. But the Fourth Circuit has rejected that approach because it "would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there." *Id.*

Yet even if Plaintiffs did allege the President has personal contacts in Maryland, they still could not satisfy the second prong of the due process analysis because their Emoluments Clauses claims would still not "arise out of those activities." *Carefirst of Md.*, 334 F.3d at 397. The only harm that remains at issue in this case is the harm that originates from the Hotel; again, any "challenge [to] the operations of the Trump Organization or the benefits the President may receive from its operations *outside the District of Columbia*" are beyond the purview of this case. Doc. 101 at 38; Am. Compl. ¶ 136 ("[T]he defendant is committing or will commit these violations in connection with transactions involving the Trump International Hotel Washington, D.C. … ."). To support jurisdiction, the President's individual contacts with Maryland thus must arise from his ownership of the Hotel. *See, e.g.*, *Glynn*, 536 F. Supp. 2d at 605 ("[T]he fact that [the defendants] may have placed several phone calls or sent several e-mails to Maryland is of little consequence because those calls were unrelated to the events underlying this litigation."). But there is no allegation that the President has reached into Maryland on behalf of the Hotel—let alone the specific Hotel operations that led to this controversy. *See* Am. Compl. ¶¶ 34-46, 80-88. There is no allegation he "made in-person contact with [a] resident of [Maryland] regarding the [Hotel]," communicated with anyone in Maryland regarding the Hotel, or directed that any business relationship with the Hotel should occur in Maryland. *Consulting Eng'gs*, 561 F.3d at 278. With no personal activities directed at Maryland, either generally or otherwise associated with the Hotel, the Plaintiffs cannot establish personal jurisdiction.

This is not meant to concede that specific jurisdiction exists if the Court could attribute the corporation's activities in Maryland to the President in his individual capacity. It means that the corporation's activities in Maryland are irrelevant to the jurisdictional inquiry. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 700-01 (D. Md. 2012); *see also Du Daobin*, 2 F. Supp. 3d at 723 (rejecting personal jurisdiction over a CEO in his personal capacity even though his company "maintains an office and does business in this state"). That is because there simply is no

"basis whatsoever for holding that merely because a corporation transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally." *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990). Nor does it matter that the President may be the "public face" of the Hotel or that he may have a "financial interest" in its operations. *Metro. Reg'l Info. Sys.* 888 F. Supp. 2d at 700. The relevant inquiry is into the defendant's *own* specific contacts, and Plaintiffs have not alleged the President has such contacts with Maryland.

At base, because Plaintiffs cannot "point[] any specific contacts [the President] personally had with Maryland related to [the Hotel's] transactions, or any specific role that [the President] played in the [Hotel's] transactions [in Maryland]," they cannot "establish even a prima facie case that [the President] purposefully availed himself of the privilege of conducting activities in Maryland." *Harte-Hanks*, 299 F. Supp. 2d at 515 (internal quotation marks and brackets omitted). The Court lacks personal jurisdiction.

### C. The claims against the President in his individual capacity should be dismissed for lack of venue and personal jurisdiction.

Because the Court lacks venue and personal jurisdiction, the case as postured cannot be heard in this forum. *See Screen v. Equifax Info. Sys., LLC*, 303 F. Supp. 2d 685, 690 (D. Md. 2004) (quoting 15 Charles A. Wright et al., Federal Practice & Procedure § 3827 (2d ed. 1986)). The Court should therefore dismiss the President in his individual capacity. *See* 28 U.S.C. § 1406(a) (venue); *Screen*, 303 F. Supp. 2d at 691 (personal jurisdiction). Transfer to another forum would be inappropriate. "Under the plain language of § 1406(a), dismissal, not transfer, is the default disposition of a case filed in an improper venue." *Hand Held Prods., Inc. v. Code Corp.*, 265 F. Supp. 3d 640, 646 (D.S.C. 2017). Because, among other reasons, Plaintiffs would not face a statute of limitations problem if they chose to refile the individual-capacity claims elsewhere, transfer would not be "in the interest of justice." 28 U.S.C. § 1406(a); *see also* 14D Charles Alan Wright et al., Federal Practice & Procedure § 3827 (3d ed. 2007). Of

course, Plaintiffs could avoid the issue altogether by voluntarily dismissing the President in his individual capacity. *See, e.g., Zhang v. Lockheed Martin Corp.*, No. 13-3898, 2014 WL 6646979, at *2 (D. Md. Nov. 21, 2014).

