# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

|  |  |
|---|---|
| THE DISTRICT OF COLUMBIA and THE STATE OF MARYLAND, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America, and in his individual capacity, <br><br> *Defendants*. | No. 8:17-CV-01596-PJM |

---

**BRIEF FOR SCHOLAR SETH BARRETT TILLMAN AND THE JUDICIAL EDUCATION PROJECT AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY WITH RESPECT TO MOTION TO DISMISS ON BEHALF OF DEFENDANT IN HIS INDIVIDUAL CAPACITY**

---

Robert W. Ray, Esq.
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, New York 10022
Tel. (212) 751-3347
robert.ray@tklaw.com
*Co-Counsel for Amicus Curiae Scholar Seth Barrett Tillman*

Carrie Severino, Esq.
Judicial Education Project
722 12th St., N.W., Fourth Floor
Washington, D.C. 20005
Tel. (571) 357-3134
carrie@judicialnetwork.com
*Counsel for Amicus Curiae Judicial Education Project*

Josh Blackman, Esq.
1303 San Jacinto Street
Houston, Texas 77002
Tel. (202) 294-9003
Josh@joshBlackman.com
*Counsel of Record for Amicus Curiae Scholar Seth Barrett Tillman*

Jan I. Berlage, Esq.
Gohn Hankey & Berlage LLP
201 North Charles Street
Suite 2101
Baltimore, Maryland 21201
Tel. (410) 752-1261
JBerlage@ghsllp.com
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ............................................................................................. 1

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.      The Foreign and Domestic Emoluments Clauses, Unlike Most Provisions in the
Constitution, Can Control the Private Conduct of Office-Holders .................................... 2

      A.      Generally, the Constitution Only Limits Official Actions Taken by Office-
Holders .................................................................................................................... 3

      B.      The 13th and 21st Amendments Control Both Official and Private Conduct of
Office-Holders ........................................................................................................ 4

      C.      The Foreign Emoluments Clause Controls an Office-Holder's Official and
Private Conduct, and Could Be Litigated Through Official-Capacity or
Individual-Capacity Claims .................................................................................... 6

      D.      The Domestic Emoluments Clause Controls the President's Official and
Private Conduct, and Could Be Litigated Through Official-Capacity or
Individual-Capacity Claims .................................................................................... 9

II.     The Plaintiffs' Amended Complaint Only Concerns Private Conduct, So It Cannot
Be Litigated by Means of an Official-Capacity Claim Against the President .................. 12

III.    Even if the Amended Complaint is Properly Pleaded Against the President in His
Individual Capacity, the Absence of an Implied Cause of Action Requires its
Dismissal ........................................................................................................................ 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

Brooks v. Arthur,
   626 F.3d 194 (4th Cir. 2010) ................................................................................. 1, 3

Civil Rights Cases,
   109 U.S. 3 (1883) .................................................................................................... 4

Clinton v. Jones,
   520 U.S. 681 (1997) ................................................................................................ 13

Foreman v. Unnamed Officers of the Fed. Bureau of Prisons,
   Civ. A. No. DKC 09-2038, 2010 WL 4781333 (D. Md. Nov. 17, 2010) ................................ 12

Hafer v. Melo,
   502 U.S. 21 (1991) ......................................................................................... 4, 12, 13

Higazy v. Templeton,
   505 F.3d 161 (2d Cir. 2007) ................................................................................... 12

Jesner v. Arab Bank, PLC,
   No. 16-499, --- S. Ct. ----, 2018 WL 19146635 (2018) .......................................... 15

Kentucky v. Graham,
   473 U.S. 159 (1985) ................................................................................................ 12

Larson v. Domestic & Foreign Commerce Corp.,
   337 U.S. 682 (1949) .................................................................................................. 4

Lewis v. Clarke,
   137 S. Ct. 1285 (2017) ........................................................................................... 13

McDonnell v. U.S.,
   136 S. Ct. 2355 (2016) ...................................................................................... 10, 11

Monell v. N.Y.C. Dep't of Soc. Servs.,
   436 U.S. 658 (1978) ................................................................................................ 12

Nixon v. Fitzgerald,
   457 U.S. 731 (1982) ................................................................................................ 13

Powell v. McCormack,
   395 U.S. 486 (1969) .................................................................................................. 8

Rodearmel v. Clinton,
   666 F. Supp. 2d 123 (D.D.C. 2009) ........................................................................ 8

Ross v. Meese,
   818 F.2d 1132 (4th Cir. 1987) ........................................................................ 12

Solida v. McKelvey,
   820 F.3d 1090 (9th Cir. 2016) ........................................................................ 12

United States v. Burr,
   25 F. Cas. 30 (C.C.D. Va. 1807) ..................................................................... 13

Will v. Mich. Dep't of State Police,
   491 U.S. 58 (1989) .......................................................................................... 13

Zivotofsky v. Kerry,
   135 S. Ct. 2076 (2015) .................................................................................... 15

**Constitutional Provisions**

U.S. Const. amend. XIII ......................................................................................... 4

U.S. Const. amend. XXI ......................................................................................... 5

U.S. Const. art. I, § 5 .............................................................................................. 8

U.S. Const. art. I, § 6, cl. 2 ............................................................................... 8, 12

