**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA and THE STATE OF MARYLAND, <br><br> *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, President of the United States of America, in his official and in his individual capacity, <br><br> *Defendants*. | Civil Action No. 8:17-cv-01596-PJM |

**PLAINTIFFS' OPPOSITION TO PRESIDENT TRUMP'S MOTION FOR
CERTIFICATION OF THIS COURT'S MARCH 28 AND JULY 25, 2018 ORDERS FOR
INTERLOCUTORY APPEAL AND FOR A STAY PENDING APPEAL**

TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Argument ....................................................................................................................... 2

I.   President Trump Fails To Meet The Demanding Standard For Section 1292(b)
     Certification. ........................................................................................................ 2

     A.  There Is No Basis To Certify The Question Of Plaintiffs' Competitor Standing. ......... 5

     B.  The Issue Of Plaintiffs' Prudential Standing Fails The Criteria For Interlocutory
         Appeal. ......................................................................................................... 7

     C.  The Definition Of "Emolument" Fails The Criteria For Interlocutory Appeal. ............ 8

         1. Because this Court found that Plaintiffs state a claim even under the President's
            definition of "emolument," the issue is not a controlling question of law. ............... 9

         2. The President cannot establish substantial ground for difference of opinion by
            relitigating the definition of "emolument" or asserting that this is an issue of first
            impression. ............................................................................................... 11

         3. Adopting the President's definition of "emolument" would not materially advance
            the termination of the litigation. .................................................................. 15

     D.  The Propriety of Equitable Relief Against The President Fails The Criteria For
         Interlocutory Appeal. ...................................................................................... 18

II.  In Any Event, A Stay Is Unwarranted. ...................................................................... 20

     A.  The Requested Stay Will Not Serve Judicial Economy. ............................................ 21

     B.  The President Has Not Shown Any Hardship Or Equitable Justification For A Stay. 22

     C.  Any Inconvenience To The President Does Not Outweigh The Prejudice That Delay
         Will Inflict On Plaintiffs And Their Residents. ..................................................... 26

Conclusion .................................................................................................................... 28

TABLE OF AUTHORITIES

**Cases**

*Adams v. Watson*, 10 F.3d 915 (1st Cir. 1993) ............................................................. 7

*Al Shimari v. CACI Int'l Inc.*, 679 F.3d 205 (4th Cir. 2012) ....................................... 15

*Asis Internet Servs. v. Active Response Grp.*, No. 07-6211, 2008 WL 4279695
    (N.D. Cal. Sept. 16, 2008) ..................................................................................... 21

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) ............................................... 14

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .................................................................. 25

*Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ....................... 19

*Boumediene v. Bush*, 553 U.S. 723 (2008) .................................................................. 19

*Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445 (D. Md. 2015).............................. 2, 3

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) .............. 6, 8

*Charleston v. Hotels.com, LP*, 586 F. Supp. 2d 538 (D.S.C. 2008) ............................. 3

*Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004) ...... 25

*Clinton v. Jones*, 520 U.S. 681 (1997)................................................................. passim

*Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*,
    No. 06-2773, 2015 WL 4040425 (D. Md. June 29, 2015)............................... 4, 6, 20

*Coleman v. Sterling*, No. 09-1594, 2012 WL 12952831 (S.D. Cal. Feb. 21, 2012)..... 15

*CREW v. Trump*, 276 F. Supp. 3d 179 (S.D.N.Y. 2017) ............................................. 7

*Davis v. Biomet Orthopedics, LLC*, No. 12-3738, 2013 WL 682906 (D. Md. Feb. 22, 2013)..... 21

*Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994)............................... 3, 5

*Doe v. Trump*, No. 17-1597, 2018 WL 3736435 (D.D.C. Aug 6, 2018).................. 18, 19

*Durox v. Duron Paint Mfg.*, 193 F. Supp. 829 (D. Md. 1961) ................................... 16

*Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, No. 14-2921, 2015 WL 5768707
    (D. Md. Jan. 10, 2015) ......................................................................................... 26

*Eshelman v. Puma Biotech., Inc.*, No. 16-18, 2017 WL 9440363 (E.D.N.C. May 24, 2017) ...... 23

*Fernandez-Roque v. Smith*, 671 F.2d 426 (11th Cir. 1982) ........................................................ 17

*Filtrol Corp. v. Kelleher*, 467 F.2d 242 (9th Cir. 1972) .............................................................. 21

*Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334 (S.D.N.Y. 2014) ................... 3

*Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767 (D. Md. 2016) ......... passim

*Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522 (D. Md. 2016) ................................ 3, 7

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ...................................................................... 14

*In re Loy*, No. 07-51040, 2011 WL 2619253 (E.D. Va. 2011) ............................................. 13, 15

*In re Nichols*, No. 14-0625, 2014 WL 4094340 (D. Md. Aug. 15, 2014) ....................... 4, 7, 8, 11

*In re Pisgah Contractors, Inc.*, 117 F.3d 133 (4th Cir. 1997) ...................................................... 3

*In re Trump*, 874 F.3d 948 (6th Cir. 2017) ........................................................................... 13, 14

*In re United States*, 138 S. Ct. 443 (2017) .................................................................................. 16

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 557 (4th Cir. 2017) ............................. 18, 19

*Job v. Simply Wireless, Inc.*, No. 15-676, 2016 WL 8229037 (E.D. Va. Jan. 19, 2016) ............. 13

*Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) .................................. 3, 10

*Kennedy v. Villa St. Catherine, Inc.*, No. 09-3021, 2010 WL 9009364
   (D. Md. June 16, 2010) ................................................................................................... 4, 8, 13

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................................ 21

*Lerner v. Atlantic Richfield Co.*, 690 F.2d 203 (Temp. Emer. Ct. App. 1982) ......................... 6, 8

*Lizarbe v. Rondon*, No. 07-1809, 2009 WL 2487083 (D. Md. Aug. 12, 2009) ...................... 4, 11

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) ........................................................................ 23

*Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612 (D. Md. 2013) ......................... 4, 13, 15

*Mackie v. Bush*, 809 F. Supp. 144 (D.D.C. 1993) ...................................................................... 19

*Maryland v. Universal Elections, Inc.*, 729 F.3d 370 (4th Cir. 2013) ......................................... 20

*Moffett v. Computer Sci. Corp.*, No. 05-1547, 2010 WL 348701 (D. Md. Jan. 22, 2010) ... 3, 4, 10

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009).................................................. 14, 15

*Mullins v. Suburban Hosp. Healthcare Sys., Inc*., No. 16-1113, 2017 WL 3023282
    (D. Md. July 17, 2017)........................................................................................... 21, 22, 26

*Myles v. Laffitte*, 881 F.2d 125 (4th Cir. 1989)............................................................................ 3

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656 (1993) ... 7

*Nero v. Mosby*, No. 16-1288, 2017 WL 1048259 (D. Md. Mar. 20, 2017)............... 22, 25, 27, 28

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) ................................................................ 7

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)................................................................................... 19

*Nwanguma v. Trump*, No. 16-247, 2017 WL 3430514 (W.D. Ky. Aug. 9, 2017) ...................... 14

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) .......................................................... 14

*Price v. Atlantic Ro-Ro Carriers, Inc.*, No. 11-1735, 2014 WL 7358729
    (D. Md. Dec. 22, 2014)............................................................................................... 3, 15

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ............................................................... 2

