**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2488

DISTRICT OF COLUMBIA; STATE OF MARYLAND,

        Plaintiffs - Appellees,

  v.

DONALD J. TRUMP, President of the United States of America, in his individual capacity,

        Defendant - Appellant.

-----------------------------------------------------

SCHOLAR SETH BARRETT TILLMAN; JUDICIAL EDUCATION PROJECT,

        Amici Supporting Appellant,

FORMER GOVERNMENT ETHICS OFFICERS; DON FOX; MARILYN GLYNN; KAREN KUCIK; LAWRENCE D. REYNOLDS; AMY COMSTOCK RICK; TRIP ROTHSCHILD; RICHARD M. THOMAS; HARVEY WILCOX; LESLIE WILCOX,

        Amici Supporting Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:17-cv-01596-PJM)

Argued: March 19, 2019                                        Decided: July 10, 2019

Before NIEMEYER and QUATTLEBAUM, Circuit Judges, and SHEDD, Senior Circuit Judge.

———

Remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Quattlebaum and Senior Judge Shedd joined.

———

**ARGUED:** William S. Consovoy, CONSOVOY MCCARTHY PARK PLLC, Arlington, Virginia, for Appellant. Leah J. Tulin, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Patrick Strawbridge, Boston, Massachusetts, Thomas R. McCarthy, Bryan K. Weir, Cameron T. Norris, CONSOVOY MCCARTHY PARK PLLC, Arlington, Virginia, for Appellant. Brian E. Frosh, Attorney General, Steven M. Sullivan, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland; Karl A. Racine, Attorney General, Loren L. AliKhan, Solicitor General, Stephanie E. Litos, Assistant Deputy Attorney General, Civil Litigation Division, OFFICE OF THE ATTORNEY GENERAL OF THE DISTRICT OF COLUMBIA, Washington, D.C.; Noah Bookbinder, Laura C. Beckerman, Nikhel S. Sus, CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, Washington, D.C.; Deepak Gupta, Joshua Matz, Daniel Townsend, GUPTA WESSLER PLLC, Washington, D.C.; Joseph M. Sellers, Christine E. Webber, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, D.C., for Appellees. Carrie Severino, JUDICIAL EDUCATION PROJECT, Washington, D.C., for Amicus Judicial Education Project. Robert W. Ray, THOMPSON & KNIGHT LLP, New York, New York; Josh Blackman, Houston, Texas, for Amicus Scholar Seth Barrett Tillman. Jan I. Berlage, GOHN HANKEY & BERLAGE LLP, Baltimore, Maryland, for Amici Scholar Seth Barrett Tillman and The Judicial Education Project. Tejinder Singh, GOLDSTEIN & RUSSELL, P.C., Bethesda, Maryland, for Amici Former Government Ethics Officials, Don Fox, Marilyn Glynn, Karen Kucik, Lawrence D. Reynolds, Amy Comstock Rick, Trip Rothschild, Richard M. Thomas, Harvey Wilcox, and Leslie Wilcox.

———

NIEMEYER, Circuit Judge:

The District of Columbia and the State of Maryland commenced this action against Donald J. Trump in his official capacity as President of the United States and in his individual capacity, alleging that he violated the Foreign and Domestic Emoluments Clauses of the U.S. Constitution. This action is the same as that which we address in appeal No. 18-2486, also decided today, and is governed by the same complaint. In No. 18-2486, we address the President's motion to dismiss filed *in his official capacity*, which is presented to us through the President's petition for a writ of mandamus. And here, we address the President's motion filed *in his individual capacity*, which raises the additional issue of whether the President has absolute immunity and which is presented to us by appeal.

As described in more detail in appeal No. 18-2486, the district court treated the President's motion to dismiss filed in his official capacity with multiple opinions, but it never ruled on the President's motion filed in his individual capacity and thus never addressed his claim of absolute immunity. Rather than ruling, the court, by order dated December 3, 2018, directed the parties to proceed with discovery. The President has thus noticed this appeal from "the District Court's effective denial of his motion to dismiss."

Because there was no decision expressly denying immunity, the District and Maryland filed a motion in this court to dismiss the appeal, contending that there is "no basis for appellate jurisdiction." In addition, because they filed a notice of voluntary dismissal of their claim against the President in his individual capacity in the district court after this appeal was docketed, they argue that this appeal is moot. The President

3

contends, however, that the district court's inaction on his motion, coupled with its order to proceed with discovery, had the effect of denying his claim of immunity and thus giving him the right to appeal immediately. He also contends that the District and Maryland's purported dismissal in the district court was ineffective because jurisdiction had already transferred to this court with his notice of appeal. We deferred ruling on the District and Maryland's motion to dismiss the appeal pending oral argument.

