## ON REHEARING EN BANC

### PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

### No. 18-2488

————————————

DISTRICT OF COLUMBIA; STATE OF MARYLAND,

                    Plaintiffs – Appellees,

      v.

DONALD J. TRUMP, President of the United States of America, in his official
capacity and in his individual capacity,

                    Defendant – Appellant.

-------------------------------------------------------------

SCHOLAR SETH BARRETT TILLMAN; JUDICIAL EDUCATION PROJECT,

                    Amici Supporting Appellant,

FORMER GOVERNMENT ETHICS OFFICERS; DON FOX; MARILYN
GLYNN; KAREN KUCIK; LAWRENCE D. REYNOLDS; AMY COMSTOCK
RICK; TRIP ROTHSCHILD; RICHARD M. THOMAS; HARVEY WILCOX;
LESLIE WILCOX,

                    Amici Supporting Appellees,

ADMINISTRATIVE LAW, CONSTITUTIONAL LAW, AND FEDERAL
COURTS SCHOLARS,

                    Amicus Supporting Rehearing Petition.

————————————

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.  (8:17-cv-01596-PJM)

---

Argued:  December 12, 2019                    Decided:  May 14, 2020

---

Before GREGORY, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, KING, AGEE, KEENAN, WYNN, DIAZ, FLOYD, THACKER, HARRIS, RICHARDSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

---

Dismissed by published opinion.  Judge Motz wrote the majority opinion, in which Chief Judge Gregory and Judges King, Keenan, Wynn, Diaz, Floyd, Thacker, and Harris joined. Judge Niemeyer wrote a dissenting opinion, in which Judges Wilkinson, Agee, Quattlebaum, and Rushing joined.  Judge Richardson wrote a dissenting opinion.

---

**ARGUED:**  Patrick Strawbridge, CONSOVOY MCCARTHY PARK PLLC, Boston, Massachusetts, for Appellant.  Leah J. Tulin, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.  **ON BRIEF:**  William S. Consovoy, Thomas R. McCarthy, Bryan K. Weir, Cameron T. Norris, CONSOVOY MCCARTHY PARK PLLC, Arlington, Virginia, for Appellant.  Brian E. Frosh, Attorney General, Steven M. Sullivan, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland; Karl A. Racine, Attorney General, Loren L. AliKhan, Solicitor General, Stephanie E. Litos, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C.; Noah Bookbinder, Laura C. Beckerman, Nikhel S. Sus, Stuart C. McPhail, CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, Washington, D.C.; Deepak Gupta, Joshua Matz, Daniel Townsend, GUPTA WESSLER PLLC, Washington, D.C.; Joseph M. Sellers, Christine E. Webber, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, D.C., for Appellees.  Regina Kline, Jean M. Zachariasiewicz, Anthony J. May, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Amici Administrative Law, Constitutional Law, and Federal Courts Scholars.  Tejinder Singh, GOLDSTEIN & RUSSELL, P.C., Bethesda, Maryland, for Amici Former Government Ethics Officials Don Fox, Marilyn Glynn, Karen Kucik, Lawrence D. Reynolds, Amy Comstock Rick, Trip Rothschild, Richard M. Thomas, Harvey Wilcox, and Leslie Wilcox.  Robert W. Ray, THOMPSON & KNIGHT LLP, New York, New York; Josh Blackman, Houston, Texas, for Amicus Scholar Seth Barrett Tillman.  Carrie Severino, JUDICIAL EDUCATION PROJECT, Washington, D.C., for Amicus Judicial Education Project.  Jan I. Berlage, GOHN HANKEY & BERLAGE LLP, Baltimore, Maryland, for Amici Scholar Seth Barrett Tillman and the Judicial Education Project.

---

2

DIANA GRIBBON MOTZ, Circuit Judge:

In June 2017, the District of Columbia and the State of Maryland ("Plaintiffs") brought suit against President Donald J. Trump in his official capacity, alleging violations of the Constitution's Foreign and Domestic Emoluments Clauses.  After the district court granted Plaintiffs' motion to amend their complaint to add the President as a defendant in his individual capacity, the President in that capacity moved to dismiss the action against him, asserting absolute immunity.  When approximately seven months passed and the district court had not yet acted on that motion, the President in his individual capacity filed this interlocutory appeal.

A panel of this court concluded that the district court had effectively denied immunity to the President in his individual capacity and that because of this effective denial, the panel had jurisdiction to consider the interlocutory appeal.  "[E]xercising that jurisdiction," the panel held that Plaintiffs lacked Article III standing, and on that basis remanded the case to the district court with instructions to dismiss Plaintiffs' complaint with prejudice.  *District of Columbia v. Trump*, 930 F.3d 209, 211 (4th Cir. 2019).  The full court then agreed to rehear the case en banc, vacating the panel opinion.  *District of Columbia v. Trump*, 780 F. App'x 38 (4th Cir. 2019).  We now dismiss this interlocutory appeal for lack of jurisdiction.

I.

When, on March 12, 2018, Plaintiffs amended their complaint to add as a defendant the President in his individual capacity, the lawsuit against the President in his official

3

capacity was well underway.[1]  The President in his official capacity had previously moved to dismiss the lawsuit on multiple grounds, and briefing on that motion was completed in December 2017.  The district court held a full-day hearing on that motion in January 2018.

On March 28, 2018, the district court issued an opinion rejecting some of the bases for dismissal of the complaint advanced in the motion of the President in his official capacity.  In that opinion, the district court recognized:

> The President has indicated that he wishes to file a Motion to Dismiss with respect to Plaintiffs' individual capacity claims.  He will be permitted to do so.  The Court will deal with the viability of the individual capacity claims in a subsequent Opinion and Order.

*District of Columbia v. Trump*, 291 F. Supp. 3d 725, 733 n.4 (D. Md. 2018) (citation omitted).  More than a month later, in May, the President filed a motion to dismiss the individual capacity claims.  Although some of the grounds for dismissal mirrored those asserted in defense in the official capacity suit, the President offered several additional bases for dismissal of the claims against him in his individual capacity, including absolute immunity.

