# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 8:17-cv-1596-PJM |
| v. | ) | |
| | ) | |
| DONALD J. TRUMP, in his official capacity as President of the United States, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MOTION TO STAY PROCEEDINGS

President Donald J. Trump, in his official capacity, respectfully asks this Court to exercise its inherent authority to stay all proceedings in this case, pending the resolution of the government's forthcoming petition for a writ of certiorari and any further proceedings in the Supreme Court.  A stay is warranted because there is a reasonable probability that the Supreme Court will grant review and reverse the Fourth Circuit's denial of mandamus relief.  A stay also would conserve the parties' and the Court's resources, would be in the public interest, and would not meaningfully injure Plaintiffs.[1]

On May 14, 2020, the Fourth Circuit denied the government's petition for a writ of mandamus.  Once the time for rehearing expires, that ruling will terminate the stay of district court proceedings that the Fourth Circuit issued on December 20, 2018.  The government intends to seek Supreme Court review, but, in the interim, this unprecedented case will continue and discovery will presumably resume unless the current stay is extended.  That intrusive and

---

[1] Counsel for Plaintiffs have indicated that Plaintiffs oppose this motion.

burdensome discovery into the President's financial affairs and official actions, including against five federal agencies, would require the government to expend substantial resources and impose irreparable harm on the President. *See, e.g.*, Subpoena to GSA, Req. No. 10 (Dec. 6, 2018) (attached as Ex. A) (seeking "all Communications with the President or White House Concerning the location of the headquarters of the Federal Bureau of Investigation"); Subpoena to Department of Defense, Req. Nos. 1 & 2 (Dec. 4, 2018) (attached as Ex. B) (seeking documents sufficient to show "any Payments" by the Department of Defense to "hotels, restaurants or event spaces in the Washington D.C. metropolitan area"). All this to continue a suit that six judges of the Fourth Circuit en banc court concluded "clear[ly] and indisputabl[y] … should never be in federal court," *In re Trump*, 958 F.3d 274, 291 (4th Cir. 2020) (Wilkinson, J., dissenting), that nine judges acknowledged presses "novel" and "debatable" legal claims and injuries, and that the majority concluded could not be reviewed only based on its view of the "severely limited" scope of mandamus in this context, *id.* at 280, 286 (Motz, J., for the Court).

There is a fair prospect that the Supreme Court will grant further review and reverse.  The Fourth Circuit resolved several important questions concerning the President's amenability to this extraordinary suit enforcing the prophylactic structural protections of the Emoluments Clauses as well as the President's ability to obtain immediate appellate relief.  And the Fourth Circuit's resolution conflicts with precedents of the Supreme Court and other Courts of Appeals. The equities also favor a stay, in light of the separation-of-powers concerns with permitting this case and the requested discovery concerning the President to proceed before the Supreme Court has even had the opportunity to decide whether such an extraordinary suit against the President is proper at all.  Indeed, the Fourth Circuit "recognize[d] that the President is no ordinary petitioner" and is entitled to "special solicitude" when "seeking a writ of mandamus."  *Id.* at 280,

282.  If the "great deference" that the Fourth Circuit "accord[s] him . . . as the head of the

Executive branch" means anything at all, *id.* at 280, it at the very least counsels in favor of

staying proceedings in this Court, thereby enabling the President to seek the Supreme Court's

orderly consideration of the important questions presented by the mandamus petition.

## ARGUMENT

### I.      STANDARD OF REVIEW

"[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with the economy of time and effort for itself,

for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "Especially in

cases of extraordinary public moment," the opposing party "may be required to submit to delay

not immoderate in extent and not oppressive in its consequences if the public welfare or

convenience will thereby be promoted."  *Id.* at 256.  As the Fourth Circuit has recognized, the

proper use of this Court's general equity powers in efficiently managing its docket, "'calls for the

exercise of judgment which must weigh competing interests and maintain an even balance.'"

*Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (quoting *Landis*,

299 U.S. at 254–55); *see also United States v. Ga. Pac. Corp.,* 562 F.2d 294, 296 (4th Cir.1977)

(per curiam) ("The determination by a district judge in granting or denying a motion to stay

proceedings calls for an exercise of judgment to balance the various factors relevant to the

expeditious and comprehensive disposition of the causes of action on the court's docket.").