## II.   Plaintiffs Fail to State a Claim under the Emoluments Clauses against the President in His Individual Capacity.

Even if this were an appropriate forum, Plaintiffs' claims against the President in his individual capacity should be dismissed for failure to state a claim. Claims under the Emoluments Clauses must be brought against the President in his official capacity—not his individual capacity. And, there is no implied cause of action against the President under the Emoluments Clauses. *See Gov't Mot. to Dismiss*, Doc. No. 21-1 at 26-30. However, as explained below, no such claims may be brought against the President in his individual capacity even if Plaintiffs may bring Emoluments Clauses claims against the President in his official capacity. There are at least two reasons why. First, there is no implied cause of action under the Constitution against a federal official in his individual capacity for declaratory and injunctive relief. Second, even if there were, that implied cause of action would not extend to the Emoluments Clauses.

### A.   A claim under the Emoluments Clauses must be brought against the President in his official capacity.

Plaintiffs' claims against the President in his individual capacity under the Emoluments Clauses fail at the outset. The Foreign Emoluments Clause applies to a federal official holding an "Office of Profit or Trust," U.S. Const. art. I, § 9, cl. 8, while the Domestic Emoluments Clause applies to "[t]he President," U.S. Const. art. II, § 1, cl. 7. By their terms, these Clauses apply only to persons holding those offices. As Plaintiffs put it, the President's alleged "conduct is illegal" here "*by virtue of the fact that he is President*." Doc. 90-1 at 2 (quotation omitted) (emphasis added); *see* Doc. 100, United States Statement of Interest at 5 & nn. 4-6 (collecting additional record citations). Respectfully, then, the Court's suggestion that this dispute has "nothing" to do with the Defendant's "performance of his

duties as president" was mistaken. Tr. of Jan. 25, 2018 hearing at 28:16-18. Had the President not been elected, and thereby assumed the duties of that office, no claim would lie against him under the Emoluments Clauses. Because "that is what triggers the case here," *id.* at 5:5-15, it should be the end of the matter. "[A]ny action that charges [a federal] official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States" and thus may not be brought as an individual-capacity suit. *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

*Amici* protest that the "President's official duties must be disentangled from 'personal, private conduct by a President'" and thus "there is a difference between 'unofficial conduct of the individual who happens to be the President' and the official conduct of the President." Doc. 77, Corrected Response of Scholar Seth Barrett Tillman et al. at 3 ("Tillman Response") (quoting *Clinton v. Jones*, 520 U.S. 681, 688, 701 (1997)). That may be correct, *see infra* at 26 n.3, but it does not advance *amici's* cause. Plaintiffs do not seek to enjoin the President's "personal, private conduct." Just the opposite. As *amici* recognize, Plaintiffs have no claim against President Trump once he no longer holds office. *See* Tillman Response at 5. That was not true of the dispute underlying *Clinton v. Jones* because, quite obviously, the case was about President Clinton's "unofficial conduct" prior to taking office. 520 U.S. at 705. Put simply, this is not a suit against an individual "who happens to be President" when an unrelated dispute arose. This dispute exists solely *because* he is President.