U.S. Const. art. I, § 9, cl. 8 .................................................................................... 6

U.S. Const. art. II, § 1, cl. 7 ................................................................................... 9

U.S. Const. art. II, § 4 .......................................................................................... 10

**Other Authorities**

Amended Complaint, Dkt. No. 95 ......................................................................... 10

*Amici's* Corrected Response, Dkt. No. 77 ............................................................. 3

Blumenthal v. Trump, Civ. A. No. 1:17-cv-01154-EGS (D.D.C. April 30, 2018) (Sullivan,
   J.), Dkt. No. 50, 2018 WL 2042238 .................................................................. 6

Josh Blackman & Seth Barrett Tillman, *The Emoluments Clauses Litigation, Part 8*, The
   Volokh Conspiracy (Feb. 8, 2018), perma.cc/YUV6-Y5AV ................................... 15

Kimberly Breedon & A. Christopher Bryant, *Considering a Constructive Trust as a Remedy
   for President Trump's Alleged Violations of the Foreign Emoluments Clause*, 9
   ConLawNOW 111 (2018) ................................................................................. 13

Laurence H. Tribe, *How to Violate the Constitution Without Really Trying: Lessons from the Repeal of Prohibition to the Balanced Budget Amendment*, 12 CONST. COMM. 217 (1995) ................................................................... 4

Laurence Tribe & Joshua Matz, *To End A Presidency: The Power of Impeachment* 33 (2018) .. 10

Letter from *Amici*, Dkt. No. 88, 2018 WL 1128948 (Jan. 29, 2018)........................................... 15

Martin A. Schwartz, Sec. 1983 Litig. Claims & Defenses § 6.05 (2018).................................... 12

Motion to Dismiss on Behalf of Defendant in his Individual Capacity, Dkt. No. 112-1 ...... passim

Plaintiffs' Supplemental Memorandum, *Blumenthal v. Trump*, Civ. A. No. 1:17-cv-01154-EGS (D.D.C. April 30, 2018) (Sullivan, J.), Dkt. No. 50, 2018 WL 2042238................ 6, 7, 12

Sheri Dillon *et al.*, *Morgan Lewis LLP White Paper, Conflicts of Interest and the President* 2 (Jan. 11, 2017), https://perma.cc/B8BU-X4U3 .................................................................. 14

Statement of Interest, Dkt. No. 100 .............................................................. 3, 7, 13, 14

Tillman and JEP Brief, Dkt. No. 27-1 .............................................................. 7, 9, 15

Tr. of Jan. 25, 2018 Hearing ............................................................................. 3

## INTEREST OF *AMICI CURIAE*

"Defendant Donald J. Trump, President of the United States," that is the Defendant in his individual capacity, has "move[d] to dismiss the Amended Complaint with prejudice, as it relates to him in his individual capacity."[1] The individual-capacity Defendant argues that Plaintiffs should *exclusively* plead this action as an official-capacity claim. *Amici* agree with the individual-capacity Defendant that the claims against the President in his individual capacity should be dismissed. However, contrary to the arguments of the individual-capacity Defendant, the claims in this case brought under the Emoluments Clauses cannot be pleaded against the President in his official capacity. The two issues are doctrinally related and inextricably linked; they need to be considered together. As a result, this brief is styled as an amicus brief in support of *neither* party.

## PRELIMINARY STATEMENT

The Plaintiffs' Amended Complaint alleges that the President is violating the Foreign and Domestic Emoluments Clauses in both his official and individual capacities.[2] Counsel for Defendant in his official capacity (hereinafter "DOJ") and counsel for Defendant in his individual capacity (hereinafter "Defendant Trump") both maintain that claims brought under the Emoluments Clauses can *only* be litigated against the President in his official, and not individual, capacity. While as a general matter the Constitution limits official action taken by office-holders, the Emoluments Clauses, as well as the 13th and 21st Amendments, are exceptions. These provisions control both the official conduct, as well as the private or individual conduct, of an officeholder. Depending on the circumstances, violations of these provisions could be litigated through official or individual-capacity claims. Ensuring that claims are properly pleaded is crucial in three important respects.

---

[1] Motion to Dismiss on Behalf of Defendant in his Individual Capacity at 1, Dkt. No. 112-1.

[2] Though there is only one President, *Amici* refer to the Defendants, plural, because the official-capacity Defendant (hereinafter "DOJ") and the individual-capacity Defendant (hereinafter "Defendant Trump") are in fact "two separate identities" for purposes of this litigation, and "are not in privity with one another for purposes of res judicata." Brooks v. Arthur, 626 F.3d 194, 201–02 (4th Cir. 2010).

First, unlike with official-capacity actions, individual-capacity actions can only proceed if Congress or the Judiciary created a cause of action. Second, different defenses and immunities are available for official-capacity actions, that are not available for individual-capacity actions. Finally, official-capacity claims (if they should prevail) are limited to injunctive relief—not so, for individual-capacity claims. These three distinct inquiries—which Defendants attempt to conflate—turn on how a claim is pleaded.

Because the facts in the Amended Complaint only concern private conduct, which does not implicate policies or property of the federal government, the official-capacity claims must be dismissed. While the individual-capacity claims are properly pleaded, these claims must also be dismissed due to the absence of any statutory or implied constitutional cause of action.