*Randolph v. ADT Sec. Servs., Inc.*, No. 09-1790, 2012 WL 273722 (D. Md. Jan. 30, 2012) ........ 4

*Regents of the Univ. of Ca. v. United States*, 279 F. Supp. 3d 1011 (N.D. Ca. 2018)................. 16

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ........................................... 23

*State of N.C. ex rel. Howes v. W.R. Peele, Sr. Tr.*, 889 F. Supp. 849 (E.D.N.C. 1995) ............... 15

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995) .................................................................. 2

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011).......................................... 7

*United States ex rel. Michaels v. Agape Senior Cmty.*, 848 F.3d 330 (4th Cir. 2017) ............... 3, 9

*United States v. Burr*, 25 F. Cas. 187 (No. 14,694) (C.C.D. Va. 1807) ....................................... 19

*United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.D. Va. 1807) ....................................... 25

*United States v. Ga. Pac. Corp.*, 562 F.2d 294 (4th Cir. 1977) ................................................... 20

*United States v. Nixon*, 418 U.S. 683 (1974) ..................................................................... passim

*Williford v. Armstrong World Indus., Inc*., 715 F.2d 124 (4th Cir. 1983) .............................. 20, 21

*Zeneca, Inc. v. Shalala*, 213 F.3d 161 (4th Cir. 2000)................................................................... 6

**Statutes**

28 U.S.C. § 1292(a)(1)................................................................................................................ 17

28 U.S.C. § 1292(b) ............................................................................................................. passim

**Other Authorities**

16 Charles A. Wright, *Federal Practice and Procedure* § 3930 (3d ed. 2018)............................ 13

Nathan Barclay, *A Complete and Universal English Dictionary on a New Plan* (1774) ............. 10

The Federalist No. 47 (James Madison) (J. Cooke ed., 1961)..................................................... 28

Steve Holland & Doina Chiacu, *Trump targets book, threatens ex-ally Bannon with legal action*, Reuters (Jan. 3, 2018) ....................................................................................................... 26

David G. Knibb, *Fed. Court of Appeals Manual* (6th ed. 2018) ................................................. 20

Letter from Charles H. Harder to Steve Rubin & Michael Wolff (Jan. 4, 2018) ........................ 26

Janet Napolitano, U.S. Dep't of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*, June 15, 2012............... 17

Order, *Cohen v. United States*, No. 18-MJ-3161 (S.D.N.Y. Apr. 13, 2018) ............................... 26

Pet. for Permission to Appeal Two Interlocutory Orders of the U.S. Dist. Ct. for the N. Dist. of Cal. Pursuant to 28 U.S.C. § 1292(b), *Regents of the Univ. of Cal. v. United States*, No. 18-80004 (9th Cir. Jan. 16, 2018) ............................................................................................ 17

Michael D. Shear & Eileen Sullivan, *Trump and Giuliani Taunt Brennan About Filing a Lawsuit*, N.Y. Times, Aug. 20, 2018...................................................................................................... 26

Stipulation, *Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct. Sept. 7, 2018), Doc. No. 189.... 25

**INTRODUCTION**

Over the course of two thoughtful opinions, this Court considered and rejected the President's requests to dismiss this action. The Court found three independent bases on which Plaintiffs have standing to seek equitable relief against the President for his violations of the Foreign and Domestic Emoluments Clauses. Mem. Op. at 47 ("March 28 Order"), ECF No. 101. The Court also concluded that a "vast amount of historical evidence, textual support, and executive branch precedent" show that the term "emolument" in those clauses covers any "profit, gain, or advantage" above a *de minimis* amount, barring the President from profiting from foreign and domestic governments through his businesses. Mem. Op. at 46, 47 ("July 25 Order"), ECF No. 123. Dissatisfied with those decisions, the President now moves to certify four issues for interlocutory review and for a blanket stay of proceedings in this Court. Both requests should be denied.

With respect to certification, the President fails to identify a controlling question of law decided by this Court about which there is substantial doubt and for which appellate review would materially advance the case. *See* 28 U.S.C. § 1292(b). The President selectively attacks parts of the Court's decisions while ignoring others that independently support the Court's judgment. Moreover, the President's personal disagreement is irrelevant: he must show that *courts* have disagreed on the relevant issues. Implicitly acknowledging that failure, the President retreats to focusing on the novelty of the case and his status as President, neither of which is sufficient to justify invoking a narrow exception to the general rule that appellate review must await final judgment.

Even if the Court were to certify the orders for interlocutory appeal, a stay of all proceedings in this Court is unwarranted because the President fails to satisfy any of the relevant

criteria for granting such relief. Once again, his sole reliance on his status as President is misplaced. And the only aspect of the proceedings even mentioned in the President's motion is discovery against him in his official capacity. This Court, however, has ample means to protect any interest the President may have in limiting such discovery and address any separation-of-powers issues that may arise. The President's attempt to preemptively immunize himself from *any* discovery is thus unfounded and unnecessary. It also fails to account for the prejudice to Plaintiffs and their residents that would result from a lengthy delay in these proceedings.

Plaintiffs accordingly request that this Court deny the relief requested in the President's motions and allow this case to proceed in the normal course.

## ARGUMENT

### I. PRESIDENT TRUMP FAILS TO MEET THE DEMANDING STANDARD FOR SECTION 1292(b) CERTIFICATION.

"The general rule is that 'a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (citation omitted). For a limited class of extraordinary orders, Congress has "confer[red] on district courts first line discretion to allow interlocutory appeals," as provided in 28 U.S.C. § 1292(b). *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995). A court may certify an order for interlocutory appeal only if it concerns (1) a "controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three elements must be present for the district court to grant certification, *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015), but "'even when the elements of Section 1292(b) are satisfied, the district court retains "unfettered discretion" to deny certification,'" *Garber v. Office of the*

*Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (citation omitted); *accord Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016). The district court's decision not to certify an interlocutory appeal is final and unreviewable. *See In re Pisgah Contractors, Inc.*, 117 F.3d 133, 137 (4th Cir. 1997).

As the Supreme Court has instructed, Section 1292(b)'s "'narrow' exception [permitting interlocutory appeal] should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). Accordingly, Section 1292(b) must be "strictly construed and applied," *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989), and certification "should be used sparingly," *United States ex rel. Michaels v. Agape Senior Cmty.*, 848 F.3d 330, 340 (4th Cir. 2017). Given the strong preference for awaiting final judgment, an interlocutory appeal under Section 1292(b) "is appropriate only in 'extraordinary cases' in which early appellate review might avoid 'protracted and expensive litigation.'" *Hall*, 193 F. Supp. 3d at 526 (citation omitted). Importantly, "[c]ertification under section 1292(b) is improper if it is simply 'to provide early review of difficult rulings in hard cases.'" *Butler*, 307 F.R.D. at 452 (quoting *Charleston v. Hotels.com, LP*, 586 F. Supp. 2d 538, 548 (D.S.C. 2008)); *Price v. Atlantic Ro-Ro Carriers, Inc.*, No. 11-1735, 2014 WL 7358729, at *1 (D. Md. Dec. 22, 2014).

A party seeking certification must satisfy each element of the standard. A "controlling question of law" is an issue that would, decided differently, terminate or substantially alter the suit. *See, e.g.*, *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (issue is a controlling question where the appellate court's "resolution of it terminates the case"); *Moffett v. Computer Sci. Corp.*, No. 05-1547, 2010 WL 348701, at *2 (D. Md. Jan. 22, 2010)

("[C]ontrolling questions . . . determine whether there should be any future proceedings at all with respect to Plaintiffs' claims.").