For the reasons that follow, we now conclude that we have jurisdiction over the appeal with respect to the President's claim of immunity and, exercising that jurisdiction, hold that, as a threshold matter, the District and Maryland do not have standing under Article III to pursue the claims against the President in his individual capacity. Based on our ruling here and our ruling in appeal No. 18-2486, we remand with instructions to dismiss the complaint with prejudice.

I

The District and Maryland's complaint alleges that the President's continued interest in the Trump Organization — specifically in hotels and related properties — results in him receiving "emoluments" from various government entities and officials, both foreign and domestic, and that such receipts violate the Foreign and Domestic Emoluments Clauses of the U.S. Constitution. The complaint sues the President both in his official capacity and his individual capacity. The President filed motions to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that the District and Maryland lacked standing and that they had failed to state a claim

4

under the Emoluments Clauses. Also, with respect to the claims against him in his individual capacity, the President claimed absolute immunity.

The district court addressed the President's motions in piecemeal fashion. By an opinion and order dated March 28, 2018, it rejected the President's challenge to the District and Maryland's standing insofar as the claims were made in connection with the Trump International Hotel and its appurtenances in Washington, D.C. Then, by a separate opinion and order dated July 25, 2018, the court ruled on the meaning of the term "emolument" and concluded that the various benefits alleged in the complaint qualified as "emoluments" under the Emoluments Clauses. The court, however, deferred ruling on the President's motion to dismiss the claims against him in his individual capacity, thus declining to address the President's assertion of absolute immunity. The court also directed the parties to submit a discovery plan.

In response to the district court's decision to defer ruling on his claim of immunity, the President asked the court to convene a conference, citing concerns about being subjected to discovery before the court had ruled on immunity. The court, however, did not respond to the President's request but instead, on December 3, 2018, entered a "Scheduling Order Regarding Discovery" opening discovery against "Donald J. Trump in his official capacity as President of the United States of America." On December 14, 2018, the President noticed this appeal from the district court's "effective denial" of his individual capacity motion to dismiss based on absolute immunity.

After the President's appeal was docketed in this court, the district court issued an order dated December 17, 2018, in which it asked the parties "to address the questions of

5

whether the Court can dismiss without prejudice the claims against President Trump in his individual capacity and if so whether it should do so." Two days later, on December 19, the District and Maryland filed a notice of voluntary dismissal "without prejudice" of their individual-capacity claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The District and Maryland then filed a motion in this court to dismiss the appeal. We deferred ruling on that motion pending oral argument.

II

We address first the District and Maryland's motion to dismiss this appeal for lack of appellate jurisdiction. They contend (1) that "there is no decision below and thus no basis for appellate jurisdiction" and (2) that their voluntary dismissal in the district court "extinguished" their claims against the President in his individual capacity and thus "mooted this appeal."

In response, the President notes that an immediate appeal lies from interlocutory orders denying immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985), and contends that, in this case, while the district court did not issue an order rejecting his claim of immunity, the court effectively denied his immunity by failing to rule on his motion and ordering discovery to begin. With respect to the District and Maryland's voluntary dismissal without prejudice of their claims against the President in his individual capacity, the President contends that the dismissal was ineffective because, with the filing of his notice of appeal, jurisdiction over those claims had transferred to this court. He argues further that the District and Maryland's effort to dismiss their

6

individual-capacity claims without prejudice was designed to avoid a ruling on his immunity and to leave the issue open for another case.

Like claims of immunity generally, the invocation of absolute immunity is a claim to "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell*, 472 U.S. at 526. "The entitlement is an *immunity from suit* rather than a mere defense to liability." *Id.*; *see also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (recognizing that qualified immunity "exists to 'give government officials a right, not merely to avoid standing to trial, but also to avoid the burdens of such *pretrial* matters as discovery'" and that "[w]hen a district court denies qualified immunity at the dismissal stage, that denial subjects the official to the burdens of pretrial matters, and some of the rights inherent in a qualified immunity defense are lost" (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996))). The Supreme Court has thus "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Mitchell*, 472 U.S. at 526; *Davis v. Scherer*, 468 U.S. 183, 195 (1984); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For this reason, it is now clear that an order rejecting an invocation of immunity is subject to immediate interlocutory appeal. *See, e.g.*, *Mitchell*, 472 U.S. at 525–27; *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982); *Jenkins*, 119 F.3d at 1159.