The district court held a second hearing in mid-June on the President's official capacity motion to dismiss.  In late July, the district court issued a second opinion rejecting the remaining arguments for dismissal of the complaint urged in the President's motion to

---

[1] The President in his official capacity petitioned this court for a writ of mandamus, asking us to compel the district court to certify an interlocutory appeal, or, alternatively, to dismiss the suit outright.  Our opinion in that companion case, No. 18-2486, is also filed today.

dismiss in his official capacity.  In that opinion, the court again acknowledged the President's motion to dismiss in his individual capacity and explained:

> The Court will address the individual capacity claims and the arguments to dismiss them in a separate Opinion.  The present Opinion addresses only those arguments pertaining to the President's official capacity as set forth in his Motion to Dismiss.

*District of Columbia v. Trump*, 315 F. Supp. 3d 875, 877 n.2 (D. Md. 2018).

In mid-August 2018, the President in his official capacity sought to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Briefing closed on that motion in late September, and the district court issued an opinion denying certification in November 2018.  Meanwhile, in a joint status report submitted to the district court in mid-August 2018, the President asked the court to resolve his motion to dismiss the suit against him in his individual capacity at the court's "earliest possible convenience."  The President's individual capacity counsel specifically reserved all objections with respect to discovery "until after a decision is made on the motion to dismiss the claims against the President in his individual capacity."

On December 3, 2018, the district court approved a scheduling order for discovery with respect to the official capacity claims; the court issued no discovery order or any other order as to the individual capacity claims.  Nonetheless, on December 14, 2018, the President, in his individual capacity, noted this interlocutory appeal.[2]

---

[2] After that appeal was docketed, Plaintiffs filed a notice of voluntary dismissal of the individual capacity claims, pursuant to Fed. R. Civ. P. 41(a).  The parties dispute the impact of this notice, an issue we need not resolve.

II.

With few exceptions, courts of appeals are vested with jurisdiction only over appeals from "final decisions of the district courts." 28 U.S.C. § 1291. Ordinarily, a denial of a motion to dismiss constitutes an interlocutory order that is not immediately appealable. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). But when a district court denies a motion to dismiss on the ground that the President lacks absolute immunity, such a denial is immediately appealable under the collateral order doctrine. *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982); *see also Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985).

The issue before us is whether the district court has denied the President immunity in the absence of any order ruling on that question. The President recognizes that the district court has not actually issued such an order but claims that the district court has *effectively* denied him immunity. He maintains that (1) the district court's delay in ruling on his motion to dismiss in his individual capacity constitutes an immediately appealable "*sub silentio* refusal" to rule; and (2) the district court's scheduling order authorizing discovery for the official capacity claims has subjected the President, in his individual capacity, to litigation, violating his absolute immunity.

A district court's actual refusal to rule on immunity is treated as a denial of immunity and is immediately appealable. In most cases in which courts have found a basis for appellate jurisdiction, the district court's refusal to rule on immunity was an explicit one, indicating that its decision was final and it would adjudicate nothing else at that point in time. An implicit refusal to rule on an immunity question can also provide a basis for

appellate jurisdiction.  But the implicit refusal must, like an explicit one, be clear, establishing that the ruling is the court's final determination in the matter.  *See, e.g.*, *Nero v. Mosby*, 890 F.3d 106, 125 (4th Cir. 2018); *Everson v. Leis*, 556 F.3d 484, 490–93 (6th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc); *Workman v. Jordan*, 958 F.2d 332, 335–36 (10th Cir. 1992); *Smith v. Reagan*, 841 F.2d 28, 30–31 (2d Cir. 1988); *Craft v. Wipf*, 810 F.2d 170, 173 (8th Cir. 1987); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).[3]

The two cases from this court on which the President relies — *Jenkins* and *Nero* — illustrate this need for clarity in a denial of immunity.  In *Jenkins*, the district court *expressly* and clearly refused to rule on the defendant's qualified immunity claim.  *See* 119 F.3d at 1159.  In *Nero*, the district court *implicitly* refused to rule by denying a motion to dismiss without expressly addressing the defendant's assertion of immunity.  *See* 890 F.3d at 125.  That implicit refusal was clear because the district court's denial of the motion to dismiss inherently — and conclusively — denied her immunity.

When, however, it is clear that the district court *does* intend to rule on a motion asserting an immunity defense and has not unreasonably delayed in doing so, the lack of a ruling is neither an implicit nor effective denial of immunity.  *See, e.g.*, *Meza v. Livingston*,

---

[3] The dissent's reliance on these cases is misplaced.  In each of them, unlike the case at hand, the district court clearly denied an immunity claim.  The dissent cites not a single case in which, in the absence of a clear denial of an immunity claim, an appellate court held the district court had denied immunity, let alone a case where the district court recognized the immunity claim and twice stated that it would rule on it.  We have found none.

537 F.3d 364, 367 (5th Cir. 2008); *Kimble v. Hoso*, 439 F.3d 331, 333–36 (6th Cir. 2006);

*Way v. County of Ventura*, 348 F.3d 808, 810 (9th Cir. 2003); *Krein v. Norris*, 250 F.3d

1184, 1188 (8th Cir. 2001).

Here, the district court neither expressly nor implicitly refused to rule on immunity.

It did not make *any* rulings with respect to the President in his individual capacity.[4]  To the

contrary, the district court stated in writing that it intended to rule on the President's

individual capacity motion.  Despite the President's suggestion, the district court's deferral

did not result in a delay "beyond reasonable limits."

Not even seven months had elapsed after the close of briefing on this question at the

time the President noted this appeal.  During these seven months, the district court,

recognizing that the President in his individual capacity had moved to dismiss, again

---

[4] We particularly note that the district court never issued a discovery order against the President in his individual capacity; the sole discovery order was directed at the claims against the President in his official capacity, and to date has only implicated third parties and low-level government officials.  Although separating a single public official into multiple legal persons is a legal fiction, it is a fiction we are bound to observe.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986).  The discovery ordered here would have proceeded apace, regardless of whether the President in his individual capacity had been dismissed.  The President nonetheless asserts that discovery directed at *anyone* in a case in which the President in his individual capacity is a named defendant constitutes a denial of immunity.  In doing so, he relies on *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009).  That case is inapposite.  It addressed the question of whether tight control of the discovery process can cure an insufficiently pled complaint that had improperly survived a motion to dismiss.  Here, there has been *no* ruling on the President's motion to dismiss.  As Judge King, writing for the en banc court, explained in an analogous context, a defendant must wait to appeal until the district court conclusively rules on immunity.  *See Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 220 (4th Cir. 2012) (en banc) ("[E]ven a party whose assertion of immunity ultimately proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule [on immunity].").