Here, the weighing of the various factors counsel in favor of a stay.

### II.     THE GOVERNMENT IS LIKELY TO PREVAIL IN THE SUPREME
###         COURT

After this Court denied the government's motion to dismiss and declined to certify that

denial for interlocutory appeal under 28 U.S.C. § 1292(b), the government filed a petition for

writ of mandamus in the Fourth Circuit. *See In re Trump*, 958 F.3d at 280-81. To obtain mandamus relief, a petitioner must show a "clear and indisputable" right to relief, the absence of "other adequate means" to attain relief, and that issuance of the writ "is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). Mandamus is justified when there are such "exceptional circumstances amounting to a judicial 'usurpation of power' or a 'clear abuse of discretion.'" *Id.* at 380 (citation omitted). And "separation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the President." *Id.* at 382. "[T]he high respect that is owed to the office of the Chief Executive" should "inform the conduct of the entire proceeding," *id.* at 385, and "[a]ccepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities," *id.* at 382.

The Fourth Circuit nevertheless held that the President in his official capacity could not obtain mandamus of this Court's order denying the motion to dismiss, on the ground that the order did not rest on any "clear and indisputable" legal errors. *In re Trump*, 958 F.3d at 285; *see id.* at 285-87, 288-89. And the Fourth Circuit further held that mandamus was unavailable against this Court's order declining to exercise discretion to certify an interlocutory appeal on the ground that it "applied the correct legal standards" and "was not arbitrary or based on passion or prejudice." *Id.* at 285; *see id.* at 282-85. The government is likely to obtain Supreme Court review and reversal on at least one, if not both, of these holdings.

**A.** **The Supreme Court Is Likely To Review And Reverse the Fourth Circuit's Denial Of Mandamus Concerning This Court's Denial of Defendant's Motion to Dismiss.**

There is a reasonable probability that the Supreme Court would agree to review, and a fair prospect that it would reverse, the Fourth Circuit's holding that this Court's denial of Defendant's motion to dismiss was not "clear and indisputable" legal error warranting mandamus relief. *See Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers) (movant for a stay pending petition for certiorari must demonstrate both "a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari" and "a fair prospect that a majority of the Court will conclude that the decision below was erroneous"). Among this Court's conclusions was that the President may be sued in his official capacity pursuant to an implied equitable cause of action directly under the Emoluments Clauses. That holding is contrary to the precedent of the Supreme Court as well as the D.C. Circuit, and the six dissenting judges on the en banc Fourth Circuit court would have granted mandamus and directed dismissal of the suit on this basis alone. *In re Trump*, 958 F.3d at 290, 293-303 (Wilkinson, J., dissenting).

1.      The Supreme Court has squarely held that, in light of the separation of powers, federal courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866); *see Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality op.). The D.C. Circuit has held likewise: "A court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010); *see also In re Trump*, 958 F.3d at 297-98 (Wilkinson, J., dissenting) (noting that *Mississippi* accords with traditional equitable principles).

5

The Fourth Circuit rejected "two premises" of the President's invocation of *Mississippi*, *In re Trump*, 958 F.3d at 288, and it clearly erred in both respects.

*First*, the Fourth Circuit reasoned that the Emoluments Clauses are "*restraints* on the President," not sources of "official executive dut[ies]." *Id.* at 288; *see also id.* (noting that the President "has a duty to obey the law"). But the same argument was made in *Mississippi* itself, where the plaintiff State asked for "the President [to] be restrained by injunction from carrying into effect an act of Congress alleged to be unconstitutional." 71 U.S. at 498. The Supreme Court rejected that argument, concluding that "[a]n attempt on the part of the judicial department of the government to enforce the performance" of "the duty of the President in the exercise of the power to see that the laws are faithfully executed" would be "an absurd and excessive extravagance." *Id.* at 499. As Judge Wilkinson's dissent put the point, "an obligation (*i.e.*, a duty) that derives from one's government position (*i.e.*, office)" is, by definition, an "official duty." *In re Trump*, 958 F.3d at 299.