Reliance on *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), also is misplaced. *See* Tillman Response at 3-5. That suit, which arose under state law, sought money damages from a tribal employee for causing an automobile accident. *See Lewis*, 137 S. Ct. at 1289-90. No claim for declaratory or injunctive relief was made. As a result, it was "simply a suit against Clarke to *recover* for his personal actions, which will not *require action by the sovereign* or disturb the sovereign's property." *Id.* at 1291 (citation and internal quotation marks omitted) (emphasis added). But this is not an action to recover money from the

President, and Plaintiffs aim to require action by the sovereign if they prevail. It is the Office of the President that would have to comply with whatever the Court decides the Emoluments Clauses require of the President. *See* United States Statement of Interest at 7.

*Amici* emphasize, *see* Tillman Response at 4, that "'when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation'" in arguing that Plaintiffs must be bringing an individual-capacity claim. *Lewis*, 137 S. Ct. at 1291. Although that often may be a useful way of delineating official-capacity claims from individual-capacity claims, that is not always the case. Take, for example, the Ineligibility Clause, under which "No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time." U.S. Const. art. I, § 6, cl. 2. It might be argued that such a claim should be brought against the officeholder as an individual because the suit would not continue against the successor if the official resigned or completed his or her term before the suit reached judgment. But Ineligibility Clause suits are of course brought against defendants in their *official* capacity. *See, e.g.*, *Rodearmel v. Clinton*, 666 F. Supp. 2d 123, 125 (D.D.C. 2009) ("The plaintiff … brought suit against the defendants, Hillary Clinton in her official capacity as Secretary of State and the State Department, alleging that Clinton's appointment and continuance in office as Secretary of State violates article I, section 6, clause 2 of the United States Constitution.").

For good reason. Ineligibility Clause violations, like Emoluments Clauses violations, can occur only by virtue of the person holding federal office and exercising those official duties. *See also* United States Statement of Interest at 4 (making the same point about the inhabitancy requirement of Article I, section 3, clause 3). Unlike those cases in which individual-capacity claims might be cognizable, the underlying conduct here would not otherwise be unlawful. Resignation from office or the completion of service merely moots the case. *See id.* at 6-7. That the successor in office will not have to mount a

defense does not mean that the suit should have been brought as an individual-capacity action. It means that the alleged constitutional violation has been remedied.

**B.    There is no cause of action to sue the President in his individual capacity under the Emoluments Clause.**

Plaintiffs have no cause of action against the President in his individual capacity under the Emoluments Clauses. The Constitution itself provides no express cause of action against government officials in their individual capacities. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Nor has Congress provided a statutory cause of action for constitutional violations against federal officers, *see id.*, despite having done so for state officers, *see* 42 U.S.C. § 1983. Thus, the only cause of action against federal officers in their individual capacities is an implied action for damages under the Fourth, Fifth, and Eighth Amendments. *See Abbasi*, 137 S. Ct. at 1854-55. This narrow, implied action (often referred to as a *Bivens* action or *Bivens* remedy) is not available for *any* equitable claims, nor for claims under the Emoluments Clauses—equitable or otherwise. Because they lack a cause of action, Plaintiffs' claims against the President in his individual capacity are improper and should be dismissed.

**1.    There is no *Bivens* action against a federal official for declaratory and injunctive relief.**

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court authorized an implied cause of action for damages against federal agents who had violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. 388, 397 (1971). Although the text of the Amendment did not provide for a damages remedy "in so many words," the Court nevertheless created one because Congress had not foreclosed any such cause of action in "explicit" terms and there were no "special factors" suggesting the Court should "hesitat[e]" in the face of congressional silence. *Id.* at 396-97. The Court has since recognized a *Bivens* action for damages under the Fifth and Eighth Amendments. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979); *Carlson v. Greene*, 446 U.S. 14, 24-25 (1980).