## ARGUMENT

### I.    The Foreign and Domestic Emoluments Clauses, Unlike Most Provisions in the Constitution, Can Control the Private Conduct of Office-Holders

As a general matter, the Constitution only limits official action taken by office-holders. There are exceptions, however. The 13th Amendment prohibits a government official from enslaving a person, regardless of whether the action is taken pursuant to a government policy or by using government property. Likewise, the 21st Amendment prohibits government officials from transporting alcohol into a prohibitionist state, regardless of whether the action is taken pursuant a government policy or by using government property. Where these constitutional torts are justiciable, and are committed by government officials, depending on the facts, plaintiffs could sue those government officials in their official or individual capacities.

A similar analysis applies to the Foreign and Domestic Emoluments Clauses. Both provisions control official and private conduct; that is certain government officials' accepting or receiving emoluments, regardless of whether the action is taken pursuant to a government policy

or by using government property. As a result, were violations of these provisions justiciable, depending on the facts, plaintiffs could sue those officials in their official or individual capacities.

### A.      Generally, the Constitution Only Limits Official Actions Taken by Office-Holders

During oral arguments, the Court questioned whether this lawsuit was properly pleaded as an "official capacity" action. The Court was right to do so. The Court recognized that this case has "nothing" to do with the Defendant's "performance of his duties as President."[3] The Court also noted that Plaintiffs' Complaint only concerns "somebody who is personally benefiting as a private owner of a business," which has "nothing do to with his performance of his duties as president."[4] Notwithstanding these uncontroverted facts,[5] both Defendant Trump and the DOJ insist that this Court is mistaken.[6] DOJ maintained that "the Emoluments Clauses do not even apply to the President in his individual capacity."[7] Defendant Trump stated that "Emoluments Clauses violations, can occur only by virtue of the person holding federal office and exercising those official duties."[8] Defendants are correct in that, as a general matter, the Constitution limits official actions taken by office-holders. That analysis, however, does not squarely apply to the 13th and 21st Amendments, nor to the Foreign and Domestic Emoluments Clauses.

---

[3] Tr. of Jan. 25, 2018 Hearing at 28:16–18.

[4] *Id.*

[5] *Amici's* Corrected Response, Dkt. No. 77, at 2 (explaining that "the conduct the Plaintiffs complain about consists *entirely* of personal commercial relationships that purportedly violate the Constitution's Foreign and Domestic Emoluments Clauses; specifically, that Donald Trump is accepting or receiving money in the form of distributions from LLCs and corporations which he owns (and/or controls) in whole or in part.").

[6] Motion to Dismiss, *supra* note 1, at 14–15 ("Respectfully, then, the Court's suggestion that this dispute has 'nothing' to do with the Defendant's 'performance of his duties as president' was mistaken."); Statement of Interest at 5, Dkt. No. 100 ("That is, contrary to the Court's prior suggestion, the President's compliance with the Emoluments Clauses is part of his official duties, and any alleged noncompliance necessarily would be in the President's official capacity.").

[7] Statement of Interest, *supra* note 6, at 5.

[8] Motion to Dismiss, *supra* note 1, at 14.

### B.     The 13th and 21st Amendments Control Both Official and Private Conduct of Office-Holders

In certain instances, the Constitution controls not only official conduct, but can also restrict private conduct. Two decades ago, Professor Laurence H. Tribe identified two such provisions.[9] The first exception is the 13th Amendment, which declares that "slavery" shall not "exist within the United States."[10] Unlike the 14th Amendment, this blanket prohibition on slavery does not impose a state-action requirement.[11] If a federal or state officer enslaves a person under a government policy, he violates the 13th Amendment in his *official* capacity.[12] This is so even if—*especially* if—that policy was unlawful. Likewise, if a federal officer enslaves a person using government property, he violates the 13th Amendment in his *official* capacity.[13] These constitutional torts arise in connection with wrongdoing by the officer. Legal challenges to such violations must be filed against the officer in his official capacity.

By contrast, a federal or state officer could enslave a person without regard to any government policy, or without making use of government property. That is, he does so in his own home, with his own resources. Doing so would still violate the 13th Amendment, but in his *individual*, and not *official* capacity. Here, the officer personally commits a constitutional tort. He is, however, not acting for the sovereign in carrying out a government policy, nor did his actions make use of government property. In these circumstances, a lawsuit against the office or the government makes no sense. Rather, the officer should be sued in his individual capacity for what is, in effect,

---

[9] Laurence H. Tribe, *How to Violate the Constitution Without Really Trying: Lessons from the Repeal of Prohibition to the Balanced Budget Amendment*, 12 CONST. COMM. 217, 220 (1995).

[10] U.S. Const. amend. XIII.

[11] *See* The Civil Rights Cases, 109 U.S. 3 (1883).

[12] *See* Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" *must have played a part* in the violation of federal law.'" (citations omitted) (emphasis added)).

[13] *See* Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687 (1949) (noting that unlike claims brought against an "agent's personal actions," claims brought against the sovereign will "require action by the sovereign or *disturb the sovereign's property*" (emphasis added)).

a private constitutional tort. Here relief will run against the wrongdoer, who happens to be an officer, and not against the government itself.