A question is one "to which there is a substantial ground for a difference of opinion" when there is "'substantial doubt' that the district court's order was correct." *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (quoting *Kennedy v. Villa St. Catherine, Inc.*, No. 09-3021, 2010 WL 9009364, at *2 (D. Md. June 16, 2010)). A litigant's own disappointment or disagreement with the outcome of an order does not rise to the level of substantial doubt. *See Lizarbe v. Rondon*, No. 07-1809, 2009 WL 2487083, at *3 (D. Md. Aug. 12, 2009). Rather, as a general matter, "'[a]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue.'" *Goodman*, 195 F. Supp. 3d at 774 (quoting *Randolph v. ADT Sec. Servs., Inc.*, No. 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012)); *see also In re Nichols*, No. 14-0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) ("In other words, for interlocutory appeals, it matters not whether the lower court simply got the law wrong, but whether courts themselves disagree as to what the law is." (citation omitted)).

Finally, an issue materially advances termination of the litigation if its resolution would "'(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. 06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (quoting *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013)); *Moffett*, 2010 WL 348701, at *2; *Kennedy*, 2010 WL 9009364, at *4.

The President poses four issues for Section 1292(b) certification: (1) whether Plaintiffs have Article III standing; (2) whether Plaintiffs are within the zone of interests of the

Emoluments Clauses; (3) the definition of the term "emolument" and the scope of the Emoluments Clauses; and (4) whether this Court can issue declaratory and injunctive relief against the President. Mot. of the President, in his Official Capacity, for Certification of this Court's March 28 and July 25, 2018 Orders Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal at 1 ("Mot."), ECF No. 127. The Court should exercise its discretion to deny certification because none of these issues satisfy Section 1292(b)'s "'narrow' exception" to "the general rule" that an appeal must await final judgment. *Dig. Equip. Corp.*, 511 U.S. at 868.

### A.  There Is No Basis To Certify The Question Of Plaintiffs' Competitor Standing.

The Court found that Plaintiffs have standing based on harms to their proprietary, *parens patriae*, and quasi-sovereign interests. March 28 Order at 19, 24-25, 29. Under the doctrine of competitor standing, the Court found that "Plaintiffs have alleged sufficient facts to show that the President's ownership interest in the Hotel has had and almost certainly will continue to have an unlawful effect on competition allowing an inference of impending (if not already occurring) injury to Plaintiffs' proprietary interests." March 28 Order at 24-25. In Plaintiffs' capacity as *parens patriae*, the Court found standing in their "trying to protect a large segment of their commercial residents and hospitality industry employees from economic harm." March 28 Order at 29. Finally, the Court found that Plaintiffs have standing to vindicate their interests as quasi-sovereigns in "protect[ing] their position among . . . sister states." March 28 Order at 15, 19 (internal quotation omitted).

In seeking certification, the President disagrees only with the question of competitor standing, which relates to Plaintiffs' proprietary interests. Indeed, the President's motion nowhere even mentions *parens patriae* or quasi-sovereign interests. That omission is significant and means that competitor standing cannot be a controlling question of law because Plaintiffs

nevertheless have standing to proceed as *parens patriae* and quasi-sovereigns. *See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004) (finding no controlling question of law where the theory decided by the district court was one of several theories supporting jurisdiction); *Lerner v. Atlantic Richfield Co.*, 690 F.2d 203, 211 (Temp. Emer. Ct. App. 1982) (finding an order granting summary judgment as to one theory did not involve a controlling question of law where other theories supporting recovery remained).

Similarly, because Plaintiffs' standing as *parens patriae* and quasi-sovereigns fully suffices to support the complaint, any interlocutory ruling on competitor standing would not "materially advance the ultimate termination of the litigation." Specifically, Plaintiffs would be entitled to the same discovery, even if the President were to prevail in the appellate court on the question of proprietary standing. Thus, certification would not "eliminate issues to make discovery easier and less costly." *Coal. for Equity*, 2015 WL 4040425, at *6.

What is more, the President is incorrect to suggest that there is substantial disagreement on the question of competitor standing sufficient to justify an appeal. Speculating that "reasonable minds could differ" on the question, he suggests that "the Fourth Circuit has never expressly endorsed the competitor standing doctrine," Mot. at 23-24, but the only Fourth Circuit authority he cites is a unanimous published decision concluding that the plaintiff there *had* competitor standing to sue the defendant federal officers. *See Zeneca, Inc. v. Shalala*, 213 F.3d 161, 170 n.10 (4th Cir. 2000) (noting that "numerous cases have found that a firm has constitutional standing to challenge a competitor's entry into its market" (citations omitted)). But even if the Fourth Circuit had not addressed the question, it would be of no moment because—as this Court understood—"the *Supreme Court* has recognized that plaintiffs with an economic interest have standing to sue to prevent a direct competitor from receiving an illegal market

6

benefit leading to an unlawful increase in competition." March 28 Order at 21 (emphasis added) (citing cases). Indeed, the doctrine of competitor standing, which is based on harms to Plaintiffs' proprietary interests, is well-recognized. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007); *Adams v. Watson*, 10 F.3d 915, 921-23 (1st Cir. 1993); *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656 (1993) (recognizing standing where the imposition of a barrier denies equal treatment in the marketplace).

The lone case that the President cites, Mot. at 23, in support of there being a "substantial disagreement" in this regard is the decision in *CREW v. Trump*, 276 F. Supp. 3d 179 (S.D.N.Y. 2017), *appeal pending*, No. 18-474 (2d Cir. Feb 16, 2018). In that case, Judge Daniels found that the private-party plaintiffs had not sufficiently alleged competitor standing against the President. But the mere fact that Judge Daniels determined—as to different plaintiffs and on different facts—that competitor standing did not apply, *id.* at 180-81, 184-87, does not show a disagreement about "what the law is," *In re Nichols*, 2014 WL 4094340, at *3. Only a *legal* disagreement about the "controlling question of law" is relevant to the certification analysis, *Goodman*, 195 F. Supp. 3d at 774, and the President has identified none. "[R]easonable judges may apply the same straightforward legal standard to similar facts and reach different results, but that does not mean that the standard itself . . . is in any way unclear." *Hall*, 193 F. Supp. 3d at 527.

### B. The Issue Of Plaintiffs' Prudential Standing Fails The Criteria For Interlocutory Appeal.

The President further asserts that certification is warranted on "whether the Plaintiffs have asserted interests addressed by the [Emoluments] Clauses and have an equitable cause of

action under them." Mot. at 1. But this issue, too, is not controlling and there are no grounds for a difference of opinion.

As with standing, the President focuses his "zone-of-interest" argument solely on Plaintiffs' "economic interests," *see* Mot. at 22, but this Court's decision includes no such limitation, *see* March 28 Order at 41 ("[T]here is no reason why Plaintiffs, a subset of Americans who have demonstrated present injury or the immediate likelihood of injury by reason of the President's purported violations of the Emoluments Clauses, should be prevented from challenging what might be the President's serious disregard of the Constitution."). That is dispositive because even if an appellate court were to find Plaintiffs are *outside* the zone of interests with respect to their proprietary interests, their other interests remain, and the case would proceed. Accordingly, the issue of whether Plaintiffs' "economic" interests fall within the zone of interests of the Clauses is not a controlling question of law. *See WorldCom*, 368 F.3d at 95; *Lerner*, 690 F.2d at 211.