Moreover, a formal order denying immunity is not a prerequisite to an immediate interlocutory appeal. Where a district court has yet to rule on the question of immunity from suit but allows the case to go forward with discovery, it effectively deprives the

7

defendant of the full benefit of immunity, and an immediate appeal may be taken. *See Jenkins*, 119 F.3d at 1159; *Nero v. Mosby*, 890 F.3d 106, 125 (4th Cir. 2018). In *Jenkins*, the district court issued an order denying the defendant's motion to dismiss but "refused to rule on the question of qualified immunity." 111 F.3d at 1159. In those circumstances, we concluded that we had jurisdiction over the defendant's interlocutory appeal, noting that, although the district court had not expressly ruled on qualified immunity, its "refusal to consider the question subjected [the defendant] to further pretrial procedures, and so effectively denied him qualified immunity." *Id.*; *see also Nero*, 590 F.3d at 125; *Everson v. Leis*, 556 F.3d 484, 490–93 (6th Cir. 2009); *Smith v. Reagan*, 841 F.2d 28, 30–31 (2d Cir. 1988); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).

In this case, we conclude likewise that the district court effectively denied the President's claim of immunity. After it deferred ruling on the President's invocation of immunity, it ordered the parties to begin with discovery, thereby effectively denying the President the important aspect of immunity that he be spared the burdens of pretrial proceedings, including discovery.

The District and Maryland argue, however, that the district court's December 3, 2018 order scheduling discovery related only to the *official capacity* claims, which had moved beyond the motion to dismiss stage, and that the order therefore did not subject the President to pretrial procedures with respect to the claims against him in his *individual capacity*. The difficulty with this argument, however, is that for purposes of this action, there is no meaningful distinction between discovery with respect to the

8

claims against the President in his official capacity and discovery with respect to the claims against him in his individual capacity. This is largely due to the nature of the Emoluments Clauses, which, at least under the District and Maryland's theory, prohibit certain *private* transactions by virtue of an official's *public* office. Accordingly, any Emoluments Clause claim against the President under the District and Maryland's theory, regardless of capacity, entails the same discovery into the President's business dealings. Whether the claims in this case are asserted against the President in his individual or official capacities simply does not alter the scope or nature of discovery in any material way. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009).

The District and Maryland argue additionally that, in any event, their notice of voluntary dismissal in the district court "extinguished the claims against President Trump in his individual capacity" and that therefore we cannot consider appeals on those claims.

The District and Maryland's notice of dismissal, however, was filed *after* the President filed his notice of appeal and the appeal was docketed in this court, and once the President filed his appeal and it was docketed, the District and Maryland lost the ability to act on the claims in the district court. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (noting that it is "generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously" and that "[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("Generally, a timely filed notice of appeal transfers

9

jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal"); *see also Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n*, 895 F.2d 711, 713 (11th Cir. 1990) (per curiam); Fed. R. App. P. 42(a) (reserving limited jurisdiction in the district court to dismiss *the appeal* until the appeal is docketed by the circuit clerk).

Indeed, because the appeal had been noticed and docketed and the district court's jurisdiction over all matters with respect to the claims against the President in his individual capacity had transferred to this court, any effort to dismiss those claims could only have been directed to this court. Were we to recognize the District and Maryland's effort to dismiss in the district court, there would be nothing to prevent plaintiffs from also dismissing their claims after appellate briefing closed, or upon being notified of the three-judge panel assigned to their case, or after oral argument, or even as the opinion is being announced. Not only would the potential for such manipulation wreak havoc on the orderly division of responsibility between district courts and courts of appeals, it would also be entirely inconsistent with the proper function of Rule 41(a)(1) dismissals in the district court. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 397 (1990) (noting that Rule 41(a)(1) "allow[s] a plaintiff to dismiss an action without the permission of the adverse party or the court *only during the brief period before the defendant [makes] a significant commitment of time and money*" (emphasis added)).

Accordingly, we deny the District and Maryland's motion to dismiss this appeal.

10

III

Even though we have jurisdiction over this interlocutory appeal based on the President's invocation of absolute immunity, we nonetheless must address *at the threshold* the question of subject-matter jurisdiction — in this case, whether the District and Maryland have Article III standing to bring their claims. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)); *see also Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes"); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"). Recognizing these principles, we have required addressing subject-matter jurisdiction first in the context of an interlocutory appeal premised on immunity, noting that "the absence of standing would be a jurisdictional defect." *Williams v. Hansen*, 326 F.3d 569, 574 n.4 (4th Cir. 2003) (citing *Steel Co.*, 523 U.S. at 94–95); *see also Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268–69 (2d Cir. 1999) (same). Accordingly, we proceed first to consider whether the District and Maryland have Article III standing.

Because the claims that the District and Maryland assert against the President in his individual capacity are identical to the claims they assert against him in his official capacity and are premised on the same factual allegations, our decision in appeal No. 18-2486, also decided today and addressing the same standing issue, governs the outcome here. We therefore hold that the District and Maryland do not have standing under Article III to pursue their claims against the President in any capacity, including his individual capacity. Accordingly, based on this opinion and our opinion in No. 18-2486, we remand with instructions to dismiss the complaint with prejudice.

REMANDED WITH INSTRUCTIONS