expressly stated in writing that it would address that motion.  In these same seven months, in addition to managing all of the other cases on its docket, the district court managed the many aspects of this complex litigation against the President:  the court held a second hearing on the President's motion to dismiss in his official capacity, issued a second, thorough written opinion explaining its ruling, and also issued a lengthy written opinion explaining its denial of the President's motion to certify an interlocutory appeal of the court's rulings.  We cannot conclude that the court's failure to also rule on the motion at issue here during this same seven-month period evinces an unreasonable delay or a desire to needlessly prolong this litigation.[5]

It is axiomatic that a district court has wide discretion to prioritize matters among its docket.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *cf. United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) ("[D]istrict courts have wide-ranging control over management of their dockets . . . .").  This discretion can be abused.  But this seven-month delay provides scant justification for intrusion into the district court's docket, particularly

---

[5] The dissent's assertion that the district court delayed ruling on immunity for "nine months," dissent at 12; *id.* at 22; *id.* at 26, rests on calculating the time period from the date on which the President informed the district court that counsel *intended* to file a motion to dismiss invoking immunity, not from the date on which the motion was *actually filed*.  The dissent's treatment of the time period is of a piece with its troubling and unwarranted attack on the district court's motives.  *See id.* at 14 (describing the district court as "deliberately dilatory and, more probably, manipulative"); *id.* at 22 (concluding that the district court's "conduct was deliberately calculated to avoid appellate review on the immunity question"); *see also* second dissent in No. 18-2486 at 77–78 (describing the district court's decision in the individual capacity case as a "brazen" attempt to "shield[] its decisions from any appellate review"); *id.* at 78 (accusing the district court of "contriv[ing] to retain the litigation at the district court level").  Tellingly, the President's counsel does not impugn the district court's motives.

given the court's express statements that it would rule on the President's motion to dismiss and its diligence in attending to other important matters in the case. This was not an unreasonable or inexplicable delay tantamount to a denial of immunity.

### III.

At oral argument, the President's counsel conceded that the asserted denial of his claim of immunity provides the only jurisdictional basis for this interlocutory appeal. Because, as we have explained, the district court did not deny the President's immunity claim, we lack jurisdiction to consider the appeal.

*DISMISSED*

NIEMEYER, Circuit Judge, with whom Judges WILKINSON, AGEE, QUATTLEBAUM, and RUSHING join, dissenting:

This appeal and the petition that is the subject of our related decision issued today in *In re Trump*, No. 18-2486, arise from a single action.

After the District of Columbia and the State of Maryland sued the President in both his official and individual capacities for violating the Foreign and Domestic Emoluments Clauses of the U.S. Constitution, the President filed motions to dismiss, including a motion claiming absolute immunity from suit in his individual capacity. The President contends that the district court — by repeatedly deferring ruling on absolute immunity and then entering an order on December 3, 2018, directing him to engage in six months of full fact discovery on the merits over his objection to such discovery based on immunity — effectively denied him the benefits of immunity, which would protect him from such discovery. The President appealed from the district court's order. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (noting that orders denying claims of absolute immunity are immediately appealable collateral orders).

The District and Maryland filed a motion to dismiss this appeal contending (1) that "there is no decision below [denying absolute immunity] and thus no basis for appellate jurisdiction" and (2) that their subsequent voluntary dismissal of their claims against the President in his individual capacity in the district court under Federal Rule of Civil Procedure 41(a) "extinguished" those claims and thus "mooted this appeal."

The majority opinion adopts the District and Maryland's position and grants their motion to dismiss the President's appeal, finding, without addressing the district court's

11

December 3 order, that there is no clear, explicit ruling on the President's immunity claim from which to appeal. *See ante* at 8. But in so doing, the majority remarkably glides over a series of glaring facts:

- The President first brought the immunity issue to the district court's attention in March 2018.

- The district court deferred addressing the immunity issue for almost nine months thereafter.

- During the nine months, the court refused to address or rule on the immunity question four different times, choosing instead to press forward on the merits.

- In response to the President's separate specific requests in August and December 2018 that the court promptly resolve the immunity issue, the court issued the December 3 order scheduling full fact discovery on the merits over a period of six months — discovery to which the President had specifically objected on the ground that it would violate his immunity.

- And when the President appealed the December 3 order as effectively denying his immunity, the court invited the District and Maryland to dismiss their claim against the President in his individual capacity so as to rid the case of the immunity issue altogether.

While the majority acknowledges that the President could appeal "[a]n implicit refusal to rule on an immunity question," *ante* at 6, it concludes that "the lack of a ruling [on the immunity issue] [was] neither an implicit nor effective denial of immunity," *ante* at 7, willfully turning a blind eye to the determinative procedural facts.

As shown below in detail, when the district court issued its December 3, 2018 order directing the President to participate in six months of full fact discovery despite the President's assertion of absolute immunity and his objection to that discovery based on immunity, it effectively denied the President the benefits of immunity, thus entitling him to appeal the order. And the District and Maryland's attempt to moot the appeal by dismissing the individual capacity claim in the district court *after* the President had filed this appeal was ineffective. Accordingly, I would deny the District and Maryland's motion to dismiss this appeal and exercise appellate jurisdiction based on the denial of immunity. Having jurisdiction, I would then remand the case to the district court with instructions to dismiss the District and Maryland's complaint for the reasons given in the dissenting opinions in *In re Trump*, No. 18-2486.

I

The District and Maryland's complaint alleges that the President's continued interest in the Trump Organization — specifically in hotels and related properties — results in his receipt of "emoluments" from various government entities and officials, both foreign and domestic, and that such receipts violate the Foreign and Domestic Emoluments Clauses of the U.S. Constitution. The District and Maryland sued the President both in his official capacity and his individual capacity. The President filed motions to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that the District and Maryland lacked standing and that they had failed to state a claim under the

Emoluments Clauses.  Also, with respect to the claims against him in his individual capacity, the President asserted absolute immunity.

By orders dated March 28 and July 25, 2018, the district court denied the President's motion to dismiss the claims filed against him in his official capacity, and by order dated November 2, 2018, the court denied the President's effort to have those orders certified for immediate appeal under 28 U.S.C. § 1292(b), instead directing counsel to submit a plan for discovery.  In contrast, throughout the period from March 2018 until December 3, 2018, the court repeatedly deferred and postponed ruling on the President's claims of absolute immunity.  Then, on December 3, it ordered the President to engage in full fact discovery on the merits despite the President's objection that commencing discovery would impinge on his asserted immunity.