*Second*, the Fourth Circuit reasoned that complying with the Emoluments Clauses is not a "discretionary function" but rather a "ministerial" act for which relief against the President may be permitted. *Id.* at 288; *see Mississippi*, 71 U.S. at 498 (leaving open whether a President may be "required to perform a mere ministerial duty"). That is so, the Fourth Circuit asserted, because determining the meaning of the Constitution is not an "executive function." *In re Trump*, 958 F.3d at 288. Again, precisely that argument was made in *Mississippi*, where the counsel for the State also argued that President Johnson's duty to follow the Constitution when executing the law was "a mere ministerial duty." 71 U.S. at 498. And the Supreme Court likewise decisively rejected that argument, holding that an act is ministerial only if it leaves "no room for the exercise of judgment" and "require[s] the performance of a single specific act." *Id.*

6

at 499.  Here, on Plaintiffs' view, the Emoluments Clauses require the President to make "seemingly innumerable judgment calls about how [he] must organize his financial interests, sequester his real assets, or restructure his holdings."  *In re Trump*, 958 F.3d at 299 (Wilkinson, J., dissenting).  That is particularly true on the atextual understandings of those Clauses urged by Plaintiffs (who would require applying a vague "not [generally] available" standard).  *See id.* at 44-45.

At a minimum, therefore, the Fourth Circuit's attempt to distinguish *Mississippi* runs afoul of the Supreme Court's holding in *Franklin v. Massachusetts* that an "express statement by Congress" is required before the President himself may be subjected to suit for his official duties, "[o]ut of respect for the separation of powers and the unique constitutional position of the President."  505 U.S. at 800-01.  Even assuming there may be a dispute as to whether Congress *could* authorize this suit against the President, it is indisputable that Congress *did not expressly* do so and that *Franklin* thus compels dismissal.  *See In re Trump*, 958 F.3d at 305 (Wilkinson, J., dissenting).

2.     The clear error in allowing this suit against the President to proceed is exacerbated by the clear error in judicially creating a cause of action to enforce the Emoluments Clauses against any covered federal official.  Where, as here, Congress has not provided an express cause of action to enforce federal law, the creation of a "judge-made remedy" through an implied cause of action in equity is available only in "some circumstances" that present "a proper case."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015); *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (federal equity jurisdiction is limited to historical practices of the English Court of Chancery); *In re Trump*, at 958 F.3d at 293 (Wilkinson, J., dissenting).  "[I]t is a significant step under separation-

7

of-powers principles for a court to determine that it has the authority, under the judicial power, to

create and enforce a cause of action," because "the Legislature is in the better position" to weigh

the competing considerations involved in authorizing private suits against public officials.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017).  While courts may nevertheless wield

"traditional equitable powers," *id.* at 1856, "Congress is in a much better position than" courts

"to design the appropriate remedy" when "depart[ing] from past practice," *Grupo Mexicano*, 527

U.S. at 322.

The "classical[]" type of implied equitable suit, which "permit[s] potential defendants in

legal actions to raise in equity a defense available at law," does not raise such separation-of-

powers concerns.  *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir.

2014); *see, e.g.*, *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2

(2010).  Such suits merely shift the timing and posture of litigating a legal question that Congress

has authorized to be adjudicated in federal court.  Here, by contrast, Plaintiffs assert an equitable

cause of action even though they neither are "subject to or threatened with any enforcement

proceeding," *Douglas v. Independent Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 620 (2012)

(Roberts, C.J., dissenting), nor have had their own property or liberty interests directly infringed,

*cf. American Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also In re

Trump*, 958 F.3d at 294, 296-97 (Wilkinson, J., dissenting).  Thus, but for the judicial creation of

a cause of action, this dispute would not be in federal court *at all*.  Plaintiffs' attempt to wield the

Constitution "as a cause-of-action-creating *sword*" poses greater separation-of-powers concerns

than a typical implied equitable suit.  *See Michigan Corr. Org.*, 774 F.3d at 906.