The *Bivens* action is limited to individual-capacity claims. *Johnson v. U.S. Dep't of Justice*, No. 14-4008, 2016 WL 4593467, at *5 (D. Md. Sept. 2, 2016) (Messitte, J.) (citing *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)). This, however, is widely recognized as a "legal fiction," because government actors are sued in their *individual* capacity for *official* conduct, and "the federal government in practice functions as the real party in interest." Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability under Bivens*, 88 Geo. L. J. 65, 65 (1999); Tr. of Jan. 25, 2018 hearing at 98:19-23 (acknowledging that constitutional claims against government actors in their individual capacities present "a fiction," because "you're still after these folks because they are public officials"). "[T]he only distinction between personal-capacity and official-capacity suits is on whom the plaintiff is seeking to impose liability; in both cases, the official is acting under color of law." *DeLong v. IRS*, 908 F.2d 966, 1990 WL 101402, at *1 (4th Cir. 1990) (table opinion) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). *Bivens* itself made clear it was creating a remedy for a violation committed, not by a private actor, but by "a federal agent *acting under color of his authority*." 403 U.S. at 389 (emphasis added).

This legal fiction was constructed in order to "fill[] a gap in cases where sovereign immunity bars a damages action against the United States." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016); *see Bivens*, 403 U.S. at 409-10 (Harlan, J., concurring in judgment) (recognizing that "individual official liability" for damages is a necessary "substitute" for "a direct remedy against the Government … [which] remains immune to suit"). In other words, the actor is only named in his individual capacity in a damages suit because the plaintiff seeks money from him personally. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949). This avoids the sovereign-immunity bar because, in theory, the liability imposed "will not require action by the sovereign or disturb the sovereign's property." *Id.* "[W]hen the suit is not one for damages but for specific relief … the court is asked to impose … compulsion against the sovereign, although nominally directed against the individual officer." *Id.* at 687-88. The officer is thus named in the caption, but the relief being sought lies in the

official conduct of the actor, so he is sued in his "official capacity." In such cases, "relief can be granted" without violating sovereign immunity when the officer's "actions are ultra vires." *Id.* at 689-90. This is because "the officer's powers are limited by [federal law]," and so "his actions beyond those limitations are considered individual and not sovereign actions," even though they are carried out under color of law. *Id.* at 689.

In the decades since *Bivens*, courts have affirmed that this cause of action against an officer in his individual capacity is limited to damages claims. *See, e.g., Abbasi*, 137 S. Ct. at 1863 (describing "*Bivens* liability" as "personal liability for damages."); *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (describing a "*Bivens* remedy" as a "freestanding remedy in damages"); *Solida*, 820 F.3d at 1093 ("*Bivens* does not encompass injunctive and declaratory relief."); *Kurzberg v. Ashcroft*, 619 F.3d 176, 179 n.2 (2d Cir. 2010) ("[I]njunctive relief [is] not … available in a *Bivens* action." (citation omitted)); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d. Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)). Several times, the Supreme Court has distinguished *Bivens* actions from equitable claims. *See, e.g., Abbasi*, 137 S. Ct. at 1858 (explaining that the *Bivens* action was created for circumstances in which "equitable remedies prove insufficient"). It has even called "injunctive relief" an "alternative" to *Bivens*, noting that "when [such] alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863.

"[U]nlike the *Bivens* remedy, … injunctive relief has long been recognized as the proper means for preventing [government actors] from acting unconstitutionally." *Corr. Servs. Corp.*, 534 U.S. at 74. Accordingly, an individual-capacity suit is "both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government." *Solida*, 820 F.3d at 1094. Equitable claims brought against government officials for allegedly violating the Constitution are properly styled as "official capacity" suits. *See Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (concluding that injunctive relief pursuant to a constitutional claim "could only be awarded against the

officers in their official capacities"); *see also Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 257 n.5 (4th Cir. 2018) (acknowledging a constitutional cause of action for injunctive relief against the President in his official capacity and distinguishing that from an impermissible action brought against an official in his individual capacity (citing *Abbasi*, 137 S. Ct. at 1862)). "Because the plaintiff[s] seek[] injunctive relief, which can be enforced only against [the office of the President], and not damages against an individual federal officer[,] … *Bivens* does not provide the plaintiff[s] an avenue for the relief [they] seek[]." *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 264 (D.D.C. 2013) (citing *Corr. Servs. Corp.*, 534 U.S at 74) (additional citations omitted).