Professor Tribe also identified a second constitutional provision that controls both official and private conduct: the 21st Amendment states that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, *in violation of the laws thereof, is hereby prohibited*."[14] That is, a violation of a state's prohibition laws is a violation of the Constitution. This analysis applies to the population generally, and equally to government officials. Imagine that Maryland prohibits the importation of intoxicating liquors. In response, two different Virginia mayors transport alcohol into Maryland in two different, but equally unlawful ways. In the first scenario, the Mayor of Charlottesville distills alcohol in City Hall, and, pursuant to an unconstitutional city policy, he ships the liquor from Virginia into Maryland using the city's vehicles. The mayor's actions violate the 21st Amendment, and his violation was in his official capacity. In the second scenario, the Mayor of Arlington brews beer in his bathtub at home and transports the beer into Maryland in his private vehicle. This mayor's actions also run afoul of the 21st Amendment, but here the violation is in the mayor's individual capacity. Both mayors violated the Constitution's 21st Amendment, but only the former violation could be challenged through an official-capacity lawsuit.

Nothing about the capacity analysis hinges on whether Marylanders are purchasing the mayoral moonshine in order to generate goodwill with the Virginia politicians. Even if a Baltimore bar unlawfully purchased the Arlington Mayor's home-brewed booze to curry favor with him or with the Virginia state government, or with both, any civil claim challenging such transactions

---

[14] U.S. Const. amend. XXI (emphasis added).

would remain an individual-capacity action. Such a claim could not be brought as an official-capacity action.

Though Professor Tribe identified "only" two ways in which private conduct can run afoul of the Constitution, the Foreign and Domestic Emoluments Clauses are, in *Amici's* view, a third and fourth way. Indeed, the plaintiffs in a parallel Emoluments Clauses-related lawsuit observed that the "Foreign Emoluments Clause," and we would add, the Domestic Emoluments Clause, are "*unusual* in regulating the *private* conduct of federal officials."[15] The Foreign and Domestic Emoluments Clauses differ from the 13th and 21st Amendment in one important respect: while the latter two apply to all Americans, the former two are only triggered by people holding specific offices or positions in the federal government. But, once triggered, they operate in the same fashion: each provision controls *both official* and *private* conduct. And, depending on the facts of a given case, *both* provisions could be litigated through official and/or individual-capacity claims.

C.   **The Foreign Emoluments Clause Controls an Office-Holder's Official and Private Conduct, and Could Be Litigated Through Official-Capacity or Individual-Capacity Claims**

The Foreign Emoluments Clause provides that those holding "office . . . under the [United States]" cannot "accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State" "without the Consent of the Congress."[16] This clause can be violated in an office-holder's official or individual capacity. For example, the Secretary of State violates the Foreign Emoluments Clause in his official capacity if he publicly "accept[s]" emoluments from a foreign state pursuant to a federal government policy—perhaps one laid down by the

---

[15] Plaintiffs' Supplemental Memorandum at 36 n.14, *Blumenthal v. Trump*, Civ. A. No. 1:17-cv-01154-EGS (D.D.C. April 30, 2018) (Sullivan, J.), Dkt. No. 50, 2018 WL 2042238, http://bit.ly/2juoce4 (emphases added).

[16] U.S. Const. art. I, § 9, cl. 8. Because, in *Amici's* view, the President is not covered by this clause and its operative *Office*-language, the foregoing analysis will consider the Secretary of State, who, all agree, is bound by this constitutional provision.

President—even if the policy were unlawful. He likewise violates the Foreign Emoluments Clause in his official capacity if the Secretary uses federal government property to commit the constitutional tort: i.e., the act of *accepting* the emoluments.

On the other hand, if the Secretary privately "accept[s]" emoluments from a foreign state without regard to any government policy, and without using federal government property in order to accept the emoluments, then he violates the Foreign Emoluments Clause in his individual capacity. For example, imagine if the Secretary of State opens up a lemonade stand outside of his home. A foreign diplomat pays the Secretary to make him a glass of lemonade at a cost of $1,000,000.[17] Because the Secretary's *acceptance* of the payment did not make use of any government property, nor was it *accepted* pursuant to a federal government policy, it could not be challenged as an official-capacity action. The purported constitutional tort that violates the Foreign Emoluments Clause is the Secretary's *accepting* the purported emoluments, not his making lemonade or delivering it to a foreign diplomat. If such a case were justiciable—for example, if Congress created a statutory cause of action—a court could order disgorgement of the $1,000,000 as a remedy. The United States as sovereign could not provide any remedy, because it had no role in the constitutional violation. Indeed, the United States could have no role in this remedy because it would not control the account in which the funds were deposited.