Similarly, the President fails to establish "substantial doubt" regarding the correctness of this Court's zone-of-interests determination. *See Goodman*, 195 F. Supp. 3d at 774; *Kennedy*, 2010 WL 9009364, at *2. The President's reliance on the *CREW* decision reflects—at best—an instance of judges applying the law differently, but does not demonstrate, as is required for interlocutory appeal, that "courts themselves disagree as to what the law is." *In re Nichols*, 2014 WL 4094340, at *3 (citation omitted).

### C.    The Definition Of "Emolument" Fails The Criteria For Interlocutory Appeal.

The President's request to certify the Court's ruling regarding the definition of "emolument" for interlocutory appeal is also unwarranted. Even if the President's definition prevailed on appeal, Plaintiffs would still have stated a claim that would allow the case to

proceed. Thus, this issue is neither a controlling question of law, nor one whose resolution would materially advance the proceedings. Furthermore, the President's lengthy repetition of his arguments, already decisively rejected by this Court, amounts to little more than the disagreement of a party, not the disagreement between *courts* generally required to show "substantial ground for difference of opinion."

> **1. Because this Court found that Plaintiffs state a claim even under the President's definition of "emolument," the issue is not a controlling question of law.**

The President asserts that the definition of "emolument" should be read narrowly as "profit arising from office or employ," requiring that the language of the Emoluments Clauses be understood as having the qualifier "for [the President's] services." Mot. at 11, 13 n.6. However, even under this narrow definition, Plaintiffs have stated a claim.[1] As this Court determined, qualifying the term "emolument" with the words "for his services in the Domestic Clause . . . amounts to no silver bullet for the President." July 25 Order at 19. That limiting construction would not insulate him from Plaintiffs' claims, because "[l]ogic equally suggests that the payments, direct or indirect, that he receives from domestic governments in connection with the Hotel [consistent with the President's preferred definition] are in fact 'emoluments' to his salary as President." *Id.* at 19-20. And because Plaintiffs allege that those payments are in exchange for the President's services *as President*, their complaint satisfies the "personal services" prong of the President's preferred definition. *See* July 25 Order at 20 (detailing allegations regarding Maine's governor who, following stays at the Hotel, appeared with the President at a news

---

[1] To extent the President seeks to challenge whether Plaintiffs *state a claim* under either definition, rather than the Court's decision as to the definition itself, such an issue is not appropriate for interlocutory appeal. Only "pure question[s] of law" constituting "abstract legal issue[s] that the court of appeals can decide quickly and cleanly" are appropriate for interlocutory appeal. *Michaels*, 848 F.3d at 340.

conference where the President signed an executive order to review certain actions favorable to the governor's agenda).[2] Because Plaintiffs may proceed with their case under either party's definition of "emolument," the issue fails to present a controlling question of law, as deciding the issue in the President's favor would not terminate or substantially alter the suit. *See Kennedy*, 657 F.3d at 195; *Moffett*, 2010 WL 348701, at *2 ("[C]ontrolling questions . . . determine whether there should be any future proceedings at all with respect to Plaintiffs' claims.").

Nor is the President's argument, Mot. at 13 n.6, aided by the fact that the funds accrue to President Trump's businesses. The President's preferred definition of "emolument" is "profit arising from office or employ" and, at the time of the founding, the term "employ" was defined as "a person's trade, [or] business." Pls.' Opp. to Mot. to Dismiss at 32, ECF No. 46 (citing Nathan Barclay, *A Complete and Universal English Dictionary on a New Plan* (1774)).[3] Thus, the President's hospitality business in the District of Columbia is well within the definition of the term "employ" as understood by the founding generation. *See* Mot. at 13 n.6. As a result, regardless of a contrary ruling, the case would move forward. This issue does not present a controlling question of law.

---

[2] The Court made clear that this same logic applies to the term "emolument" in the context of the Foreign Emoluments Clause. July 25 Order at 8 n.14 ("Accepting the President's argument *arguendo*, why doesn't logic suggest that the foreign and domestic government payments he receives in connection with the Hotel are in fact an 'emolument' to his salary as President? Especially when foreign governments are on record as saying that they have been or will be patronizing the Hotel precisely because the President is the President?").

[3] The President asserts that "the Court misunderstood the definition of 'profit arising from office or employ,'" because that "definition necessarily depends on an official's *personal* services rendered pursuant to an office of employ . . . given that the term's etymology is rooted in profits arising from labor." Mot. at 13 n.6. However, it is the President, not this Court, who misunderstands the definition. As discussed above and detailed in Plaintiffs' Opposition to the Motion to Dismiss, at the time of the founding, the definition of the term "employ" included one's "business." Pls.' Opp. to Mot. to Dismiss at 32. Thus, as understood by the founding generation, a hotel business would qualify as one's "employ."

2.    **The President cannot establish substantial ground for difference of opinion by relitigating the definition of "emolument" or asserting that this is an issue of first impression.**

Despite devoting nearly half of his brief to the definition of "emolument," the President fails to meet his burden to establish "substantial doubt that the district court's order was correct." *Goodman*, 195 F. Supp. 3d at 774.

As an initial matter, the President offers no authority demonstrating the disagreement among courts that is generally necessary to show substantial doubt as to the correctness of this Court's opinion. *See In re Nichols*, 2014 WL 4094340, at *3; *Lizarbe*, 2009 WL 2487083, at *2-4. Nor can he point to any Office of Legal Counsel or Comptroller General opinions that conflict with this Court's ruling. *See* July 25 Order at 40 (observing that the most the President can do is "insist[] that his position is not inconsistent" with the prior governmental opinions). Instead, the President spends nearly half of his brief repeating arguments he made in support of his motion to dismiss. Once again, he asserts that the text, original public meaning, constitutional purpose, and executive branch precedent and practice each support his definition of "emolument." Mot. at 10-21. This Court properly rejected those arguments, and his disagreement with the Court's conclusions is insufficient to support certification.

With regard to the President's textual arguments, Mot. at 11-15, this Court thoroughly considered and soundly rejected them. First, the Court observed that "the President's cramped interpretation of the term would seem to create its own concerning redundancies within the Constitution." July 25 Order at 19, 21. Next, the Court determined that the President's argument regarding the Incompatibility Clause, Mot. at 13-14, was "equally unpersuasive" because the language in that clause expressly connected the emoluments it was addressing with the referenced office—something that would be "unnecessary" if the term emolument "were

11

always . . . read as a synonym for salary or payment for official services rendered." July 25 Order at 20. Finally, this Court dispensed with the President's argument about the role of modifiers like "any" and "any kind whatever" in the Emoluments Clauses, Mot. at 12, characterizing it as "unconvincing" that words that convey an expansive meaning should instead be read to clarify that all instances of the narrower definition are included without exception. July 25 Order at 19.

The Court also thoroughly addressed the President's argument regarding the original public meaning of the clauses. Mot. at 15-17. The Court observed that the President's argument "ignor[es] [the] large accumulation of historical evidence" regarding the founders' use of the term "emolument," July 25 Order at 30, and instead "relies heavily" on two specific dictionaries, despite the fact that "there is little to no evidence that either of these two dictionaries were owned, possessed, or used by the founders." July 25 Order at 26 (internal quotation marks omitted).