The district court's treatment of the President's invocation of absolute immunity is best characterized as deliberately dilatory and, more probably, manipulative.  In a March 8, 2018 response to the District and Maryland's motion to amend their complaint to add claims against the President in his individual capacity, the President informed the court that he would be claiming absolute immunity.  He stated that "individual-capacity claims interject issues of immunity from suit," and "a denial of an immunity defense *would be immediately appealable*, requiring a concomitant stay while the appeal is pending." (Emphasis added).  The court nonetheless granted the District and Maryland leave to amend their complaint.

Shortly thereafter, the President sought leave to argue his immunity defense at the hearing that had been scheduled for June 11, 2018, to address the pending motion to dismiss

14

the claims made against him in his official capacity.  He also sought expedited briefing on the immunity defense to ensure that the issue would be ready for consideration at the June 11 hearing.  By order dated April 27, 2018, the district court accepted the President's proposed expedited briefing schedule, but it specifically advised that absolute immunity would *not* be "entertain[ed]" at the June 11, 2018 hearing, which would address only the President's motion to dismiss in his official capacity.  The court said that arguments for dismissal raised by the President in his individual capacity, including those based on immunity, "[would] be addressed at a later time."  The President formally filed his motion to dismiss the claims against him in his individual capacity, including his immunity defense, on May 1, 2018.

Following the June 11 hearing, the court issued an opinion dated July 25 addressing the claims against the President in his official capacity and denying his motion to dismiss them.  In its order, the court also directed the parties to submit an "outline" for proposed discovery.  As to the President's motion to dismiss based on his invocation of immunity, the court stated that it would "address the individual capacity claims and the arguments to dismiss them in a separate Opinion."  *District of Columbia v. Trump*, 315 F. Supp 3d 875, 877 n.2 (D. Md. 2018).  And in its order, the court reiterated that it was "defer[ring] ruling on the President's Motion to Dismiss the individual capacity claims against him."

In the "Joint Recommendation" filed by the parties on August 15, 2018, to address the course of continued proceedings in the case, the District and Maryland stated that they needed "approximately six months to complete fact discovery and an additional two months to complete expert discovery."  The President, on the other hand, objected to any

15

discovery proceeding and requested that the district court resolve his motion to dismiss based on his invocation of immunity "*at its earliest possible convenience*." (Emphasis added). He noted that discovery "could lead to a constitutional confrontation between two branches of Government." Notwithstanding the President's objection to discovery and request for an immunity ruling, no further arrangements were made to address the President's claim of absolute immunity.

Indeed, on November 2, 2018, the court issued a ruling denying the President's motion to certify for appeal the court's orders of March 28 and July 25, which addressed the court's jurisdiction and the merits of the District and Maryland's claims. In its order, the court also directed the District and Maryland, but not the President, to "submit within twenty (20) days a proposed Schedule of Discovery." The court, however, made no mention of the pending motion in which the President claimed immunity or his objection to discovery.

After almost four months had passed since the President requested that the district court rule on his immunity claim "at its earliest possible convenience," the President submitted a "Request for Status Conference" to the court on December 3, 2018, "to discuss the status of the President's pending motion to dismiss" in his individual capacity. The President stated: "The pendency of the motion to dismiss imperils the President's absolute immunity. 'Absolute immunity enables' the defendant 'to be free, not only from "the consequences of litigation's results, but also from the burden of defending themselves."' *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 (1967))." The President reiterated that he was seeking dismissal on

16

immunity grounds and argued that he was "entitled to dismissal *before* the commencement of discovery," (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and adding emphasis).  The President pointed out that the proceedings since the spring of 2018 had already forced him to participate in pretrial proceedings, impinging on his immunity.

Rather than responding to the President's request, the district court entered an order the very same day, directing the parties to begin a six-month period of full fact discovery on the official capacity claims,  as specifically requested by the District and Maryland and objected to by the President.  The order provided that all fact depositions had to be completed by June 3, 2019, and that expert witness discovery had to be completed by August 2, 2019.  The court set August 2, 2019, as the ultimate discovery deadline and scheduled a status conference with the court for August 9, 2019 — over eight months into the future.  The court did not mention the President's pending motion to dismiss on immunity grounds or his objection to discovery based on immunity.

On December 14, 2018, the President filed this appeal, which was docketed in this court on December 17, 2018.  In his notice of appeal, the President stated that he was appealing from the "District Court's effective denial of his motion to dismiss (Doc. 112) before initiating pre-trial procedures, and docket entries 101, 102, 111, 123, 124, 135, 136, and 145 [the December 3 order directing discovery to begin] (as well as related and incorporated docket entries)."

After the President noticed this appeal, the district court issued a "Memorandum" to counsel, asking them "to address the questions of whether the Court can dismiss without prejudice the claims against President Trump in his individual capacity, and if so, whether

17

it should do so." Two days later, on December 19, 2018, the District and Maryland filed a notice of voluntary dismissal of their claims against the President in his individual capacity, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The purported dismissal was stated to be "without prejudice" because, as the District and Maryland have since repeatedly explained, they intended to reserve the right to refile these claims.

The District and Maryland then filed a motion in this court to dismiss this appeal on the ground that there was no decision below from which to appeal and that, in any event, their voluntary dismissal had "extinguished" their claims against the President in his individual capacity and thus "mooted this appeal." By order, we deferred ruling on the motion pending oral argument.

The motion and appeal were initially heard by a three-judge panel of this court, which unanimously denied the District and Maryland's motion to dismiss this appeal, determining that jurisdiction existed because the district court's December 3 order had effectively denied the President's claim of absolute immunity. Asserting appellate jurisdiction, the panel then concluded that the District and Maryland lacked Article III standing to pursue their claims against the President in his individual capacity. *See District of Columbia v. Trump*, 930 F.3d 209 (4th Cir. 2019). By order dated October 15, 2019, a majority of this court's judges voted to grant rehearing en banc, *see* 780 F. App'x 38 (4th Cir. Oct. 15, 2019), and oral argument proceeded before the en banc court on December 12, 2019.