The Fourth Circuit did not dispute that Plaintiffs failed to identify a single case in which a

court created a cause of action in these circumstances.  *In re Trump*, 958 F.3d at 287.  Instead, it

8

stated simply that the Supreme Court's precedent is "not obviously limited in th[at] way." *Id.*
But that reverses the proper inquiry:  "[t]o accord a type of relief that has never been available
before" exceeds the constraints of "traditional equitable relief."  *Grupo Mexicano*, 527 U.S. at
322; *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982) ("[A] major departure from
the long tradition of equity practice should not be lightly implied.").

       3.      In sum, and respectfully, this Court's denial of Defendant's motion to dismiss is
"clear and indisputable" legal error that conflicts with precedents of the Supreme Court and the
D.C. Circuit.  And the Fourth Circuit's failure to grant mandamus in such circumstances is in
severe tension with those precedents as well as *Cheney*'s admonition that "separation-of-powers
considerations should inform . . . evaluation of a mandamus petition involving the President."
542 U.S. at 382; *see also id.* at 380-81 (recognizing that the mandamus "prerequisites" are "not
insuperable" where ongoing district court proceedings "threaten the separation of powers").  At
the very least, therefore, this is an exceptionally important question warranting the Supreme
Court's review (and reversal) in light of "[t]he high respect that is owed to the office of the Chief
Executive," which "should inform the conduct of the entire proceeding."  *Id.* at 385; *see also,
e.g.*, *Trump v. Vance*, 140 S. Ct. 659 (2019) (granting certiorari in suit involving novel state
grand-jury subpoena of President's personal records).

      **B.**      **The Supreme Court Is Likely To Review And Reverse the Fourth
             Circuit's Denial Of Mandamus Concerning This Court's Decision Not
             To Certify An Interlocutory Appeal.**

      There is also a reasonable probability that the Supreme Court would agree to review, and
a fair prospect that it would reverse, the Fourth Circuit's holding that this Court's decision not to
certify an interlocutory appeal did not warrant mandamus relief.  That holding conflicts with
precedent of the Supreme Court as well as other Courts of Appeals, and five of the en banc

dissenters would have granted mandamus and directed dismissal of the suit on this basis too.  *In re Trump*, 958 F.3d at 290, 314-322, 331 (Niemeyer, J., dissenting).

1.      28 U.S.C. § 1292(b) provides that a district court "shall" certify an order whenever the court is "of the opinion" that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Here, this Court's decision not to certify its denial of the motion to dismiss rested largely on the conclusion that there was no substantial ground to disagree with its earlier ruling.  *See In re Trump*, 958 F.3d at at 313, 320-22. (Niemeyer, J., dissenting) (discussing this Court's reasoning).  As Judge Niemeyer explained, however, that conclusion "amounted to a clear abuse of discretion":  the legal questions raised in the President's motion to dismiss were "threshold matters that go to the heart of whether the case may proceed at all"; many of them were "novel" issues that had been addressed in "no prior decision"; and "the only other court to have considered a cause of action under the Emoluments Clauses" had "ruled differently than did the district court here."  *See id.* at 321; *see also* pp. 13-15, *infra* (further showing why the section 1292(b) criteria were indisputably satisfied).

Notably, the Fourth Circuit en banc majority did not disagree with the dissent about proper application of the section 1292(b) standard, nor did it adopt this Court's analysis.  Rather, it simply observed that this Court had "applied the correct legal standards" in a manner that "was not arbitrary or based on passion or prejudice."  *In re Trump*, 958 F.3d at 285.  The Fourth Circuit deemed that dispositive because it reasoned that, in such circumstances, even a "clear abuse of discretion" under Section 1292(b) could not satisfy the requirement for a "clear and indisputable" right to mandamus relief.  *Id.* at 283.  That holding is grave error.