      **2.**    **There is no *Bivens* action for violations of the Emoluments Clauses even if that disfavored remedy extends to cases in equity.**

Even if *Bivens* could theoretically support an equitable action, it would not do so here because, regardless of the remedy sought, there is no *Bivens* action available for violations of the Emoluments Clauses.[2] In the nearly fifty years since *Bivens* was decided, the Supreme Court has recognized an implied cause of action in only two other cases—both of which were decided within a decade of *Bivens*. The first involved a gender-discrimination claim for damages under the Fifth Amendment's Due Process Clause, brought against a Congressman by his female assistant. *Davis*, 442 U.S. at 248-49. The second was an Eighth Amendment claim for damages brought against federal jailers for failing to provide adequate medical treatment. *Carlson*, 446 U.S. at 24-25. Since 1980, "*Bivens* actions have been limited to only [these three] constitutional rights, and the Court has 'consistently refused to extend *Bivens* liability to any new context or new category of defendants.'" *Johnson*, 2016 WL 4593467, at *6 (quoting *Corr. Servs. Corp.*, 534 U.S. at 68); *Cioca v. Rumsfeld*, 720 F.3d 505, 510 (4th Cir. 2013) (collecting

---

[2] It is often appropriate for a court to assume the existence of a *Bivens* remedy while disposing of a case on the basis of an underlying constitutional question. *See, e.g.*, *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014). However, if the constitutional question "may have consequences that are far reaching," the more "prudent" course is for the court to dispose of the case on *Bivens* grounds. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam). That is the situation here.

cases). Thus, "[i]t is clear that expansion of a *Bivens*-based cause of action, such as *Davis* and *Carlson,* is the exception, not the rule." *Id.* In fact, "the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). There is no basis for extending that disfavored remedy to a claim against the President under the Emoluments Clauses.

> ### a.      Plaintiffs' claims are subject to a special-factors analysis because they arise in a new *Bivens* context.

The Supreme Court has foreclosed lower courts from creating individual-capacity remedies against government actors in new contexts when "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks omitted). This case presents a "new *Bivens* context," because it "is different in a [number of] meaningful way[s] from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Foremost, "the constitutional [provisions] at issue" here are unique. *Id.* The Supreme Court has never recognized a *Bivens* action for claims brought under the Emoluments Clauses, or, for that matter, *any* structural constitutional provision. Rather, *Bivens* has been strictly limited to deprivations of certain "individual rights" contained in the Bill of Rights. *Johnson*, 2016 WL 4593467, at *6-7 (rejecting a *Bivens* action brought under federal statutes). Plaintiffs allege deprivation of business profits, tax revenues, and political power—not individual constitutional rights. Am. Compl. ¶¶ 103-33.

Moreover, "the rank of the officer[] involved" in this case—the chief executive of the United States—is not the same as those of the law-enforcement agents, Congressman, and jailers involved in the Court's previous *Bivens* cases. *Abbasi*, 137 S. Ct. at 1859. And, unlike in *Bivens*, *Davis*, and *Carlson*, there is virtually no "judicial guidance as to how [the President] should respond to the problem" presented here, as these Clauses and their effects on a President's business activities have not previously been litigated. *Id.* at 1860. Finally, as discussed in detail below, there is a substantial "risk

of disruptive intrusion by the Judiciary into the functioning of other branches," as well as "the presence of potential special factors that previous *Bivens* cases did not consider." *Id.*

All of these distinctions highlight the novelty of Plaintiffs' claims. Because this case presents a new *Bivens* context, Plaintiffs' individual-capacity claims may only proceed against the President if they survive a special-factors analysis. *Id.*

> **b.**   **A *Bivens* remedy is not available because special factors counsel hesitation.**

In conducting a special-factors analysis, courts must consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858. A "special factor counselling hesitation" is anything that would "cause a court to hesitate before answering that question in the affirmative." *Id.* There are a number of reasons for this Court not just to hesitate, but to reject the extension of *Bivens* to this new setting.