DOJ offers one contrary example: in "a challenge to a Senator's noncompliance with the constitutional requirement that he or she be 'an Inhabitant of that State in which he shall be cho-

---

[17] *Amici* do not concede that such a commercial transaction would create "emoluments" for purposes of the Emoluments Clauses. Tillman and JEP Brief, Dkt. No. 27-1, at 24–30.

sen,'" the "real party in interest in that circumstance would be the Senator in his official capacity."[18] This is so, DOJ explains, "even if the alleged injuries had stemmed from the Senator's personal choice to have an out-of-state residence."[19] This argument does not pass muster, because the purported violation is not a constitutional tort. The decision of a Senator to reside in a different state does not, by itself, violate the Constitution. Rather, the legal consequences, if any, of a Senator's decision to live elsewhere is a matter for the Senate to resolve. That body is the "Judge of the Elections, Returns and *Qualifications* of its own Members," and it can pass judgment on a Senator's residency.[20] The Supreme Court recognized that claims concerning a Senator's constitutionally-determined qualifications, such as inhabitancy, are not subject to judicial review.[21] It is a non sequitur how such a complaint or claim should be pleaded in an Article III court because it is a non-justiciable political question.

For another purported contrary example, Defendant Trump cites the Ineligibility Clause.[22] In *Rodearmel v. Clinton*, a foreign service officer challenged Hillary Clinton's appointment as Secretary of State, because, while as Senator, she voted to increase the emoluments (i.e., salary) of the office to which she was subsequently appointed.[23] According to Defendant Trump, this suit could *only* proceed against Secretary Clinton in her "official capacity as Secretary of State."[24] The *Rodearmel* court, which dismissed the complaint because the Plaintiff lacked standing, did not

---

[18] Statement of Interest, *supra* note 6, at 4. *See also* Motion to Dismiss, *supra* note 1, at 16. Plaintiffs in a parallel Emoluments Clauses-related lawsuit advanced this same argument. *See* Plaintiffs' Supplemental Memorandum, *supra* note 15, at 36 n.14.

[19] Statement of Interest, *supra* note 6, at 4.

[20] U.S. Const. art. I, § 5 (emphasis added).

[21] Powell v. McCormack, 395 U.S. 486, 552 (1969) (Douglas, J., concurring) ("Contests may arise over whether an elected official meets the 'qualifications' of the Constitution, in which event the *House is the sole judge*." (emphasis added)).

[22] Motion to Dismiss, *supra* note 1, at 16 (quoting U.S. Const. art. I, § 6, cl. 2 ("No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been [i]ncreased during such time.")).

[23] Rodearmel v. Clinton, 666 F. Supp. 2d 123, 126 (D.D.C. 2009).

[24] *Id.* at 125–126.

opine on whether the complaint was properly pleaded as an official- or individual-capacity complaint.[25] Assuming the case was properly pleaded as an official-capacity complaint, it is still inapposite because Rodearmel's complaint did not concern any private conduct, much less any conduct analogous to the conduct alleged in the Amended Complaint against Defendant Trump. Neither the inhabitancy requirement of Article I, nor the Ineligibility Clause, supports the Defendants' position. Indeed, it is telling that *both* Defendants can only point to non-justiciable claims that are generalized grievances against the federal government in order to counter *Amici's* arguments related to capacity.

> ### D. The Domestic Emoluments Clause Controls the President's Official and Private Conduct, and Could Be Litigated Through Official-Capacity or Individual-Capacity Claims

The Domestic Emoluments Clause provides that the President "shall not receive . . . any other Emolument from the United States, or any of" the states.[26] The President can violate this provision in his official or individual capacity. For example, if the President publicly "receive[s]" proscribed emoluments from a state pursuant to a federal government policy, or if the President uses federal government property in order to receive the emolument, he violates the Domestic Emoluments Clause in his official capacity.

On the other hand, if the President, privately "receive[s]" proscribed emoluments from a state without regard to any federal government policy, and without using federal government property, then he violates the Domestic Emoluments Clause in his individual capacity. Consider another hypothetical: the President opens up a lemonade stand outside of his private vacation home in Florida. A state legislature pays the President to make lemonade for its members at a cost of

---

[25] *Id.*
[26] U.S. Const. art. II, § 1, cl. 7.

$10,000,000.[27] In this scenario, the purported constitutional tort that violates the Domestic Emol-uments Clause is the President's *receiving* the emoluments, and not his making lemonade or de-livering it to the members. The capacity determination does not hinge on whether the payment is made on the sidewalk outside his vacation home, by electronic wire transfer, or even by a check mailed to the White House. If the President's act of *receiving* these profits was not facilitated by any federal government policy or property, then payment for the lemonade could not be challenged in court as an official-capacity action.[28] The payment could *only* be challenged through an indi-vidual-capacity action. If such a case were justiciable—for example, if Congress created a private cause of action—a court could order disgorgement of the $10,000,000 as a remedy, even for pay-ments not yet made. The United States as sovereign could not provide any remedy, because its policies and property had no role in the constitutional violation. Indeed, the United States could have no role in this remedy because it would not control the account in which the funds were deposited.

This conclusion is not changed if the payments were motivated by the clout of the Presi-dent's position. The capacity analysis with respect to the Emoluments Clauses does not hinge on whether the donor's motive for giving the purported emoluments was to enjoy future benefits or good will from the President. The fact that the President would not have received the emoluments but for his being President does not turn an individual-capacity constitutional violation into an

---

[27] *Amici* do not concede that such a commercial transaction would create "emoluments" for purposes of the Emolu-ments Clauses. Tillman and JEP Brief, *supra* note 17, at 24–30.