Likewise, the Court rejected the President's arguments on the constitutional purpose of the Emoluments Clauses. Not only did the Court find certain of the President's arguments to be "based wholly on speculation" but, following an in-depth review of the historical record regarding the constitutional purpose of the Emoluments Clauses, it determined that "the President's interpretation of the limited meaning of the Emoluments Clauses cannot be the correct one" because concerns about corruption and foreign influence "unquestionably" formed the background against which the clauses were adopted. July 25 Order at 36, 38.

The same is true of the President's reliance on executive branch precedent. Mot. at 21. Now, as then, the President "has not cited a single Government opinion that conclusively supports his position." July 25 Order at 40. Further, the President's continued argument that his position is "not inconsistent with existing precedent . . . clearly does not make the grade." July

25 Order at 42. In sum, the President cannot demonstrate a disagreement on the definition of "emolument" merely by rehashing arguments this Court has already rejected.

The President does not seriously dispute that there is no disagreement among courts on the matter. In the absence of such disagreement, the President instead urges the Court to find substantial disagreement because the proper interpretation of the Emoluments Clauses is an issue of first impression. Mot. at 10. The mere fact that a legal issue may be novel, however, is not enough to warrant interlocutory appeal. Indeed, "[d]istrict judges have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression." 16 Charles A. Wright, *Federal Practice and Procedure* § 3930 (3d ed. 2018); *see Job v. Simply Wireless, Inc.*, No. 15-676, 2016 WL 8229037, at *2 (E.D. Va. Jan. 19, 2016) (rejecting defendants' argument that "an interlocutory appeal is warranted every time a district court interprets novel contractual language" as "plainly inconsistent with the strong policy favoring appeals only from final orders"); *In re Loy*, No. 07-51040, 2011 WL 2619253, at *9 (E.D. Va. 2011) (noting that the fact that a case involves "novel issues . . . is not conclusive that a substantial ground for difference of opinion exists"). Contrary to the President's urging, this case provides no reason to depart from this general rule especially where, as detailed above, this Court has unambiguously determined that *none* of the President's definitional arguments withstand scrutiny. *See Lynn*, 953 F. Supp. 2d at 624; *Kennedy*, 2010 WL 9009364, at *2-3.

The President also relies on a Sixth Circuit case, *In re Trump*, 874 F.3d 948 (6th Cir. 2017), to support his argument that an issue of first impression warrants certification if it presents "separation-of-powers considerations." Mot. at 3. However, *In re Trump* actually reinforces the proposition that "separation-of-powers considerations" are not a substitute for compliance with the statutory criteria in Section 1292(b); rather, the criteria must be met *before*

other considerations, such as novelty, come into play. 874 F.3d at 951-53 (considering "prudential factors" only *after* finding that the three statutory criteria for interlocutory review were met). Further, in certifying the order for interlocutory appeal, the district court in that case determined that there was a "substantial ground" for difference of opinion because the legal issue—whether a First Amendment issue must be resolved prior to discovery or was a question of fact for later determination—was a "close question" and the movant could point to a Supreme Court case in its favor. *Nwanguma v. Trump*, No. 16-247, 2017 WL 3430514, at *4 (W.D. Ky. Aug. 9, 2017) (citing *Harisiades v. Shaughnessy*, 342 U.S. 580, 592 (1952)).

The President relies on *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009), to argue that mere novelty and the importance of a case justify immediate appellate review. *See* Mot. at 1, 6. *Mohawk*, however, fails to support the President's position. First, there is considerable doubt as to whether *Mohawk* extends beyond the context of attorney-client privilege. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (concluding that "whether *Mohawk* should be extended to the First Amendment privilege presents a close question" based on language of *Mohawk*, 558 U.S. at 113 n.4). Second, as was the case in *In re Trump*, the *Mohawk* decision reinforces the requirement that the movant must first show that the statutory criteria for interlocutory appeal are satisfied before a court may consider other factors, such as the novelty of an issue. *Mohawk*, 558 U.S. at 110-11; *see Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) ("When a ruling satisfies [the Section 1292(b)] criteria *and* 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" (quoting *Mohawk*, 558 U.S. at 111) (emphasis added)). In fact, one court explicitly rejected the notion that *Mohawk*'s "should not hesitate" language "impl[ies] that *all* novel questions of privilege law are subject to interlocutory appeal."

*Coleman v. Sterling*, No. 09-1594, 2012 WL 12952831, at *2 n.2 (S.D. Cal. Feb. 21, 2012). Rather, "[t]he Court must still consider each prerequisite of § 1292 in light of existing precedent." *Id.* Finally, the full Fourth Circuit has pointed to *Mohawk* as reinforcing the "'healthy respect for the virtues of the final-judgment rule'" that the Fourth Circuit is "bound to maintain." *Al Shimari v. CACI Int'l Inc.*, 679 F.3d 205, 213 (4th Cir. 2012) (en banc) (quoting *Mohawk*, 558 U.S. at 106).

Accordingly, satisfying the statutory criteria of Section 1292(b)—not identifying a novel question—is the touchstone for an interlocutory appeal. *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Tr.*, 889 F. Supp. 849, 852 (E.D.N.C. 1995); *see also Lynn*, 953 F. Supp. 2d at 624 (refusing certification where the movant simply disagreed with the court's interpretation of an unambiguous statute); *In re Loy*, 2011 WL 2619253, at *9. The President cannot surmount this high threshold by simply claiming novelty and voicing continued disagreement with the Court's considered decision.

### 3. Adopting the President's definition of "emolument" would not materially advance the termination of the litigation.

The President also fails to demonstrate that certification of the definition of "emolument" is appropriate because, as detailed above, *see supra*, I.C.1, his preferred definition does not, as a practical matter, eliminate the need for a trial or significantly alter the scope of discovery. *See Price*, 2014 WL 7358729, at *2 (denying interlocutory appeal where it would "do nothing to eliminate the need for a trial, to streamline the presentation of proof, or to limit the scope of discovery"). If, however, the President is permitted his piecemeal appeal, final resolution of the case could be delayed significantly, perhaps for years. *See infra*, II.A. By contrast, Plaintiffs have outlined a discovery plan that will expeditiously ready this case for dispositive motion or trial. *See* Rule 26(f) Report at 2-4, ECF No. 132. Practical considerations thus weigh in favor of

proceeding with the case and deferring any appeal until after final judgment. *See Durox v. Duron Paint Mfg.*, 193 F. Supp. 829, 830-31 (D. Md. 1961) (finding that interlocutory appeal would not materially advance the ultimate termination of the proceedings where the remaining claims involved largely the same facts and depended upon the same legal principles); *Goodman*, 195 F. Supp. 3d at 773.

The President resists the logic and expediency of proceeding in the normal course by pointing to *In re United States*, 138 S. Ct. 443 (2017). *See* Mot. at 4, 9. That case, however, is inapposite. First, in *In re United States*, the Supreme Court faulted the district court for not considering and ruling upon the federal government's threshold jurisdiction and justiciability arguments before issuing the order compelling supplementation of the administrative record. *Id.* at 445. Here, this Court properly held a separate hearing on jurisdiction and reviewability and ruled on those questions before turning to—and rejecting—the President's argument that Plaintiffs failed to state a claim. *See* March 28 Order. Thus, this Court avoided the error that motivated the Supreme Court to grant mandamus in *In re United States*.