II

In support of their motion to dismiss this appeal, the District and Maryland contend that "there is no decision below and thus no basis for appellate jurisdiction," the position now adopted by the majority to grant dismissal of this appeal. The District and Maryland assert that the district court never came to a conclusive determination with respect to the President's assertion of absolute immunity, as required to sustain an interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 310 (1995). Instead, they argue that the district court's repeated statements — the last on July 25 — that it would "address the President's Motion to Dismiss the individual capacity claims against him in a subsequent Opinion" evince an intent to fully and conclusively determine the issue at some future point in time, thus precluding appellate jurisdiction at least until that determination has been made. And the majority agrees.

While the President recognizes that interlocutory appeals lie from *orders* denying immunity, *see Mitchell*, 472 U.S. at 525, he contends that the district court's order of December 3, 2018 — which scheduled discovery over his objection and despite his repeated requests to rule on his immunity claim — was precisely such an order, as it effectively overruled his objection and denied his immunity. He explains that because immunity protects him not only from liability but also from the burdens of litigation, including pretrial proceedings and discovery, an order directing discovery on the merits necessarily violates the claimed protection of immunity.

The issue thus presented is whether the district court's December 3 order directing the parties to proceed with full fact discovery on the merits over the objection of the

President and in rejection of his repeated requests to address immunity amounted to an order effectively denying the President's claim of immunity.

Like claims of immunity generally, the invocation of absolute immunity is a claim to "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell*, 472 U.S. at 526. "The entitlement is an *immunity from suit* rather than a mere defense to liability." *Id.*; *see also Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc) (recognizing that qualified immunity "exists to 'give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery'" and that "[w]hen a district court denies qualified immunity at the dismissal stage, that denial subjects the official to the burdens of pretrial matters, and some of the rights inherent in a qualified immunity defense are lost" (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996))). As a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Mitchell*, 472 U.S. at 526; *Davis v. Scherer*, 468 U.S. 183, 195 (1984); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is thus well established that an order rejecting the invocation of absolute immunity is, under the collateral order doctrine, subject to immediate interlocutory appeal. *See Mitchell*, 472 U.S. at 525; *Nixon*, 457 U.S. at 742–43. Of course, to be appealable under the doctrine, an order must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the

action"; and (3) "be effectively unreviewable on appeal from a final judgment." *Johnson*, 515 U.S. at 310 (cleaned up).

In this case, the immunity issue is indisputably an important one that is completely separate from the merits of the action and, when denied, effectively becomes unreviewable on appeal, thus satisfying collateral order requirements (2) and (3). But requirement (1) remains contested — whether the district court's December 3, 2018 order "conclusively determine[d] the disputed question" of immunity. *Johnson*, 515 U.S. at 310. I conclude that the district court's December 3 order did precisely that. It was an order directing the parties to engage in full fact discovery on the merits over the objection of the President based on immunity, and therefore it was entirely inconsistent with the benefit conferred by immunity to be spared the burden of pretrial discovery. Because the order denied the President the benefits of immunity, it was subject to immediate appeal.

This conclusion finds ample support in our precedents. In *Jenkins*, for example, the district court issued an order denying the defendant's motion to dismiss that expressly declined to rule on the question of qualified immunity. *See* 119 F.3d at 1158–59. In those circumstances, we concluded that we had jurisdiction over the defendant's interlocutory appeal, reasoning that, although the district court *had not ruled on qualified immunity*, its "refusal to consider the question subjected [the defendant] to further pretrial procedures, and so *effectively* denied him qualified immunity." *Id.* at 1159 (emphasis added). And in *Nero v. Mosby*, 890 F.3d 106 (4th Cir. 2018), we relied on this principle to conclude that an order was appealable because the district court's *failure to address the defendant's immunity claim at all* had "necessarily deprived her of [that] immunity." *Id.* at 125. Other

circuits have concluded similarly. *See Everson v. Leis*, 556 F.3d 484, 490–93 (6th Cir. 2009) (holding "that a district court's decision to hold in abeyance a motion seeking qualified immunity is immediately appealable unless that decision is related to the proper disposition of the motion" because otherwise "a district court [could] thwart interlocutory appeal by refusing to address qualified immunity" (emphasis omitted)); *see also Smith v. Reagan*, 841 F.2d 28, 30–31 (2d Cir. 1988); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam).

In this case, I can only conclude that the district court's conduct was deliberately calculated to avoid appellate review on the immunity question — and in view of the majority's opinion, it has succeeded in doing so. But the majority fails to take account of the procedural history, which broadcasts the district court's purpose behind its actions. The district court was alerted as early as March 8, 2018, to the President's claim of immunity, and it was told that denial of the "immunity defense would be *immediately appealable*, requiring a concomitant stay" of the proceedings. (Emphasis added). Yet, from that point onward — for a period lasting almost nine months — the court carved out the President's subsequently filed motion to dismiss based on immunity from the proceedings and pressed the merits issues forward, continuously deferring any ruling on the immunity issue to avoid creating an immediately appealable order. More particularly:

- By order dated April 27, 2018, the court precluded the President from arguing immunity at the June 11 hearing devoted to his motion to dismiss on the merits, even though the immunity issue would have been fully briefed in

22

time for the hearing. Instead, the court said, *immunity "will be addressed at a later time."*

- When denying the President's motion to dismiss on the merits by an opinion and order dated July 25, 2018, the court directed the parties to outline the course of discovery, but it expressly stated that *it was "defer[ring] ruling" on immunity and that it would address the issue "in a separate Opinion."*

- When the President requested on August 15, 2018, that immunity be resolved at the court's "earliest possible convenience" and explicitly objected to the commencement of any discovery, *the court made no response.* Rather, by order dated November 2, the court directed the District and Maryland to submit "a proposed Schedule of Discovery."

- Then, on December 3, 2018, when the President requested a conference to discuss "the status of [his] pending motion to dismiss on the basis of immunity," *the court again made no response.* Instead, that same day, it directed the parties to engage in full fact discovery on the merits for a six-month period extending to June 3, 2019, and expert discovery for two months thereafter. This order was entered over the President's explicit objection that engaging in discovery would deny him immunity.

- Finally, when the President appealed the district court's December 3 order, *the district court essentially suggested that the plaintiffs dismiss their claims against the President in his individual capacity, which would end the*

*immunity issue*.  The plaintiffs accommodated this suggestion and promptly

filed a notice of voluntary dismissal "without prejudice."