10

*First*, the Fourth Circuit's holding is flatly contrary to the Supreme Court's controlling articulation in *Cheney* of the mandamus standard. *Cheney* reaffirmed that mandamus is appropriate in "exceptional circumstances amounting to a judicial 'usurpation of power' *or* a 'clear abuse of discretion.'" 542 U.S. at 380 (emphasis added; citations omitted); *accord id.* at 390. In a footnoted response to that statement, the Fourth Circuit observed that *Cheney* did not "set forth a new, more lenient 'clear abuse of discretion' standard," given that, "immediately following th[e] statement," *Cheney* also reaffirmed the traditional three-prong standard, including the need for a "clear and indisputable" right to relief. *In re Trump*, 958 F.3d at 285 n.3. But as Judge Niemeyer's dissent correctly explained, it is well established under the traditional standard that the "clear and indisputable" element is satisfied *if* there is a "clear abuse of discretion." *Id.* at 315 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964), and *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)).

To be sure, the Fourth Circuit is correct that "a simple showing of error" or "a naked error of law" are not sufficient for mandamus. *Id.* at 283. But that in no way supports the Fourth Circuit's holding that mandamus cannot remedy exercises of discretion *even where* they are clearly indefensible in substance, if they were reached in a procedurally fair manner. Indeed, *Cheney* itself emphasized that mandamus is warranted where "the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional duties," without any further requirement that such impairment either involve a clear error of *law* (rather than discretion) or result from bad faith. 542 U.S. at 390.

*Second*, the Fourth Circuit's holding is also inconsistent with the precedent of at least two other Courts of Appeals concerning the availability of mandamus to compel certification of interlocutory appeal under Section 1292(b). The Eleventh Circuit granted such relief in

*Fernandez-Roque v. Smith*, 671 F.2d 426 (11th Cir. 1982), requiring the district court to rule on a threshold jurisdictional question and then to certify its order before conducting an asylum hearing that allegedly "would violate the separation of powers." *Id.* at 431-32. The court deemed the case to "present[] the truly 'rare' situation in which it is appropriate for [an appellate] court to require certification of a controlling issue of national significance." *Id.* at 431. Indeed, the Eleventh Circuit granted mandamus without even affording the district court the opportunity to exercise its discretion to deny certification, *id.* at 432, and thus it follows *a fortiori* that the Eleventh Circuit would have granted mandamus if faced with the circumstances here. Moreover, the D.C. Circuit granted similar relief in *In re Trump*, 781 F. App'x 1 (D.C. Cir. 2019), which was a parallel Emoluments suit brought against the President by Members of Congress. There, after finding that the district court's orders denying a motion to dismiss "squarely me[t] the criteria for certification under Section 1292(b)" and that the district court "abused its discretion" in refusing to certify "given the separation of powers issues present," the D.C. Circuit remanded the matter "for immediate reconsideration." *Id.* at 2. Although the court thus technically did not grant mandamus, it also did not deny relief outright in the face of a clear abuse of discretion; and the district court on remand unsurprisingly certified the interlocutory appeal. *See Blumenthal v. Trump*, 949 F.3d 14, 18 (D.C. Cir. 2020).

Contrary to the Fourth Circuit's suggestion, *In re Trump*, 958 F.3d at 383, those cases are entirely consistent with Section 1292(b). Although the statute "confers broad discretion upon district courts" in applying the certification criteria, it "does not provide that [such] discretion is unfettered and unreviewable." *Id.* at 315 (Niemeyer, J., dissenting). Even broad discretion can be exercised in a manner that constitutes a "clear abuse of discretion" warranting mandamus, *Cheney*, 542 U.S. at 380; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931

(2016).  Indeed, the Fourth Circuit itself left open the possibility that a "bad faith" or "capric[ious]" denial of certification might warrant mandamus.  *In re Trump*, 958 F.3d at 285. But if such abuses of discretion can be remedied—as is plainly appropriate—appellate courts likewise should be able to remedy abuses of discretion when they are firmly of the view, as the dissenting en banc judges were here, that this Court's reasoning for denying certification was not based in governing law or fact.  *Id*. at 320 (Niemeyer, J., dissenting).