First, claims under the Foreign Emoluments Clause, by their nature, involve "matters that directly affect significant diplomatic and national security concerns." *Lebron v. Rumsfeld*, 670 F.3d 540, 553 (4th Cir. 2012) (quotation omitted). Under the Constitution, foreign policy is the "prerogative of the Congress and President." *Abbasi*, 137 S. Ct. at 1861. Judicial intrusion into this "realm raises 'concerns for the separation of powers in trenching on matters committed to the other branches.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 417 (2002)). This is a factor strongly counselling deference to Congress regarding the availability of a legal remedy. *See Abbasi*, 137 S. Ct. at 1861. Indeed, Congress has acted in this area both historically, *see Gov't Mot. to Dismiss*, Doc. No. 21-1 at 45-46, and recently, *see id.* at 49-50. The Supreme Court has been reticent to "creat[e] a new judicial remedy" for alleged constitutional violations when "existing remedies" better reflect "conflicting policy considerations," even when those remedies "do not provide complete relief for the plaintiff." *Bush v. Lucas*, 462 U.S. 367, 388 (1983).

Second, this suit "implicates 'the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications.'" *Abbasi*, 137 S. Ct. at 1861 (quoting *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385 (2004)). Plaintiffs' allegations implicate confidential communications between the President and other heads of state, Am. Compl. ¶¶ 65-66 (implicating phone conversations between the President and the Taiwanese and Chinese Presidents); Doc. 101 at 5-6, 18 (implicating President's relationship and communications with the Governor of Maine), executive decisions made by his office, Am. Compl. ¶ 66 (implicating affirmation of the One-China policy); Doc. 101 at 5-6, 18 (implicating executive order concerning national monuments), and even communications within the Executive branch itself, Am. Compl. ¶ 70 (implicating communications between the President and his Press Secretary); *id.* ¶ 38 (implicating President's relationship and communications with his Treasury Secretary and Small Business Administration Administrator); *id.* ¶¶ 87-88 (implicating President's relationship and communications with the National Park Service); *id.* ¶¶ 92-94 (implicating President's relationship and communications with the State Department and U.S. embassies). Plaintiffs thus ask the Court to "interfere in an intrusive way with sensitive functions of the Executive Branch" and "would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860-61. Even the mere potential for "unintended adverse effects on national security" is a factor that counsels the Court "to hesitate before entertaining suit." *Lebron*, 670 F.3d at 555.

Third, this litigation has the potential to divert the President's attention from his official duties. That would be true even if this dispute were necessarily limited to a pure issue of law given the level of attention it would command. But Plaintiffs, to put it mildly, seek extensive discovery. *See* Tr. of Jan. 25, 2018 hearing at 40:20-23, 41:4-6, 89:15-90:9, 133:21-25, 144:4-14; *see also* 138:3-8 (making clear Plaintiffs are "not asking for jurisdictional discovery" but rather "regular discovery that proceeds after

[they] withstand the Motion to Dismiss"). Such "burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself," likewise are special factors counseling hesitation because they "prevent [the President] … from devoting the time and effort required for the proper discharge of [his] duties." *Abbasi*, 137 S. Ct. at 1860.