[28] For this reason, Plaintiffs' allegations concerning profits derived from the Trump International Hotel, *see* Am. Compl., Dkt. No. 95, at ¶¶ 80–88, are irrelevant. The purported constitutional tort is receiving payments, not providing hospitality services at the Hotel. The Amended Complaint makes no allegations that the Defendant uses any govern-ment property in the process of receiving such profits. Apparently, under the terms of the lease, the Hotel is not government property, but is property of the Trump Organization. Even if that real estate generates profits due to a lease with the General Services Administration, the President's *receipt* of those profits is not a consequence of any federal policy.

official-capacity claim.[29] The reason is simple: official-capacity claims are tied to the office-holder's conduct, not the counter-parties' behavior or motives. Where the officeholder's wrong-doing does not conform to any official policy and where he makes no use of government property in committing the constitutional tort, then the wrongdoer's conduct cannot be ascribed to his office or to the sovereign. As a result, no official-capacity claim may be pleaded, and only an individual-capacity action is possible. Situations involving past or future purported constitutional torts by officials, not tied to government policy and property, are, at most, individual-capacity suits.

Defendant Trump is correct that the Domestic Emoluments Clause *only* applies to the President "by virtue" of the fact that he is President. That is, taking the oath of office triggers the prohibitions against the receipt of certain emoluments. *Amici* agree with the Defendant that "[h]ad the President not been elected, and thereby assumed the duties of that office, no claim would lie against him under the Emoluments Clauses."[30] Respectfully, however, that is not "the end of the matter."[31] The *trigger* only determines who the clause applies to. It does not determine whether the claim should be pleaded as an official- or individual-capacity action. Rather, the capacity determination turns on whether the President uses federal government policy or property to commit the constitutional tort. The $10,000,000 lemonade contract, for example, implicates neither, and so it could only be challenged (if at all) via an individual-capacity claim. The fact that the Domestic

---

[29] However, such goodwill and such expectations by donors might be evidence why such purported emoluments were paid. In another forum, the donor's intent might be especially relevant to determining if a particular "emolument" is, in reality, a "bribe" prohibited by the Impeachment Clause. *See* U.S. Const. art. II, § 4. Congress may have independent constitutional authority to make this determination, even if it falls short of the Supreme Court's stringent definition of "quid pro quo corruption." *See* McDonnell v. U.S., 136 S. Ct. 2355, 2372–73 (2016); *see also* Laurence Tribe & Joshua Matz, *To End A Presidency: The Power of Impeachment* 33 (2018) (noting in regard to the Domestic Emoluments Clause, "By writing bribery into the Impeachment Clause, they ensured that the nation could expel a leader who would sell out its interests to advance his own.").

[30] Motion to Dismiss, *supra* note 1, at 21.

[31] *Id.*

Emoluments Clause in particular applies exclusively to the President does not convert all such purported wrongs under that clause to official-capacity claims.

## II.   The Plaintiffs' Amended Complaint Only Concerns Private Conduct, So It Cannot Be Litigated by Means of an Official-Capacity Claim Against the President

The analysis in Part I demonstrates that claims brought under the Emoluments Clauses must be pleaded differently based on the alleged facts at issue. If the federal officer accepted the purported illegal emoluments pursuant to some formal or informal Executive Branch policy, then the federal officer could be sued in an official capacity. Likewise, if the act of accepting or receiving the purported illegal emoluments made use of federal government property, then the federal officer could also be sued in his official capacity. Otherwise, the federal officer can only be sued (if at all) in his individual capacity. Based on the facts alleged in the Plaintiffs' Amended Complaint, there is no official conduct at issue. Rather, the President's acceptance and receipt of purported prohibited emoluments does not make use of any government policy or property. Thus, the sovereign is not the real party in interest. Plaintiffs' allegations cannot be properly pleaded as "official capacity" suits.

Both Defendants counter that, regardless of the facts pleaded, that nature of the remedy sought—in this case an injunction, rather than damages—determines how the complaint should be pleaded.[32] This analysis puts the cart before the horse. *Hafer v. Melo* recognized that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" *must* have played a part in the violation of federal law.'"[33]

---

[32] Motion to Dismiss, *supra* note 1, at 15–16. *See also* Plaintiffs' Supplemental Memorandum, *supra* note 15, at 36 ("[T]he choice between an official- or personal-capacity suit depends on whether injunctive relief or damages are being sought. It does not depend on whether the constitutional violation arises out of the defendant's performance of his job duties.").

[33] 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978))). *See also* Martin A. Schwartz, Sec. 1983 Litig. Claims & Defenses § 6.05 (2018) ("In a personal-capacity suit, a plaintiff need not show a connection to a *governmental policy or custom*; officials sued personally, however, may assert common-law immunity defenses." (emphasis added)).

Here, the key word is *must*. Where "the entity's policy or custom" did not "play[] a part in the violation of federal law,"[34] then the complaint cannot be pleaded against the officer in his *official* capacity.[35] Rather, such a claim can only be brought (if at all) as an individual-capacity suit. Furthermore, the mere fact that a plaintiff seeks injunctive relief, rather than damages, does not preclude an individual-capacity claim.[36] *Hafer* recognized "that the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.'"[37]

Even on the Defendants' own terms, this remedy-based analysis falters. DOJ's statement of interest, for example, explains that an injunction against the President "would indeed 'require action by the sovereign,' assuming that separation-of-powers principles would not otherwise bar that relief."[38] What action would have to be taken by the United States as sovereign? DOJ posits that "[t]he President, as the holder of the Office of the President, would need to ensure compliance with the Emoluments Clauses, and his conduct as such would need to conform to any appropriate injunctive relief."[39] This explanation, with all due respect, avoids the critical question. Not everything done by a federal official constitutes "action by the sovereign." For example, a judgment against the Secretary of State's lemonade stand would not require any "action by the sovereign."