Second, upon remand in *In re United States*, the district court's decision to certify issues for interlocutory appeal occurred at the same time that the court entered a preliminary injunction. *See Regents of the Univ. of Ca. v. United States*, 279 F. Supp. 3d 1011, 1048 (N.D. Ca. 2018). Because the issuance of a preliminary injunction is immediately appealable as-of-right, there were significant efficiency considerations in favor of also certifying the other issues for interlocutory appeal so that they could be heard at the same time as the appeal as-of-right, an argument that featured prominently in the federal government's brief. *See* 28 U.S.C. § 1292(a)(1); *see also* Pet. for Permission to Appeal Two Interlocutory Orders of the U.S. Dist. Ct. for the N. Dist. of Cal. Pursuant to 28 U.S.C. § 1292(b) at 11, *Regents of the Univ. of Cal. v.*

*United States*, No. 18-80004 (9th Cir. Jan. 16, 2018), http://bit.ly/2wy8BjY. Here, the President

cannot make the efficiency argument that was essential to the resolution of *In re United States*,

because Plaintiffs have not sought a preliminary injunction.

Finally, the underlying subject matter of that case is quite different. *In re United States*

concerned the federal government's immigration authority, specifically the administration of the

Deferred Action for Childhood Arrivals program, a program started by Executive Branch

Memorandum. *See* Janet Napolitano, U.S. Dep't of Homeland Security, *Exercising Prosecutorial*

*Discretion with Respect to Individuals Who Came to the United States as Children*, June 15,

2012, http://bit.ly/2P4GHnk. Thus, the Supreme Court in *In re United States* was concerned with

the need to avoid judicial overreach that could interfere with an administrative agency's exercise

of its typically broad authority in the area of immigration. Here, in contrast, Plaintiffs seek no

relief that would intrude on either the President's or any agency's lawful authority. Indeed, the

language of the Emoluments Clauses removes receipt of emoluments from the realm of what

could plausibly be within the President's authority.

The same is true with regard to *Fernandez-Roque v. Smith*, 671 F.2d 426 (11th Cir.

1982). *See* Mot. at 10. In *Fernandez-Roque*, the Eleventh Circuit reviewed a preliminary

injunction stopping the deportation of the plaintiffs to Cuba. As in *In re United States*, the

appellate court's overriding concern in that case was the district court's failure to first consider

and rule on the jurisdictional arguments presented by the federal government. *Id.* at 431. On

remand, the appellate court instructed the district court to "conduct forthwith only such hearing

as is necessary to a determination of whether subject matter jurisdiction exists." *Id.* Because this

Court has already thoroughly reviewed the jurisdictional arguments made by the President in his

official capacity, *Fernandez-Roque* provides no support to the President's arguments for certification.

Accordingly, the President fails to demonstrate that the definition of "emolument" is an issue appropriate for certification for interlocutory appeal.

### D.     The Propriety of Equitable Relief Against The President Fails The Criteria For Interlocutory Appeal.

Finally, the President asserts that the availability of equitable relief against him in his official capacity presents an issue ripe for immediate appeal. However, the President again fails to demonstrate substantial ground for difference of opinion. Far from finding the type of disagreement among courts needed for this analysis as to "what the law is," this Court has already determined that "[p]recedent makes clear that a plaintiff may bring claims to enjoin unconstitutional actions by federal officials and that they may do so to prevent violations of structural provision of the Constitution." March 28 Order at 42.

The President's contention to the contrary finds no support in the two cases on which he relies, *Int'l Refugee Assistance Project v. Trump ("IRAP")*, 857 F.3d 557 (4th Cir. 2017), and *Doe v. Trump*, No. 17-1597, 2018 WL 3736435 (D.D.C. Aug 6, 2018). In both cases, the courts decided not to issue injunctive relief against the President only because subordinate officials existed against whom an injunction could be entered to achieve the same ends. *IRAP*, 857 F.3d at 605-06 (lifting the injunction as to the President while affirming the injunction as to subordinate officials because "[e]ven though the President is not directly bound by the injunction, we assume it is substantially likely that the President . . . would abide by an authoritative interpretation" of the law (internal citations omitted)); *Doe*, 2018 WL 3736435, at *4 ("Plaintiffs will be able to enforce their legal rights and obtain all relief sought in this case without the President as a party."). By contrast, where there is no subordinate official whom the court could enjoin to

provide "all relief sought," *Doe*, 2018 WL 3736435, at *4, courts have not shied away from granting relief against the President, *see Mackie v. Bush*, 809 F. Supp. 144, 148 (D.D.C. 1993), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993); *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *6 (D.D.C. Nov. 14, 1983). Furthermore, in both *IRAP* and *Doe*, the President was operating in the core of Executive policy-making: immigration and national security policy in the case of *IRAP*, and the military in the case of *Doe*. *See IRAP*, 857 F.3d at 655 (in a national security context "the President's decision is entitled to the strongest of presumptions and the widest latitude of judicial interpretation"). This case, however, lies far afield from those areas of Executive power, because it involves personal compliance with discrete constitutional prohibitions that foreclose any claim of Presidential authority. Accordingly, the President again fails to meet his burden to show the substantial ground for difference of opinion necessary for interlocutory appeal.

Nor does the continued prosecution of this action raise separation-of-powers concerns that "alone warrant[] certification for interlocutory review." Mot. at 25. Rather, it is "settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States." *Nixon v. Fitzgerald*, 457 U.S. 731, 753-54 (1982) (listing examples); *see Boumediene v. Bush*, 553 U.S. 723 (2008) (habeas corpus); *Clinton v. New York*, 524 U.S. 417 (1998) (declaratory relief); *United States v. Nixon*, 418 U.S. 683 (1974) (subpoena); *United States v. Burr*, 25 F. Cas. 187, 191 (No. 14,694) (C.C.D. Va. 1807) (Marshall, C.J.) (subpoena). Furthermore, as explained in Section II, the President's separation-of-powers concerns appear to be based primarily on the misplaced assertion that Plaintiffs seek extensive and intrusive discovery from the President in his official capacity. However, as described in the parties' Joint Recommendation filed two days prior to the President's Motion,

Plaintiffs' planned discovery focuses primarily on third party entities. *See* Joint Recommendation at 2, ECF No. 125.

In sum, despite the President's attempt to relitigate the underlying issues, he fails to satisfy the criteria for interlocutory appeal. The President does not identify *any* controlling question of law, the resolution of which would materially advance termination of the proceedings and over which there is a substantial difference of opinion between courts. His request to certify should therefore be denied.

## II.   IN ANY EVENT, A STAY IS UNWARRANTED.

Appended as little more than an afterthought to the President's motion for Section 1292(b) certification is his request to stay "all proceedings" in this matter "pending resolution of the interlocutory appeal." Mot. at 25. Yet Congress expressly conditioned the availability of interlocutory appeal under Section 1292(b) on the proviso that it "shall not stay proceedings in the district court," unless a court exercises its discretion to so order. *See* David G. Knibb, *Fed. Court of Appeals Manual* § 5:6 (6th ed. 2018) (explaining that under Section 1292(b) "[t]he presumption is against a stay" so that "[o]ther proceedings can continue"). Where, as here, "an automatic stay is not available" as a matter of right, consideration of whether to grant a stay of proceedings is a discretionary matter invoking "the inherent power in courts under their general equity powers and in the efficient management of their dockets to grant relief." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *see Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) ("[A] request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)), *followed in Coal. for Equity*, 2015 WL 4040425, at *7-8 (granting Section 1292(b) certification but denying stay)).