When taking account of this history as a whole, it becomes pellucidly clear that the

district court was not interested in addressing the immunity question for fear of creating an

immediately appealable order.  Instead, it ordered the case to proceed on the merits to full

fact discovery, over the President's objection.  But in doing so, it effectively denied the

President the benefits of immunity, which include protection against discovery.

Accordingly, I conclude that the December 3 order was, without question, an immediately

appealable order.  *See Jenkins*, 119 F.3d at 1159; *Nero*, 890 F.3d at 125.

Of course, if the district court believed that it needed discovery in order to rule on

the President's invocation of immunity, it would have been appropriate for the court to

have deferred ruling on immunity until the completion of such limited discovery.  In that

case, the court's deferral order would not be an appealable order.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 674–75 (2009); *Johnson*, 515 U.S. at 310–313; *Al Shimari v. CACI Int'l*,

*Inc.*, 679 F.3d 205, 221–22 (4th Cir. 2012).  But in this case, neither party suggested that

discovery on immunity was required, and neither party requested it.  The immunity

question was clearly understood to be a pure question of law that did not require further

factual development.  Indeed, in their Joint Recommendation to the district court dated

August 15, 2018, the parties *agreed* that no discovery would be pressed on the immunity

issue — their joint filing stated that "no discovery [would] be served against the President

in his individual capacity unless and until the motion to dismiss [on immunity] is denied."

Nor did the district court ever indicate that discovery on immunity was needed or was a

reason it was deferring on the issue. To the contrary, it repeatedly promised to rule on the President's immunity defense, which had already been fully briefed, in a separate opinion. It never did so.

Finally, the District and Maryland seem to have taken the position, now uncritically adopted by the majority, *see ante* at 8 & n.4, that the district court's December 3, 2018 order scheduling discovery on the merits would not violate the President's absolute immunity because the discovery ordered was against the President *in his official capacity*. This argument, however, totally collapses under any level of scrutiny. There is no meaningful distinction in this case between discovery with respect to the claims against the President in his official capacity and discovery with respect to the claims against him in his individual capacity. The substantive claims are the same, and the complaint makes no distinction. The Emoluments Clauses are the basis for both claims against the President, and discovery with respect to their violation would proceed along the same course to obtain the same evidence. Whether the claims are asserted against the President in his individual or official capacity simply does not alter the scope or nature of the discovery. *Cf. Iqbal*, 556 U.S. at 685–86.

Moreover, participating in discovery, whether on official capacity claims or individual capacity claims, would involve the same burdens of litigation and distractions from the President's duties. As the Supreme Court pointed out in *Nixon*, one of the central rationales for recognizing a doctrine of presidential immunity is "the singular importance of the President's duties, [such that] diversion of his energies by concern with private

lawsuits would raise unique risks to the effective functioning of government." 457 U.S. at 751.

In sum, after deferring consideration of immunity for some nine months, the district court ordered that the parties begin six months of fact discovery, thereby knowingly denying to the President one of the most important aspects of his asserted immunity — that he be spared the burdens of pretrial proceedings, including discovery. Accordingly, I would conclude that the December 3 order was immediately appealable.

III

The District and Maryland argue alternatively that, in any event, their notice of voluntary dismissal in the district court "extinguished the claims against President Trump in his individual capacity" and thus "mooted this appeal." As such, they maintain that we cannot consider the appeal on those claims.

The President contends that the District and Maryland's dismissal without prejudice was ineffective because, with the filing of his notice of appeal, jurisdiction over those claims transferred to this court. He argues further that the District and Maryland's effort to dismiss their individual capacity claims without prejudice before this court had the opportunity to weigh in amounts to nothing more than gamesmanship.

The President filed his appeal in this case on December 14, 2018, to challenge the district court's effective denial of his immunity claim, and the appeal was docketed in this court on December 17, 2018. In response to the President's notice of appeal, the district court directed counsel to address whether the court could "dismiss without prejudice" the

claims against the President in his individual capacity, for which the President claimed immunity. The District and Maryland responded promptly by filing a notice on December 19, 2018, that purportedly dismissed those claims *without prejudice* "to allow the claims against President Trump in his official capacity to move forward expeditiously." They have conceded candidly, however, that their doing so without prejudice was intended to reserve their right to file the claims against the President in his individual capacity anew.

Thus, when the District and Maryland filed their notice of dismissal, the President had already filed his notice of appeal, and the appeal had been docketed in this court. Based on this sequence of events, the District and Maryland lacked the ability to act on the individual capacity claims in the district court because jurisdiction over them had transferred to this court. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (noting that it is "generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously" and that "[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 335 n.8 (4th Cir. 2019) (denying a motion to dismiss the appeal after the appellee had purported to voluntarily dismiss the appellants as defendants in the district court, in part because this court had already assumed jurisdiction); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("Generally, a timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal"); *see also Showtime/The Movie*

*Channel, Inc. v. Covered Bridge Condo. Ass'n*, 895 F.2d 711, 713 (11th Cir. 1990) (per curiam); *cf.* Fed. R. App. P. 42(a) (reserving limited jurisdiction in the district court to dismiss the appeal before the appeal is docketed by the circuit clerk). Thus, the District and Maryland's attempt at a voluntary dismissal was ineffective and could not have mooted the appeal.

Were we to recognize a party's effort to dismiss in the district court a claim or action that had already been appealed, there would be nothing to prevent plaintiffs from dismissing their claims or actions after appellate briefing closed, or upon being notified of the three-judge panel assigned to their case, or after oral argument, or indeed at any point up to the moment that the opinion was announced. Not only would the potential for such manipulation wreak havoc on the orderly division of responsibility between district courts and courts of appeals, it would also be entirely inconsistent with the proper function of dismissals in the district court under Federal Rule of Civil Procedure 41(a)(1). *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990) (noting that Rule 41(a)(1) "[a]llows a plaintiff to dismiss an action without the permission of the adverse party or the court only during the brief period before the defendant ha[s] made a significant commitment of time and money").

Accordingly, I would also reject the District and Maryland's argument that this appeal should be dismissed as moot based on their purported voluntary dismissal in district court.