2.      Notably, the majority of the en banc Court did not express any agreement with this Court's decision not to certify an interlocutory appeal.  As Defendants have previously demonstrated, an "immediate appeal" from the motion to dismiss orders would "materially advance the ultimate termination of the litigation," because resolution in the President's favor of any of the "controlling question[s] of law" raised would require dismissal of this suit.  28 U.S.C. § 1292(b).  And likewise, it is clear that there is a "substantial ground for difference of opinion" as to each of this Court's substantive rulings.  *Id.*

*First*, this Court's decision to permit an implied equitable suit to enforce the Emoluments Clauses against the President is, at a minimum, subject to substantial grounds for disagreement. Indeed, as discussed, Defendants respectfully submit that it was clearly incorrect, *see* Section II.A, *supra*, and even the Fourth Circuit acknowledged that the government's "argument is plausible," *In re Trump*, 958 F.3d at 286.

*Second*, the Fourth Circuit likewise acknowledged that it is "a debatable question"—to say the least—whether this Court properly held that Maryland and the District of Columbia have legally and judicially cognizable interests supporting a suit to enforce the Emoluments Clauses. *Id.*  That is so for several related reasons.

13

To begin, even assuming a cause of action to enforce the Emoluments Clauses could ever be implied under Congress's grant of equity jurisdiction to Article III courts, these particular Plaintiffs' interests do not "fall within the zone of interests to be protected or regulated by the . . . constitutional guarantee in question." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (quotation marks omitted). The zone-of-interests limitation on causes of action authorized by Congress is a "requirement of general application" that "applies unless it is expressly negated," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014), and it applies with even greater force to *implied* constitutional claims in equity, *see Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 320 n.3 (1977); *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987). Notably, this Court stands alone in rejecting the conclusion that the Emoluments Clauses are "designed to prevent official corruption," not to "create a new legal interest for parties to be protected from lawful competition," as Plaintiffs assert here. *In re Trump*, 958 F.3d at 298 (Wilkinson, J., dissenting); *accord CREW v. Trump*, 276 F. Supp. 3d 174, 187 (S.D.N.Y. 2017).[2]

Moreover, stripped of their asserted competitive injuries, Plaintiffs cannot satisfy the minimum requirements of Article III standing. They assert only a generalized grievance, shared by all members of the public, in having an official comply with prophylactic provisions of the Constitution adopted for the benefit of the public generally. *See United States v. Richardson*,

---

[2] Although the Second Circuit reversed the zone-of-interests ruling in *CREW*, its amended opinion did so only on the technical ground that the district court should not have considered the zone-of-interests requirement as part of the government's motion to dismiss for lack of subject-matter jurisdiction, but rather as part of its motion for dismiss for failure to state a claim. 953 F.3d 178, 200 (2d Cir. 2019). The government's rehearing petition remains pending in the Second Circuit.

418 U.S. 166, 176-78 (1974); *accord In re Trump*, 958 F.3d at 305-06 (Wilkinson, J.,

dissenting); *id.* at 329 (Niemeyer, J., dissenting).

Indeed, Plaintiffs' asserted competitive injuries fail to satisfy Article III even on their

own terms.  The Supreme Court has rejected "a boundless theory of standing" in which "a

market participant is injured for Article III purposes whenever a competitor benefits from

something allegedly unlawful."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013).  And

reasonable judges have already disagreed as to the viability of Plaintiffs' slightly narrower, but

inherently speculative, theory that:  (1) certain government customers patronize the President's

businesses because of his financial interests (rather than the businesses' other qualities, including

their general association with the President); (2) those customers would otherwise patronize the

limited venues in which Plaintiffs have a commercial interest (rather than any of the countless

other venues in the region); and (3) any countervailing effect from other government customers

who may be inclined to avoid the President's business because of his financial interests may be

disregarded.  *Compare CREW*, 953 F.3d at 189-200, *with id.* at 205-16 (Walker, J., dissenting),

*and In re Trump*, 958 F.3d at 325-28 (Niemeyer, J., dissenting).

*Finally*, there are also substantial grounds for disagreement as to this Court's merits

conclusion about the scope of the Emoluments Clauses.  As the government has shown, the

Clauses' use of the term "emolument" is limited to compensation accepted from a foreign or

domestic government for services rendered by an officer in either an official capacity or

employment-type relationship:  that interpretation is supported by contemporaneous dictionaries,

intra-textual comparisons, and consistent Executive practice from the Founding era to modern

times.  *See, e.g.*, Defs.' Reply in Supp. of Mot. to Dismiss at 16-20, ECF No. 70.  This Court's

contrary interpretation, which would cover any "profit, gain, or advantage," renders parts of the

constitutional text superfluous and would lead to ahistorical and absurd results.  *See In re Trump*, 958 F.3d at 300-01 (Wilkinson, J., dissenting).