Fourth, and last, the challenge raised by Plaintiffs here is about "more than standard law enforcement operations." *Id.* at 1861. It concerns a novel situation involving the highest ranking executive officer in the United States and allegations regarding his relationships with foreign and domestic states. A *Bivens* action here "would assume dimensions far greater than those present in *Bivens* itself, or in either of its two follow-on cases, or indeed in any putative *Bivens* case yet to come before the Court." *Id.*

Ultimately, in considering whether to recognize a new *Bivens* cause of action, a court must ask: "who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857 (internal quotation marks omitted). As the Supreme Court has explained, the correct answer "most often will be Congress." *Id.* This case is no exception. Allowing Plaintiffs to proceed with this complex and unprecedented *Bivens* action under the Emoluments Clauses would run afoul of the Supreme Court's recent and clear instructions that "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Id.* (internal quotation marks omitted). Plaintiffs thus are foreclosed from expanding "the scope of *Bivens* liability beyond violation of the specific constitutional rights recognized by the Supreme Court." *Johnson*, 2016 WL 4593467, at *7.

## III.    The President Has Absolute Immunity.

Even if Plaintiffs had a viable Emoluments Clause claim, the doctrine of absolute immunity nevertheless requires dismissal of this action against the President in his individual capacity. When it applies, absolute immunity shields a government official from litigation against him in his individual

capacity. *See Imbler v. Pachtman*, 424 U.S. 409, 418-19 (1976); *Lewis*, 137 S. Ct. at 1291 ("An officer in

an individual-capacity action ... may be able to assert *personal* immunity defenses, such as, for example,

absolute prosecutorial immunity in certain circumstances."); *see also, e.g., Cady v. Arenac Cty.*, 574 F.3d

334, 342 (6th Cir. 2009); *Polidi v. Bannon*, 226 F. Supp. 3d 615, 620 (E.D. Va. 2016). "The purpose of

conferring absolute immunity is to protect officials not only from ultimate liability but also from all

the time-consuming, distracting, and unpleasant aspects of a lawsuit, including discovery." *District of

Columbia v. Jones*, 919 A.2d 604, 611 (D.C. 2007). It follows, then, that "absolute immunity defeats a

suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler*, 424

U.S. at 419 n.13. That is the only way, after all, "to spare the official the tribulation and expense of

defending the suit at all." *Chang v. United States*, 246 F.R.D. 372, 374 (D.D.C. 2007).

The Supreme Court has broadly applied absolute immunity to foreclose civil suits against the

President in his individual capacity for actions taken while in office. *See Nixon v. Fitzgerald*, 457 U.S.

731, 748-56 (1982). As the Court explained, the reasons underlying absolute immunity apply with

special force when a private litigant seeks to impose personal liability on the President for actions

taken once assuming Office. *Id.* The President is the quintessential official "whose special functions

or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807

(1982). Absolute immunity ensures that the President can focus on carrying out the obligations of his

Office without the distraction of virtually limitless litigation whose risks he would personally bear. *See

Nixon*, 457 U.S. at 751-53.

In *Nixon*, the Court explained that absolute presidential immunity is warranted by historical

tradition and functional considerations that are grounded in the President's "unique position in the

constitutional scheme." *Id.* at 749. Historically, several of the leading lights at the Nation's founding

(and in the decades thereafter) insisted that the President must be immune from constant judicial

scrutiny so that he may concentrate on the task of governing. *Id.* at 750 n.31. The passage of time has

only heightened these concerns, as the President holds "supervisory and policy responsibilities of utmost discretion and sensitivity" concerning "matters likely to arouse the most intense feelings." *Id.* at 750, 752 (internal quotation marks omitted). The President's prominence makes him "an easily identifiable target," yet the public interest demands that he be able "to deal fearlessly and impartially with the duties of his office." *Id.* at 752-53 (internal quotation marks omitted). Presidential immunity guards against "this personal vulnerability" of the President, *id.* at 753, with respect to not just his "particular functions," but also his official responsibilities more generally, *id.* at 755-56.

In *Nixon* itself, the Supreme Court held President Nixon absolutely immune from potential liability arising from his firing of a government whistleblower. *See id.* at 734-41, 756-57. The Court pointedly rejected the argument that President Nixon was not entitled to immunity because, according to the whistleblower, the President's decision to fire him violated a federal statute and thus fell outside the lawful bounds of the Office. It was enough, in the Court's view, that the whistleblower's firing fell "within the outer perimeter of [the President's] authority"—namely, oversight of the Executive Branch. *Id.* at 757. For that reason, President Nixon was absolutely immune from personal liability based on the firing. *Id.*

Although this case arises in a different context, it implicates the same concerns that warranted absolute presidential immunity in *Nixon*.[3] Plaintiffs are attempting to premise individual liability not on generally applicable laws that would apply to President Trump and others regardless of whether he is serving as President, but on a purported legal principle that is triggered only because of his Office.

---

[3] The doctrine of absolute presidential immunity addressed in *Nixon* is different from the temporary presidential immunity addressed in *Clinton v. Jones*, 520 U.S. 681 (1997). In *Jones*, President Clinton argued that he was temporarily immune, during his time in office, from claims regarding conduct that predated his Presidency. That notion of temporary presidential immunity is not relevant here because this case, unlike *Jones*, does not involve potential liability for conduct that predated the President election and that is "unrelated to any of [the President's] official duties." *Id.* at 686; *see* Doc. 90-1 at 2.

As noted above, Plaintiffs' theory of liability depends on him exercising the official duties of the Presidency. *See* Doc 90-1 at 2 (asserting that the "defendant's conduct is illegal by virtue of the fact that he is President") (citation and quotations omitted). By necessity, Plaintiff thus concede they had no claim until the President took the oath of Office and was sworn in. Plaintiffs, in other words, seek to impose individual liability on the President precisely because he became, and remains, the President of the United States.

Given the concerns that animate the doctrine, that is a sufficient basis for recognizing absolute immunity. Just as the President should not have to fear that individuals will hold him personally liable for what he ultimately decides to do as President, neither should he have to fear individual liability simply because he is President. The concerns animating *Nixon* are at their apex in these circumstances. Because the President constantly makes decisions on policy "matters likely to arouse the most intense feelings" and is "an easily identifiable target," 457 U.S. at 752-53, permitting lawsuits that complain only of conduct that would be lawful but for the President's position would be a recipe for politically motivated litigation. It is "this personal vulnerability" that the doctrine of absolute presidential immunity was designed to neutralize. *Id.* at 753. If Plaintiffs want to sue the President for acts taken while in office, they must sue him in official capacity. *See supra* at 14-17. But he is absolutely immune from any suit, including this one, seeking to impose individual liability premised on his assumption of the Presidency itself.[4]

---

[4] The applicability of absolute presidential immunity in this case is not affected by the fact that Plaintiffs, unlike the plaintiff in *Nixon*, seek declaratory and injunctive relief rather than damages. Of course, this immunity issue only arises if the Court recognizes a *Bivens* action for equitable relief under the Emoluments Clauses. Were the Court to take that bold step, however, the reasons animating absolute immunity would apply here too. Civil suits for equitable relief, no less than those for damages, are time-consuming and distract the President from his official duties. *Cf. Miss. v. Johnson*, 71 U.S. 475, 501 (1867); *see supra* at 23-24.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice as to the President in individual capacity.

Respectfully submitted,

*/s/ William S. Consovoy*
William S. Consovoy (No. 20397)
Thomas R. McCarthy
Bryan K. Weir
Caroline A. Cook
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Suite 700
Arlington, VA 22201
T: (703) 243-9423
F: (703) 243-8696
will@consovoymccarthy.com

Patrick N. Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
T: (617) 227-0548

May 1, 2018                                   *Attorneys for Defendant in his individual capacity*

**CERTIFICATE OF SERVICE**

I certify that on May 1, 2018, I electronically filed this document with the Clerk of Court for the U.S. District Court for the District of Maryland using the CM/ECF system, which will send notification of the filing to all counsel.

*/s/ William S. Consovoy*
William S. Consovoy

*Attorney for Defendant in his individual capacity*