---

[34] *Hafer*, 502 U.S. at 25 (quotation marks omitted).

[35] For purposes of §1983, *Hafer* rejected a claim for damages against a state officer, because such a suit would be "no different from a suit against the State itself." *Id.* at 27. In this context, the Court explained, "the capacity in which the officer inflicts the alleged injury" was irrelevant, because the state itself was the real party in interest, and could not be forced to pay damages. *Id.*

[36] In the Fourth Circuit, for example, injunctive relief is available for a *Bivens* action. *See, e.g.*, Foreman v. Unnamed Officers of the Fed. Bureau of Prisons, Civ. A. No. DKC 09-2038, 2010 WL 4781333, at *2–3 (D. Md. Nov. 17, 2010) (Chasanow, J.) (observing that the Fourth Circuit "squarely held that a court may order declaratory and injunctive relief in a '*Bivens* type' action") quoting Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987). *But cf.* Solida v. McKelvey, 820 F.3d 1090, 1093–94 (9th Cir. 2016); Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007). Regardless of whether injunctive relief is available under *Bivens*, Congress could create a private cause of action that permits injunctive relief against an officer in his individual capacity.

[37] *Hafer*, 502 U.S. at 27 (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).

[38] Statement of Interest, *supra* note 6, at 6–7 (quoting Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017)).

[39] Statement of Interest, *supra* note 6, at 7.

This principle is equally true for the President: some of his actions constitute "action by the sovereign" and some do not. While the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties,"[40] the Supreme Court has recognized that the Chief Executive's duties "are not entirely 'unremitting.'"[41] There remains an important distinction between the President's "official acts"[42] and his "unofficial conduct."[43]

If this Court issues a permanent injunction that, for example, orders the President to divest or disgorge certain assets—for example, in the form of a constructive trust[44]—the United States as a sovereign would have *no action* to take. Only Donald J. Trump, in his individual capacity, would have to divest or disgorge his personal assets. Any court-ordered injunctive relief would fall within the President's *personal* responsibilities. No check would (or could) be issued by the Treasury Department because the purported funds are not in the Treasury's accounts. Because no action by the sovereign was taken to create the private commercial trust that currently controls Defendant Trump's assets,[45] no sovereign action would be needed to, or could modify that trust in response to a court order. If the official-capacity action is to be maintained, both Defendants should be asked

---

[40] Clinton v. Jones, 520 U.S. 681, 697–98 (1997).

[41] *Id.* at 699 (quoting United States v. Burr, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (No. 14,692d) (Marshall, C.J.)).

[42] *See* Nixon v. Fitzgerald, 457 U.S. 731, 749 (1982).

[43] *See Jones*, 520 U.S. at 705. *Nixon v. Fitzgerald's* identification of the "'outer perimeter' of [the President's] official responsibility" concerns the availability of the defense of absolute immunity; it is not determinative of the line between an official-capacity and an individual-capacity claim. *Nixon*, 457 U.S. at 756.

[44] *See* Kimberly Breedon & A. Christopher Bryant, *Considering a Constructive Trust as a Remedy for President Trump's Alleged Violations of the Foreign Emoluments Clause*, 9 ConLawNOW 111, 114 (2018), http://bit.ly/2jvNWql. The availability of a constructive trust as a possible remedy illustrates why both Defendants were incorrect when they argued that the litigation would become "moot" if Donald J. Trump no longer served as President. *See* Statement of Interest, *supra* note 6, at 6; Motion to Dismiss, *supra* note 1, at 16. Even if a new President (or acting President) succeeds Trump, the Court could still hold the former President (or his estate) liable for *past, ongoing, and future* violations in his individual capacity through the imposition of injunctive relief, i.e., a constructive trust. Moreover, a constructive trust, as a remedy, includes prospective relief, as it is an order operating against payments yet-to-be made or yet-to-be received by Trump and Trump-related commercial entities.

[45] Sheri Dillon *et al.*, *Morgan Lewis LLP White Paper, Conflicts of Interest and the President* 2 (Jan. 11, 2017), https://perma.cc/B8BU-X4U3 (describing creation and organization of President-Elect Trump's "Trust").

to represent how an injunction or declaration in this case concerning the President's *accepting* or *receiving* purported emoluments would "*require* action by the sovereign."[46] If no representation can be proffered, then the official-capacity claim cannot proceed. Likewise, Plaintiffs did not file suit against any other entity in the federal government, including the General Services Administration, which manages the lease to the Trump International Hotel.[47] As a result, they forfeited any claim for this Court to issue an injunction against that agency that would "*require* action by the sovereign." Because this Court could issue remedies that in no way "*require* action by the sovereign"—for example, divestment or disgorgement against Donald J. Trump in his private capacity[48]—this case cannot be pleaded against the President in his official capacity even under the Defendants' capacity-is-tied-to-the-remedy theory.

### III. Even if the Amended Complaint is Properly Pleaded Against the President in His Individual Capacity, the Absence of an Implied Cause of Action Requires its Dismissal

Part II demonstrates why the official-capacity claims in the Amended Complaint must be dismissed with prejudice because they are not properly pleaded. The individual-capacity claims, in contrast, are properly pleaded. However, a properly-pleaded individual-capacity claim cannot proceed unless there is available a cause of action created by Congress or the Judiciary. Congress has not created a private cause of action under either the Foreign or Domestic Emoluments Clauses. Furthermore, *Amici* agree with Defendant Trump that "there is no *Bivens* action available for violations of the Emoluments Clauses."[49] This principle, which *Amici* had already advanced in its

---

[46] Statement of Interest, *supra* note 6, at 7.
[47] *See supra* note 28 (discussing Trump International Hotel).
[48] See *supra* note 44 and accompanying text (discussing divestment, disgorgement, and constructive trust).
[49] Motion to Dismiss, *supra* note 1, at 20.

prior correspondence to the Court,[50] was bolstered by the Supreme Court's recent decision in *Jesner v. Arab Bank, PLC*.[51] And, while courts should generally proceed with caution before implying new causes of action respecting domestic concerns (such as with the Domestic Emoluments Clause), in light of *Jesner*, courts should proceed with even *greater* caution before implying new causes of action respecting foreign policy.[52] This principle applies to the Foreign Emoluments Clause, which can implicate the President's powers over international affairs, including the power to accept foreign diplomatic gifts as an act of recognition.[53] For all these reasons, insofar as the Amended Compliant relates to the President's conduct taken in "his individual capacity," that claim should be dismissed with prejudice.

## CONCLUSION

The official-capacity claims in the Amended Complaint should be dismissed with prejudice because they are not properly pleaded. The individual-capacity claims in the Amended Complaint, though properly pleaded, should be dismissed with prejudice because there is no available statutory or implied cause of action on which relief can be granted. Because the Defendants and Plaintiffs agree that Plaintiffs' claim is properly pleaded as an official-capacity claim, there is no adversity on this point. If the Court's decision-making would be aided by a diversity of views on this point at oral argument on this motion (or on the June 11, 2018 hearing), counsel for *Amici* would be pleased to appear.

---

[50] Letter from *Amici* at 2, Dkt. No. 88, 2018 WL 1128948 (Jan. 29, 2018); *see also* Josh Blackman & Seth Barrett Tillman, *The Emoluments Clauses Litigation, Part 8*, The Volokh Conspiracy (Feb. 8, 2018), perma.cc/YUV6-Y5AV**.**

[51] No. 16-499, --- S. Ct. ----, 2018 WL 1914663, at *15 (2018) ("The Court's recent precedents cast doubt on the authority of courts to extend or create private causes of action even in the realm of domestic law . . . .").

[52] *Id.* at *15 ("In fact, the separation-of-powers concerns that counsel against courts creating private rights of action apply with particular force in the context of the [Alien Tort Statute] . . . The political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns . . . .").

[53] *See* Zivotofsky v. Kerry, 135 S. Ct. 2076 (2015); *see also* Tillman and JEP Brief, *supra* note 17, at 19 ("If the Constitution vests the President with vast authority over recognizing foreign nations, then certainly it entails the far lesser authority to accept presents from those very same countries. *Indeed, the President's decision to accept a gift from a yet unrecognized foreign state or head of government could itself amount to an act of recognition.*" (emphasis added)).

Dated:        May 8, 2018

                              Respectfully submitted,

                  By:

                      /s/ Jan I. Berlage
                      Jan I. Berlage (23937)
                      Gohn Hankey & Berlage LLP
                      201 North Charles Street
                      Suite 2101
                      Baltimore, Maryland 21201
                      Tel. (410) 752-1261
                      JBerlage@ghsllp.com
                      *Counsel for Amici Curiae*

                      Robert W. Ray, Esq.
                        Admission *pro hac vice*
                      THOMPSON & KNIGHT LLP
                      900 Third Avenue, 20th Floor
                      New York, New York 10022
                      Telephone: (212) 751-3349
                      Email: robert.ray@tklaw.com
                      *Co-Counsel for Amicus Curiae*
                      *Scholar Seth Barrett Tillman*

                      Josh Blackman, Esq.
                        Admission *pro hac vice*
                      1303 San Jacinto Street
                      Houston, Texas 77002
                      Telephone: (202) 294-9003
                      Email: Josh@JoshBlackman.com
                      *Counsel for Amicus Curiae*
                      *Scholar Seth Barrett Tillman*

                      Carrie Severino, Esq.
                        Admission *pro hac vice*
                      Judicial Education Project
                      722 12th St., N.W., Fourth Floor
                      Washington, D.C. 20005
                      Telephone: (571) 357-3134
                      Email: carrie@judicialnetwork.com
                      *Counsel for Amicus Curiae*
                      *Judicial Education Project*

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2018, I caused a true and correct copy of the foregoing to

be served on all counsel of record through the Court's CM/ECF system.

/s/ Jan I. Berlage                        
Jan I. Berlage (23937)