"A party seeking a stay must demonstrate a pressing need for one . . . and that the need for a stay outweighs any possible harm to the nonmovant." *Mullins v. Suburban Hosp. Healthcare Sys., Inc.*, No. 16-1113, 2017 WL 3023282, at *1 (D. Md. July 17, 2017) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see Williford*, 715 F.2d at 127 (movant must "justify [stay] by clear and convincing circumstances outweighing potential harm to the party against whom it is operative"). Typically, "[t]hree factors should be considered in weighing a motion to stay: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *Mullins*, 2017 WL 3023282, at *1 (quoting *Davis v. Biomet Orthopedics, LLC*, No. 12-3738, 2013 WL 682906 (D. Md. Feb. 22, 2013)).

Even where the movant is the President, he still "bears the burden of establishing [his] need" for a stay and does not enjoy an automatic stay as of right. *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see id.* at 704 ("'[N]either the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances.'" (quoting *Nixon*, 418 U.S. at 706)). The President fails to meet his burden of showing his need for a stay of "all proceedings" or that any such need outweighs the potential harm to Plaintiffs and their residents of granting a stay.

## A.     The Requested Stay Will Not Serve Judicial Economy.

"When considering a stay pending appeal pursuant to § 1292(b), the Court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'" *Asis Internet Servs. v. Active Response Grp.*, No. 07-6211, 2008 WL 4279695, at *3-4 (N.D. Cal. Sept. 16, 2008) (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)). Even if the President were to succeed on the issues he seeks to

certify, the requested stay will not serve judicial economy because his success would not narrow the claims in the case, *see supra*, I.A., I.B., and I.C.1., nor the discovery necessary to prove them. *See, e.g.*, *Nero v. Mosby*, No. 16-1288, 2017 WL 1048259, at *2 (D. Md. Mar. 20, 2017) (rejecting stay of discovery where interlocutory appeal would not render discovery "unnecessary"). For example, discovery into the patronage of the Trump International Hotel and BLT Prime Restaurant, as well as the General Services Administration lease, will remain relevant even if Plaintiffs must satisfy the President's bribery-like standard or if Plaintiffs are limited to proceeding on their *parens patriae* theory. An appeal at this stage, however, *would* delay final resolution of the case, potentially for years, *see infra*, II.C. Considerations of judicial economy thus strongly favor proceeding with the case and appealing all issues following final judgment. As explained above, Plaintiffs have outlined a discovery plan that will quickly ready this case for dispositive motion or trial allowing for a global appeal following a final judgment. *See* Rule 26(f) Report at 6.

### B. The President Has Not Shown Any Hardship Or Equitable Justification For A Stay.

The party seeking the stay must "demonstrate a pressing need for one." *Mullins*, 2017 WL 3023282, at *1. Far from showing a "pressing need," the President makes *no* argument to support a stay of "all proceedings." Rather, the President's argument mentions only the possibility of harm if the President were required to respond to discovery served against him in his official capacity. Mot. at 25-27 (arguing for a stay because the case "presents the unprecedented circumstance of civil discovery against the sitting President of the United States in his official capacity"). But, the President's status as President cannot save his argument.

Proceeding with discovery in this case would not, in fact, harm the President. Indeed, much of the relevant evidence for Plaintiffs' claims is in the hands of third parties and is

therefore unlikely to pose any meaningful burden on the President. *See* Rule 26(f) Report at 2-3; Joint Rec. at 2. At most, the President (through the Department of Justice) will be required to attend to developments in the litigation, but "'mere litigation expense, even substantial and unrecoupable cost,'" does not justify a stay. *Eshelman v. Puma Biotech., Inc.*, No. 16-18, 2017 WL 9440363, at *5 (E.D.N.C. May 24, 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)); *see Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970) ("[M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

Though the President requests a stay of "all" proceedings, Mot. at 25, his motion focuses solely on the potential "distract[ion]" of discovery against him in his official capacity. Mot. at 27. But the President does not explain why such discovery in this case would be unduly distracting. Instead, he relies solely on his assumption that discovery against the President is distracting in all cases, always raises intolerable separation-of-powers concerns, and thus, must always be stayed. The Supreme Court, however, has already rejected this sweeping position. "[I]t is . . . settled that the President is subject to judicial process in appropriate circumstances." *Clinton*, 520 U.S. at 704. "To read the Art. II powers of the President [otherwise] as providing an absolute privilege as against a subpoena . . . on no more than a generalized claim of the public interest in [Executive privilege] would upset the constitutional balance of a workable government and gravely impair the role of the courts under Art. III." *Nixon*, 418 U.S. at 683 (citations omitted).

In fact, rather than being "unprecedented," Mot. at 26, "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a

23

novelty," *Clinton*, 520 U.S. 704 (recounting historical examples). Accordingly, the Supreme Court held that the President could be subject to discovery, including fairly intrusive discovery in the form of a subpoena for tapes of confidential conversations. *Nixon*, 418 U.S. at 700. The President simply does not enjoy an "absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances" that could justify his request to stay all proceedings. *Clinton*, 520 U.S. at 703, 706 (rejecting proposition that litigation must always be stayed to prevent Presidential distraction, even where court allowed discovery to proceed); *Nixon*, 418 U.S. at 707 ("[T]he separation of powers were not intended to operate with absolute independence.").

Nor is there reason to think this litigation presents a uniquely distracting case. First, the parties' Rule 26(f) Conference Report confirms that discovery will focus largely on third parties, as they are likely the sources of most of the relevant materials here. *See* Rule 26(f) Report at 2-3. To the extent that any factual development is required from the President in his official capacity, it has the potential—if not the likelihood—of being satisfied by stipulation, limited written discovery requests, or other unobtrusive means.[4] *See* Rule 26(f) Report at 4 (noting that "Plaintiffs plan to pursue the alternative sources of discovery described above prior to seeking discovery directly from the President in his official capacity").

Further, in the context of formal discovery, "'[t]he guard, furnished to (the President) to protect him from being harassed by vexatious and unnecessary subpoenas, is to be looked for in

---

[4] Nor would this be the only case in which the President is currently participating in civil discovery. As a defendant in a defamation lawsuit, President Trump, presumably in his individual capacity, recently agreed to answer interrogatories and produce documents. *See* Stipulation, *Zervos v. Trump*, No. 150522/2017 (N.Y. Sup. Ct. Sept. 7, 2018), Doc. No. 189 (agreeing to answer plaintiff's interrogatories on or before September 28, 2018), http://bit.ly/2Mj5t12.

the conduct of a (district) court after those subpoenas have issued; not in any circumstance which is to precede their being issued.'" *Nixon*, 418 U.S. at 714 (quoting *United States v. Burr*, 25 F. Cas. 30, 34 (No. 14,692d) (C.C.D. Va. 1807)). "[I]f properly managed by the District Court, judicial proceedings [are] unlikely to occupy any substantial amount of [the President's] time." *Clinton*, 520 U.S. at 702 (internal quotation marks and alterations omitted). A stay is therefore unnecessary to protect the President's interests. This Court is capable of managing proceedings as they arise so that "interference with the President's duties would not occur." *Id.* at 708; *see also See* Rule 26(f) Report at 4 (noting that if any discovery against the President becomes necessary, Plaintiffs expect this Court will carefully manage that discovery to avoid an undue burden on the office of the President).

Indeed, the case the President cites, *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), helps confirm that a stay is unwarranted. There, the Court held that the district court had the power to "modify a party's overly broad discovery requests" directed at the Executive. *Cheney*, 524 U.S. at 389; *see also id.* at 387 (stating requests at issue "ask for everything under the sky"). In the event the President believes that any particular request by Plaintiffs is unduly burdensome, he may seek relief from this Court. There is no need for a preemptive, categorical stay.

Nor does the President's status as President convert typical litigation burdens into an inequitable hardship. *Clinton*, 520 U.S. at 705 n.40 ("While such distractions [of pending litigation] may be vexing to those subjected to them, they do not ordinarily implicate separation-of-powers concerns" and do not immunize the President from litigation); *see also Mosby*, 2017 WL 1048259, at *2 ("[I]mmunity is not a right to be free 'from litigation in general." (quoting *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996)). Indeed, the President has already demonstrated

25

no reluctance to pursue litigation despite the attendant distractions such involvement might impose on his official responsibilities. *See, e.g.*, Order, *Cohen v. United States*, No. 18-3161 (S.D.N.Y. Apr. 13, 2018) (granting the President's motion to intervene in litigation); *see also, e.g.*, Michael D. Shear & Eileen Sullivan, *Trump and Giuliani Taunt Brennan About Filing a Lawsuit*, N.Y. Times, Aug. 20, 2018 (President inviting lawsuit against himself), https://nyti.ms/2Mwj3De; Letter from Charles H. Harder to Steve Rubin & Michael Wolff (Jan. 4, 2018) (providing notice of potential legal action in connection with allegedly defamatory statements made in upcoming publication), https://bit.ly/2NjOMYU; Steve Holland & Doina Chiacu, *Trump targets book, threatens ex-ally Bannon with legal action*, Reuters (Jan. 3, 2018) (reporting on cease-and-desist letter sent to Stephen K. Bannon and stating that President Trump's attorney Charles Harder "told Reuters that 'legal action is imminent' against Bannon"), https://reut.rs/2NhQCJG.

In sum, far from showing "pressing need" to halt all proceedings, the President fails to justify a stay of discovery against him in his official capacity.

### C.    Any Inconvenience To The President Does Not Outweigh The Prejudice That Delay Will Inflict On Plaintiffs And Their Residents.

A stay of all proceedings would, however, cause substantial harm to Plaintiffs and the public, including the residents of Maryland and the District of Columbia. *Mullins*, 2017 WL 3023282, at *2 (denying motion to stay because, in part, stay would prejudice other party); *Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, No. 14-2921, 2015 WL 5768707, at *2 (D. Md. Jan. 10, 2015) ("Finally, an indeterminate stay while the [] appeal is resolved will surely prejudice [plaintiff's] efforts to achieve prompt resolution of the instant case."). If Plaintiffs are correct that the President is accepting prohibited emoluments, they—and their residents—suffer ongoing and immediate harm and are entitled to a swift remedy. Postponing all proceedings,

including third-party discovery, would unduly delay the conclusion of this case and relief to Plaintiffs. Moreover, given the likelihood the President will seek the opinion of the Supreme Court if he proves unsuccessful at the Fourth Circuit, a stay here could potentially last for years. In any case, "[w]hether that delay will turn out to be several months or in excess of a year, Plaintiffs will suffer substantial harm" from the requested stay. *Mosby*, 2017 WL 1048259, at \*2 (denying motion for stay).

The question at issue here—whether the President may profit from his office by accepting payments from foreign and domestic governments during his tenure—is one that demands prompt resolution. If "there is a public interest in an ordinary citizen's timely vindication of . . . her most fundamental right against alleged abuse of power by government officials," *Clinton*, 520 U.S. at 689 (internal quotation omitted), then surely there is a public interest in governments, as representative of millions of citizens, timely protecting themselves and their citizens from constitutional abuses by the President. While the public may have an interest in ensuring the President's attention is devoted to his office, *cf.* Mot. at 26, that interest is furthered by bringing the President into timely compliance with the constitutional obligations intended to ensure not only his undivided attention but also his undivided loyalty to that office. In contrast, the President "errs by presuming that interactions between the Judicial Branch and the Executive, even quite burdensome interactions, necessarily rise to the level of constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions." *Clinton*, 520 U.S. at 702 ("As Madison explained, separation of powers does not mean that the branches 'ought to have no *partial agency* in, or no *controul* over the acts of each other.' The Federalist No. 47, at 325-26 (James Madison) (J. Cooke ed., 1961) (emphasis

in original)."). Simply put, "[t]he public interest in judicial efficiency would be hampered by a stay." *Mosby*, 2017 WL 1048259, at *2.[5]

## CONCLUSION

For the reasons stated, the Court should deny the President's request to certify certain issues for interlocutory appeal. In the alternative, if the Court does choose to certify, the Court should deny the President's request to stay all proceedings pending the appeal.

---

[5] Moreover, "[c]ertainly there is no public interest in enabling a public official to delay providing information regarding claims against [him] where, as here, essentially the same information would be disclosed even if [he] obtained dismissal" of certain claims against him. *Mosby*, 2017 WL 1048259, at *2; *see also Clinton*, 520 US. at 707-08 ("[D]elaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts . . . .").

Dated: September 17, 2018                    Respectfully submitted,


THE STATE OF MARYLAND                        THE DISTRICT OF COLUMBIA

BRIAN E. FROSH                               KARL A. RACINE
Attorney General of Maryland                 Attorney General for the District of Columbia
STEVEN M. SULLIVAN                           NATALIE O. LUDAWAY
Solicitor General                            Chief Deputy Attorney General
Federal Bar No. 24930                        Federal Bar No. 12533

*/s/ Leah J. Tulin*                          */s/ Stephanie E. Litos*
LEAH J. TULIN                                STEPHANIE E. LITOS*
Federal Bar No. 20083                        Assistant Deputy Attorney General
Assistant Attorney General                   Civil Litigation Division
200 Saint Paul Place, 20th Floor             441 Fourth Street, N.W.
Baltimore, Maryland 21202                    Washington, D.C. 20001
T: (410) 576-6962                            T: (202) 724-6650
F: (410) 576-6955                            F: (202) 741-0647
ltulin@oag.state.md.us                       stephanie.litos@dc.gov


NORMAN L. EISEN                              JOSEPH M. SELLERS
Federal Bar No. 09460                        Federal Bar No. 06284
neisen@citizensforethics.org                 jsellers@cohenmilstein.com
LAURA C. BECKERMAN*                          CHRISTINE E. WEBBER*
lbeckerman@citizensforethics.org             Cohen Milstein Sellers & Toll PLLC
STUART C. MCPHAIL*                           1100 New York Avenue, N.W.
smcphail@citizensforethics.org               Washington, D.C. 20005
Citizens for Responsibility and Ethics       T: (202) 408-4600
   in Washington
455 Massachusetts Avenue, N.W.
Washington, D.C. 20001                       *Attorneys for Plaintiffs*
T: (202) 408-5565
F: (202) 588-5020                            **admitted pro hac vice*


DEEPAK GUPTA*
deepak@guptawessler.com
DANIEL TOWNSEND*
Gupta Wessler PLLC
1900 L Street, N.W.
Washington, D.C. 20009
T: (202) 888-1741