IV

While I would find that we have appellate jurisdiction to review the district court's effective denial of the President's immunity, any question of subject matter jurisdiction — including, as relevant here, the issue of Article III standing — must be considered before the merits of the immunity defense. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)); *see also Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes"); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"). Indeed, recognizing these principles in an interlocutory appeal from the denial of qualified immunity, we first addressed subject matter jurisdiction, noting that "we would be obliged to take notice if plaintiffs lacked standing as the absence of standing would be a jurisdictional defect." *Williams v. Hansen*, 326 F.3d 569, 574 n.4 (4th Cir. 2003) (citing *Steel Co.*, 523 U.S. at 94–95); *see also Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268–69 (2d Cir. 1999). Accordingly, I proceed first to consider whether the District and Maryland have Article III standing.

Because the claims that the District and Maryland assert against the President in his individual capacity are identical to the claims they assert against him in his official capacity and are premised on the same factual allegations, my dissenting opinion in appeal No. 18-2486, as well as Judge Wilkinson's, would also govern the outcome here. For the reasons set forth therein, I would hold that the District and Maryland do not have standing under Article III to pursue their claims against the President in any capacity, including in his individual capacity. Accordingly, based on this opinion and the dissenting opinions in No. 18-2486, I would remand with instructions to dismiss the complaint in its entirety.

RICHARDSON, Circuit Judge, dissenting:

The District of Columbia and the State of Maryland seek to enjoin the President, both *as President* and *as an individual*, for violating the Presidential duty to decline supposedly forbidden emoluments. *See* U.S. CONST. art. II, § 1, cl. 7; U.S. CONST. art. I, § 9, cl. 8. But the courts cannot provide what the Plaintiffs seek.

Never before have we issued an injunction against a sitting President—the head of a coequal branch of government—in a suit based on his official Presidential duties. And the Supreme Court's decision in *Mississippi v. Johnson*, 71 U.S. 475 (1867), prohibits us from doing so here. As my colleague aptly explains, *Mississippi* requires us to dismiss the suit against President Trump in his official capacity. *In re Trump*, No. 18-2486, Dissent at *42–48 (Wilkinson, J., dissenting). That leaves us with this suit against Donald J. Trump as an individual.

But just as the official-capacity suit should be dismissed, the individual-capacity suit must fall as well. The reason is simple: The President may not be sued in his individual capacity for violating his official duties. *Mississippi*, 71 U.S. at 501; *see also Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982). Suits against the President in his individual capacity exist only for his purely private conduct. *See Clinton v. Jones*, 520 U.S. 681, 696 (1997). In other words, the duty sued on must match the Presidential personality sued.

Yet the Plaintiffs sued the President in his *individual capacity* for an *official duty*. This breaks the rule of *Mississippi*. The President is not subject to personal suit for his official duties—he is absolutely immune. So I respectfully dissent.

31

## I.    This Court may decide the President's immunity

I agree with Judge Niemeyer that we have appellate jurisdiction over the district court's effective denial of the President's immunity.  This individual-capacity suit directly implicates "the special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers."  *Fitzgerald*, 457 U.S. at 743; *see also Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 381–82 (2004); *United States v. Nixon*, 418 U.S. 683, 692 (1974).  As a result, "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding."  *Clinton*, 520 U.S. at 707; *see also id.* at 710–24 (Breyer, J., concurring).  Yet, as Judge Niemeyer thoughtfully explains, the district court refused to give prompt consideration to the President's claim of absolute immunity.  Dissent at *24 (Niemeyer, J., dissenting).  This effective denial presents us with an immediately appealable collateral order.  *Id.*; *see Fitzgerald*, 457 U.S. at 742.

Judge Niemeyer then turns to the Plaintiffs' standing, but I would decide the very question that brings us to this point:  whether the President may be sued as an individual for allegedly violating his official duties.

Generally, federal judges must first assure ourselves that we possess subject-matter jurisdiction over a case.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).  Even so, the Supreme Court has instructed that we retain the discretion to address certain "threshold question[s]" that preclude judicial inquiry into a case before evaluating subject-matter jurisdiction.  *Sinochem International Co. Ltd. v. Malaysia International*

*Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999).

The President's claim of absolute immunity, whatever its relationship to our subject-matter jurisdiction, is precisely the type of "threshold question" that we may address. In *Tenet v. Doe*, 544 U.S. 1 (2005), the Supreme Court considered whether the *Totten* rule—that the government may not be sued for breaching covert espionage agreements—was one such threshold question. There, the Court explained that the hallmark of these threshold questions is that they "preclude judicial inquiry" rather than "merely [] defeat the asserted claims." *Id.* at 6 n.4. So where the "categorical nature" of a question does not allow even discovery or other preliminary proceedings, we may dismiss the case without resolving the question of our subject-matter jurisdiction. *Id.*; *see also Sinochem*, 549 U.S. at 430–35 (characterizing the *forum non conveniens* doctrine as a threshold question because it "den[ies] audience to a case on the merits" and "does not entail any assumption . . . of substantive law-declaring power") (internal citations omitted).

So too here. An absolute immunity claim is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), to be determined "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). As with other threshold questions, absolute immunity precludes *all judicial inquiry*, not just liability. *See Mitchell*, 472 U.S. at 526; *Fitzgerald*, 457 U.S. at 742. So Presidential immunity is among the limited threshold issues that we may resolve at the outset. And because that immunity provides the clearest way to resolve this individual-capacity suit, I would exercise our discretion do so.

II.    **The President cannot personally be sued for his official conduct**

A.    *Mississippi* **decides this appeal**

Turning to the claim of presidential immunity, the Supreme Court's decision in *Mississippi v. Johnson*, 71 U.S. 475 (1867), flatly prohibits the Plaintiffs from suing Donald J. Trump as an individual based on a Presidential duty to decline certain emoluments.

In *Mississippi*, the Supreme Court was asked to enjoin President Andrew Johnson from enforcing two Reconstruction-era laws enacted over President Johnson's veto. *Id.* at 497–500. The first divided former Confederate states into five military districts, and it required the President to assign generals to the districts and to marshal enough federal forces to govern those districts. The second chiefly concerned registering voters who were to form new state constitutions in the former Confederacy. According to the State of Mississippi, both laws were unconstitutional—so the President lacked the authority to enforce those laws and could be enjoined from doing so. To resolve the case, the Supreme Court addressed, head on, whether the courts could enjoin the President—in either his official or individual capacity—in the performance of his official duties.

The Supreme Court first rejected Mississippi's suit against President Johnson in his official capacity as President. Setting aside "purely ministerial act[s]"—those "simple, definite dut[ies]" imposed by law in "which nothing is left to discretion"—the Court considered whether it had the power to enjoin the President in his "executive and political" duties. *Id.* at 498–99. Reasoning that enjoining an official duty of the President, as the head of a coequal branch of government, would be "'an absurd and excessive [judicial]

34

extravagance'" in violation of the separation of powers, *id.* at 499 (paraphrasing Chief Justice John Marshall in *Marbury v. Madison*, 5 U.S. 137, 170 (1803)), the Court was "fully satisfied" that it had "no jurisdiction . . . to enjoin the President in the performance of his official duties," *id.* at 501.

The Supreme Court then declined Mississippi's effort to revive its suit by recasting it as a request to enjoin Andrew Johnson *as an individual*, not *as President*. *Id.* Rejecting the notion that relief could be granted against "Andrew Johnson as a citizen of Tennessee," the Court found it "plain" that Mississippi challenged his official duty: "[R]elief . . . against the execution of an act of Congress by Andrew Johnson, is relief against its execution *by the President*." *Id.* (emphasis added). And such a suit "cannot be received" against Andrew Johnson "as a citizen." *Id.*

The Supreme Court's two-pronged decision in *Mississippi* provides the framework for suits seeking equitable relief against the President. If a suit is against the President in his official capacity, it must be dismissed—with the possible exception for a challenge to the President's purely ministerial acts. If a suit is against the President in his individual capacity, it must be dismissed if the suit alleges a violation of his official Presidential duties.

Applying this framework, the individual-capacity case must be dismissed. Here, the District and Maryland sued the President in his personal capacity. But, as Judge Wilkinson explains, they sued based on his Presidential duties. *In re Trump*, No. 18-2486, Dissent at *42 (Wilkinson, J., dissenting). Whatever the contours of the President's duty under the Emoluments Clauses, it is a legal duty imposed on the President, because he is

35

President, for so long as he is President, and that he must execute as President. *See* U.S. CONST. art. II, § 1, cl. 7; U.S. CONST. art. I, § 9, cl. 8. Thus, it is an official duty that is being challenged here. So the Plaintiffs' claims run directly contrary to *Mississippi*'s individual-capacity rule, and they must be dismissed.

### B. *Mississippi* continues to bind this Court

After all these years, *Mississippi* continues to bind us. Some commentators have questioned the reasoning offered for the Supreme Court's official-capacity holding. *See, e.g.*, David P. Currie, *The Constitution in the Supreme Court: The First Hundred Years 1789-1888*, 299–301 (1985). *But see Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality); *id.* at 826–27 (Scalia, J., concurring in part and concurring in the judgment). Even so, the Supreme Court has consistently reaffirmed, if not expanded, *Mississippi*'s individual-capacity holding.

For instance, in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the Supreme Court considered whether President Nixon could be held personally liable in damages for firing an Air Force analyst in violation of the Constitution and federal law. *Id.* at 734, 748. There, the Supreme Court moved beyond *Mississippi*'s context of injunctive relief and held that the President is absolutely immune as an individual from civil "damages liability for acts within the 'outer perimeter' of his official responsibility." *Id.* at 756.[*] This absolute immunity was mandated by "the President's unique office, rooted in the constitutional

---

[*] *Fitzgerald* reserved whether Congress could abrogate the President's immunity through an explicit authorization to sue the president for damages. 457 U.S. at 748 n.27; *see also Franklin*, 505 U.S. at 800–01. I need not decide whether that reservation applies with equal force here because Congress has not authorized this suit against the President.

tradition of the separation of powers and supported by our history." *Id.* at 749. The "singular importance of the President's duties" demanded that the energies of the sole person vested with the executive power not be diverted "by concern with private lawsuits." *Id.* at 751; *see* III Joseph Story, *Commentaries on the Constitution of the United States* § 1563 (1833) (The President must have the authority to perform his executive powers "without any obstruction or impediment whatsoever."); *The Federalist* No. 70, at 421 (Hamilton) (C. Rossiter ed., 1961) (discussing the energy, dispatch, and vigor required of the Chief Executive).

Applying these core principles, the Court held the President—in his personal capacity—was absolutely immune from suit for dismissing the analyst, something "well within the outer perimeter" of Presidential responsibility. *Fitzgerald*, 457 U.S. at 757. This conclusion, the Court explained, ensures the President's "'ability to deal fearlessly and impartially with' the duties of his office" in "the most sensitive and far-reaching decisions." *Id.* at 752 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 203 (1979)). *Fitzgerald* thus complied with and completed the straightforward rule of *Mississippi*: The President is personally immune from suits—whether seeking monetary or injunctive relief—arising from his official Presidential duties.

On the other hand, the Supreme Court allowed a private suit based on private conduct to move forward in *Clinton v. Jones*, 520 U.S. 681 (1997). In that case, the plaintiff sought monetary damages arising out of President Clinton's conduct before he became President. *Id.* at 685. Since this personal conduct occurred before his election to the presidency, it was "perfectly clear that the alleged misconduct . . . was unrelated to any []

official duties as President." *Id.* at 686.  As the Court explained, with "respect to acts taken in his 'public character'. . . the President may be disciplined principally by impeachment, not by private lawsuits for damages." *Id.* at 696.  But, the Court continued, "he is otherwise subject to the laws for his purely private acts." *Id.*  So the Court allowed the individual-capacity suit to move forward for the President's purely private conduct, and thus similarly toed the *Mississippi* line.

*         *         *

Although it draws a simple line, *Mississippi*'s rule for suits against the President in his individual capacity is grounded in the constitutional structure of our tripartite government.  If based on official Presidential duties—arising by virtue of his public character—a suit may not be brought against the President as an individual.  *Mississippi*, 71 U.S. at 501; *see also Fitzgerald*, 457 U.S. at 755.  If the suit is based on the President's "purely private acts," then it may be brought against the President in his private capacity. *Clinton*, 520 U.S. at 696.  The Supreme Court has followed the *Mississippi* rule for 150 years now, and we must too.

While I respect the deference my colleagues desire to give to the district court here, all inferior judges are duty-bound to follow the commands of the Supreme Court.  And *Mississippi* commands that this suit be dismissed.