3.      In sum, the government respectfully submits that this Court's refusal to certify an interlocutory appeal was a "clear abuse of discretion" and the Fourth Circuit's denial of mandamus in such circumstances conflicts with decisions of the Supreme Court, the Eleventh Circuit, and the D.C. Circuit.  And again, the unique constitutional status of the President further counsels in favor of the Supreme Court's review and reversal on this exceptionally important question.

## III.   THE EQUITIES SUPPORT A STAY PENDING FURTHER REVIEW.

Finally, the balance of equities also strongly favors the stay of proceedings in this Court pending Supreme Court review.  If proceedings are not stayed, the President would be irreparably harmed, because this unprecedented and potentially sprawling suit would be allowed to continue and Plaintiffs would be able to probe into his personal finances solely because of the office he holds.  *See Trump v. Mazars USA, LLP*, 140 S. Ct. 581 (2019) (staying mandate of the D.C. Circuit pending Supreme Court review in suit concerning congressional subpoena of the President's accounting firm).  Moreover, the Executive Branch would be irreparably harmed because five federal agencies would be required to comply with intrusive and burdensome subpoenas, including into sensitive matters about government decisionmaking.  *See, e.g.*, Respondents' Br. in Opp'n to Petition for Writ of Mandamus 48, No. 18-2486 (4th Cir. Feb. 6, 2020) (speculating whether "policy decision[s]" were "influence[d]" by alleged Emoluments); Ex. A, Req. No. 10 (demanding "all Communications with the President or White House Concerning the location of the headquarters of the Federal Bureau of Investigation"); Ex. B, Req. Nos. 1 & 2 (demanding documents sufficient to show "any Payments" by the Department of

Defense to "hotels, restaurants or event spaces in the Washington D.C. metropolitan area"). Such subpoenas squarely implicate "the Executive's interests in maintaining its autonomy and safeguarding its communications' confidentiality." *Cheney*, 542 U.S. at 370. And Plaintiffs have refused to rule out seeking discovery against the President himself, deepening these separation-of-powers concerns. *See* Statement Pursuant to F.R.C.P. 26(f) at 4, ECF No. 132 ("Plaintiffs may also seek limited discovery from President Trump in his official capacity on the subject of his communications with foreign, state, and domestic government officials regarding the Hotel and/or Restaurant.").

The Fourth Circuit brushed aside these harms on the ground that the President could still seek mandamus relief from specific discovery orders. *In re Trump*, 958 F.3d at 287 & n.8. But if the President is entitled to mandamus relief from the failure to dismiss the suit, he is entitled to avoid discovery altogether, and thus is irreparably harmed by the need to seek piecemeal protection against individual discovery orders instead. To issue a stay pending certiorari would also be consistent with the Fourth Circuit's recognition that the President deserves "special solicitude" when seeking mandamus. *Id*. at 282.

Nor will any countervailing harm result from a stay. Although a stay would delay discovery for a short, additional period to allow the Supreme Court to decide in an orderly fashion whether this suit should be allowed to proceed at all, that delay will not impose any material harm on the State of Maryland and the District of Columbia. Even setting aside that their alleged injuries are not cognizable, those injuries are almost all financial in nature (directly or indirectly), and Plaintiffs never sought a preliminary injunction. Some delay in obtaining relief that would redress their asserted injuries thus does not come close to outweighing the significant separation-of-powers harms posed by this suit against the President and the

burdensome discovery imposed on five federal agencies (not to mention numerous other private parties).

## CONCLUSION

Defendants respectfully ask that the Court stay proceedings pending the resolution of the government's forthcoming petition for a writ of certiorari and any further proceedings in the Supreme Court.

Dated: June 12, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

JENNIFER D. RICKETS
Branch Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

JEAN LIN
Special Litigation Counsel

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
JAMES R. POWERS
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendant*